Uri Litvak, Esq. (State Bar No. 277966)
Nathan Bernstein, Esq. (State Bar No. 164888)
Law Offices of Uri Litvak,
A Professional Corporation
2424 S.E. Bristol St., Suite 300
Newport Beach, CA  92660
T.  949-477-4900
F.  949-335-7113

Attorneys for the Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIKTORS GUSEVS, an individual; VG BEHEER LATVIA, LLC, a foreign limited liability company; VG BEHEER LATVIA SIA, a foreign corporation; VG BEHEER JURMALA LLC, a foreign limited liability company; VG BEHEER RIGA, LLC, a foreign limited liability company; BOTANIX, LLC, a foreign limited liability company; DEMENKOVA UN PARTNERI, a foreign partnership; LEGO TRANS, LLC, a foreign limited liability company; ANDRENU PARKS, LLC, a foreign limited liability company; GREENFIELD ENGURES SIA, a foreign corporation; and JEVGENIJS GUSEVS, a foreign individual, | Case No: |
| | **COMPLAINT FOR:** |
| | **(a) VIOLATIONS OF 18 U.S.C. §1962 (a), (b) (c), (d) UNDER RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS PROVISIONS OF THE ORGANIZED CRIME CONTROL ACT OF 1970 ("RICO"); (b) INTENTIONAL MISREPRESENTATION; and (c) FRAUD BY FALSE PROMISES** |
| Plaintiffs, | |
| vs. | **JURY TRIAL DEMANDED** |
| AS CITADELE BANKA, a foreign corporation; GUNTIS BELAVSKIS, a | |

- 1 -

foreign individual; VAS )
PRIVATIZATION AGENCY, a foreign )
corporation; RIPPLEWOOD )
HOLDINGS L.L.C., a Delaware limited )
liability company; RIPPLEWOOD )
ADVISORS LLC, a Delaware limited )
liability company; RA CITADELE )
HOLDINGS LLC, a Delaware limited )
liability company; and TIMOTHY C. )
COLLINS, an individual, )
)
          Defendants. )
)
)
)
)

...

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................4

II.   JURISDICTION AND VENUE ............................................4

III.  THE PARTIES ...................................................................5
      A. Plaintiffs ....................................................................5
      B. Defendants ..................................................................6

IV.   FACTUAL BACKGROUND COMMON TO ALL COUNTS.................7
      A. General Timeline of Events.........................................7
      B. Role of Defendants in the Racketeering Scheme ...................9

V.    CLAIMS FOR RELIEF .......................................................19
      Count I – Federal RICO Violations 18 U.S.C. §§ 1962 (a), (b), (c),
           and (d) .......................................................................19
      •    The Federal RICO Statute. ......................................19
      •    Plaintiffs Have Standing to Sue Count I Defendants under RICO......20
      •    Count I Defendants' Conspired to Form and Conduct an
           Unlawful Enterprise That Targeted Plaintiffs.....................21
      •    Count I Defendants' Enterprise Conducted Unlawful Activities
           Which Affected Interstate and Foreign Commerce ..........................21
      •    Count I Defendants' Pattern of Racketeering Activity ....................22
      •    Count I Defendants' Use of Wires to Perpetrate a Scheme to
           Defraud with an Intent to Defraud .......................................22
      •    Injury to Plaintiffs' Business and Property .........................23

      Count II – Intentional Misrepresentation ...................................23

      Count III – Fraud by False Promises.........................................25

VI.   JURY TRIAL DEMANDED .................................................26

///

Plaintiffs VIKTORS GUSEVS; VG BEHEER LATVIA, LLC; VG BEHEER LATVIA SIA; VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; DEMENKOVA UN PARTNERI; LEGO TRANS, LLC; ANDRENU PARKS, LLC; GREENFIELD ENGURES SIA; and JEVGENIJS (YEVGENIY) GUSEVS (collectively, "Plaintiffs") for their Complaint against Defendants AS CITADELE BANKA; GUNTIS BELAVSKIS; RIPPLEWOOD HOLDINGS LLC; RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS LLC and TIMOTHY C. COLLINS (collectively, Defendants") allege as follows:

## I.   INTRODUCTION

1.     This Complaint involves allegations of fraud, and a continuing pattern of racketeering activities and conspiracy to commit racketeering activities by Defendants through such means as wire fraud and mail fraud directed into and transmitted from the United States, for the purpose of looting the assets of the Plaintiffs and others.

