MICHAEL R. DOYEN (State Bar No. 119687)
michael.doyen@mto.com
JEFFREY Y. WU (State Bar No. 248784)
jeffrey.wu@mto.com
MATTHEW K. DONOHUE (State Bar No. 302144)
matthew.donohue@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendants Ripplewood Advisors LLC and RA Citadele Holdings LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VIKTORS GUSEVS, et al.,

Plaintiffs,

vs.

AS CITADELE BANKA, et al.,

Defendants.

Case No.: 2:16-cv-03793-SVW (ASx)

**NOTICE OF MOTION AND MOTION TO DISMISS RIPPLEWOOD DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

**[DECLARATION OF JILLIAN BOIDY AND REQUEST FOR JUDICIAL NOTICE FILED SEPARATELY]**

Judge: Hon. Stephen V. Wilson
Hearing Date: Sept. 12, 2016
Time: 1:30 p.m.
Courtroom: 6

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on September 12, 2016, at 1:30 p.m., in Courtroom 6 of the United States District Court, Central District of California, Western Division, 312 North Spring Street, Los Angeles, California, or as soon thereafter as the matter can be heard before the Honorable Stephen V. Wilson, the undersigned Defendants will move to dismiss the claims against Ripplewood Advisors LLC, RA Citadele Holdings LLC, and Ripplewood Holdings LLC.

This motion is made pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. It is based upon the Memorandum of Points and Authorities, the Declaration of Jillian Boidy filed concurrently therewith, and on all the records, documents, pleadings, and papers on file or to be filed in this action, arguments of counsel, and any other matters that may properly come before the Court for its consideration.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on August 1, 2016.

DATED: August 5, 2016

MUNGER, TOLLES & OLSON LLP
MICHAEL R. DOYEN
JEFFREY Y. WU
MATTHEW K. DONOHUE

By: /s/ Michael R. Doyen
MICHAEL R. DOYEN
Attorneys for Defendants Ripplewood Advisors LLC and RA Citadele Holdings LLC

## TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 1

I. THE LATVIAN PLAINTIFFS .......... 1

A. The Latvian Companies .......... 1

B. The Latvian Individual Plaintiffs .......... 2

II. THE LATVIAN TRANSACTIONS .......... 2

A. The Latvian Lines of Credit .......... 2

B. The Alleged Misrepresentations by the Latvian Bank (the RICO Predicate Acts) .......... 3

C. The Latvian Foreclosures .......... 4

III. ALLEGATIONS CONCERNING THE RIPPLEWOOD PARTIES .......... 5

A. Lack of involvement in the RICO predicate acts. .......... 5

B. Lack of Contact with California .......... 6

ARGUMENT .......... 7

I. PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION OVER THE RIPPLEWOOD PARTIES .......... 7

A. There Is No Basis for Jurisdiction Based Upon Contacts with California .......... 8

1. Plaintiffs Fail to Establish General Jurisdiction .......... 8

2. Plaintiffs Fail to Establish a Basis for Specific Jurisdiction .......... 9

(a) Plaintiffs Fail to Show Purposeful Availment .......... 10

(b) The RICO Claim Does Not Arise Out of the Ripplewood Parties' Forum-Related Conduct .......... 13

(c) It Would Be Unreasonable to Exercise Jurisdiction .......... 13

B. There Is No Basis for Personal Jurisdiction Based on Nationwide Service under RICO .......... 14

II. PLAINTIFFS FAIL TO PLEAD A RICO CLAIM AGAINST THE RIPPLEWOOD PARTIES .......... 15

## TABLE OF CONTENTS
## (continued)


**Page**

A. Legal Standard ........ 16

B. Plaintiffs Fail to Allege that the Ripplewood Parties Committed Two RICO Predicate Offenses ........ 16

C. Plaintiffs' RICO Claim Fails Because They Have Not Alleged a "Domestic Injury" ........ 18

D. Plaintiffs Have Not Alleged a Violation of Section 1962 (a), (b), (c) or (d) ........ 19

1. Plaintiffs Fail to State a Claim for a Violation of Section 1962(c) ........ 19

(a) Plaintiffs Have Not Alleged the Ripplewood Parties Participated in the Conduct of a RICO Enterprise ........ 19

(b) Plaintiffs Have Not Alleged an Injury Caused by Any Predicate Acts of the Ripplewood Parties ........ 21

2. Plaintiffs Fail to State a Claim for a Violation of Section 1962(a) ........ 22

3. Plaintiffs Fail to State a Claim for Acquisition of a Business Through Racketeering (Section 1962(b)) ........ 22

4. Plaintiffs Fail to State a Claim for RICO Conspiracy (Section 1962(d)) ........ 23

III. RIPPLEWOOD HOLDINGS HAS BEEN DISSOLVED AND LACKS CAPACITY TO BE SUED ........ 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Alan Neuman Prods., Inc. v. Albright*,
862 F.2d 1388 (9th Cir. 1989) .......... 16

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) .......... 24

*AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*,
No. CIV S-00-113LKK/JFM, 2008 WL 5068672 (E.D. Cal. Nov. 25, 2008) .......... 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8, 16, 24

*Barantsevich v. VTB Bank*,
954 F. Supp. 2d 972 (C.D. Cal. 2013) .......... 10, 15

*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993) .......... 23, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 16, 24

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) .......... 11

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) .......... 8, 14, 15

*Cal. Pharmacy Mgmt., LLC v. Zenith Ins. Co.*,
669 F. Supp. 2d 1152 (C.D. Cal. 2009) .......... 16

*Canyon Cty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) .......... 16

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .......... 7

*Core-Vent Corp. v. Nobel Industries AB*,
11 F.3d 1482 (9th Cir. 1993) .......... 13, 14

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Daimler AG v. Bauman*,
134 S.Ct. 746 (2014) .......... 8, 9

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 19

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) .......... 16

*FC Inv. Grp. v. IFX Mkts., Ltd.*
529 F.3d 1087 (D.C. Cir. 2008) .......... 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 8, 9

*Guerrero v. Gates*,
110 F. Supp. 2d 1287 (C.D. Cal. 2000) .......... 19

*Gutierrez v. Givens*,
989 F. Supp. 1033 (S.D. Cal. 1997) .......... 15

*Howard v. Am. Online Inc.*,
208 F.3d 741 (9th Cir. 2000) .......... 23

*Lisa McConnell, Inc. v. Idearc, Inc.*,
No. 09-cv-00061-IEG, 2010 WL 364172 (S.D. Cal. Jan 22, 2010) .......... 13

