Uri Litvak, Esq. (SBN 277966)
Airene Willliamson, Esq. (SBN 277101)
**Litvak Law Group, P. C.**
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660
T. 949.477.4900
F. 949.335.7113
*Attorneys for the Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIKTORS GUSEVS, an individual; VG BEHEER LATVIA, LLC, a foreign limited liability company; VG BEHEER LATVIA SIA, a foreign corporation; VG BEHEER JURMALA LLC, a foreign limited liability company; VG BEHEER RIGA, LLC, a foreign limited liability company; BOTANIX, LLC, a foreign limited liability company; DEMENKOVA UN PARTNERI, a foreign partnership; LEGO TRANS, LLC, a foreign limited liability company; ANDRENU PARKS, LLC, a foreign limited liability company; GREENFIELD ENGURES SIA, a foreign corporation; and JEVGENIJS GUSEVS, a foreign individual, | Case No.: 2:16-cv-03793-FFM |
| | **PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS' MOTION TO DISMISS  (DKT.31)** |
| | Judge:          Hon. Stephen V. Wilson |
| | Hearing Date:  September 12, 1026 |
| | Time:            1:30 p.m. |
| | Courtroom:     6 |
| Plaintiffs, | |
| vs. | |
| AS CITADELE BANKA, a foreign corporation; GUNTIS BELAVSKIS, a foreign individual; VAS PRIVATIZATION AGENCY, a foreign corporation; RIPPLEWOOD | |

HOLDINGS L.L.C., a Delaware limited )
liability company; RIPPLEWOOD )
ADVISORS LLC, a Delaware limited )
liability company; RA CITADELE )
HOLDINGS LLC, a Delaware limited )
liability company; and TIMOTHY C. )
COLLINS, an individual, )
                                )
        Defendants.              )

_____

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Plaintiffs' VIKTORS GUSEVS; VG BEHEER LATVIA, LLC; VG

BEHEER LATVIA, SIA; VG BEHEER JURMALA LLC; VG BEHEER RIGA,

LLC; BOTANIX, LLC; DEMENKOVA UN PARTNERI; LEGO TRANS,

LLC; ANDRENU PARKS, LLC; GREENFIELD ENGURES SIA; and

JEVGENIJS (YEVGENIY) GUSEVS (collectively, "Plaintiffs"), by and

through their attorneys of record, Uri Litvak, Esq. and Airene Williamson, Esq.,

Litvak Law Group, P. C., hereby file this Opposition to Ripplewood Advisors

LLC, RA Citadele Holdings LLC, and Ripplewood Holdings, LLC

("Ripplewood Defendants") Motion to Dismiss.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................1

II.    STATEMENT OF FACTS ........................................................................2

III.   LEGAL ARGUMENTS .............................................................................6

1.  The Court Has Personal Jurisdiction Over the Ripplewood
Defendants...............................................................................................6
    A. Legal Standard for Rule 12(b)(2) Motion to Dismiss ......................6
    B. Plaintiffs Can Establish Jurisdiction Over the Ripplewood Defendants
Through the Nationwide Jurisdictional Provisions Found in 18 U.S.C. §
1965(b) ....................................................................................................7
    C. Plaintiffs Can Also Establish the Basis the Court's Exercise of
Personal Jurisdiction Over the Ripplewood Defendants on Traditional
Grounds ................................................................................................10
        1. Plaintiffs Can Establish Specific Personal Jurisdiction Over the
        Ripplewood Defendants................................................................10
            a. The Ripplewood Defendants Purposefully Directed their
            Activities to the State of California............................................11
            b. Plaintiffs Claims Arose Out of the Ripplewood Defendants
            Specific California-Related Activities ......................................13
            c. Exercise of Court's Jurisdiction Over the Ripplewood
            Defendants in California is Reasonable ....................................14

2.  Plaintiffs Have Adequately Pleaded Their Causes of Action Against the
Ripplewood Defendants under the Federal RICO Statute .........................15
    A. Legal Standard for Rule 12(b)(6) Motion to Dismiss in a RICO
Action....................................................................................................15
    B. Plaintiffs Have Sufficiently Alleged the Ripplewood Defendants'
RICO Violations under 18 U.S.C § 1962 (c) ............................................17
        1. Plaintiffs Sufficiently Allege a RICO Enterprise under
        18 U.S.C. §1962 (c) ...................................................................17
        2. Plaintiffs Have Plead a Pattern of Racketeering Activity and the
        Predicate Acts with Particularity ...............................................19

C. Plaintiffs Have Sufficiently Plead a Prima Facie Case Against the Ripplewood Defendants under 18 U.S.C § 1962 (a), (b), and (d) with Particularity ............................................................21

D. The Complaint is Well-Plead Under Either Rule 8 (a) or 9 (b) .......23

E. RICO "Continuity" Applies to the Pattern Requirement not the Acts of Each Individual Defendant ........................................................ 24

**IV.   PLAINTIFFS ALTERNATIVELY REQUEST LEAVE TO AMEND THE COMPLAINT ............................................................25**

