Uri Litvak, Esq. (State Bar No. 277966)
Airene Williamson (State Bar No. 277101)
**Litvak Law Group, P. C.**
2424 S.E. Bristol St., Suite 300
Newport Beach, CA 92660
T. 949-477-4900
F. 949-335-7113
*Attorneys for the Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

VIKTORS GUSEVS, an individual; VG BEHEER LATVIA, LLC, a foreign limited liability company; VG BEHEER LATVIA SIA, a foreign corporation; VG BEHEER JURMALA LLC, a foreign limited liability company; VG BEHEER RIGA, LLC, a foreign limited liability company; BOTANIX, LLC, a foreign limited liability company; DEMENKOVA UN PARTNERI, a foreign partnership; LEGO TRANS, LLC, a foreign limited liability company; ANDRENU PARKS, LLC, a foreign limited liability company; GREENFIELD ENGURES SIA, a foreign corporation; and JEVGENIJS GUSEVS, a foreign individual,

Plaintiffs,

vs.

AS CITADELE BANKA, a foreign corporation; GUNTIS BELAVSKIS, a foreign individual; VAS PRIVATIZATION AGENCY, a foreign corporation; RIPPLEWOOD HOLDINGS L.L.C., a Delaware limited liability company; RIPPLEWOOD ADVISORS LLC, a Delaware limited liability company; RA CITADELE HOLDINGS LLC, a Delaware limited liability company; and TIMOTHY C. COLLINS, an individual,

Defendants.

Case No: 2:16-cv-03793-FFM

**DECLARATION OF VIKTOR GUSEVS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO RIPPLEWOOD DEFENDANTS' MOTION TO DISMISS (DKT. 31)**

Judge: Hon. Stephen V. Wilson
Hearing Date: September 12, 2016
Time: 1:30 p.m.
Courtroom: 6

I, VIKTOR GUSEVS, declare and state as follows:

1. I am more than eighteen (18) years of age and I am a Plaintiff in this action. I have personal knowledge of the facts set forth herein and, if called to testify, I could and would competently do so under oath.
2. I make this Affidavit in support of Plaintiffs' Opposition to Ripplewood Advisors LLC, RA Citadele Holdings LLC, and Ripplewood Holdings LLC ("Ripplewood Defendants") Motion to Dismiss, Dkt. 31 and Dkt. 31-1.
3. I also make this Affidavit in support of the assertion of personal jurisdiction over the Ripplewood Defendants.
4. I currently reside in the State of California pursuant to an EB-5 visa and I am engaged in real estate investment and development throughout the United States, as well as in Latvia and internationally.
5. I am the chief executive officer of each of the Plaintiff entities and the member of Plaintiffs VG BEHEER LATVIA, LLC; VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; LEGO TRANS, LLC; and ANDRENU PARKS, LLC; the shareholder of Plaintiffs VG BEHEER LATVIA SIA and GREENFIELD ENGURES SIA; and a partner in DEMENKOVA UN PARTNERI.
6. Defendants RIPPLEWOOD HOLDINGS L.L.C.,; RIPPLEWOOD ADVISORS LLC, a; RA CITADELE HOLDINGS LLC (collectively referred herein as "Ripplewood") and CEO Timothy Collins –together with its partners in the CITADELE BANKA RICO Enterprise – masterminded a devastating scam against me, the Plaintiff entities, and other customers of the Bank to deprive us of our properties through wire and mail fraud in the United States. *See also* Complaint ("Compl.") at ¶ 32.
7. This scheme is nothing new to Ripplewood and its CEO Timothy Collins. The Ripplewood defendants are financial firms specializing in acquisitions, buyouts, management buy-ins, recapitalizations, and turnarounds investments since the early 1990s. Ripplewood solicits investments throughout the United States and internationally. Upon information and belief, several public and private entities, including entities in California have heavily invested in Ripplewood.
8. I also later learned that this modus operandi was also nothing new for Ripplewood's CEO Timothy Collins who has largely developed a reputation as a corporate pirate. In 1999, Collins swooped in to acquire the Long Term Credit Bank of Japan (LTCB)in 1999 for staggeringly low price of $9.5 million, even though the Japanese government infused LTCB with almost $17 billion in bail out money.
9. In November, 2003, Plaintiff VG BEHEER LATVIA SIA signed a line of credit agreement with Parex Bank, then a privately owned bank headquartered in Latvia. The agreement committed Parex Bank, through January, 2018, to make a