## II.  JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. §1964 and 28 U.S.C. §§1331 and 1332.

3.     Venue is proper in this judicial district pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391 because: (a) as to Defendants RIPPLEWOOD HOLDINGS LLC, RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS LLC (sometimes collectively referred to herein as "RIPPLEWOOD") and TIMOTHY C. COLLINS, they are citizens of the United States that have engaged in purposeful continuous and systematic contact with the State of California; and (b) as to Defendants AS CITADELE BANKA; GUNTIS BELAVSKIS, and VAS PRIVATIZATION AGENCY (who are not United States citizens or residents),

they or their agents have made claim-specific contacts with, and have committed acts that have caused damage to Plaintiffs, in the State of California as described herein and have purposefully availed themselves of the benefits and protections of California law by entering into business transactions with Plaintiffs in the State of California.

### III. PARTIES

4.     Plaintiff VIKTORS GUSEVS is (a) an individual and a resident of the State of California pursuant to an EB-5 visa; (b) engaged in real estate investment and development throughout the United States (as well as in Latvia and internationally); (c) the chief executive officer of each of the Plaintiff entities; (d) the member of Plaintiffs VG BEHEER LATVIA, LLC; VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; LEGO TRANS, LLC; and ANDRENU PARKS, LLC; (e) the shareholder of Plaintiffs VG BEHEER LATVIA SIA and GREENFIELD ENGURES SIA; and (f) a partner in DEMENKOVA UN PARTNERI.

5.     Plaintiff VG BEHEER LATVIA, LLC, is a Latvian limited liability company with its principal place of business in California that is engaged in real estate investment and development throughout the United States.

6.     Plaintiffs VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; LEGO TRANS, LLC; and ANDRENU PARKS, LLC are limited liability companies formed in Latvia and engaged in real estate investment and real estate development in Latvia, the United States, and internationally.

7.     Plaintiffs VG BEHEER LATVIA SIA and GREENFIELD ENGURES SIA are corporations formed in Latvia and engaged in real estate

investment and real estate development in Latvia, the United States, and internationally.

8.    Plaintiff JEVGENIJS (YEVGENIY) GUSEVS is an individual and a resident of Latvia.

9.    Defendant AS CITADELE BANKA (formerly SC Citadele Banka and sometimes referred to herein as the "Bank") is a bank headquartered in Latvia.

10.    Defendant GUNTIS BELAVSKIS is a citizen of Latvia and, from 2010 to 2014, was a Member of the Supervisory Board or Chairman of the Supervisory Board of Defendant AS CITADELE BANKA, as set forth herein.

11.    Defendant VAS PRIVATIZATION AGENCY is an entity formed in Latvia and from 2010 until September, 2014 was no less than a 75% owner of Defendant AS CITADELE BANKA.

12.    Defendant RIPPLEWOOD HOLDINGS L.L.C. is a limited liability company formed and existing under the laws of the State of Delaware and is a citizen of the State of Delaware.

13.    Defendant RIPPLEWOOD ADVISORS LLC, is a limited liability company formed and existing under the laws of the State of Delaware and is a citizen of the State of Delaware.

14.    Defendant RA CITADELE HOLDINGS LLC, is a limited liability company formed and existing under the laws of the State of Delaware and is a citizen of the State of Delaware.

15.    Defendant TIMOTHY C. COLLINS is a citizen and resident of the United States whose exact state of residence is presently unknown, and who is the chief executive officer of Defendants RIPPLEWOOD HOLDINGS L.L.C., RIPPLEWOOD ADVISORS LLC, and RA CITADELE HOLDINGS LLC.

## IV.  FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.  General Timeline of Events

16.     In November, 2003, Plaintiff VG BEHEER LATVIA SIA signed a line of credit agreement with Parex Bank, then a privately owned bank headquartered in Latvia. The agreement committed Parex Bank, through January, 2018, to make a line of credit available to Plaintiff VG BEHEER LATVIA SIA for the purpose of acquiring and developing real estate projects in the United States and internationally.

17.     In 2006, at the request of Parex Bank, Plaintiff VG BEHEER LATVIA SIA and its chief executive officer and shareholder Plaintiff VIKTORS GUSEVS, caused Plaintiffs VG BEHEER JURMALA LLC, VG BEHEER RIGA LLC, and BOTANIX LLC to be formed and the line of credit of Parex Bank to Plaintiff VG BEHEER LATVIA SIA was divided among those newly formed entities, each of which entities Plaintiff VIKTORS GUSEVS was and is chief executive officer and owner.

18.     The lines of credit were secured by real estate and other property in Latvia owned by the Plaintiffs.

19.     From 2003 through 2008, the lines of credit were drawn upon and used to fund real estate investment and development projects in the United States and internationally.   The highest outstanding aggregate balance of the lines of credit was €28 Million and the average balance was €15 Million.