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) .......... 8, 9

*Martinez v. Quality Loan Serv. Corp.*,
No. CV 08-07767-MMM, 2009 WL 586725 (C.D. Cal. Feb. 10, 2009) .......... 21

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
981 F.2d 429 (9th Cir. 1992) .......... 22

*NxSystems, Inc. v. Monterey Cty. Bank*,
No. 12-cv-00905-ST, 2012 WL 4093932 (D. Or. Sept. 17, 2012) .......... 10

*Panthera Railcar LLC v. Kasgro Rail Corp.*,
No. C 12-06458 SI, 2013 WL 1996318 (N.D. Cal. May 13, 2013) .......... 10

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Peace Software, Inc. v. Hawaiian Elec. Co.*,
No. CIV. 09-00408SOM/LEK, 2009 WL 3923350 (D. Haw. Nov. 17, 2009) ........ 16

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ........ 11

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004) ........ 21

*Powell v. Wells Fargo Home Mortg.*,
No. 14-CV-04248-MEJ, 2015 WL 4719660 (N.D. Cal. Aug. 7, 2015) ........ 22

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ........ 19, 20

*RJR Nabisco, Inc. v. European Cmty.*,
136 S. Ct. 2090 (2016) ........ 16, 18, 19

*Rocawear Licensing LLC v. Pacesetter Apparel Grp.*,
No. CV 06-3095 CJC, 2007 WL 5289737 (C.D. Cal. Sept. 12, 2007) ........ 15

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) ........ 17

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ passim

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ........ 7, 8

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir.2008) ........ 22

*Three Rivers Provider Network, Inc. v. Meritain Health, Inc.*,
No. 07-CV-1900 WQH (BLM), 2008 WL 2872664 (S.D. Cal. July 23, 2008) ........ 23

*United States v. Garcia*,
497 F.3d 964 (9th Cir. 2007) ........ 21

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Walden v. Fiore*,
134 S. Ct. 1115 (2014) .......... 8, 9, 12, 15

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
865 F. Supp. 2d 1002 (C.D. Cal. 2011) .......... 17

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
903 F. Supp. 2d 880 (C.D. Cal. 2012) .......... 20

**STATE CASES**

*Matthew v. Laudamiel*,
No. C.A. 5957-VCN, 2012 WL 605589 (Del. Ch. Feb. 21, 2012) .......... 25

*Metro Communication Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
854 A.2d 121 (Del. Ch. 2004) .......... 25

**FEDERAL STATUTES**

18 U.S.C. § 1961(1) .......... 16

18 U.S.C. § 1962(a) .......... 22

18 U.S.C. § 1962(b) .......... 23

18 U.S.C. § 1962(c) .......... 19, 20, 21

18 U.S.C. § 1962(d) .......... 23

18 U.S.C. § 1965 .......... 14

18 U.S.C. § 1965(b) .......... 14, 15

**STATE STATUTES**

Cal. Code Civ. P. § 410.10 .......... 8

6 Del. C. § 18-803(b) .......... 25

6 Del. C. § 18-805 .......... 25

## TABLE OF AUTHORITIES
## (continued)

**Page**

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) .......... 16, 17

Fed. R. Civ. P. 12(b)(6) .......... 16

Fed. R. Civ. P. 17(b)(2) .......... 24

## INTRODUCTION

Nine Latvian companies and two Latvian individuals have brought a RICO action against a Latvian bank which has foreclosed on their properties in Latvia. Plaintiffs have also sued a Latvian government agency and the New York-based companies that recently purchased a stake in the Latvian Bank.

This motion seeks dismissal on behalf of the New York entities (the "Ripplewood parties") based on lack of personal jurisdiction and failure to state a RICO claim against them.

The Ripplewood parties conduct no business in California, and the Complaint alleges no basis for personal jurisdiction over them in California.

Plaintiffs fail to plead any domestic injury and do not come close to meeting RICO's requirements as against the Ripplewood parties. Plaintiffs allege they are the victims of fraudulent statements made by the Latvian Bank through purported mail and wire fraud (the alleged RICO predicate acts) in 2010 through 2013. The Complaint fails to identify a single false or fraudulent statement or RICO predicate act by the Ripplewood parties. Indeed, the Complaint makes clear that the Ripplewood parties did not acquire an interest in the Latvian Bank until late 2014, after all the RICO predicate acts identified in the Complaint had already occurred.

## STATEMENT OF FACTS

### I. THE LATVIAN PLAINTIFFS

#### A. The Latvian Companies

Plaintiffs include nine Latvian entities. Eight of them, including the four who obtained the loans here at issue,[1] make no claim to be located in, or to conduct business in, California. Only one (VG Beheer Latvia LLC) is said to have its

[1] VG Beheer Latvia SIA, VG Beheer Jurmala LLC; VG Beheer Riga, LLC, and Botanix, LLC (¶ 17.)

"principal place of business in California." (¶ 5.) This company is not alleged to have any connection to the transactions or conduct alleged in the Complaint.

Plaintiffs claim they own or owned at least eighty properties in Latvia. They also claim to engage in real estate investment and development internationally and "throughout the United States." (¶¶ 5-7.) There is no allegation they invest in California.

**B. The Latvian Individual Plaintiffs**

Plaintiff Viktor Gusevs ("Gusevs") purports to be a resident of California under an EB-5 Immigrant Investor visa. (¶ 4.) Plaintiff Jevgenijs Gusevs, son of Viktor Gusevs, resides in Latvia and guaranteed the loans the Latvian entities obtained from a Latvian bank. (¶¶ 8, 44.) Victor Gusevs is the "chief executive officer" of the Latvian entities and either "the member," "the shareholder," or "a partner" of each Latvian entity. (¶ 4.)

## II. THE LATVIAN TRANSACTIONS

**A. The Latvian Lines of Credit**

Plaintiffs claim that four of the Latvian entities borrowed money from Parex Bank, a Latvian institution. (¶¶ 6-7, 16-17.) "The lines of credit were secured by real estate and other property in Latvia …." (¶ 18.) The lines of credit were guaranteed by Gusevs' son, Jevgenijs, a "resident of Latvia." (¶¶ 8, 44.) The loan was allegedly taken out for the purpose of developing real estate "in the United States and internationally." (¶ 16.) The investments are not identified.

Plaintiffs claim that, in November 2008, due to the global financial crisis, the Latvian government took over Parex Bank. (¶ 20.) In early 2010, an agency of the Latvian government, Defendant VAS Privatization Agency, transferred the "'good' assets" of Parex Bank to a newly formed entity, defendant AS Citadele Banka ("the Latvian Bank" or "Bank"). (¶¶ 23, 26.) Latvia owned 75% of the new bank; 25% was owned by the European Bank for Reconstruction and Development. (¶ 28.)