**V.   CONCLUSION............................................................26**

# **TABLE OF AUTHORITIES**

## **U.S. Supreme Court Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......................................................15

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ...................20, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................15

*Boyle v. United States*, 556 U.S. 938 (2009) .........................................17

*Calder v. Jones*, 465 U.S. 783 (1984) ....................................................11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 66 U.S. 408 (1984)............10

*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) ..........................7

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ......................................19

*Schumack v. United States*, 489 U.S, 705 (1989) ..................................19


## **Federal Cases**

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ....................................13

*Baumer v Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ...............................22

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir.) .......6, 11

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535
(9th Cir. 1986) ........................................................................................8

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) ...........11

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)...................................7

*Dole Food Co. v. Watts,* 303 F.3d 1104, (9th Cir. 2002) ....................6, 11

*Howard v. America Online, Inc.*, 208 F. 3rd 741 (9th Cir. 2000) .......................22

*Living Designs, Inc. v. E.I. Dupont De Nemours and Co.*, 431 F.3rd 353 (9th Cir. 2005) ..........................................................................................17

*Manzarel v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008)......15

*Miller v. Yokohama Corp.*, 358 F.3d 616 (9th Cir. 2004) ...........................19

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) .........25

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir.1993)....................................16

*Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co.,* 981 F.2d 429
(9th Cir.1992) .......................................................................................21

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007)...........................17

*Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001) .........................................16

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998).........................7

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ...................7

**Federal Cases (continued)**

*Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988)................24

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797
(9th Cir. 2004) ........................................................................7, 10, 14

*Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990).............................13

*United States v. Feldman,* 853 F.2d 648 (9th Cir. 1988)....................................22

*United States v. Webb*, 655 F.2d 977 (9th Cir. 1981)......................................25

*Walden v. Fiore*, 688 F.3d 558, 582–83 (9th Cir. 2012) ......................................13

**State Cases**

*Bryant v. Mattel, Inc.*, 2010 U.S. Dist. LEXIS 103851 (C.D. Cal. 2010)............20

*Bwoto v. Chevron Corp.*, 481 F. Supp. 2d 1010 (N.D. Cal. 2007).......................24

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 U.S. Dist. LEXIS 279 (W.D. Wash. 2011).................................................................................22

*Gutierrez v. Givens*, 989 F.Supp. 1033, 1038 (S.D. Cal. 1997) .............................8

*In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318 (D. Conn. 2004) ............16

*In re American Continental/Lincoln S&L Sec. Lit.*, 794 F. Supp. 1424 (D. Ariz. 1992) ..................................................................................22

*In re Wellpoint, Inc. Out–of–Network "UCR" Rates Litig.*, 865 F.Supp.2d 1002 (C.D. Cal. 2011) ..................................................................19

*Wordtech Sys., Inc. v. Programmer's Paradise, Inc.*,  No. C 97-0327, 1997 U.S. Dist. LEXIS 15902 (N.D. Cal. 1997) ......................................................8

**Federal Statutes**

18 U.S.C. §1961(4)...................................................................17

18 U.S.C. §1962(a).............................................................21, 22

18 U.S.C. §1962(b).............................................................21, 22

18 U.S.C. §1962(c).............................................................16, 22

18 U.S.C. §1962(d).............................................................21, 22

18 U.S.C. §1965(b).................................................................7

**State Statutes**

Cal. Code Civ. Proc. § 410.10 ....................................................7

*///*

*///*

iv

**<u>Federal Rules</u>**

Fed. R. Civ. P. 12(b)(2) ........................................................................6

Fed. R. Civ. P. 12(b)(6) ..................................................................15, 25

Fed. R. Civ. P. 15(a) ...........................................................................25

v

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action centers around a multi-billion dollar, sophisticated racketeering scheme orchestrated by Defendants RIPPLEWOOD HOLDINGS L.L.C., RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS LLC (collectively referred herein as "Ripplewood") and TIMOTHY C. COLLINS ("Collins"), in partnership with their cohorts Defendants AS CITADELE BANKA ("the Bank"), GUNTIS BELAVSKIS ("Belavskis"), and VAS PRIVATIZATION AGENCY ("Vas") (collectively referred to herein as the "CITADELE BANKA RICO Enterprise" or the "Enterprise") through numerous acts of wire and mail fraud.

As set forth in more details below, Ripplewood and its CEO Timothy Collins, with the assistance of their investment bankers, designed an ingenious plan to manipulate the Bank's balance sheet and overall financial condition such that Ripplewood and its consortium of investors could purchase a controlling stake in the Bank at an outrageously discounted purchase price (only 74 Million Euros) and then exit, either through an IPO or an outright sale, and make billions in profit. A cornerstone of this scam was the conspiracy to strip out the valuable real estate loans, such as those tied to Plaintiffs, so that the "fire-sale" purchase price to Ripplewood could be justified.  The other key element of the scam

required a mechanism to strip out the key assets without depriving the Bank and its stakeholders from the profits they would have realized tied to the yields on the stripped out assets.