line of credit available to Plaintiff VG BEHEER LATVIA SIA for the purpose of acquiring and developing real estate projects in the United States and internationally. *Id.* at ¶16.

10. In 2006, at the request of Parex Bank, Plaintiff VG BEHEER LATVIA SIA and I, caused Plaintiffs VG BEHEER JURMALA LLC, VG BEHEER RIGA LLC, and BOTANIX LLC to be formed and the line of credit of Parex Bank to Plaintiff VG BEHEER LATVIA SIA was divided among those newly formed entities, each of which entities I was and is the chief executive officer and owner. *Id.* at ¶17.

11. The lines of credit were secured by real estate and other property in Latvia owned by the Plaintiffs. *Id.* at ¶18.

12. From 2003 through 2008, the lines of credit were drawn upon and used to fund our real estate investment and development projects in the United States and internationally. The highest outstanding aggregate balance of the lines of credit was €28 Million and the average balance was €15 Million. *Id.* at ¶19.

13. In November, 2008, following the collapse of Lehman Brothers and the ensuing global financial crisis, the government of Latvia seized Parex Bank by "purchasing" a majority 51% stake from the founders for token consideration of 2 Latvian Lats (approximately €5.00). *Id.* at ¶20.

14. The government of Latvia then purchased the remaining stake of Parex Bank from other shareholders for equally token consideration of €0.01/share. *Id.* at ¶21.

15. Approximately 25% of the ownership interests of the government of Latvia in Parex Bank were subsequently acquired by the European Bank for Reconstruction and Development. *Id.* at ¶22.

16. The remaining 75% ownership interests of the government of Latvia in Parex Bank were subsequently transferred to Defendant VAS PRIVATIZATION AGENCY. *Id.* at ¶23.

17. At the time of the government takeover of Parex Bank in November, 2008, we kept surplus funds of approximately €3 Million on deposit at Parex Bank. At the time, our real estate projects in the United States were valued at approximately $45 million. *Id.* at ¶24.

18. From November, 2008 through 2009, Parex Bank refused to honor our payment instructions to make payments our accounts at Parex to Washington Mutual Bank and others in the United States with respect to our obligations relating to the real estate projects in the United States. Parex Bank's refusal undermined our ability to service their debt and thereby caused damage to VG BEHEER LATVIA LLC and the other Plaintiffs in the United States. *Id.* at ¶25.

19. In early 2010, the "good" assets of Parex Bank, were transferred to a newly formed entity, Defendant AS CITADELE BANKA (then known as SC CITADELE BANKA). These new assets included our lines of credit and accounts. *Id.* at ¶26.

20. The "bad" assets remained with Parex Bank, which later became known as Reverta. *Id.* at ¶27.

21. Defendant VAS PRIVATIZATION AGENCY owned 75% of the shares of the newly formed AS CITADELE BANKA and the remaining 25% of the shares were owned by the European Bank for Reconstruction and Development. *Id.* at ¶28.