20.     In November, 2008, following the collapse of Lehman Brothers and the ensuing global financial crisis, the government of Latvia seized Parex Bank by "purchasing" a majority 51% stake from the founders for token consideration of 2 Latvian Lats (approximately €5.00).

21.     The government of Latvia then purchased the remaining stake of Parex Bank from other shareholders for equally token consideration of €0.01/share.

22.     Approximately 25% of the ownership interests of the government of Latvia in Parex Bank were subsequently acquired by the European Bank for Reconstruction and Development.

23.     The remaining 75% ownership interests of the government of Latvia in Parex Bank were subsequently transferred to Defendant VAS PRIVATIZATION AGENCY.

24.     At the time of the government takeover of Parex Bank in November, 2008, the Plaintiffs kept surplus funds of approximately €3 Million on deposit at Parex Bank. At the time, the real estate projects of the Plaintiffs in the United States were valued at approximately $45 million.

25.     From November, 2008 through 2009, Parex Bank refused to honor payment instructions from Plaintiffs to make payments from Plaintiffs' accounts at Parex to Washington Mutual Bank and others in the United States with respect to obligations of Plaintiffs relating to the real estate projects in the United States. This refusal undermined Plaintiffs' ability to service their debt and thereby caused damage to VG BEHEER LATVIA LLC and the other Plaintiffs in the United States.

26.     In early 2010, the "good" assets of Parex Bank, were transferred to a newly formed entity, Defendant AS CITADELE BANKA (then known as SC CITADELE BANKA). These new assets included Plaintiffs' lines of credit and accounts.

27.     The "bad" assets remained with Parex Bank, which later became known as Reverta.

28.     Defendant VAS PRIVATIZATION AGENCY owned 75% of the shares of the newly formed AS CITADELE BANKA and the remaining 25% of the shares were owned by the European Bank for Reconstruction and Development.

### B.  The Role of Defendants in the Racketeering Scheme

29.     Plaintiffs incorporate the averments of all previous paragraphs as if fully set forth herein.

30.     At the time of the formation of Defendant AS CITADELE BANKA, then Latvian Finance Minister Einars Repse and then Latvian Economy Minister Artis Kampars signed a confidential agreement with the European Commission requiring that Defendant AS CITADELE BANKA be sold or liquidated by the end of 2014 or Latvia would face serious financial sanctions from the European Commission and its members. Shortly thereafter, the Bank's Chairman GUNTIS BELAVSKIS, who at the time was a Member of the Supervisory Board of AS CITADELE BANKA, and VAS PRIVATIZATION AGENCY, hatched a fraud and racketeering conspiracy to enable AS CITADELE BANKA to reduce the apparent book value of AS CITADELE BANKA thereby increasing the likelihood that it could be sold or liquidated to a hand-picked buyer, while at the same time generating profits for the Bank, its investors, and its principals as part of the corrupt conspiracy further described herein.

31.     Defendants GUNTIS BELAVSKIS, AS CITADELE BANKA, and VAS PRIVATIZATION AGENCY conspired with defendants RIPPLEWOOD and TIMOTHY C. COLLINS to fraudulently manipulate the Bank's balance sheet and overall financial condition such that the severely discounted purchase price at

which RIPPLEWOOD would ultimately purchase a majority interest in the Bank could be justified.

32.   This racketeering conspiracy would involve defrauding the Plaintiffs (and other customers of the Bank) of their property, which fraud against Plaintiffs, as described in detail below, would be executed by a racketeering enterprise through wire and mail fraud in the United States and other unlawful acts.

33.   Defendant AS CITADELE BANKA and its officers (including Chairman of the board of bank GUNTIS BELAVSKIS) had actual knowledge that Plaintiff VIKTORS GUSEVS (the chief executive officer and owner of Plaintiffs VG BEHEER LATVIA, LLC; VG BEHEER LATVIA SIA; VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; DEMENKOVA UN PARTNERI; LEGO TRANS, LLC; ANDRENU PARKS, LLC; GREENFIELD ENGURES SIA) was residing in the United States and in the State of California and that emails, telephone calls, and mail from officers and employees of AS CITADELE BANKA directed to Plaintiff VIKTORS GUSEVS would utilize wire or radio located within the United States in order to be received by Plaintiff VIKTORS GUSEVS in the United States.