**B. The Alleged Misrepresentations by the Latvian Bank (the RICO Predicate Acts)**

Plaintiffs are silent as to what impact the collapse of the real estate bubble and ensuing worldwide financial crisis of 2008-2009 had on their real estate business, other than reflected in their conceded interest in "work out agreements" to avoid "foreclosure." (¶¶ 41, 46-56.) Plaintiffs allege that, during the period the Bank was owned by Latvia, Bank employees made a series of misrepresentations to Plaintiffs concerning default proceedings and "writing off" the Bank's loans to Plaintiffs. The alleged misrepresentations took place between 2010 and the fall of 2013.

The alleged misrepresentations are explicitly attributed to other named defendants and all occurred before the Ripplewood parties are alleged to have agreed to acquire an interest in the Bank, in September 2014. There is no allegation that the Ripplewood parties had any involvement in the Bank's affairs at the time of the alleged misrepresentations.

Plaintiffs allege that Bank employees made three sets of misrepresentations:

2010: The Complaint alleges that in 2010, three Latvian Bank employees made misrepresentations that induced Plaintiffs to agree to advance the expiration date of the lines of credit from 2018 to 2012. The Bank employees allegedly told Plaintiffs that that changing the expiration date was "just a formality" and that after the Bank was sold, it would "extend the terms of the lines of credit." (¶ 35.)

2012: The Complaint alleges that two Latvian Bank employees informed Plaintiffs that the Bank would be "filing lawsuits against the Plaintiffs in arbitration court in Latvia," but that this was "only so that the Bank could write off the loans, thereby making the Bank more appealing to potential purchasers." (¶ 40.) Plaintiffs claim that Bank employees assured Plaintiffs that if they did not contest the Latvian lawsuits, the Bank "would not enforce the judgments but rather would agree to payment 'work-outs' with the Plaintiffs." (¶ 41.) Plaintiffs claim that, in reliance on the Bank's representations, Plaintiffs did not contest the Latvian lawsuits, and that

judgments were entered against them "by the arbitration court;" such judgments are "final and non-appealable." (¶ 45.)

2013: The Complaint alleges that the Latvian Bank entered into a "work out agreement" with the original borrower, VG Beheer Latvia SIA, in 2012, and then, in 2013, told Plaintiffs that the company "was not required to make the principal payment otherwise due on September, 2013, but rather could use such funds for ongoing real estate projects." (¶ 49.) Plaintiffs claim that, in reliance on the Bank's allegedly fraudulent assurance, they did not make the principal payment due in September 2013. (¶ 50.)

Plaintiffs allege that the Latvian Bank then "began auctioning the real estate properties of the Plaintiffs in Latvia to repay the unopposed judgments *obtained by AS Citadele Bank through mail and wire fraud perpetrated in the United States*." (¶ 54 (emphasis added); *see also* ¶ 51 (Bank began "enforcing the uncontested arbitration court judgments against Plaintiffs that [the Bank] had procured through fraud").

The Complaint alleges that the foregoing the acts of mail and wire fraud constitute RICO predicate offenses. (¶¶ 50, 81, 82.)

**C. <u>The Latvian Foreclosures</u>**

Plaintiffs allege that, as a result of the foregoing alleged fraud, in 2014, the Latvian Bank was able to commence foreclosure sales of Plaintiffs' properties in Latvia, beginning in March 2014. (¶¶ 50, 54.) Plaintiffs claim that "80 properties of Plaintiffs have been auctioned off." (¶ 55.)

Plaintiffs allege that the auction prices were "outrageously low" "because *under Latvian law*, the judicial executor handling a foreclosure sale makes an assessment of the value of the foreclosed property to be auctioned, which is approximately 50% of the fair market value and that assessment cannot be challenged or refuted." (¶ 56, emphasis added.) Plaintiffs allege that, under Latvian law, "sales at auction in Latvia are always disadvantageous to the debtor, yet

favorable to the Bank and the buyer." (¶ 56.) Plaintiffs allege that most of the foreclosed properties were purchased by affiliates of the Latvian Bank. (¶ 55.)

Plaintiffs do not allege that the Latvian foreclosures on Latvian properties constitute any RICO predicate offense.

## III. ALLEGATIONS CONCERNING THE RIPPLEWOOD PARTIES

### A. Lack of involvement in the RICO predicate acts

The Complaint identifies no misrepresentation or RICO predicate act by the Ripplewood parties and does not contend that the Ripplewood parties made any of the alleged misrepresentations identified in the Complaint. Indeed, the Complaint alleges that the Ripplewood parties invested in the Latvian Bank after the above misrepresentations had already occurred and the arbitration judgments had already been obtained.

The Complaint alleges that, in September 2014, a consortium of investors led by Ripplewood entities entered into an agreement to purchase the Latvian government's 75% stake in the Latvian Bank. (¶ 62.)[2] Ripplewood's principal became the Chairman of the Bank's Supervisory Board. (¶ 67.)

Plaintiffs allege, "upon information and belief," that the Ripplewood parties invested in the Latvian Bank because they had "knowledge" that the Latvian Bank was conducting "sham auctions" of Plaintiffs' Latvian properties and that this would generate profits for the Bank. (¶ 63.)

Plaintiffs allege that the Ripplewood parties "conspired" *with the seller – the Latvian government* – to purchase the Bank at a "fraudulently" and "severely discounted" price. (¶ 31.) Why it was in the interest of the Latvian government to fraudulently or severely *discount* the purchase price it received for the Bank is not explained. The Complaint contains no allegations of fact concerning the

---

[2] The European Bank of Reconstruction and Development still owns an approximately 25% stake in the Bank. (¶ 65.)

circumstances of this supposed conspiracy, no explanation for how the price was "fraudulent," and no allegation that Plaintiffs were somehow injured by the price at which the Latvian government sold the Latvian Bank to investors.

Finally, Plaintiffs allege "upon information and belief" that the Ripplewood parties "conspired" with the Latvian government "to rig the bidding process." (¶ 64.) The Complaint provides no explanation for how the bidding was "rigged" or how it was in the interest of the Latvian government to rig the bidding. Nor do Plaintiffs allege that they were injured in any manner by the bidding process.

The sole cause of action Plaintiffs assert against Ripplewood parties is the RICO claim. (¶ 72.) Plaintiffs assert common law misrepresentation claims against the Latvian Bank, its CEO, and the Latvian government agency, (¶¶ 88, 98), but Plaintiffs assert no misrepresentation claim against the Ripplewood parties.