Plaintiffs' lawsuit belongs in California where Gusevs resides and where he was targeted and sustained substantial losses at the hands of the Enterprise. The well-pled allegations in the Complaint established far more than the "minimum contacts" necessary for the Court to exercise jurisdiction over the Ripplewood Defendants. Finally, Plaintiffs have sufficiently pleaded facts demonstrating Ripplewood's direct involvement with the AS CITADELE BANKA Enterprise. Indeed, Ripplewood was the architect of the entire scheme that was the direct and proximate cause of Plaintiffs' staggering damages.

## II.    STATEMENT OF FACTS

Defendant Ripplewood, together with its co-venturers in the CITADELE BANKA RICO Enterprise, masterminded a multi-billion dollar scheme that targeted the Plaintiffs and other customers of the Bank to deprive them of their properties through wire and mail fraud in the United States. Complaint ("Compl.") ¶ 32. This modus operandi is nothing new to Ripplewood and its CEO Collins. The Ripplewood defendants have specialized in acquisitions, management buy-ins, recapitalizations, and turnarounds investments since the early 1990s.

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

Ripplewood solicits investments throughout the United States and internationally.[1] Upon information and belief, several public and private entities, including entities in California have heavily invested in Ripplewood. The scheme at issue here is also nothing new for Ripplewood's CEO Timothy Collins, who has largely developed a reputation as a corporate raider. In 1999, Collins swooped in to acquire the Long Term Credit Bank of Japan (LTCB) in 1999 for staggeringly low price of $9.5 million, even though the Japanese government infused LTCB with almost $17 billion in bail out money.

The first part of the scheme against the Plaintiffs involved the Bank inducing Gusevs, as officer or owner of the Plaintiff entities, to agree to shorten the term of the lines of credit Plaintiffs signed with then Parex Bank, from a maturity date of 2018 to 2012. *Id*. ¶32. The lines of credit extended to Plaintiffs were for the purpose of acquiring and developing real estate projects in the United States and internationally. *Id*. ¶ 16. The lines of credit were secured by real estate and other properties owned by the Plaintiffs. *Id*. ¶ 18.

Under the direction of Ripplewood and its CEO Collins, the Bank's employees and officers launched its fraudulent plan when they sent Gusevs series of emails and made approximately 40 telephone calls to Gusevs in furtherance of

---

[1] Upon information and belief, the California Public Employees' Retirement System (CalPERS) and other major institutional investors have heavily invested in Ripplewood, or its predecessors in interest and their affiliates.

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

executing the plan. These systematic contacts falsely assured Plaintiffs that a shortening of the terms of the lines of credit from 2018 to 2012 was just a "mere formality" and that as soon as the Bank was sold, the new owners, which would ultimately be the Ripplewood Defendants, would be required to extend the term of the lines of credit. *Id.* at ¶33. *See* also Declaration of Viktor Gusevs (Gusevs Decl.) at 26. All Defendants had actual knowledge that Gusevs was residing in the United States and in California. Compl. at ¶25.

The second stage of Enterprise's conspiracy to defraud Plaintiffs of their property began shortly before expiration of the lines of credit. *Id.* at ¶39. Under the direction of Ripplewood, Defendants the Bank, Belavskis, and Vas with actual knowledge that Gusevs was residing in the United States, caused Andrey Golubcovs and Uldis Glazers (corporate client manager) to send a series of email and telephone communications to Gusevs in the United States. *Id.* The Enterprise informed Gusevs that the Bank would be filing lawsuits against the Plaintiffs in arbitration court in Latvia upon expiration of the term of the lines of credit for repayment of the lines of credit, but only as a mere formality so that the Bank could write off the loans, thereby making the Bank "more appealing" to potential purchasers. *Id.* at ¶40. The Bank specifically instructed Plaintiffs not to contest any of the lawsuits brought in arbitration court against them by the Bank and

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'**
**MOTION TO DISMISS**

reassured Plaintiffs that their rights would not be prejudiced if they cooperated in this regard. *Id.* at ¶44. Judgments were rendered against all of the Plaintiffs which were final and non-appealable. *Id.* at ¶45.

Ripplewood and Collins conspired with Defendants Belavskis, the Bank, and Vas to strip the good assets off the Bank's balance sheet and manipulated its financials so that the Ripplewood could swoop in and buy the Bank at a cheap, fire-sale price, pump up its value and then later sell for a huge profit. *Id.* at ¶63. The Bank used the impending sale to Ripplewoood as part of the "story" to bamboozle Plaintiffs into shortening the maturity dates, waiving their rights, and not opposing the legal proceedings that ultimately resulted in defaults being entered. *Id.* at ¶63. Ripplewood then conspired with the principals of Vas and hthe Bank to rig the bidding process for the 75% ownership interest, such that all other prospective purchasers were removed from contention, leaving Ripplewood as the only bidder. *Id.* ¶¶ 64-66.

Ripplewood and its consortium of investors eventually purchased a 75% ownership interest in the Bank as part of the scheme to perpetrate fraud on Plaintiffs and other customers of the Bank. *Id.* Ripplewood purchased its 75% interest for 74 million euros, a ridiculous price that was widely questioned by the

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

Latvian public and the media since the Latvian government bailed out the Bank –

then Parex Bank – in 2008 to the tune of 1.6 billion euros.