### *A. The Role of Defendants in the Racketeering Scheme*

22. At the time of the formation of Defendant AS CITADELE BANKA, then Latvian Finance Minister Einars Repse and then Latvian Economy Minister Artis Kampars signed a confidential agreement with the European Commission requiring that Defendant AS CITADELE BANKA be sold or liquidated by the end of 2014 or Latvia would face serious financial sanctions from the European Commission and its members. *Id.* at ¶30.
23. Shortly thereafter, the Bank's Chairman GUNTIS BELAVSKIS, who at the time was a Member of the Supervisory Board of AS CITADELE BANKA, and VAS PRIVATIZATION AGENCY, hatched a fraud and racketeering conspiracy to enable AS CITADELE BANKA to reduce the apparent book value of AS CITADELE BANKA thereby increasing the likelihood that it could be sold or liquidated to a hand-picked buyer, while at the same time generating profits for the Bank, its investors, and its principals as part of the corrupt conspiracy further described herein. *Id.*
24. Defendants GUNTIS BELAVSKIS, AS CITADELE BANKA, and VAS PRIVATIZATION AGENCY conspired with defendants RIPPLEWOOD Defendants and TIMOTHY C. COLLINS to fraudulently manipulate the Bank's balance sheet and overall financial condition such that the severely discounted purchase price at which RIPPLEWOOD would ultimately purchase a majority interest in the Bank could be justified. *Id.* at ¶31.
25. Defendant AS CITADELE BANKA and its officers (including Chairman of the board of bank GUNTIS BELAVSKIS) and Ripplewood knew full well that I was residing in the United States and in the State of California. *Id.* at ¶33.
26. The first part of the scheme against the Plaintiffs involved the Bank inducing me, as officer or owner of the Plaintiff entities, to agree to shorten the term of the lines of credit Plaintiffs signed with then Parex Bank, from maturity date of 2018 to 2012. *Id*. ¶32.
27. When our lines of credit were transferred to AS CITADELE BANKA, at the behest of Defendant Irina Ponomarjova (manager), Zigurds Cirulis (department head), and Kristaps Putans (deputy chief corporate banking) sent me a barrage of emails and I also received 40 telephone calls at my California residence fraudulently telling me that a shortening of the term of the lines of credit from 2018 to 2012 was just a formality and that as soon as AS CITADELE BANKA was sold (which I was told, would happen before the end of the shortened term of

    the lines of credit) the new owners would be required to extend the term of the lines of credit. *Id.* at ¶35.

28. The second stage of CITADELE BANKA RICO Enterprise' conspiracy to defraud us of our property began shortly before expiration of the lines of credit. *Id.* at ¶39. Under the direction of the Ripplewood Defendants, Defendants AS CITADELE BANKA, GUNTIS BELAVSKIS, and VAS PRIVATIZATION AGENCY, with actual knowledge that VIKTORS GUSEVS was residing in the United States, caused Andrey Golubcovs and Uldis Glazers (corporate client manager) to send a series of email and telephone communications to me in the United States. *Id.* They informed me that AS CITADELE BANKA would be filing lawsuits against me and the Plaintiff entities in arbitration court in Latvia upon expiration of the term of the lines of credit for repayment of the lines of credit, but only so that the Bank could write off the loans, thereby making the Bank more appealing to potential purchasers. *Id.* at ¶40. The Bank specifically instructed me and the Plaintiff entities not to contest any of the lawsuits brought in arbitration court against them by AS CITADELE BANKA. *Id.* at ¶44.

29. Judgments were rendered against me and all Plaintiff entities which were final and non-appealable. *Id.* at ¶45.

30. I later learned that Ripplewood and Timothy Collins conspired with Defendants GUNTIS BELAVSKIS, AS CITADELE BANKA, and VAS PRIVITIZATION AGENECY to strip the good assets off the Bank's balance sheet and manipulated its financials so that the Ripplewood Defendants could swoop in and buy the Bank at a cheap, fire-sale price, pump up its value and then later sell for a huge profit. *Id.* at ¶63.

31. The Bank used the impending sale to Ripplewoood as part of the "story" to bamboozle me into shortening the maturity dates, waiving my rights, and not opposing the legal proceedings that ultimately resulted in defaults being entered. *Id.* at ¶63.