34.   The first part of executing the racketeering scheme involved convincing Plaintiff VIKTORS GUSEVS (and thus Plaintiffs VG BEHEER LATVIA, LLC; VG BEHEER LATVIA SIA; VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; DEMENKOVA UN PARTNERI; LEGO TRANS, LLC; ANDRENU PARKS, LLC; GREENFIELD ENGURES SIA, since VIKTORS GUSEVS was chief executive officer of such entities) to agree to a shortening of the term of the lines of credit of Plaintiffs from the then maturity date of 2018 to 2012.

35.     In overt furtherance thereof, in 2010, when the lines of credit of Plaintiffs were transferred to AS CITADELE BANKA, at the behest of Defendant Irina Ponomarjova (manager), Zigurds Cirulis (department head), and Kristaps Putans (deputy chief corporate banking) sent Plaintiff VIKTORS GUSEVS a series of emails and made a series of approximately 40 telephone calls fraudulently telling Plaintiff VIKTORS GUSEVS that a shortening of the term of the lines of credit from 2018 to 2012 was just a formality and that as soon as AS CITADELE BANKA was sold (which Plaintiff was told, would happen before the end of the shortened term of the lines of credit) the new owners would be required to extend the term of the lines of credit.

36.     Plaintiff VIKTORS GUSEVS was further told by the representatives of B, through such series of emails and phone calls, that if the Bank was not sold before the end of the shortened term, the term of the lines of credit would be extended by the existing officers.

37.     In detrimental reliance upon these misrepresentations, VIKTORS GUSEVS executed agreements on behalf of Plaintiffs VG BEHEER LATVIA SIA; VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; DEMENKOVA UN PARTNERI; LEGO TRANS, LLC; ANDRENU PARKS, LLC; and GREENFIELD ENGURES SIA, with AS CITADELE BANKA agreeing to a shortening of the term of the lines of credit from 2018 to 2012.

38.     In 2012, Defendant GUNTIS BELAVSKIS was promoted from Member to Chairman of the Board of Supervisors of AS CITADELE BANKA.

39.     Also in 2012, as the shortened term of the lines of credit was coming to an end and Defendant AS CITADELE BANKA had not yet been sold, Defendants GUNTIS BELAVSKIS and VAS PRIVATIZATION AGENCY put in

effect the second stage of their conspiracy to defraud Plaintiffs of their property, which second stage had an urgency because of the 2014 European Commission deadline for AS CITADELE BANKA to be sold or liquidated.

40.     Shortly before expiration of the lines of credit, Defendants AS CITADELE BANKA,  GUNTIS BELAVSKIS, and VAS PRIVATIZATION AGENCY, still knowing VIKTORS GUSEVS to be residing in the United States, caused Andrey Golubcovs and Uldis Glazers (corporate client manager) to send a series of email and telephone communications to VIKTORS GUSEVS in the United States, in which communications such officers and representatives told VIKTOR GUSEVS that AS CITADELE BANKA would be filing lawsuits against the Plaintiffs in arbitration court in Latvia upon expiration of the term of the lines of credit for repayment of the lines of credit,  but only so the Bank could write off the loans, thereby making the Bank more appealing  to potential purchasers.

41.     Such officers and representatives fraudulently promised VIKTORS GUSEVS in such communications that if he, as owner and chief executive officer of the Plaintiff entities, would cooperate with the process by causing the Plaintiffs not to oppose such lawsuits, subsequent to winning such lawsuits by default, AS CITADELE BANKA would not enforce the judgments but rather would agree to payment "work-outs" with the Plaintiffs and that, again, any new buyer of the Bank would be required to renew the lines of credit once the Bank was sold.

42.     Such officers and representatives further fraudulently misrepresented to VIKTORS GUSEVS that there was an immediate need to initiate the proceedings in the arbitration court in order to facilitate the orderly sale of the Bank and that it would be in Plaintiffs' best interests not to appear in court and not to contest the Bank's claims asserted in the arbitration court.

43.     Such officers intentionally concealed and fraudulently failed to disclose to Plaintiff VIKTORS GUSEVS that the decision of the arbitration court in these matters would be final, not subject to appellate review and would be carried out immediately, contrary to the assurances provided to Plaintiff.

44.     In detrimental reliance upon these fraudulent misrepresentations, VIKTORS GUSEVS caused Plaintiffs VG BEHEER LATVIA SIA; VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; DEMENKOVA UN PARTNERI; LEGO TRANS, LLC; ANDRENU PARKS, LLC; and GREENFIELD ENGURES SIA, and his son, Plaintiff JEVGENIJS (YEVGENIY) GUSEVS (a guarantor of the lines of credit), not to contest any of the lawsuits brought in arbitration court against them by AS CITADELE BANKA.