**B. Lack of Contact with California**

Plaintiffs make no effort to allege a basis for the exercise of personal jurisdiction over the Ripplewood parties. Plaintiffs baldly assert that the Ripplewood parties "have engaged in purposeful continuous and systematic contact with the State of California." (¶ 3.) As we show below, this is insufficient as a matter of law to establish general jurisdiction. The Complaint identifies no contacts by the Ripplewood parties with California, let alone "continuous and systematic" ones.

In fact, Ripplewood Advisors and RA Citadele are investment holding companies organized in Delaware and headquartered in New York. (Boidy Decl. ¶¶ 3-6), [3] Ripplewood Advisors invests primarily in Europe, the Middle East and Africa. (*Id.*) RA Citadele holds the Ripplewood investment in the Latvian Bank. Neither company invests in California businesses or properties. (*Id.*) Ripplewood

[3] A third entity, Ripplewood Holdings, formerly headquartered in New York – was dissolved in February 2015 and is not subject to suit. (*See* section III below).

Holdings is a dissolved Delaware company, during its existence headquartered in New York. (*Id.* ¶¶ 14-16.)

Ripplewood Advisors and RA Citadele do not do business in California. They have never maintained any offices, employees, officers, or agents for service of process in California. (*Id.* ¶¶ 4, 6.) They have never maintained bank accounts in California, owned property in California, or paid California state taxes. (*Id.*)

The Ripplewood parties' acquisition of a stake in the Latvian Bank had no connection to California. (*Id.* ¶ 9.) Negotiations and communications leading to the deal were conducted primarily in Riga, Latvia, and in New York. (*Id.*) The purchase agreement was executed in November 2014 in Riga and is governed by English law. (*Id.*) The Ripplewood personnel involved in the transaction live in New York. (*Id.* ¶ 12.) The Ripplewood Advisors personnel who now serve on the Board of Supervisors for the Latvian Bank live in New York and Florida. The Board of Supervisors meets in Riga, in London, or telephonically. (*Id.* ¶ 13.)

## ARGUMENT

### I. PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION OVER THE RIPPLEWOOD PARTIES

Plaintiffs bear the burden of establishing personal jurisdiction over defendants. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Plaintiffs are required to make a "prima facie" showing of personal jurisdiction. *Id.* They have not done so.

Although "uncontroverted allegations in the complaint must be taken as true," *id.*, "'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden," *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). Further, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted).

### A. <u>There Is No Basis for Jurisdiction Based Upon Contacts with California</u>

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). California's long-arm statute, Code of Civil Procedure 410.10, authorizes jurisdiction "coextensive with federal due process requirements." *Schwarzenegger*, 374 F.3d at 800-01.

#### 1. Plaintiffs Fail to Establish General Jurisdiction

To establish *general* jurisdiction, Plaintiffs would have to show that the Ripplewood parties engage in contacts with California that are "so 'continuous and systematic' as to render them essentially *at home* in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (emphasis added). Due to the "at home" requirement, "[t]he 'paradigm' fora for general jurisdiction are a corporation's place of incorporation and principal place of business." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014)). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Id*.

Plaintiffs baldly allege that Defendants "have engaged in purposeful continuous and systematic contact" with California. (¶ 3.) Such boilerplate fails as a matter of law. *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (A "nonspecific conclusory statement is not enough to show either minimum contacts giving rise to the RICO claim or continuous contacts making defendants liable in California for out-of-state activities."); *Swartz*, 476 F.3d at 766 ("legal conclusions unsupported by specific factual allegations" insufficient to establish jurisdiction); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (rejecting allegations that are mere "labels and conclusions" and "'naked assertions' devoid of 'further factual enhancement'"). In any event, "continuous and systematic contact" is not enough. *Daimler*, 134 S.Ct. at 761; *Martinez*, 764 F.3d at 1070

(explaining that, under *Daimler*, a company with "multiple facilities in California" was still not subject to general jurisdiction). The question is whether Ripplewood parties are "at home" in California. *Daimler*, 134 S.Ct. at 761.

As explained in the Declaration of Jillian Boidy, Ripplewood Advisors and RA Citadele were formed in Delaware and headquartered in New York. They have never registered to conduct business, paid taxes, or maintained offices, staff, bank accounts or agents for service of process in California. (Boidy Decl. ¶¶ 4, 6.) Ripplewood Holdings no longer exists, but before its dissolution, it was also formed in Delaware and headquartered in New York. (*Id.* ¶ 16.) None of these entities are or were "at home" in California. *See Martinez*, 764 F.3d at 1070.

**2. Plaintiffs Fail to Establish a Basis for Specific Jurisdiction**

Plaintiffs have not and cannot satisfy the requirements for specific jurisdiction over Ripplewood – i.e., jurisdiction that depends "on an 'affiliation[] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place *in the forum State* … .'" *Goodyear*, 564 U.S. at 919 (emphasis added, typo corrected).

Plaintiffs must not only establish that the underling controversy has a sufficient connection with the forum state, they must do so based on the "*defendant's contacts with the forum State* itself …." *Walden*, 134 S.Ct. at 1122 (emphasis added). It is not enough to show that the *Plaintiffs* have some connection with the forum state; they must show that the Ripplewood parties had contacts with forum state, and that Plaintiffs' claims arise from those contacts. The Complaint here identifies *no* contacts between the Ripplewood parties and California. The Complaint does not allege that the Ripplewood parties ever did anything in California or even contacted Plaintiffs in California – or anywhere else.

The Ninth Circuit generally applies a three part test for specific personal jurisdiction. Plaintiffs bear the burden of providing evidence on the first two prongs:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction *with the forum* or resident thereof; or perform some act by which he *purposefully avails himself of the privilege of conducting activities in the forum*, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to *the defendant's forum-related activities*.

*Schwarzenegger*, 374 F.3d at 802.

Only if the plaintiffs are successful on both points does the burden then shift to defendants to make a "compelling case" on the third prong, *i.e.*, to show that

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id*.

#### *(a) Plaintiffs Fail to Show Purposeful Availment*

As to the first prong, which focuses on the defendant's contacts with the forum State, the Ninth Circuit has two related tests: "purposeful availment" for claims founded in a contract, and "purposeful direction" for claims sounding in tort. *Schwarzenegger*, 374 F.3d at 802. Here, the "purposeful availment" test properly applies to the RICO claim, because it "arises from" a contractual relationship.[4] But the result is the same under either test.