Once Ripplewood and its consortium obtained the majority interest in the

Bank, they began to execute the last and most important prong of their fraudulent

scheme. That is, once Ripplewood bought its majority interest in the Bank at a

cheap, fire-sale price, Ripplewood then began pumping up the value of the Bank

to facilitate an exit, while selling the assets that had been stolen from Plaintiffs at

market price, reaping huge profits. *Id.* at ¶67. Ripplewood and the Bank have

already sold approximately 80 of Plaintiffs properties, and continue to market 30

more properties. *Id.* ¶68. Plaintiffs have been injured in the staggering amount of

at least $200 million as a result of Defendants' racketeering scheme. *Id.* ¶69.

## III.   LEGAL ARGUMENTS

### 1.   THE COURT HAS PERSONAL JURISDICTION OVER THE RIPPLEWOOD DEFENDANTS

#### A.   Legal Standard for Rule 12(b)(2) Motion to Dismiss

To defeat a motion to dismiss, "the plaintiff need only demonstrate facts

that if true would support jurisdiction over the defendant." *Dole Food Co. v.*

*Watts,* 303 F.3d 1104, 1108 (9th Cir. Cal 2002). Where, as is the case here, the

defendant's motion is based on written materials and not an evidentiary hearing,

the plaintiff "need only make a prima facie showing of jurisdictional facts.

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'**
**MOTION TO DISMISS**

*Brayton Purcell LLP v. Recordon &* Recordon, 606 F.3d 1124, 1127 (9th Cir.)  To make this prima facie showing, a plaintiff can rely on the allegations in its complaint to the extent that the moving party does not controvert those allegations. See *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "Conflicts between [the] parties over statements contained in the affidavits must be resolved in the *plaintiff's favor*." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006). California's long-arm statute authorizes personal jurisdiction to the extent permitted by the Due Process Clause of the Constitution. Cal. Code Civ. Proc. § 410.10. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Due process requires that a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**B.     Plaintiffs Can Establish Jurisdiction Over the Ripplewood Defendants Through The Nationwide Jurisdictional Provisions Found In 18 U.S.C. § 1965(b).**

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

The RICO statute provides for nationwide service of process in federal district court over defendants outside of the district, if "the ends of justice require" it. 18 U.S.C.S. § 1965(b). Such nationwide service of process allows a district court to obtain personal jurisdiction over the nonresident defendant who is served under the statute as long as that person has minimum contacts with the United States. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). "Congress intended the 'ends of justice' provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial. *Gutierrez v. Givens*, 989 F.Supp. 1033, 1038 (S.D. Cal., 1997).

Courts test these contacts under the "ends of justice" test set forth in *Butcher's Union*, 788 F.2d at 539. The test requires that two specific conditions be met: that (1) "the court have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy"; and (2) that no other district would be able to exercise personal jurisdiction over all of the conspirators. Once the "ends of justice" test has been satisfied, sufficiency of minimum contacts is determined by contacts with the United States as a whole and not contacts with the forum state. *Wordtech Sys., Inc. v. Programmer's Paradise, Inc.*, 1997 U.S. Dist. LEXIS 15902, at *5 (N.D. Cal. Oct. 8, 1997).

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

Here, the "ends of justice" test is satisfied and the Court may exercise personal jurisdiction over Ripplewood. First, the Court has personal jurisdiction over the Bank and several other named Defendants. Plaintiffs alleged that the other players of the AS CITADELE BANKA RICO Enterprise, namely the Bank and Belavskis, repeatedly directed their numerous phone calls and emails to the Plaintiffs in California. Compl. ¶ 33. Second, the Ripplewood defendants have sufficient minimum contacts with the United States, both as entities incorporated in Delaware and as entities extensively operating in the United States, through its investments and solicitation of California investors. *See* infra at 26. The Ripplewood defendants are financial firms specializing in acquisitions, buyouts, and turnarounds investments since the early 1990s. Ripplewood solicits investments throughout the United States and internationally.

Further, no other district can exercise personal jurisdiction over all of the AS CITADEL BANKA Enterprise members. Certain Defendants such as the Ripplewood Defendants are transacting businesses in New York, Delaware and in Latvia, the remaining Defendants appear to be entities formed in Latvia, and Defendants Timothy Collin's residence is currently unknown. There is no evidence that any of them has sufficient minimum contacts in the same state for the joint exercise of personal jurisdiction. Accordingly, there is no clear forum

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

other than California in light of the activities directed primarily in California and the damage caused to a citizen of California.

This case falls within the purpose of the RICO nationwide service of process provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial. Here, the court is faced with a scheme that spanned throughout the United States and internationally, but specifically directed towards a California resident. Nationwide service and personal jurisdiction are necessary to bring all of the claims and defendants together in a single trial. For all of these reasons, the court should exercise jurisdiction over Ripplewood under the RICO nationwide service provision.