32. Long before 2014, Ripplewood had conspired with the principals of Defendant VAS PRIVATIZATION AGENCY and AS CITADELE BANKA to rig the bidding process for the 75% ownership interest, such that all other prospective purchasers were removed from contention, leaving Ripplewood as the only bidder. *Id.* ¶¶ 64-66.

33. Ripplewood eventually purchased a 75% ownership interest in the Bank as part of the scheme to perpetrate fraud on Plaintiffs and other customers of the Bank. *Id.* Ripplewood and its consortium of investors purchased its 75% interest in the Bank for 74 million euros, a ridiculous price that was widely questioned by the Latvian public and the media since the Latvian government bailed out the Bank – then Parex Bank – in 2008 to the tune of 1.6 billion euros.

34. Once Ripplewood and its consortium obtained the majority interest in the Bank, they began to execute the last and most important prong of their fraudulent scheme. That is, once Ripplewood bought its majority interest in the Bank at a

cheap, fire-sale price, Ripplewood then began pumping up the value of the Bank to facilitate an exit, while selling the assets that had been stolen from me at market price, reaping huge profits. *Id.* at ¶67. To add insult to injury, Ripplewood and the Bank have already sold approximately 80 of our properties, and still continue to sell 30 of our properties. *Id.* ¶68. My entities and I have been injured in the staggering amount of at least $200 million as a result of Defendants' racketeering scheme. *Id.* ¶69. We are now on the verge of bankruptcy. *Id.*

35. I also learned that Ripplewood and Collins celebrated the consummation of the deal with the principals of VAS PRIVATIZATION AGENCY and AS CITADELE BANKA even before the transaction had officially closed.

36. Ultimately, the purchase transaction closed and Ripplewood and its consortium of investors became the owner of 75% plus one share of the Bank. The other shareholder of the Bank was the European Bank for Reconstruction and Development, which still owns 25 percent minus one share of the Bank.

***B. Ripplewood's Systematic Contacts with the United States and California***

37. The Ripplewood defendants are financial firms specializing in acquisitions, buyouts, management buy-ins, recapitalizations, and turnarounds investments since the early 1990s. Ripplewood solicits investments throughout the United States and internationally. Upon information and belief, several public and private entities, including entities in California have heavily invested in Ripplewood.

38. Ripplewood executed its fraudulent scheme by masterminding and heading the Bank in its fraudulent communication, through numerous emails and telephone calls spanning from 2010 to 2014, for the purpose of defrauding me and the Plaintiff entities. Ripplewood committed an intentional act that was expressly aimed at California, causing harm that Ripplewood knew was likely to be suffered by me and the Plaintiff entities in California. *Id.* at ¶31.

39. Discussions between the Bank and Ripplewood regarding the sham auctions also occurred through numerous emails and telephone calls. Such communications by Ripplewood and Collins initiated in the United States. *Id.* at ¶66.

40. The Ripplewood Defendants and TIMOTHY C. COLLINS, now a Chairman of the Supervisory Board of AS CITADELE BANKA, also continue to auction my unlawfully obtained properties to generate further outrageous profits for themselves and their investors.

41. This sophisticated fraudulent scheme of the Defendants has damaged me and the Plaintiff entities in an amount in excess of $200 Million, and as a result of Defendants' actions, we are now on the verge of bankruptcy. *Id.* at ¶69.

42. Ripplewood, one of the biggest private equity firms in the world with a massive presence in the United States, fails to show how, in the era of electronic communications and court call appearances, a California forum would be unreasonable; it is in California's interest to protect its citizens like me, from torts committed by out-of-state Defendants; and it is in California's interest to provide

its citizens, like ,e with a convenient forum to assert their claims, especially when Defendants reside in various locations.

43. I respectfully request that the court exercise jurisdiction over the Ripplewood Defendants and deny its Motion to Dismiss.

Executed on this 22nd day of August, 2016 in the city of RIGA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

VIKTORS GUSEVS