45.     Judgments were rendered against all of the Plaintiffs by the arbitration court when Plaintiffs did not appear and did not oppose any of the legal actions (based upon the fraudulent misrepresentations by officer representatives of Defendant AS CITADELE BANKA, made through email and telephone communications into the United States).   Such judgments were final and non-appealable.

46.     Contrary to its officers' and representatives' fraudulent promises, Defendant AS CITADELE BANKA failed to enter into workout agreements with any of the Plaintiffs, except and only as to Plaintiff VG BEHEER LATVIA SIA.

47.     The work out agreement with Plaintiff VG BEHEER LATVIA SIA, dated June 18, 2012, required monthly interest payments of €30,000 and principal repayment every six months of € 500,000. Through email and telephone communications by Vija Meška (Meshka) (department head), Edvins Joksts (senior lawyer), and Andrey Golubcovs (head of legal department), Plaintiff

VIKTORS GUSEVS was convinced to use Egils Radzins as the lawyer for Plaintiff VG BEHEER LATVIA SIA.  It was not until later that VIKTORS GUSEVS learned that Attorney Egils Radzins also represented a Supervisory Board Member of Defendant AS CITADELE BANKA and was also a judge on the arbitration court and, as such, had an actual conflict of interest with respect to his representation of VIKTORS GUSEVS.

48.    Plaintiff VG BEHEER LATVIA SIA made the monthly payments of interest and semi-annual payments of principal called for by the workout agreement on time.

49.    In the Fall of 2013, the Defendants put their conspiracy to defraud Plaintiffs out of their money and property into full swing. Through email and telephone communications to Plaintiff VIKTORS GUSEVS in the United States, Andrey Golubcovs, as agent and representative of Defendant AS CITADELE BANKA, fraudulently told Plaintiff VIKTOR GUSEVS that VG BEHEER LATVIA SIA was not required to make the principal payment otherwise due on September, 2013, but rather could use such funds for ongoing real estate projects.

50.    In detrimental reliance upon such fraudulent misrepresentations by the representative of AS CITADELE BANKA, Plaintiff VIKTORS GUSEVS caused VG BEHEER LATVIA SIA not to make the September, 2013 principal payment and instead, the funds were used for ongoing real estate projects.

51.    After such funds had been deployed, commencing in October, 2013, AS CITADELE BANKA through emails and telephone calls directed to Plaintiff VIKTORS GUSEVS in the United States, made demand for the September, 2013 principal payment and threatened to start enforcing the uncontested arbitration court judgments against Plaintiffs that AS CITADELE BANKA had procured through fraud.

52.     In January, 2014, the total amount owed by Plaintiffs under the lines of credit to AS CITADELE BANKA was approximately € 13.4 Million.

53.     Commencing in January, 2014, Plaintiffs (and the prospective buyers) six times requested permission from AS CITADELE BANKA to allow the sale of two of Plaintiffs' properties for € 9 Million in order to pay back a large portion of the principal owed on the lines of credit (for which unopposed judgment had been fraudulently obtained). Permission of AS CITADELE BANKA was required because the properties served as partial security for the lines of credit. AS CITADELE BANKA purposefully ignored, stonewalled or simply never responded to these requests.

54.     In March, 2014, AS CITADELE BANKA, through an auctioneer (Ainars Shusts), began auctioning the real estate properties of the Plaintiffs in Latvia to repay the unopposed judgments obtained by AS CITADELE BANKA through the wire and mail fraud perpetrated in the United States. This process has been ongoing.

55.     Approximately 80 properties of Plaintiffs have been auctioned off. The majority of the properties have been purchased by affiliates of AS CITADELE BANKA, such as Hortus Residential and Hortus Land, for outrageously low sham prices, with the intention of reselling the properties at their fair market value and thereby reaping substantial windfall profits.

56.     Defendants were successful in carrying out this fraudulent scheme because under Latvian law, the judicial executor handling a foreclosure sale makes an assessment of the value of the foreclosed property to be auctioned, which is approximately 50% of the fair market value and that assessment cannot be challenged or refuted. Therefore, sales at auction in Latvia are always disadvantageous to the debtor, yet favorable to the Bank and the buyer.

57.    In furtherance of the corrupt scheme, the Bank sold other properties for similar sham prices to "third parties" that, upon information and belief, are connected to AS CITADELE BANKA or the auctioneer.

58.    For example, real property known as "Engures 9B" in Jurmala, Latvia, which was purchased by Plaintiff Greenfield Engures SIA in December, 2014 for €600,000 and as to which an additional €200,000 was invested, was sold at auction for €43,500.