[4] "Where a plaintiff's tort and other claims *arise out of* an agreement, they are subject to the purposeful availment test that applies to contract claims." *NxSystems, Inc. v. Monterey Cty. Bank*, No. 12-cv-00905-ST, 2012 WL 4093932, at *6 (D. Or. Sept. 17, 2012) (emphasis added); *accord Panthera Railcar LLC v. Kasgro Rail Corp.*, No. C 12-06458 SI, 2013 WL 1996318, at *4 (N.D. Cal. May 13, 2013) (applying purposeful availment test where the "tort claims emanate from the parties' contractual relationship"); *but see Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 989 (C.D. Cal. 2013) (applying purposeful direction test to RICO claim without analyzing whether it arose from contract). The conduct Plaintiffs challenge through the RICO claim – foreclosing on property pledged as security for bank loans – is

*Purposeful Availment:* "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which *allows or promotes the transaction of business within the forum state*." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted and emphasis added).

The Complaint fails to allege that the Ripplewood parties did anything to transact business in California. The only conduct actually attributed to the Ripplewood parties is that they negotiated and purchased from the Latvian government an interest in the Latvian Bank – and that they "celebrated the consummation of the deal." (¶ 64.) There is no allegation that any of this conduct, even the celebration, occurred "within the forum state."

The fact that one of the Latvian borrowers claims to reside in California under an Investment Visa does not provide a basis for jurisdiction over the Ripplewood parties. "Merely 'random, fortuitous, or attenuated' contacts are not sufficient"; "there must be 'actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). There is no such connection here, let alone a "substantial connection."

*Purposeful Direction:* To satisfy the "purposeful direction" test, Plaintiffs must show that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805 (citation omitted). Plaintiffs have failed to do so.

Plaintiffs allege that the Ripplewood parties, after acquiring an interest in the Latvian Bank, permitted the Bank to continue foreclosing on Latvian properties. Taking the Complaint at face value, such foreclosures, based on loans from a

---

essentially a challenge to the Bank's exercise of contractual rights, and thus arise out of a contractual relationship.

Latvian Bank to Latvian companies secured by Latvian assets, pursuant to judgments rendered by a Latvian arbitration court, and in accordance with auction procedures mandated by Latvian law (¶¶ 16-18, 45, 56, 67), constitute conduct "expressly aimed" at *Latvia*, not California.

Under the "purposeful direction" test, the fact that the CEO of the Latvian borrowers purports to reside in California is, again, irrelevant. As the Supreme Court recently explained unequivocally in *Walden*: "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125. In *Walden*, the defendant was a federal agent *at an airport in Georgia* who allegedly seized funds *in Georgia* without probable cause from plaintiffs, who were traveling to, and maintained a residence in, Nevada; the defendant then allegedly helped prepare *in Georgia* a false affidavit to justify the seizure in Georgia. *Id*. at 1119-20. The Ninth Circuit found that Nevada had personal jurisdiction, on the ground the defendant had "knowledge of" plaintiffs' connections to Nevada and that harm to plaintiffs in Nevada was "foreseeable." *Id*. at 1124. The Supreme Court reversed, holding that the appellate panel had "impermissibly allow[ed] *a plaintiff's contacts* with the defendant and forum to drive the jurisdictional analysis." *Id*. at 1125 (emphasis added). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the *defendant* has formed a contact with the forum state." *Id*. (emphasis added).

Because "the 'minimum contacts' inquiry principally protects the liberty of the nonresident defendant," *id*. at 1125 n.9, the Supreme Court held that "it is the defendant, *not the plaintiff or third parties*, who must create contacts with the forum State," *id*. at 1126 (emphasis added). Given that "none of [defendant's] challenged conduct had anything to do with Nevada itself," "the effects of [defendant's] conduct on respondents are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction." *Id*. at 1125.

### *(b) The RICO Claim Does Not Arise Out of the Ripplewood Parties' Forum-Related Conduct*

Plaintiffs also fail to meet their burden on the second prong. Plaintiffs must show that claims *arise out of* the Ripplewood parties' *forum-related conduct.* "The Ninth Circuit employs a 'but for' standard in analyzing whether a cause of action arises from forum-related conduct." *Lisa McConnell, Inc. v. Idearc, Inc.*, No. 09-cv-00061-IEG, 2010 WL 364172, at *6 (S.D. Cal. Jan 22, 2010). "The 'but for' test preserves the requirement that there be some nexus between the cause of action and the *defendant's activities in the forum*." *Id*. (citation omitted and emphasis added).

There is no such nexus. Plaintiffs have not identified any *forum-related* conduct by the Ripplewood parties, let alone conduct that *caused* Plaintiffs' injuries.

### *(c) It Would Be Unreasonable to Exercise Jurisdiction*

Because Plaintiffs have not satisfied the first two prongs, the Court need not even consider the third: whether the exercise of jurisdiction would be "reasonable" and "comport with fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 802. Applying the Ninth Circuit's multi-factor test, *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993): the Ripplewood parties are headquartered in New York; they have made no "purposeful interjection" into California's affairs. It would be burdensome for them to litigate thousands of miles away in California. All of their employees with any involvement in the matter and all the relevant records reside in New York. (Boidy Decl. ¶ 12.) Nor is California the most efficient forum for the dispute as a whole. Other than one of the eleven plaintiffs, Gusevs, who says he does business "throughout the United States," nothing in the Complaint suggests that any other witness resides in the forum. Because the suit centers on conduct in Latvia, most other witnesses are likely located in Europe. (*See* ¶¶ 35, 47 (allegations identifying multiple Latvian Bank employees who made purported misrepresentations).) There is also potential for a

conflict of sovereignty. Plaintiffs challenge the conduct of the Latvian government, Latvian arbitration awards, and Latvian foreclosure proceedings.

The remaining factors do not favor a California forum. That Plaintiffs may prefer California is irrelevant, because "[a] mere preference on the part of plaintiff for its home forum does not affect the balancing[.]" *Core-Vent*, 11 F.3d at 1490. While California generally has an interest in providing redress for its residents, the extent of Plaintiffs' alleged connection to California appears tenuous. Of the eleven Latvian Plaintiffs, only two – Gusevs and VG Beheer Latvia, LLC – purport to conduct business here. (¶¶ 4-5.) And both of them apparently do extensive business in Latvia and elsewhere in the United States. The remaining Latvian Plaintiffs – including all the actual borrowers on the loans here at issue – make no claim to conduct business in California. (¶¶ 6-8, 16-17.)

**B. <u>There Is No Basis for Personal Jurisdiction Based on Nationwide Service under RICO</u>**

The RICO statute provides a conditional mechanism for nationwide service. *See* 18 U.S.C. § 1965(a) & (b). Plaintiffs have not met these conditions. "[M]erely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." *Butcher's Union*, 788 F.2d at 539.