> **C.    Plaintiffs Can Also Establish the Basis the Court's Exercise of Personal Jurisdiction Over the Ripplewood Defendants on Traditional Grounds**

Should this Court determine that the nationwide jurisdictional provisions found in 18 U.S.C. § 1965(b) are inapplicable, this Court may exercise personal jurisdiction over the Ripplewood Defendants under traditional jurisdictional grounds. Specific personal jurisdiction arises when, as in the present case, a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 66 U.S. 408, 414–16 (1984)

> **1.    Plaintiffs Can Establish Specific Personal Jurisdiction Over The Ripplewood Defendants**

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

The Court may exercise specific personal jurisdiction over the Ripplewood Defendants based on its contacts with the State of California. Specific jurisdiction requires certain minimum contacts and must not offend traditional notions of fair play and substantial justice. *Schwarzenegger*, 374 F.3d at 801. This "minimum contacts" test requires three things: (1) the defendant must have purposefully directed specific activities toward the state forum, (2) the plaintiff's claim must arise out of or relate to those specific forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. be reasonable. *Id.* at 802. If the plaintiff makes the first two showings, then the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Dole Food Co.*, 303 F.3d 1104, 1114 (9th Cir. 2002).

### a. The Ripplewood Defendants Purposefully Directed their Activities to the State of California

First, Plaintiffs can show that Defendants purposefully directed their activities toward Plaintiffs who were known to be domiciled in the State of California. The purposeful direction requirement has three necessary elements. To satisfy the purposeful direction requirement the defendant "must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). This is sometimes referred to as the "effects test" or "Calder test." See *Calder v. Jones*, 465 U.S. 783 (1984). The express aiming requirement is satisfied when defendant is alleged to have engaged in wrongful conduct targeted at plaintiff whom defendant knows to be a resident of the forum state. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011).

Ripplewood attaches in support of its motion to dismiss, the Declaration of Jillian Boidy, treasurer of Ripplewood Advisors LLC and the Director of RA Citadele Holdings LLC. Boidy's declaration engages in improper recitation of disputed facts of personal jurisdiction and the merits of Plaintiffs' RICO claims more appropriate for a summary judgment proceeding. Boidy self-servingly contends that the Ripplewood defendants never conducted business in California, never operated in California, and never maintained an office or employees in California. Decl. of Jillian Boidy at 3. Strikingly missing from her declaration are any discussion of whether Ripplewood ever solicited any investors in California, has any investors residing in the State of California, or if Ripplewood ever made any systematic bids for interest or investment purchase in California.

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

Plaintiffs allege sufficient facts to meet the *Calder* test in that: (1) Ripplewood defendants defrauded the Bank's investors and the Plaintiffs; (2) that their intentional acts have now caused harm and ***continue*** to cause damages to Plaintiffs who Defendants knew are residents of California. Finally, the Ripplewood and the consortium they control are ***still*** actively engaging in the sham foreclosure sales of Plaintiffs' remaining properties.

### b. Plaintiffs claims arose out of Ripplewood Defendants Specific California-related activities

Plaintiffs can also demonstrate that their claims arose out of, or were related to, the Ripplewood Defendants' California-related activities. The Ninth Circuit employs a "but for" test to determine whether claims arise out of the defendant's contacts in the forum. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The question is ***not*** whether all of the claims arise out of Defendants' California-related activities; rather, the question is: "but for Defendants' contacts with the United States and California, would Plaintiffs' claims against the Defendants have arisen?" *Id.* In adopting the "but for" test, the Ninth Circuit also noted that "[a] restrictive reading of the 'arising out of' requirement is not necessary in order to protect potential defendants from unreasonable assertions of jurisdiction." *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990).

In this case, taking the Plaintiffs' allegations as true, Ripplewood executed its fraudulent scheme directing the Bank in its fraudulent communication, through numerous emails and telephone calls, to achieve the goal of stripping out the good assets of the bank and artificially deflating the purchase price of the Bank to the laughable 72 Million Euro level. Plaintiffs adequately alleged that Ripplewood committed an intentional act that was expressly aimed at California, causing harm that Ripplewood knew was likely to be suffered in California. Compl. at ¶31.

### c.   Exercise of Court's jurisdiction over the Ripplewood Defendants in California is Reasonable

Finally, this Court may exercise specific personal jurisdiction over the Ripplewood Defendants because doing so comports with the notions of fair play and substantial justice. In evaluating whether the assertion of personal jurisdiction would comport with fair play and substantial justice, courts may consider: (a) the extent of the defendants' purposeful interjection into the forum state's affairs; (b) the burden on the defendant of defending in the forum; (c) the extent of conflict with the sovereignty of the defendant's state; (d) the forum state's interest in adjudicating the dispute; (e) the most efficient judicial resolution of the controversy; (f) the importance of the forum to plaintiff's interest in convenient and effective relief; and, (g) the existence of an alternative forum. *Walden v. Fiore*, 688 F.3d 558, 582–83 (9th Cir. 2012). The burden is on defendant to make

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

a compelling case as to why jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802.