59.    By way of further example, real property owned by Plaintiff JEVGENIJS GUSEVS as to which there was an agreement by such Plaintiff to sell the property to a third party buyer for € 4 Million, was sold at auction for €500,000 and real property known as Konsula/Jurmales Gatve, as to which Plaintiffs had an agreement to sell to a third party buyer for at least €2 Million was sold at auction for €400,000.

60.    After fraudulently foreclosing upon Plaintiffs' properties, an affiliate of the Bank immediately listed the properties for sale at market prices.

61.    Defendant GUNTIS BELAVSKIS, then Chairman of the Supervisory Board of Defendant AS CITADELE BANKA, admitted to VIKTORS GUSEVS that Defendant AS CITADELE BANKA was intentionally causing the properties of Plaintiffs to be auctioned at sham prices and using bank affiliates to buy the properties so as to make huge windfall profits and that Defendant AS CITADELE BANKA had purposefully used its attorney, Andrey Golubcovs, and others to trick Plaintiff VIKTORS GUSEVS, in the United States, to enable the auctioning of the properties of Plaintiffs.

62.    In September, 2014, in the midst of the sham property auctions, with Defendants VAS PRIVATIZATION AGENCY and GUNTIS BELAVSKIS facing the 2014 European Commission deadline for AS CITADELE BANKA to

be sold or liquidated, the 75% ownership interest of VAS PRIVATIZATION AGENCY in AS CITADELE BANKA was purchased by a group of investors led by RIPPLEWOOD and TIMOTHY C. COLLINS.

63.    Upon information and belief, a material reason for such purchase, was the knowledge by RIPPLEWOOD and its chief executive officer, TIMOTHY C. COLLINS, of the fraud being perpetrated by AS CITADELE BANK upon Plaintiffs and other customers of the Bank resulting in sham auctions of properties that would result in outrageous profits for the Bank and its investors while at the same time allowing RIPPLEWOOD to acquire the Bank for an artificially reduced price without the need for a bidding process.

64.    Upon information and belief, RIPPLEWOOD and TIMOTHY C. COLLINS conspired with the principals of VAS PRIVATIZATION AGENCY and AS CITADELE BANKA to rig the bidding process for the 75% ownership interest such that at least 7 other prospective purchasers, including those affiliated with Rietumu Bank and Norvik Bank, were removed from contention, leaving RIPPLEWOOD as the only bidder.    RIPPLEWOOD and TIMOTHY C. COLLINS celebrated the consummation of the deal with the principals of VAS PRIVATIZATION AGENCY and AS CITADELE BANKA even before the transaction had officially closed.

65.    Ultimately, the purchase transaction closed and a consortium of investors led by RIPPLEWOOD became the owner of 75% plus one share of the Bank. The other shareholder of the Bank was the European Bank for Reconstruction and Development, which still owns 25 percent minus one share of the Bank.

66.    Upon information and belief, information and discussion regarding AS CITADELE BANKA and the sham auctions was communicated to

RIPPLEWOOD and TIMOTHY C. COLLINS in the United States by emails and telephone calls from AS CITADELE BANKA and its officers, and responded to by Defendants RIPPLEWOOD and TIMOTHY C. COLLINS from the United States.

67.    Upon further information and belief, RIPPLEWOOD and TIMOTHY C. COLLINS, now a Chairman of the Supervisory Board of AS CITADELE BANKA, are continuing with such fraudulent property auctions by AS CITADELE BANKA in order to generate fraudulent and outrageous profits for themselves and their investors.

68.    AS CITADELE BANKA intends on selling approximately 30 additional properties of Plaintiffs in the same manner (approximately 50 have been sold to date).

69.    The fraudulent scheme of the Defendants herein has damaged Plaintiffs in an amount in excess of $200 Million and as a result of Defendants' actions, all the Plaintiff entities are on the verge of bankruptcy.

70.    Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. Section 1964(c) by committing wire fraud in violation of 18 U.S.C. Section 1343, requiring (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) the specific intent to defraud, in connection with Defendants' dealings with plaintiffs.   Defendants demonstrated a pattern of unlawfully foreclosing and liquidating multiple properties that were owned by Plaintiffs and then selling them to affiliates of Defendants in sham auctions.

///
///
///
///

# V.  CLAIMS FOR RELIEF

## COUNT I
## FEDERAL RICO VIOLATIONS OF 18 U.S.C.
## SECTIONS 1962(a),  1962(b), 1962(c), and 1962(d)

71.     All of the statements in paragraphs 1 through 70 above are incorporated herein by reference.

72.     This count is filed against Defendants AS CITADELE BANKA, GUNTIS BELAVSKIS, VAS PRIVATIZATION AGENCY, RIPPLEWOOD HOLDINGS LLC, RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS LLC and TIMOTHY COLLINS (who may be referred to herein as the "Count I Defendants").