The Ninth Circuit has held that "[f]or nationwide service to be imposed under section 1965(b), [1] the court must have personal jurisdiction over *at least one* of the participants in the alleged multidistrict conspiracy and [2] the plaintiff must show that there is *no other* district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Id*. (emphasis added). In addition, the complaint must "allege a single nationwide RICO conspiracy," because "Congress intended the 'ends of justice' provision to enable plaintiffs to bring all *members of a nationwide RICO conspiracy* before a court in a single trial." *Id*. The restrictions on nation-wide service reflect Congress's "preference in § 1965 to avoid, where

possible, haling defendants into a far flung fora." *FC Inv. Grp. v. IFX Mkts., Ltd*. 529 F.3d 1087, 1100 (D.C. Cir. 2008) (citation omitted).

Plaintiffs have met none of these conditions. *First*, Plaintiffs have failed even to allege facts establishing that this Court has personal jurisdiction over any RICO defendant. The only connection between this case and California is that Viktor Gusevs resides here, but as the Supreme Court held in *Walden*, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122.

*Second*, Plaintiffs have the burden to "adduce evidence that there is no other district in the United States that would have jurisdiction over all of the alleged co-conspirators," and to show "affirmatively that this is the case." *See Barantsevich*, 954 F. Supp. 2d at 989-90 (finding no basis for nationwide service under RICO and granting motion to dismiss); *Gutierrez v. Givens*, 989 F. Supp. 1033, 1038 (S.D. Cal. 1997) (similar).

*Third*, Plaintiffs have failed to allege the Ripplewood parties are members of a "single nationwide RICO conspiracy as required for nationwide service of process under the ends of justice provision of section 1965(b)." *Butcher's Union*, 788 F.3d at 539. "[G]eneral allegations of conspiracy … are insufficient to establish personal jurisdiction over Defendants." *Rocawear Licensing LLC v. Pacesetter Apparel Grp.*, No. CV 06-3095 CJC, 2007 WL 5289737, at *6 (C.D. Cal. Sept. 12, 2007).

Merely slapping on the label "conspiracy" is not enough for Plaintiffs to hale the Ripplewood parties into a distant forum under RICO. *See id*. at *5-6 (declining to apply § 1965(b) due to inadequate pleading of defendants' role in conspiracy).

## II. PLAINTIFFS FAIL TO PLEAD A RICO CLAIM AGAINST THE RIPPLEWOOD PARTIES

Plaintiffs fail to plead that the Ripplewood parties committed two RICO predicate offenses. That alone is fatal. Plaintiffs also fail to plead a "domestic

injury," as required by *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2111 (2016). These and other cumulative deficiencies are discussed below.

### A. Legal Standard

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Further, where a plaintiff alleges a RICO violation based on acts of fraud, the complaint must satisfy "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *Cal. Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1159 (C.D. Cal. 2009) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004)); *see* Fed. R. Civ. P. 9(b). To meet these requirements, the complaint must at minimum "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards*, 356 F.3d at 1066 (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1989)). "Allegations of fraud based on information and belief do not satisfy Rule 9(b); instead a plaintiff must state the factual basis for the belief." *Peace Software, Inc. v. Hawaiian Elec. Co.*, No. CIV. 09-00408SOM/LEK, 2009 WL 3923350, at *2 (D. Haw. Nov. 17, 2009).

### B. Plaintiffs Fail to Allege that the Ripplewood Parties Committed Two RICO Predicate Offenses

Because "RICO focuses on 'racketeering activity,'" a plaintiff in any RICO case must allege that the defendant committed "at least *two predicate acts* of racketeering activity, as defined in 18 U.S.C. § 1961(1)." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (emphasis added). Plaintiffs fail to plead two RICO predicate acts by the Ripplewood parties.

The cases make clear that where, as here, "RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts *by each defendant*." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (emphasis added). Plaintiffs have failed to do so.

Plaintiffs purport to plead "multiple predicate acts of wire fraud and mail fraud within the United States and internationally from 2010 to the present." (¶ 82.)[5] However, the Complaint identifies no such act of wire or mail fraud – or any other RICO predicate offense – by the Ripplewood parties.

The only wire and mail fraud alleged in the Complaint occurred from 2010 to 2013. Plaintiffs affirmatively allege that every one of these acts of mail and wire fraud was committed by one of the other named defendants. The Complaint also makes clear that all the RICO predicate offenses were committed *before* the Ripplewood parties acquired an interest in the Latvian Bank, in late 2014. (*See* Statement of Facts, section II.B, above).

While Plaintiffs baldly assert that, at the time they invested in the Bank, the Ripplewood parties had knowledge of this past fraudulent conduct by the Bank (¶ 62), Plaintiffs do not and cannot allege – even in the most conclusory fashion – that the Ripplewood parties *actually committed* or agreed to commit any of the acts of mail or wire fraud alleged in the Complaint.

Because Plaintiffs have failed to allege that the Ripplewood parties committed at least two RICO predicate offenses, the RICO claim against them should be dismissed. *See In re WellPoint*, 865 F. Supp. 2d at 1035, 1039.

---

[5] Allegations of mail and wire fraud are subject to the heightened pleading standards of Rule 9(b). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010).

### C. Plaintiffs' RICO Claim Fails Because They Have Not Alleged a "Domestic Injury"

The Supreme Court, invoking the general presumption against the extraterritorial application of American law, recently held a plaintiff cannot state a claim for damages under RICO except for "a *domestic injury* to its business or property." *RJR Nabisco*, 136 S. Ct. at 2106 (emphasis added). Plaintiffs cannot recover "for injuries suffered outside of the United States." *Id.* at 2108.

As the Supreme Court explained, the "domestic injury" requirement serves to prevent the "potential for international friction" that could arise from "providing a private civil remedy for foreign conduct." *Id.* at 2106. The Court noted how the United States' use of private enforcement provisions often conflicts with the government-driven remedial schemes in foreign nations. *See id.* at 2105-07 & n.9.

Plaintiffs here claim they have suffered losses on the lines of credit they obtained from Parex Bank (a Latvian company) secured by property in Latvia and guaranteed by a resident of Latvia. (¶¶ 7, 16, 17, 34-37, 44.) Specifically, Plaintiffs claim they have suffered losses as a result of binding judgments issued by the "Latvian arbitration court," which have led to foreclosures in Latvian of Latvian properties, in which those properties were sold for less than they were worth. (¶¶ 40-45, 54-56.) Any such injuries were suffered in Latvia.