The Ripplewood Defendants argue that the distance from the forum court renders it unreasonable for that court to exercise jurisdiction over a matter. The Ripplewood Defendants cannot hide behind the "inconvenience" excuse. This is especially true given that the Ripplewood Defendants are ***still*** directing the process of, and benefiting from, the marketing and sale of Plaintiffs' remaining properties. The *Walden* factors are also satisfied in that (a) Ripplewood, one of the biggest private equity firms in the world with a massive presence in the United States, fails to show how, in the era of electronic filings and communications a California forum would be unreasonable; and (b) it is in California's interest to protect its citizens from torts committed by out-of-state Defendants and it is in California's interest to provide its citizens with a convenient forum to assert their claims. Accordingly, this Court may exercise specific personal jurisdiction over the Ripplewood Defendants.

### 2. PLAINTIFFS HAVE ADEQUATELY PLEAD THEIR CAUSES OF ACTION AGAINST THE RIPPLEWOOD DEFENDANTS UNDER THE FEDERAL RICO STATUTE

#### A. Legal Standard for Rule 12(b)(6) Motion to Dismiss in a RICO Action

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should only be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Twombly*, at 555. On a 12(b)(6) motion, material allegations are accepted as true and construed in light most favorable to plaintiff. *Manzarel v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). *See Twombly*, 550 U.S. 544, 554 (2007) (Rule 8 requires "fair notice of what the claim is and the grounds upon which it rests.").

Fraud claims are subject to Rule 9(b), but "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Ibid. See also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993) (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge). Courts have similarly recognized that requiring specific citation to each instance of fraudulent conduct is

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

impractical where the violative conduct is repeated frequently over a lengthy period of time. *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004).

> **B.    Plaintiffs Have Sufficiently Alleged the Ripplewood Defendants' RICO Violations under 18 U.S.C. § 1962 (c)**

"To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'" *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001).

> **1.    Plaintiffs Sufficiently Allege a RICO *Enterprise* under 18 U.S.C. § 1962 (c)**

A RICO claim also requires a plaintiff to plead the existence of an "enterprise" within the meaning of 18 U.S.C. § 1961(4). An enterprise may be a legal entity, or it may be an association-in-fact. 18 U.S.C. § 1961(4). Prior to the Supreme Court's decision in *Boyle v. United States*, 556 U.S. 938 (2009), many circuits held that a RICO plaintiff who relied on an association-in-fact enterprise was required to plead an enterprise that had an "separate" or "ascertainable" structure distinct from the pattern of racketeering activity. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 550 (9th Cir. 2007).

In *Boyle*, the Supreme Court resolved the split and clarified that an association-in-fact enterprise possesses three characteristics: (1) a purpose, (2)

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

relationships among those associated with the enterprise, and (3) longevity

sufficient to permit these associates to pursue the enterprise's purpose. The

Supreme Court further explained:

> Such a group need not have a hierarchical structure or a chain of
> command; decisions may be made on an ad hoc basis and by any
> number of methods-by majority vote, consensus, a show of strength,
> etc. Members of the group need not have fixed roles; different
> members may perform different roles at different times . . .

The *Boyle* Court eventually held that no more is required than a common

purpose, relationships between the members, and sufficient longevity to carry out

the purpose of the enterprise. *Id.* at 939. *See also Living Designs, Inc. v. E.I.*

*DuPont De Nemours and Co.*, 431 F.3rd 353, 362 (9th Cir. 2005) ("if a complaint

alleges that a corporation engages in a pattern of racketeering activity through

legal entities beyond its control, such as independent banks, accounting firms,

public relation firms, the person/ enterprise distinction will more than likely be

satisfied.).

Here, Plaintiffs have sufficiently pled facts that taken as true support the

existence of a RICO enterprise, as defined in *Boyle*. For example, the Complaint

alleges that the AS CITADELE BANKA RICO Enterprise was supported by

Ripplewood for the common purpose of coercing Plaintiffs into shortening the

maturity deadlines on the lines of credit, suffering defaults in the arbitration

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'**
**MOTION TO DISMISS**

proceedings, being deprived of continued funding, being subjected to orchestrated foreclosures of multiple properties, and losing multiple properties sold at sham auction prices to affiliates of the Bank. Compl. ¶ 78. All of these activities were perpetrated for the express purpose of stripping the good assets off the Bank's balance sheet and otherwise manipulating its financials so that the Ripplewood could swoop in and buy the Bank at a cheap, fire-sale price, pump up its value and then later sell for a huge profit.

Plaintiffs have sufficiently alleged that the Ripplewood Defendants conducted the affairs of the enterprise, as "opposed to their own affairs." Further, when an enterprise enables a defendant to engage in conduct "in a way that would be [otherwise] impossible" if the defendant were acting alone, a plaintiff has adequately alleged facts that an enterprise's affairs are distinct from that of a defendant. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). Plaintiffs have clearly alleged the plan would not have worked without the Ripplewood Defendants' indispensable guidance, financial expertise, and participation.