## The Federal RICO Statute

73.     18 U.S.C. Section 1961(1)  states in pertinent part

"(1) "racketeering activity" means  . . .  (B) any act which is indictable under any of the following provisions of title 18, United States Code: section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud)."

74.     18 U.S.C. Section 1962 provides,

"(a)  It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the

purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b)  It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

75.    The Count I defendants violated these sections of RICO, and are therefore liable to Plaintiffs as set forth herein.

### Plaintiffs Have Standing to Sue Count I  Defendants under RICO

76.    At all relevant times, Plaintiffs are and were "persons" within the meaning of 18 U.S.C. Sections 1961(3) and 1962(c).

77.    At all relevant times, each RICO Count I Defendant is and was a "person" within the meaning of 18 U.S.C. Sections 1961(3) and 1962(c).

///

///

///

### Count I Defendants' Conspired To Form And Conduct An Unlawful Enterprise That Targeted Plaintiffs'

78.     The Count I defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an illegal enterprise, as described herein.  The Count I defendants used the umbrella organization known as "AS CITADELE BANKA" as the enterprise to carry out their scheme in the arena of foreign and interstate commerce.   Namely, through a multifaceted scheme of false promises, lies, fraud, and manipulation, the Count I defendants coerced Plaintiffs into shortening the deadlines for repayment of lines of credit, suffering defaults in arbitration proceedings, being deprived of continued funding, being subjected to orchestrated foreclosures of multiple properties, and losing multiple properties sold at sham auction at sham prices to affiliates of the Bank.

79.     The Count I Defendants and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c), referred to hereinafter as the "RICO Enterprise."   Each of the Count I defendants participated in the operation and management of the RICO enterprise.

### Count I Defendants' Enterprise Conducted Unlawful Activities Which Affected Interstate And Foreign Commerce

80.     At all relevant times, the RICO Enterprise was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. Section 1962(c).    The Count I defendants affected interstate and foreign commerce because they acquired plaintiffs' properties located in various countries, including Latvia, the United States, and internationally, and liquidated multiple properties  to third parties.

## Count I Defendants' Pattern of Racketeering Activity

81.     Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. Section 1964(c) by committing wire fraud in violation of 18 U.S.C. Section 1343, requiring (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) the specific intent to defraud, in connection with Defendants' dealings with Plaintiffs.   Defendants demonstrated a pattern of unlawfully foreclosing and liquidating multiple properties that were owned by Plaintiffs and then selling them to affiliates of Defendants in sham auctions.

## Count I Defendants' use of the wires to perpetrate a scheme to defraud with an intent to defraud

82.     Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple predicate acts of wire fraud and mail fraud within the United States and internationally from 2010 to the present.

83.     The Count I defendants, utilized the wires in perpetuating their fraudulent scheme against Plaintiffs in violation of 18 U.S.C.    Section 1343.

84.     Count I Defendant's conduct of the RICO Enterprise was continuous and pursuant to an intentional scheme to defraud Plaintiffs and loot their assets for a heavily discounted price.

## Injury to Plaintiffs' Business and Property

85.     As a direct and proximate result of the Count I Defendants' racketeering activities, multiple predicate acts involving multiple properties located in the United States and internationally, and violations of 18 U.S.C. §1962(a),(b), (c), and (d),   Plaintiffs have been injured in their business and property in that: (a) their properties have been foreclosed, unlawfully auctioned

off and liquidated at sham prices representing a tiny fraction of the properties' fair market value; (b) the opportunity to profit from such properties has been unlawfully diverted to Count I Defendants in that a majority of the auctioned properties have been "purchased" by affiliates of AS CITADELE BANKA at sham prices and then re sold at market prices; and (c) Plaintiffs have been substantially hindered in their ability to conduct their business of investing in and developing real property in the United States and elsewhere because of the lack of funding promised, and because they have been fraudulently deprived of their properties that would have served as security for financing from alternative sources.

86.   Pursuant to 18 U.S.C. Section 1964(c ), plaintiff's are entitled to recover threefold their actual damages, the costs of the action, and reasonable attorney's fees.

## COUNT II
## INTENTIONAL MISREPRESENTATION

87.   The allegations of paragraphs 1 through 86 above are incorporated herein by reference.

88.   This Count is against Defendants AS CITADELE BANKA, GUNTIS BELAVSKIS, VAS PRIVATIZATION AGENCY, and ANDREY GOLUBTSOV (the "Count II Defendants").