In addition, the "potential for international friction" here is obvious. *RJR Nabisco*,136 S. Ct. at 2106. The Latvian bank that initially loaned money to these Latvian plaintiffs was taken over by the Latvian government. (¶¶ 20-23.) Moreover, the Latvian government created and owned the Latvian Bank which, while controlled by the Latvian government, obtained Latvian arbitration judgments against Plaintiffs, foreclosed on Plaintiffs' real-estate loans, and sold the Plaintiffs' Latvian properties pursuant to Latvian law. (¶¶ 45, 54-60.) The Latvian government then sold its interest in the Bank (part of which was acquired by the Ripplewood parties), pursuant to an agreement with the European Commission. (¶¶ 30, 39, 62.)

Plaintiffs seek to use RICO (and American courts) to challenge the lawfulness of Latvia's response to the financial crisis of 2008-2009.

Because Plaintiffs' RICO claim is based on "injuries suffered outside of the United States," it must be dismissed. *RJR Nabisco*, 136 S. Ct. at 2108.

**D. <u>Plaintiffs Have Not Alleged a Violation of Section 1962 (a), (b), (c) or (d)</u>**

Plaintiffs do not come close to pleading the elements of a RICO claim under § 1962 subsections (a), (b), (c) and (d); indeed, they barely nod at sub-sections (a), (b) and (d). We first discuss their § 1962(c) claim, and then turn briefly to some of the egregious defects in their pleadings under the other subsections.

**1. Plaintiffs Fail to State a Claim for a Violation of Section 1962(c)**

Plaintiffs must plead that the Ripplewood parties participated in the affairs of the RICO enterprise here alleged, that they did so though at least two RICO predicate offenses, and that the offenses committed by the Ripplewood parties caused Plaintiffs' injury. "A violation of § 1962(c) requires: (1) participation (2) in the affairs of an enterprise (3) through a pattern (4) of racketeering activity." *Guerrero v. Gates*, 110 F. Supp. 2d 1287, 1292 (C.D. Cal. 2000). "In addition, the conduct must be (5) the proximate cause of harm to the victim." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

*(a) <u>Plaintiffs Have Not Alleged the Ripplewood Parties Participated in the Conduct of a RICO Enterprise</u>*

To establish that the Ripplewood parties *participated in the conduct of a RICO enterprise*, Plaintiffs must allege that the Ripplewood parties had some part "in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). To satisfy this requirement, Plaintiffs had to allege "that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* "Relevant considerations include whether the

defendant occup[ies] a position in the chain of command through which the affairs of the enterprise are conduct[ed], whether the defendant knowingly implemented the decisions of upper management, and whether the defendant's participation was vital to the mission's success." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 910 (C.D. Cal. 2012) (internal quotation marks).

Plaintiffs' allege a RICO "enterprise" consisting of "an association-in-fact" of all Defendants. (¶ 79.)[6] They apparently contend that the Latvian government, the Bank, the Bank's CEO, and the Ripplewood parties all got together and formed "an association in fact" in order to carry out the alleged RICO predicate acts. Plaintiffs must show that the Ripplewood parties participated in the operation or management of this supposed "association in fact." *See In re WellPoint*, 903 F. Supp. 2d at 910-11 (dismissing § 1962(c) claims as to one defendant where the complaint failed to establish that the defendant held a leadership role in the RICO enterprise).

Plaintiffs do not explain how this supposed association-in-fact worked, let alone the role of the Ripplewood parties in it. The Ripplewood parties are not even alleged to have been around during 2010 to 2013 when this supposed association was allegedly committing the only RICO predicate offenses identified in the Complaint. Plaintiffs also fail to allege when the Ripplewood parties gained representation on the Bank's Supervisory Board (it was April 2015), or how that allowed them to manage or operate the supposed "association in fact."

Plaintiffs offer only the boilerplate allegation that each of the Defendants "participated in the operation and management of the RICO enterprise." (¶ 79.) Such

---

[6] Although the Complaint states that the "defendants used the umbrella organization known as 'AS CITADELE BANKA' as the enterprise to carry out their scheme," (¶ 78), Plaintiffs expressly assert an association in fact enterprise to satisfy the RICO "enterprise" requirement. (¶ 78 (the Defendants "are a group of persons associated together in fact"); ¶ 79 ("Defendants and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c), referred to hereinafter as the 'RICO Enterprise.'")).

conclusory allegations are insufficient. Plaintiffs must show that the Ripplewood parties participated in the affairs of the association in fact *though the commission of RICO offenses*. The Plaintiffs do not even attempt to meet this requirement.

### *(b) Plaintiffs Have Not Alleged an Injury Caused by Any Predicate Acts of the Ripplewood Parties*

Plaintiffs' § 1962(c) claim also fails because Plaintiffs' alleged damages were not caused by any predicate RICO offense committed by the Ripplewood parties. As noted above, the RICO predicate offenses alleged in the Complaint occurred *before* the Ripplewood parties became involved. As a general rule, a party that joins an existing conspiracy is not liable for acts predating its involvement. *Cf. United States v. Garcia*, 497 F.3d 964, 967 (9th Cir. 2007) (In a criminal conspiracy, a defendant "cannot be held responsible for crimes committed before he joined the conspiracy."). A RICO "plaintiff must plead that defendants' violation was both the 'but for' and proximate cause of a concrete financial injury." *Martinez v. Quality Loan Serv. Corp.*, No. CV 08-07767-MMM (PJWx), 2009 WL 586725, at *6 (C.D. Cal. Feb. 10, 2009); *see also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004) ("Causation lies at the heart of a civil RICO claim.").

Plaintiffs allege that the supposed acts of mail and wire fraud from 2010 to 2013 led to their losses in Latvia. (¶¶ 35-37, 40-45, 49-50.) Plaintiffs claim that these RICO predicate offenses resulted in defaults and binding arbitration judgments against them *before* the Ripplewood parties invested in the Bank. (¶¶ 35, 39-40, 49.) Plaintiffs do not allege that the Ripplewood parties committed any RICO predicate offense in connection with the acquisition. Nor do Plaintiffs claim injury caused by the Ripplewood parties' acquisition of the Bank.

Plaintiffs do claim that the Latvian Bank has continued to foreclose on Plaintiffs' properties since 2014. (¶ 68.) The Complaint complains that these foreclosures are based on the arbitration judgments obtained before 2014. (¶¶ 54, 68.) Plaintiffs do not allege, however, that the foreclosures themselves constitute

RICO predicate offenses. Nor do Plaintiffs allege that these foreclosures occurred at the direction or behest of the Ripplewood parties, or that the Ripplewood parties' conduct somehow caused Plaintiffs' damages.