## 2. Plaintiffs Have Plead a Pattern of Racketeering Activity and the Predicate Acts with Particularity

"Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant." *In re Wellpoint, Inc. Out–of–Network "UCR" Rates Litig.*, 865 F.Supp.2d 1002, 1035 (C.D. Cal., 2011). A

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

RICO plaintiff is not required to allege "every act of mail or wire fraud . . . with the 'particularity' required by Fed. R. Civ.P. 9(b). *Schumack v. United States*, 489 U.S, 705, 714 (1989)). "This is because the scheme, not the communications in furtherance of the scheme, must be fraudulent." *Id.* A plaintiff adequately alleges the predicate acts of wire and mail fraud by alleging" "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails [or wires] or caused a use of the United States mails [or wires] in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Miller v. Yokohama Corp.*, 358 F.3d 616, 620 (9th Cir. 2004). In this instance, Plaintiffs clearly alleged that Ripplewood engaged in multiple predicate acts of wire fraud and mail fraud within the United States from 2010 to present.

The Ripplewood defendants also argue that Plaintiffs' RICO claims fail to satisfy the elements of common law fraud and misrepresentation. Defendants' Motion at 5-6. This is not the correct standard. *See e.g. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 476, (2006) ("Because an individual can commit an indicatable act of mail or wire fraud even if no one relies on his fraud, he can engage in a pattern of racketeering activity in violation of §1962 without proof of reliance."). *See also Bryant v. Mattel, Inc.*, 2010 U.S. Dist. LEXIS 103851 *48 (C.D. Cal. Aug 2, 2010) ("A civil RICO plaintiff may sue co-conspirators who

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

might not themselves have violated one of the substantive provisions of §1962 . . . a conspirator can be held vicariously liable for the underlying torts committed by his co-conspirators.").

Plaintiffs thoroughly allege the identity of those responsible for each predicate act, and that these acts, and the underlying fraudulent scheme, were not only perpetrated with Ripplewood Defendants' consent, involvement, and agreement but also, at their direction. After all, the scheme alleged in the complaint culminates in an exit strategy tied to the sale of the Bank at later date for a huge profit, similar to what Ripplewood did in the case of the 1999 acquisition of Long Term Credit Bank in Japan. Thus at this early stage, and with no discovery, the Complaint clearly satisfies the applicable pleading standard.

### C.   Plaintiffs have Sufficiently Pleaded a Prima Facie Case against the Ripplewood Defendants under 18 U.S.C. § 1962(a), (b), and (d) With Particularity

A "plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co.*, 981 F.2d 429, 437 (9th Cir.1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supple Corp.*, 547 U.S. 451. 461, 126 S. Ct. 1991, 1998 (2006).

PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS

Here, Plaintiffs' alleged that Ripplewood and its CEO Timothy Collins received income from racketeering activities by engineering an ingenious plan to manipulate the Bank's balance sheet and overall financial condition such that Ripplewood could purchase the Bank at an outrageously discounted purchase price. Compl. at ¶ 62-68. This scheme resulted in massive fraudulent auction of Plaintiffs' properties and substantial windfall profits for the Bank and its investors while, at the same time allowed Ripplewood to acquire the Bank at an artificially reduced price without the need for a legitimate bidding process. *Id.*

Plaintiffs have also alleged that they sustained an injury to their business or property "by reason of" defendants' violation of the RICO statute, 18 U.S.C. § 1962 (a)-(d). Here, Plaintiffs already lost 80 properties lost, with the sale of 30 additional properties pending at the hands of the AS CITADEL BANKA Enterprise. Plaintiffs have lost a staggering $200 million in properties and are now on the verge of bankruptcy.

Finally, RICO *conspiracy* claims are analyzed under the more liberal Rule 8(a) standard. *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 U.S. Dist. LEXIS 279, *25 (W.D. Wash. Jan 3, 2011). A defendant need not personally commit a RICO violation to be liable for the conspiracy. *Howard v. America Online, Inc.*, 208 F. 3rd 741, 751 (9th Cir. 2000). Instead, the defendant need only be "aware of

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

the nature and scope of the enterprise and intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). Ripplewood's violations of Sections 1962(a) and (c) and their agreement with the co-conspirators to perpetrate sham auctions of properties resulting in outrageous profits for the Bank and Ripplewood Defendants constitute a RICO conspiracy in violation of section 1962(d).

### D.   RICO "Continuity" Applies to the Pattern Requirement Not the Acts of Each Individual Defendant

"[C]ontinuity does not require that each member of the enterprise participate in it from beginning to end." *United States v. Feldman,* 853 F.2d 648, 659 (9th Cir. 1988); *See also*, *In re American Continental/Lincoln S&L Sec. Lit.*, 794 F. Supp. 1424, 1464 (D. Ariz. 1992) (rejecting argument by defendants that they did not altogether 'conduct' the enterprise: "the court rejects this argument … participation in the conduct of an enterprise's affairs is enough").