89.   As described in Paragraphs 35, 36, 40, 41, 42, 43 and 49 above, the Count II Defendants represented directly to, or caused the officers and representatives of AS CITADELE BANKA named in such Paragraphs to represent directly to, Plaintiff VIKTORS GUSEVS as follows: (a) that a subsequent buyer of  AS CITADELE BANKA would be required to extend the term of the lines of credit to Plaintiffs; (b) that if the Bank were not sold, the

existing officers of AS CITADELE BANKA would extend the term of the lines of credit; (c) that work-out agreements would be entered into with all Plaintiffs if they did not oppose legal actions against them; and (d) that a September, 2013 principal payment on the one workout agreement that was entered into with VG BEHEER LATVIA SIA did not have to be made.

90.    These representations were all false.

91.    The Count II Defendants knew that the representations were false when made, or that the representations were being made recklessly and without regard for their truth.

92.    The Count II Defendants intended that Plaintiffs rely on the misrepresentations.

93.    The Plaintiffs reasonably and justifiably relied on the misrepresentations by taking the actions set forth in paragraphs 37, 44 and 50 above.

94.    The Plaintiffs were directly and proximately harmed by their reliance on such misrepresentations in that: (a) they agreed to a shortening of the term of their lines of credit from 2018 to 2012; (b) they failed to oppose legal actions brought against them, resulting in final, non-appealable judgments being entered against them; and (c) failed to make a principal payment, resulting in enforcement of the judgments and ultimate sale of their properties serving as collateral for the lines of credit.

95.    Plaintiffs' reliance on the misrepresentations was a substantial factor in causing their harm.

96.    WHEREFORE, Plaintiffs request that this Court enter judgment against Count II Defendants as follows: (1) actual damages; (2) punitive damages to be determined; and (c) costs of this action.

## COUNT III

## FRAUD BY FALSE PROMISES

97.    The allegations in paragraphs 1 through 96 are incorporated herein by reference.

98.    This Count is against Defendants AS CITADELE BANKA, GUNTIS BELAVSKIS, and VAS PRIVATIZATION AGENCY (the "Count III Defendants").

99.    The Count III Defendants made material promises to Plaintiffs, and represented directly to, or caused the officers and representatives of AS CITADELE BANKA to promise and represent directly to, Plaintiff VIKTORS GUSEVS as follows: (a) that a subsequent buyer of AS CITADELE BANKA would be required to extend the term of the lines of credit to Plaintiffs; (b) that if the Bank were not sold, the existing officers of AS CITADELE BANKA would extend the term of the lines of credit; (c) that work-out agreements would be entered into with all Plaintiffs if they did not oppose legal actions against them; and (d) that a September, 2013 principal payment on the one workout agreement that was entered into with VG BEHEER LATVIA SIA did not have to be made.

100.   These promises were important to the transactions and dealings between plaintiff and Count III Defendants.

101.   Count III Defendants did not intend to perform the promises when they made the promises.

102.   Count III Defendants intended that plaintiff would rely on this promises, and would be misled to not oppose the arbitrations.

103.   Plaintiffs reasonably relied on Count III Defendants' promise by taking the actions set forth in paragraphs 37, 44 and 50 above.

///

- 25 -

104.   Rather than performing the promised actions in good faith, the Count III Defendants acted in bad faith as part of a conspiracy to loot and strip Plaintiffs of their extensive real estate portfolio.

105.   Plaintiffs were directly and proximately harmed by their reliance on such misrepresentations in that: (a) they agreed to a shortening of the term of their lines of credit from 2018 to 2012; (b) they failed to oppose legal actions brought against them, resulting in final, non-appealable judgments being entered against them; and (c) failed to make a principal payment, resulting in enforcement of the judgments and ultimate sale of their properties serving as collateral for the lines of credit and suffered substantial financial damages.

106.   Plaintiffs' reliance on the Count III Defendants' false promises was a substantial factor in causing their harm.

WHEREFORE, Plaintiffs request that this Court enter judgment against Count III Defendants as follows: (1) actual damages; (2) punitive damages to be determined; and (c) costs of this action.

### JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all triable issues of fact.

Dated: May ___, 2016              The Law Offices of Uri Litvak,
                                  a Professional Corporation

                                  By:   */s/ Uri Litvak_____*
                                        Uri Litvak, Esq.
                                        Nathan Bernstein, Esq.
                                        Attorneys for Plaintiffs