**2. Plaintiffs Fail to State a Claim for a Violation of Section 1962(a)**

Plaintiffs' Complaint baldly alleges that Defendants violated § 1962(a). This section – RICO's anti-money laundering provision – prohibits "any person who has *received any income derived* . . . from a pattern of *racketeering* activity . . . to *use or invest* . . . *any part of such income* . . . in acquisition of any interest in, or the establishment or operation of, *any enterprise*" engaged in interstate commerce. 18 U.S.C. § 1962(a).

Plaintiffs do not allege that the Ripplewood parties have received any income from racketeering predicate acts or that they have invested any such income in an enterprise.

Moreover, "a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was *injured* by the *use or investment of racketeering income*." *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). "This 'investment injury' must be 'separate and distinct from the injury flowing from the predicate act.'" *Powell v. Wells Fargo Home Mortg.*, No. 14-CV-04248-MEJ, 2015 WL 4719660, at *13 (N.D. Cal. Aug. 7, 2015) (quoting *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir.2008)).

The Complaint contains no such allegations.

**3. Plaintiffs Fail to State a Claim for Acquisition of a Business Through Racketeering (Section 1962(b))**

Plaintiffs baldly assert that that Defendants violated § 1962(b). This RICO section makes it unlawful to "acquire … any interest in or control of any enterprise" "through a pattern of racketeering activity. 18 U.S.C. § 1962(b).

To plead a violation of Section 1962(b), Plaintiffs must allege that the Ripplewood parties committed two or more RICO predicate offenses *and* that they used those offenses to acquire or control an enterprise. Plaintiffs make no such allegations. They claim, "upon information and belief," that the Ripplewood parties conspired with the Latvian government "to rig the bidding process." (¶ 64.) This conclusory allegation does not come close to stating a § 1962(b) RICO claim. Plaintiffs do not explain how the process was rigged, how such conduct constituted a RICO predicate offense, or how Plaintiffs were injured by bid rigging. To recover under § 1962(b), Plaintiffs would have to allege injury to themselves resulting directly from a rigged bidding process. *Three Rivers Provider Network, Inc. v. Meritain Health, Inc.*, No. 07-CV-1900 WQH (BLM), 2008 WL 2872664, at *13 (S.D. Cal. July 23, 2008). Plaintiffs claim no such injury.

### 4. Plaintiffs Fail to State a Claim for RICO Conspiracy (Section 1962(d))

Plaintiffs fail to state a claim under § 1962(d), which prohibits "conspir[ing] to violate any of the provisions of subsection (a), (b), or (c)." 18 U.S.C. § 1962(d). To establish a conspiracy, Plaintiffs must plead that each defendant was "aware of the essential nature and scope of the [RICO] enterprise," and that each defendant *agreed to participate* in the conspiracy. *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993).

Specifically, here, "Plaintiffs must allege … that the defendants agreed to *commit, or participate in, a violation of two predicate offenses*." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). The predicate offenses alleged in the Complaint occurred *before* the Ripplewood parties arrived. Plaintiffs do not and cannot allege that the Ripplewood parties agreed to "commit or participate in" any such offense. That alone is fatal to the RICO conspiracy allegation.

Plaintiffs also plead no facts supporting an inference that the Ripplewood parties were aware of any such conspiracy. Plaintiffs allege only the conclusions, on

information and belief, that the Ripplewood parties had "knowledge . . . of the fraud" (¶ 63), and that "information and discussion regarding [the Latvian Bank] and the sham auctions was communicated" to them (¶ 66). Such unsupported and conclusory assertions are entitled to no weight on a motion to dismiss. *Twombly*, 550 U.S. at 555; *see Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293–94 (11th Cir. 2010); *Baumer*, 8 F.3d at 1347 (dismissing RICO conspiracy claim where "the bare allegations of the complaint provide no basis to infer assent to contribute to a common enterprise"). The Ripplewood parties' actual conduct – purchasing a stake in a bank – is "more likely explained by, lawful, unchoreographed free-market behavior" than by conspiracy. *Iqbal*, 556 U.S. at 680.

## III. RIPPLEWOOD HOLDINGS HAS BEEN DISSOLVED AND LACKS CAPACITY TO BE SUED

Plaintiffs purport to assert a claim against Ripplewood Holdings LLC. Such a claim is formally impossible. Ripplewood Holdings has been formally dissolved and lacks the capacity to be sued.[7] An entity's capacity to be sued is determined "by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). Ripplewood Holdings was a limited liability company ("LLC") organized under the laws of Delaware. (¶ 12.) Delaware law provides that an LLC may be sued only "until the filing of a certificate of cancellation." 6 Del. C. § 18-803(b). "After the certificate of cancellation has been filed, suits generally may not be brought by or against an LLC," *Matthew v. Laudamiel*, No. C.A. 5957-VCN, 2012 WL 605589, at *21 (Del. Ch. Feb. 21, 2012), because the LLC "no longer exists," *Metro Communication Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 138 (Del. Ch.

---

[7] Because Defendant Ripplewood Advisors administered the dissolution of Ripplewood Holdings, and because these issues relate to the dissolution of the company, Ripplewood Advisors has undertaken to bring these matters to the attention of the Court, and respectfully seeks dismissal on behalf of Ripplewood Holdings.

2004). A certificate of cancellation for Ripplewood Holdings was filed with the Delaware Secretary of State on January 5, 2015, terminating the company's legal existence and its capacity to be sued. (Boidy Decl. Ex. A.)

After cancellation, a plaintiff's only means of seeking to recover from a dissolved LLC is to petition the Delaware Court of Chancery either to nullify the certificate of cancellation or to revive the entity and appoint a trustee as its manager. *Matthew*, 2012 WL 605589, at *21-22 & n.148; *see* 6 Del. C. § 18-805. Plaintiffs do not allege that they have sought or received such relief from the Court of Chancery. Their claims against Ripplewood Holdings must therefore be dismissed. *AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*, No. CIV S-00-113LKK/JFM, 2008 WL 5068672, at *4 (E.D. Cal. Nov. 25, 2008) (dismissing for lack of capacity claims against dissolved Delaware corporation where plaintiff has not filed a petition for appointment of a trustee with the Chancery Court).

**CONCLUSION**

For the foregoing reasons, Plaintiffs' claims against Ripplewood parties should be DISMISSED in their entirety.

DATED: August 5, 2016

MUNGER, TOLLES & OLSON LLP
MICHAEL R. DOYEN
JEFFREY Y. WU
MATTHEW K. DONOHUE

By: /s/ Michael R. Doyen
MICHAEL R. DOYEN
Attorneys for Defendants Ripplewood Advisors LLC and RA Citadele Holdings LLC