The Ripplewood defendants painstakingly explain that the "Ripplewood parties did not acquire an interest in the Latvian Bank until late 2014, after all the RICO predicate acts identified in the Complaint had already occurred," and thus cannot be in violation of the RICO Act. Defendants' Motion at p. 1. Yet, Ripplewood failed to provide a single case to support the proposition that the RICO "continuity" element necessary to show an open-ended "pattern of racketing" by an "enterprise" applies to the acts of each individual defendant. This

is not surprising given the fact that the **cases hold that the continuity test applies to the pattern** requirement – not separately to individual defendants – and that defendants do not need to have conducted all of the enterprise or all of the racketeering. Moreover, the date of the actual acquisition by Ripplewood is not at all dispositive; Ripplewood's financial engineering role began long before the acquisition closed in that Ripplewood had to assure that the rigged bidding process and artificially deflated purchase price could be actualized before going down the path of acquisition. Thus, Plaintiffs meet the continuity tests against the Ripplewood Defendants.

> **E.    The Ripplewood Defendants' Conduct Primarily Occurred within the United States.**

The Ripplewood Defendants contend that Plaintiff's allegations only pertain to conduct occurring outside the United States. This is a blatant misrepresentation. The Complaint includes allegations of pervasive, intentional misconduct directed at and occurring in the United States and California. To satisfy the "conduct" test, defendants' conduct must involve the use of instrumentalities of interstate commence in the United States. *Bwoto v. Chevron Corp.*, 481 F. Supp. 2d 1010, 1015 (N.D. Cal 2007). Alternatively, the plaintiff states a RICO claim if "the effect on the commerce of the United States of engaging in fraud was palpable." *Republic of the Philippines v. Marcos*, 862 F.2d

**PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS**

1355, 1358 (9th Cir. 1988).

Plaintiffs alleged Ripplewood's systematic transactions in the United States. In fact, by their own declaration through Jillian Body, the Ripplewood defendants admit pervasive domestic contacts, business, and transaction in the United States. In her own declaration, Jillian Boidy states that Ripplewood Defendants heavily transacted in New York, were 'headquarted in New York', that two personnel of Ripplewood Advisors live and work in the United States, one in New York and one in Florida, and that the records relevant to the allegations in the Complaint are located in New York. Decl. of Jillian Body at 12-16.

Finally, Ripplewood Defendants' most recent Notice of Interested Parties Dkt. 34, reveals extensive insurance coverage in the United States, tell-tale signs of massive business presence in the United States. The Notice of Interested Parties sets forth Zurich American Insurance Co., American International Group, Inc. and Hiscox Ltd, purportedly Ripplewood Defendant's insurance carriers, but possibly also members, owners, and/or investors of Ripplewood.

## IV.   PLAINTIFFS ALTERNATIVELY REQUEST LEAVE TO AMEND THE COMPLAINT

Should the court grant a motion to dismiss under Rule 12(b)(6), it should further allow the plaintiff an opportunity to amend its complaint to cure any established defects. Generally, leave to amend a pleading "shall be freely given

PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS'
MOTION TO DISMISS

when justice so requires." Fed. R. Civ. P. 15(a). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Leave to amend lies within the sound discretion of the trial court, which "must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

## V.    CONCLUSION

The Ripplewood Defendants have not presented any meritorious basis for dismissal of the Complaint. This Court has personal jurisdiction over the Ripplewood Defendants and the Complaint sufficiently pleads all claims asserted against them. To the extent the Court finds any deficiencies in the claims against the Defendants in any respect, Plaintiffs request leave to amend and cure any such deficiencies. In addition, to the extent the Court believes any question remains as to personal jurisdiction over the Ripplewood Defendants, Plaintiffs request leave to conduct discovery on the issue so it may supplement the record.


Dated: August 22, 2016              LITVAK LAW GROUP, PC
                                    By:    */s/ Uri Litvak*_____
                                           Uri Litvak, Esq.
                                           Plaintiff Viktors Gusevs, *et. al.*

26

## **PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 2424 S.E. Bristol St. Suite 300, Newport Beach, CA  92660-0764. On August 22, 2016, I served the within document(s):

### **PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS' MOTION TO DISMISS (DKT.31)**

☒        BY MAIL – I caused such envelope(s) to be deposited in the mail at Newport Beach, California, with first class postage thereon fully prepaid. I am readily familiar with the business practice for collection and processing of correspondence for mailing. Under that practice, it is deposited with the United States Postal Service on that same day, at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one (1) day after the date of deposit for mailing in affidavit.

| | |
|---|---|
| MUNGER, TOLLES & OLSON LLP<br>Michael R. Doyen, Esq.<br>Jeffrey Y. Wu, Esq.<br>Matthew K. Donohue, Esq.<br>355 South Grand Avenue, 35th floor<br>Los Angeles, CA  90071 | *Attorneys for Defendants*<br>Ripplewood Advisors LLC and<br>RA Citadele Holdings, LLC |
| BUCKLEY SANDLER LLP<br>Ali M. Abugheida, Esq.<br>100 Wilshire Blvd., Suite 1000<br>Santa Monica, CA  90401 | *Attorneys for Defendants*<br>AS Citadele Banka and<br>Guntis Belavskis |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on August 22, 2016, at Newport Beach, California.

_Sylvia B. Iwai_
Sylvia B. Iwai

- 27 -