Uri Litvak, Esq. (State Bar No. 277966)
Airene Williamson, Esq. (State Bar No. 277101)
Litvak Law Group, P. C.
2424 S.E. Bristol St., Suite 300
Newport Beach, CA 92660
T.  949-477-4900
F.  949-335-7113
*Attorneys for the Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

VIKTORS GUSEVS, an individual; VG BEHEER LATVIA, LLC, a foreign limited liability company; VG BEHEER LATVIA SIA, a foreign corporation; VG BEHEER JURMALA LLC, a foreign limited liability company; VG BEHEER RIGA, LLC, a foreign limited liability company; BOTANIX, LLC, a foreign limited liability company; DEMENKOVA UN PARTNERI, a foreign partnership; LEGO TRANS, LLC, a foreign limited liability company; ANDRENU PARKS, LLC, a foreign limited liability company; GREENFIELD ENGURES SIA, a foreign corporation; and JEVGENIJS GUSEVS, a foreign individual,

Plaintiffs,

vs.

AS CITADELE BANKA, a foreign corporation; GUNTIS BELAVSKIS, a foreign individual; VAS PRIVATIZATION AGENCY, a foreign

Case No: 2:16-cv-03793-SVW-AS

**FIRST AMENDED COMPLAINT FOR:**

**(a) VIOLATIONS OF 18 U.S.C. §1962 (a), (b) (c), (d) UNDER RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS PROVISIONS OF THE ORGANIZED CRIME CONTROL ACT OF 1970 ("RICO");
(b) INTENTIONAL MISREPRESENTATION; and
(c) FRAUD BY FALSE PROMISES**

**JURY TRIAL DEMANDED**

- 1 –

FIRST AMENDED COMPLAINT

corporation; RIPPLEWOOD )
ADVISORS LLC, a Delaware limited )
liability company; RA CITADELE )
HOLDINGS LLC, a Delaware limited )
liability company; and TIMOTHY C. )
COLLINS, an individual, DOES 1 )
through 10, all inclusive. )
)
              Defendants. )
)

FIRST AMENDED COMPLAINT

1

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................4

II.   VENUE ............................................................................4

III.  THE PARTIES .................................................................5
      A. Plaintiffs ...................................................................5
      B. RICO Defendants ........................................................6

IV.   PERSONAL JURISDICTION AND DOMESTIC INJURY
      UNDER *NABISCO* ...........................................................9

V.    FACTS IN SUPPORT OF ALTER EGO ALLEGATIONS..................14

VI.   FACTUAL BACKGROUND COMMON TO ALL COUNTS..............16
      A. Introduction .............................................................16
      B. General Timeline of Events..........................................19
      C. Role of Defendants in the Racketeering Scheme ................21

VII.  CLAIMS FOR RELIEF ......................................................32
      A. Count I – Federal RICO Violations 18 U.S.C. §§ 1962 (a), (b), (c),
         and (d) ...................................................................32
         1. Federal RICO Statute. ..............................................33
         2. Plaintiffs Have Standing to Sue Count I Defendants under RICO ..34
         3. Count I Defendants' Conspired to Form and Conduct an
            Unlawful Enterprise That Targeted Plaintiffs...................34
         4. Count I Defendants' Enterprise Conducted Unlawful Activities
            Which Affected Interstate and Foreign Commerce ............35
         5. Count I Defendants' Pattern of Racketeering Activity ........35
         6. Count I Defendants' Use of Wires to Perpetrate a Scheme to
            Defraud with an Intent to Defraud ..............................36
         7. Domestic Injury to Plaintiffs' Business and Property............36

      B. Count II – Intentional Misrepresentation ..........................37
      C. Count III – Fraud by False Promises.................................39
      D. Prayer for Relief .......................................................40

VIII. JURY TRIAL DEMAND .....................................................41

FIRST AMENDED COMPLAINT

Plaintiffs VIKTORS GUSEVS; VG BEHEER LATVIA, LLC; VG BEHEER LATVIA SIA; VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; DEMENKOVA UN PARTNERI; LEGO TRANS, LLC; ANDRENU PARKS, LLC; GREENFIELD ENGURES SIA; and JEVGENIJS (YEVGENIY) GUSEVS (collectively, "Plaintiffs") for their Complaint against Defendants AS CITADELE BANKA; GUNTIS BELAVSKIS; RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS LLC, TIMOTHY C. COLLINS, and DOES 1 through 10, all inclusive (collectively, "RICO Defendants" or "RICO Enterprise") allege as follows:

## I.    INTRODUCTION

1.    This Complaint involves allegations of fraud, a continuing pattern of racketeering activities, and conspiracy to commit racketeering activities by Defendants and their predecessors in interest and alter egos through such means as wire fraud and mail fraud directed into and transmitted from the United States, for the purpose of looting the assets of the Plaintiffs, all of which has caused devastating injury to Plaintiffs' businesses and properties in the State of California.

## II.    VENUE

2.    This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. §1964 and 28 U.S.C. §§1331 and 1332.

3.    Venue is proper in this judicial district pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391 because the Defendants have engaged in purposeful,

FIRST AMENDED COMPLAINT

continuous, and systematic contact with the State of California and have caused injury to Plaintiffs' business and property in the State of California.

4.    Venue is also proper in this judicial district pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391 because the Defendants or their agents have made claim-specific contacts with, and have committed acts that have caused significant damage to Plaintiffs' businesses and properties in the State of California, namely 21650 Pacific Coast Highway, Malibu, California 90265 and 3211 Colony View Circle, Malibu, California 90265 as described herein, and have purposefully availed themselves of the benefits and protections of California law by entering into business transactions with Plaintiffs in the State of California.

### III.    PARTIES

### A.    PLAINTIFFS

5.    Plaintiff VIKTORS GUSEVS (a) is an individual and a resident of the State of California and has been a resident of California since 2004; (b) has at all material times been engaged in real estate investment and development throughout California (as well as in Latvia and internationally); (c) is the chief executive officer of each of the Plaintiff entities; (d) is the member of Plaintiffs VG BEHEER LATVIA, LLC; VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; LEGO TRANS, LLC; and ANDRENU PARKS, LLC; (e) is the shareholder of Plaintiffs VG BEHEER LATVIA SIA and GREENFIELD ENGURES SIA; and (f) is a partner in DEMENKOVA UN PARTNERI.

6.    Plaintiff VG BEHEER LATVIA, LLC, is a Latvian limited liability company with its principal place of business in California that is engaged in real estate investment and development in California and which entered into the initial

loan agreement with Parex Bank (predecessor of Defendant AS CITADELE BANKA) in furtherance of acquiring and developing two properties in Malibu, California.

7.     Plaintiffs VG BEHEER JURMALA LLC; VG BEHEER RIGA, LLC; BOTANIX, LLC; LEGO TRANS, LLC; and ANDRENU PARKS, LLC are limited liability companies formed in Latvia and engaged in real estate investment and real estate development in Latvia, the United States, and internationally.

8.     Plaintiffs VG BEHEER LATVIA SIA and GREENFIELD ENGURES SIA are corporations formed in Latvia and engaged in real estate investment and real estate development in Latvia, the United States, and internationally.

9.     Plaintiff JEVGENIJS (YEVGENIY) GUSEVS is an individual and a resident of Latvia.

## B.     RICO DEFENDANTS

10.     The parties identified below conspired to engage in a pattern of racketeering activity, have committed numerous criminal acts as part of their scheme to defraud Plaintiffs, and have each participated in the operation and management of the criminal enterprise. These defendants shall be collectively referred herein as the "RICO Defendants" or the "RICO Enterprise."

11.     Defendant AS CITADELE BANKA (formerly SC Citadele Banka and sometimes referred to herein as the "Bank") is a bank headquartered in Latvia. Exercise of jurisdiction over the Bank is reasonable and proper in this District for the reasons set forth in paragraphs 25 and 26, *infra*.

12.     Defendant GUNTIS BELAVSKIS is a citizen of Latvia and, from 2010 to 2014, was a Member of the Supervisory Board or Chairman of the

Supervisory Board of Defendant AS CITADELE BANKA, as set forth herein. Exercise of jurisdiction over GUNTIS BELAVSKIS is reasonable and proper for the reasons set forth in paragraphs 25 and 26 *infra*.

13.   Defendant VAS PRIVATIZATION AGENCY is an entity formed in Latvia and, from 2010 until September 2014, was no less than a 75% owner of Defendant AS CITADELE BANKA. Exercise of jurisdiction over the VAS PRIVATIZATION AGENCY is reasonable and proper for the reasons set forth in paragraphs 25 and 26, *infra*.

14.   Defendant RIPPLEWOOD ADVISORS LLC, is a limited liability company formed and existing under the laws of the State of Delaware, and was, at all relevant times, conducting business throughout the United States and California. Upon information and belief, RIPPLEWOOD ADVISORS LLC was the successor in interest to Kleinwort Benson Advisors, LLC, a Delaware Limited Liability Company which was in existence since 2013 and RIPPLEWOOD HOLDINGS, LLC which was in existence since 1995. Upon further information and belief, Kleinwort Benson Advisors, LLC was the successor in interest to RHJ International, SA owned by TIMOTHY C. COLLINS which was in existence since 2004, and also a known affiliate and/or subsidiary of RIPPLEWOOD HOLDINGS, LLC which was in existence since 1995. Exercise of jurisdiction over Defendant RIPPLEWOOD ADVISORS, LLC is reasonable and proper for the reasons set forth in paragraphs 21, 22, and 23, *infra*.

15.   Defendant RA CITADELE HOLDINGS LLC, is a limited liability company formed and existing under the laws of the State of Delaware, and was, at all relevant times, conducting business throughout the United States and California.  Upon information and belief, RA CITADELE HOLDINGS, LLC is a wholly owned subsidiary, affiliate, and/or successor in interest to Defendant

RIPPLEWOOD ADVISORS, LLC and RIPPLEWOOD HOLDINGS, LLC, which are all beneficially owned, controlled and are the alter egos of Defendant TIMOTHY C. COLLINS. Exercise of jurisdiction over RA CITADELE HOLDINGS LLC is reasonable and proper for the reasons set forth in paragraphs 21, 22, and 24, *infra*.

16.    Defendant TIMOTHY C. COLLINS is a citizen and resident of the United States whose exact state of residence is presently unknown, and who, at all relevant times, was the chief executive officer, director, owner, and alter ego of RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS LLC, RIPPLEWOOD HOLDINGS, LLC, Kleinwort Benson Advisors, LLC, and RHJ International, SA. Upon further information and belief, Defendant TIMOTHY C. COLLINS is also an officer, member, and/or alter ego of multiple other Ripplewood entities that have been in existence since 1995, namely: Ripplewood Partners, L.P., Ripplewood Partners II, L.P., Ripplewood Partners III, LP, RHJ International L.P., and New LTCB Partners C.V. Upon further information and belief, TIMOTHY COLLINS routinely travels to the United States and California to conduct business, and operates multiple entities and businesses in California, including in San Francisco, California.

17.    On information and belief, all of the acts and omissions described in this complaint by any Defendant were duly performed by, and attributable to, all the other Defendants, each acting as agent, as employee, alter ego and/or under the direction and control of the others, and such acts and omissions were within the scope of such agency, employment, alter ego, direction, and/or control. Any reference in this complaint to any acts of Defendants shall be deemed to be the acts of each Defendant acting individually and jointly.

18.    The true names and capacities, whether corporate, associate, individual, partnership or otherwise of Defendants Does 1 through 10, inclusive, are unknown to Plaintiff who therefore sue said Defendants by such fictitious names.  Plaintiffs will seek leave of court to amend this complaint to allege their true names and capacities when their true identities are ascertained.    On information and belief, at all relevant times, each of the Defendants, including Doe Defendants, were the agents, employees, employers, joint venturers, representatives, alter egos, and/or partners of one or more of the other Defendants, and were, in performing the acts complained of herein, acting within the scope of such agency, employment, joint venture, or partnership authority, and/or are in some other way responsible for the acts of one or more of the other Defendants. One information and belief, each of the Defendants, including the Doe Defendants, participated in the conspiracy to deceive and defraud the Plaintiffs as described herein and/or was a participant in the racketeering scheme.

## IV.  PERSONAL JURISDICTION AND DOMESTIC INJURY UNDER *NABISCO*

19.    Plaintiff VIKTORS GUSEVS has been a resident of the State of California since 2004 and has engaged in significant real estate investment and development business activities throughout California, including two real estate properties located at: 21650 Pacific Coast Highway, Malibu, California 90265 and 3211 Colony View Circle, Malibu, California 90265. Exercise of personal jurisdiction over the Defendants is reasonable, just and proper because Defendants specifically targeted, defrauded and damaged Plaintiff VIKTORS GUSEVS in California.

20.     As a direct result of Defendants' actions as set forth herein, Plaintiffs have suffered significant and devastating domestic injuries to their business and properties in California under *RJR Nabisco, Inc. v. European Cmty.,* 136 S. Ct. 2090, 2106. As set forth more fully below, Plaintiffs' lines of credit with the Bank were secured by real estate, including several properties in California owned by the Plaintiffs, including but not limited to, real estate investment properties located at 21650 Pacific Coast Highway, Malibu, California and 3211 Colony View Circle, Malibu California 90265. Plaintiffs' remaining real properties and domestic investments in California have since been decimated and the only real properties left are currently in foreclosure and short sale proceedings due to the RICO Defendants' fraudulent scheme. Specifically, the 3211 Colony View Circle, Malibu California is being forced to undergo a short sale this month which will result in millions of dollars associated with a loss of equity and millions in mortgage payments made by Plaintiffs since 2006 when they bought the property.

21.     Defendants RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS, LLC, and TIMOTHY C. COLLINS are all citizens of the United States. With respect to Plaintiffs' claims arising out of violations of U.S.C. §1962, the exercise of jurisdiction over each of defendants named herein is proper pursuant to 18 U.S.C. §1965 (b). The ends of justice require application of the nationwide service provisions of 18 U.S.C. §1965 (b) because there is no district in which all the RICO defendants could otherwise be tried together; through their agents, alter egos and predecessors in interest, Defendants RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS, LLC and TIMOTHY C. COLLINS have transacted businesses in the State of California including the active solicitation of investors in California and as such, have purposefully availed

FIRST AMENDED COMPLAINT

themselves of the privileges and benefits of California law; and there is a substantial nexus between the activities of Defendants RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS, LLC, and TIMOTHY C. COLLINS in California and Plaintiffs' claims.

22.     Exercise of personal jurisdiction over Defendant RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS, LLC and TIMOTHY COLLINS is also reasonable and proper on the grounds that such Defendants, through their predecessors in interest and alter egos, all working through and at the direction of TIMOTHY COLLINS served as the ringleader in the enterprise to specifically target and defraud the Plaintiffs, working closely with the other RICO Defendants in this action, which resulted in injury to Plaintiffs' business and properties in California.

23.     Defendant TIMOTHY COLLINS was at all times acting as the alter-ego and agent of RIPPLEWOOD ADVISORS LLC and RA CITADELE HOLDINGS, LLC and vice versa.

24.     Defendant RA CITADELE HOLDINGS, LLC, RIPPLEWOOD ADVISORS LLC and their predecessors in interests and alter-egos have (a) transacted business in California, solicited investors in California, and thereby purposefully availed themselves of the privileges and benefits of California law; and (b) engaged in tortious conduct in California including specifically targeting and defrauding Plaintiffs in California, all of which gives rise to Plaintiffs' claims as more fully set forth below. Defendant RA CITADELE HOLDINGS, LLC, RIPPLEWOOD ADVISORS LLC, its predecessors in interests, alter-egos, and agents were aware of the effects of its acts in California and their predecessors in interests, affiliates, co-conspirators, and agents were working at the direction,

FIRST AMENDED COMPLAINT

1  under the control, at the request, and/or on their behalf in committing those acts

2  which involved specifically targeting and defrauding Plaintiffs in California.

3       25.    Exercise of personal jurisdiction over Defendants AS CITADELE

4  BANKA, GUNTIS BELAVSKIS, VAS PRIVATIZATION AGENCY is proper

5  and reasonable pursuant to 18 U.S.C. §1965 (b). The ends of justice require

6  application of the nationwide service provisions of 18 U.S.C. §1965 (b) because

7  there is no district in which all RICO defendants could otherwise be tried together.

8  Through their agents and co-conspirators, Defendants AS CITADELE BANKA,

9  GUNTIS BELAVSKIS, VAS PRIVATIZATION AGENCY have transacted

10  business in the State of California, and there is a substantial nexus between the

11  actions of Defendants AS CITADELE BANKA, GUNTIS BELAVSKIS, VAS

12  PRIVATIZATION AGENCY directed to the State of California and Plaintiffs'

13  claims. Among other things, the entire genesis of the what would turn into a

14  massive conspiracy to defraud Plaintiffs was the initial loan agreement entered

15  into in California between Plaintiff VG BEHEER LATVIA, LLC and Parex Bank

16  (predecessor of Defendant AS CITADELE BANKA) in furtherance of acquiring

17  and developing two properties in Malibu, California.  Defendants AS CITADELE

18  BANKA, GUNTIS BELAVSKIS, and VAS PRIVATIZATION AGENCY

19  engaged in (i) intentional, willful, illegal, and tortious acts in the United States and

20  California; (ii) solicited and induced Plaintiffs to default on their credit lines

21  which resulted in devastating judgments against the Plaintiffs; and (iii) directed

22  over 100 phone calls, emails, and other forms of communications to Plaintiffs in

23  California for the purpose of planning and carrying out their conspiracy to

24  defraud.

25       26.    Exercise of personal jurisdiction over Defendants GUNTIS

26  BELAVSKIS, CITADELE BANKA, GUNTIS BELAVSKIS, VAS

27

28

FIRST AMENDED COMPLAINT

PRIVATIZATION AGENCY pursuant to 18 U.S.C. §1965 (b) is proper and reasonable. BELAVSKIS is or was the Chairman of AS CITADELE BANKA, and at all times relevant herein, Defendants GUNTIS BELAVSKIS, CITADELE BANKA, and VAS PRIVATIZATION AGENCY were acting as the co-conspirators and agents of the RIPPLEWOOD Defendants, TIMOTHY COLLINS and/or their predecessors in interest and their alter egos.  Moreover, Defendants GUNTIS BELAVSKIS, CITADELE BANKA, and VAS PRIVATIZATION AGENCY and their predecessors in interest have (a) transacted banking business in California and thereby purposefully availed themselves of the privileges and benefits of California law; and (b) engaged in tortious conduct in California including specifically targeting and defrauding Plaintiffs in California, all of which gives rise to Plaintiffs' claims as more fully set forth below. Defendants GUNTIS BELAVSKIS, CITADELE BANKA, and VAS PRIVATIZATION AGENCY were aware of the effects of their acts in the United States and California, that their activities were for their benefit, and their predecessors in interests, affiliates, co-conspirators, and agents were working at the direction and control, and/or on their behalf in committing those acts which involved specifically targeting and defrauding Plaintiffs in California.

27.    Defendants, their predecessors in interest, and their alter egos had actual knowledge of, and opportunistically took advantage of the fact that, Plaintiff VIKTORS GUSEVS (the chief executive officer and owner of the Plaintiff entities) was residing in California at all relevant times herein and was therefore perceived as an easy target. Defendants, their predecessor in interests, and their alter egos directed over 100 emails, 40 telephone calls, and correspondence by mail from officers and employees of AS CITADELE BANKA to Plaintiff VIKTORS GUSEVS in California, utilizing wire or radio located

within the United States in order to be received by Plaintiff VIKTORS GUSEVS in California. Defendants were aware of the effects of their acts in the United States and in California in particular, that their activities were for their benefit, and that their predecessors in interests, affiliates, co-conspirators, and agents were working at their direction and control and/or on their behalf in committing those acts. Defendants, including the RIPPLEWOOD Defendants, TIMOTHY COLLINS, their predecessors in interests, and their alter egos, designed, engineered and implemented a financial scheme that would ultimately result in devastating losses to Plaintiffs' businesses and properties in the State of California.

## V.    FACTS IN SUPPORT OF ALTER EGO ALLEGATIONS

28.    Plaintiffs incorporate the averments of all previous paragraphs as if fully set forth herein.

29.    Defendant TIMOTHY COLLINS designed, engineered and built the RIPPLEWOOD entity structure, including its predecessors in interests, subsidiaries, and affiliates, using layer upon layer of complex and sophisticated corporate covers and special purpose entities even though there was only one true controlling stakeholder -- Defendant TIMOTHY COLLINS himself.

30. As an illustration, RIPPLEWOOD HOLDINGS, LLC was a venture capital firm founded by Defendant TIMOTHY COLLINS in 1995. RIPPLEWOOD HOLDINGS, LLC is a known affiliate and/or predecessor in interest of Defendant RIPPLEWOOD ADVISORS, LLC and RA CITADELE HOLDINGS, LLC.  RIPPLEWOOD HOLDINGS, LLC is also a known affiliate and/or predecessor in interest of Defendant RIPPLEWOOD INVESTMENTS, LLC and other similarly named "Ripplewood" entities. Upon information and

belief, RIPPLEWOOD HOLDINGS, LLC has had significant investments in the United States and in California, including investments in Hostess Brands Inc. and the Readers' Digest.  Upon further information and belief, the California Public Employees' Retirement System (CalPERS) heavily invested in RIPPLEWOOD HOLDINGS, LLC, its predecessors in interest, and/or their affiliates.

31.   Plaintiffs are informed and believe, and thereon allege, that at all times relevant herein, Defendant TIMOTHY COLLINS was the alter ego of RIPPLEWOOD HOLDINGS, LLC and has dominated and controlled RIPPLEWOOD HOLDINGS, LLC in such a manner that the individuality and separateness of Defendant TIMOTHY COLLINS, on the one hand, and RIPPLEWOOD HOLDINGS, LLC on the other, is non-existent.

32.   Plaintiffs are informed and believe, and thereon allege, that at all times relevant herein, Defendant TIMOTHY COLLINS, was the alter ego of and has dominated and controlled Kleinwort Benson Advisors, LLC, RA CITADELE HOLDINGS, LLC, RH INTERNATIONAL, SA, and RIPPLEWOOD ADVISORS LLC in such a manner that the individuality and separateness of Defendant TIMOTHY COLLINS, on the one hand, and  Kleinwort Benson Advisors, LLC, RA CITADELE HOLDINGS, LLC, RH INTERNATIONAL, SA, and RIPPLEWOOD ADVISORS LLC, on the other, is and was, at all times relevant times, non-existent.

33.   Upon information and belief, Defendant TIMOTHY COLLINS, Kleinwort Benson Advisors, LLC, RA CITADELE HOLDINGS, LLC, RH INTERNATIONAL, SA, RIPPLEWOOD ADVISORS, LLC, and RIPPLEWOOD HOLDINGS, LLC have commingled their assets and liabilities, shared corporate officers, and failed to observe corporate formalities. To maintain the fiction of separate existence of the corporate forms with respect to these

individuals and parties would sanction a fraud and promote injustice, as set forth more fully herein.

34.     Upon information and belief, Defendant TIMOTHY COLLINS has operated, owned and controlled the following entities for two decades all of which are his alter-egos and the alter egos of one another: RIPPLEWOOD INVESTMENTS, LLC; RIPPLEWOOD INVESTORS, I,  LP; RIPPLEWOOD INVESTORS, L.P; RIPPLEWOOD JAPAN HOLDINGS, LLC; RIPPLEWOOD PARTNERS CO-INVESTMENT FUND, LP; RIPPLEWOOD PARTNERS II-KRATON, LLC; RIPPLEWOOD PARTNERS II –AC, INC.; RIPPLEWOOD PARTNERS II AFFILIATED FUND, LP; RIPPLEWOOD PARTNERS II INTERMEDIATE, LP; RIPPLEWOOD PARTNERS PARALLEL FUND, LP; RIPPLEWOOD PARTNERS II, LP; RIPPLEWOOD PARTNERS, III GP, LP; RIPPLEWOOD PARTNERS II SIDE-BY-SIDE, LP; RIPPLEWOOD PARTNERS, III, LP; RIPPLEWOOD PARTNERS, LP; RIPPLEWOOD HOLDINGS II, LLC; RIPPLEWOOD HOLDINGS, LLC; RIPPLEWOOD HOLDINGS MANAGEMENT, LLC; and RIPPLEWOOD HOLDINGS SPECIAL INTEREST, LP.

35.     Most if not all of the "RIPPLEWOOD" entities' corporate offices are located at 1 Rockefeller Plaza 32nd Floor, New York, NY 10020 and conduct significant business and investment activity including the solicitation of investors in California and throughout the United States.

**VI.  FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**A.     Introduction**

36.     This action centers around a multi-billion dollar, sophisticated racketeering scheme masterminded by Defendants RIPPLEWOOD ADVISORS

- 16 –

LLC, RA CITADELE HOLDINGS LLC, and their predecessors in interest and alter egos (collectively referred herein as "RIPPLEWOOD" or "RIPPLEWOOD DEFENDANTS") and Defendant TIMOTHY C. COLLINS, in partnership with their cohorts Defendants AS CITADELE BANKA ("the Bank"), GUNTIS BELAVSKIS, and VAS PRIVATIZATION AGENCY (collectively referred to herein as the "CITADELE BANKA RICO Enterprise" or the "Enterprise") through numerous acts of wire and mail fraud in the United States to deprive Plaintiffs of their property, such that they had a community of interest in this undertaking and agreed to share the profits derived from such scheme. Therefore, each Defendant is responsible for the acts and omissions of each of the other Defendants herein.

37. RIPPLEWOOD Defendants, and their owner and CEO Timothy Collins, through their predecessors in interest and alter egos, with the assistance of his global investment bankers, financially engineered an ingenious plan to manipulate the Bank's balance sheet and its overall financial condition such that an affiliate of RIPPLEWOOD and its consortium of investors could purchase a controlling stake in the Bank at an outrageously discounted purchase price of $74 Million Euros (a ridiculous price that was widely questioned by the Latvian public, a Latvian governmental investigative commission and the media since the Latvian government bailed out the Bank, then known as Parex Bank in 2008 to the tune of 1.6 billion euros, and Plaintiffs' assets alone were worth more than $150 Million Euros) and then exit, either through an IPO or an outright sale, and make billions in profit.

38. A cornerstone of this scam was the conspiracy to strip out the valuable real estate loans on the Bank's books, with a particular focus on those tied to Plaintiffs' assets, so that the rigged "fire-sale" purchase price of the Bank

to RIPPLEWOOD could be justified.  The other key element of the scam required a mechanism to strip out the key assets without depriving the Bank and its stakeholders of the profits they would have realized tied to the yields on these stripped out assets.

39.    The RIPPLEWOOD defendants, its predecessors in interest, and TIMOTHY COLLINS have specialized in acquisitions, buyouts, management buy-ins, recapitalizations, and turnarounds investments since the early 1990s. RIPPLEWOOD and TIMOTHY COLLINS solicit investors for their deals throughout the United States and internationally. Upon information and belief, several public and private entities, including the California Public Employees' Retirement System (CalPERS) and other entities in California, have heavily invested in RIPPLEWOOD, their predecessors in interest, and/or their affiliates.

40.    The scheme at issue here is also nothing new for RIPPLEWOOD'S CEO TIMOTHY COLLINS, who has had extensive experience and developed a reputation as a corporate "vulture."  In 1999, Collins swooped in to acquire the Long Term Credit Bank of Japan (LTCB) in 1999 for a staggeringly low price of $9.5 million, even though the Japanese government infused LTCB with almost $34 billion in government bailout money. Defendant TIMOTHY COLLINS ultimately profited to the tune of $2 billion – a 400% profit.

41.    Defendant TIMOTHY COLLINS structured and built the network of RIPPLEWOOD entities, predecessors in interests, subsidiaries, and affiliates on layer upon layer of corporate cover in shell corporations so that they could each benefit from liability protection and tax benefits, even though there has at all material time only been one controlling stakeholder - Defendant TIMOTHY COLLINS himself.

FIRST AMENDED COMPLAINT

42.    The racketeering scheme set forth herein would not have been possible without the expertise, financial engineering, and orchestration of Defendants RIPPLEWOOD, TIMOTHY COLLINS, their predecessors in interest, and alter egos who colluded and conspired with the Bank and the Enterprise from the very onset of the scheme, as more fully set forth below.

**B.    General Timeline of Events**

43.    In November, 2003, Plaintiff VG BEHEER LATVIA SIA signed a line of credit agreement in Los Angeles, CA with Parex Bank, which was then a privately owned bank headquartered in Latvia. The agreement committed Parex Bank, through January, 2018, to make a line of credit available to Plaintiff VG BEHEER LATVIA SIA for the purpose of acquiring and developing real estate projects in the United States and internationally, including two properties in Malibu.

44.    In 2006, at the request of Parex Bank, Plaintiff VG BEHEER LATVIA SIA and its chief executive officer and shareholder Plaintiff VIKTORS GUSEVS, caused Plaintiffs VG BEHEER JURMALA LLC, VG BEHEER RIGA LLC, and BOTANIX LLC to be formed and the line of credit from Parex Bank made to Plaintiff VG BEHEER LATVIA SIA was divided among those newly formed entities, each of which entities Plaintiff VIKTORS GUSEVS was and is chief executive officer and owner.

45.    The lines of credit were secured by real estate and other property in California and Latvia owned by the Plaintiffs, including but not limited to, real estate investment properties in California located at 21650 Pacific Coast Highway, Malibu, California 90265 and 3211 Colony View Circle, Malibu CA 90265. These

FIRST AMENDED COMPLAINT

California properties are now in foreclosure and short sale proceedings as a direct and proximate result of the RICO Defendants' fraudulent scheme.

46.   From 2003 through 2008, the lines of credit were drawn upon and used to fund real estate investment and development projects in the United States and internationally.  The highest outstanding aggregate balance of the lines of credit was €28 Million and the average balance was €15 Million.

47.   In November, 2008, following the collapse of Lehman Brothers and the ensuing global financial crisis, the government of Latvia seized Parex Bank by "purchasing" a majority 51% stake from the founders for token consideration of 2 Latvian Lats (approximately €5.00).

48.   The government of Latvia then purchased the remaining stake of Parex Bank from other shareholders for equally token consideration of €0.01/share.

49.   Approximately 25% of the ownership interests of the government of Latvia in Parex Bank were subsequently acquired by the European Bank for Reconstruction and Development.

50.   The remaining 75% ownership interest of the government of Latvia in Parex Bank was subsequently transferred to Defendant VAS PRIVATIZATION AGENCY.

51.   At the time of the government takeover of Parex Bank in November, 2008, the Plaintiffs kept surplus funds of approximately €3 Million on deposit at Parex Bank. At the time, the real estate projects of the Plaintiffs in the United States were valued at approximately $45 million.

52.   From November, 2008 through 2009, Parex Bank refused to honor payment instructions from Plaintiffs to make payments from Plaintiffs' accounts at Parex to Washington Mutual Bank and others in the United States with respect

FIRST AMENDED COMPLAINT

to obligations of Plaintiffs relating to the real estate projects in the United States. This refusal undermined Plaintiffs' ability to service their debt and thereby caused damage to VG BEHEER LATVIA LLC and the other Plaintiffs in the United States.

53.    In early 2010, the "good" assets of Parex Bank, were transferred to a newly formed entity, Defendant AS CITADELE BANKA (then known as SC CITADELE BANKA). These new assets included Plaintiffs' lines of credit and accounts. AS CITADELE BANKA became the successor in interest to Parex Bank and assumed all liabilities associated with the transferred assets.

54.    The "bad" assets remained with Parex Bank, which later became known as Reverta.

55.    Defendant VAS PRIVATIZATION AGENCY owned 75% of the shares of the newly formed AS CITADELE BANKA and the remaining 25% of the shares were owned by the European Bank for Reconstruction and Development.

## C.    The Role of Defendants in the Racketeering Scheme

56.    Plaintiffs incorporate the averments of all previous paragraphs as if fully set forth herein.

57.    At the time of the formation of Defendant AS CITADELE BANKA ("the Bank"), then Latvian Finance Minister Einars Repse and then Latvian Economy Minister Artis Kampars signed a confidential agreement with the European Commission requiring the Bank to be sold or liquidated by the end of 2014 or Latvia would face serious financial sanctions from the European Commission and its members. Shortly thereafter, the predecessors in interest and alter egos of the RIPPLEWOOD Defendants, TIMOTHY COLLINS, and the Bank's Chairman GUNTIS BELAVSKIS, who at the time was a Member of the

- 21 –

Supervisory Board of the Bank, hatched a fraud and racketeering conspiracy to enable the Bank to reduce its apparent book value thereby increasing the likelihood that the Bank could be sold at a "fire-sale" price to TIMOTHY COLLINS or one of his Ripplewood entity designees, while at the same time generating profits for the Bank, its investors, and its principals.   TIMOTHY COLLINS was selected because of his similar experience a decade prior in Japan.

58.   The RIPPLEWOOD Defendants, TIMOTHY C. COLLINS, together with Defendants GUNTIS BELAVSKIS, AS CITADELE BANKA, VAS PRIVATIZATION AGENCY, their predecessors in interests, and alter egos devised a plan to manipulate the Bank's balance sheet and overall financial condition such that the severely discounted purchase price at which RIPPLEWOOD would ultimately purchase a majority interest in the Bank could be justified.

59.   This racketeering conspiracy would involve defrauding the Plaintiffs of their property, which fraud against Plaintiffs, as described in detail below, would be executed by a racketeering enterprise through wire and mail fraud specifically targeting Plaintiffs in California and other unlawful acts.

60.   The RIPPLEWOOD Defendants and TIMOTHY C. COLLINS, their predecessors in interests, and alter egos, and Defendants AS CITADELE BANKA and its officers (including Chairman of the Board of the Bank, GUNTIS BELAVSKIS), had actual knowledge that Plaintiff VIKTORS GUSEVS (the chief executive officer and owner of Plaintiff entities) was residing in the United States and in the State of California and that emails, telephone calls, and mail from officers and employees of the Bank directed to Plaintiffs would utilize wire or radio located within the United States in order to be received by Plaintiffs in California.

61.    In fact, the RIPPLEWOOD Defendants, TIMOTHY C. COLLINS, Defendants AS CITADELE BANKA and its officers (including Chairman of the Board of the Bank GUNTIS BELAVSKIS) opportunistically took advantage of the knowledge that Plaintiff VIKTORS GUSEVS was physically residing in California, at all times relevant herein, to mastermind a financial scheme that would ultimately result in devastating loss to Plaintiffs' businesses and properties in California.

62.    The first part of executing the racketeering scheme involved the RICO Defendants, at the behest of RIPPLEWOOD and Defendant TIMOTHY COLLINS, their predecessors in interest and alter egos, convincing Plaintiff VIKTORS GUSEVS (and thus the Plaintiff entities) to agree to a shortening of the term of the lines of credit of Plaintiffs from the then maturity date of 2018 to 2012.

63.    In overt furtherance thereof, in 2010, when the lines of credit of Plaintiffs were transferred to the Bank, Irina Ponomarjova (manager), Zigurds Cirulis (department head), and Kristaps Putans (deputy chief corporate banking) sent Plaintiff VIKTORS GUSEVS hundreds of emails and made a series of approximately 40 telephone calls fraudulently telling Plaintiff VIKTORS GUSEVS that a shortening of the term of the lines of credit from 2008 to 2012 was just a formality and that as soon as the Bank was sold (which Plaintiff was told, would happen before the end of the shortened term of the lines of credit) the buyer (which was already secretly predetermined to be COLLINS or one of his RIPPLEWOOD entity designees) would be required to extend the term of the lines of credit.

64.    At the direction of Defendants COLLINS, RIPPLEWOOD, their predecessor in interests, and their alter-egos, the Bank representatives informed

- 23 –

Plaintiff VIKTORS GUSEVS through these hundreds of emails  and phone calls, that if the Bank was not sold before the end of the shortened term, the term of the lines of credit would be extended by the existing officers of the Bank.

65.   In detrimental reliance upon these misrepresentations, VIKTORS GUSEVS executed agreements on behalf of the Plaintiff entities with the Bank agreeing to a shortening of the term of the lines of credit from 2018 to 2012.

66.   In 2012, Defendant GUNTIS BELAVSKIS was promoted from Member to Chairman of the Board of Supervisors of AS CITADELE BANKA.

67.   Also in 2012, as the shortened term of the lines of credit was coming to an end, Defendants RIPPLEWOOD and TIMOTHY COLLINS their predecessor in interests, and their alter-egos, in collusion with, Defendants GUNTIS BELAVSKIS and VAS PRIVATIZATION AGENCY, put in effect the second stage of their conspiracy to defraud Plaintiffs of their property, which second stage had an urgency because of the 2014 European Commission deadline for the Bank to be sold or liquidated.

68.   Shortly before expiration of the lines of credit, Defendants AS CITADELE BANKA, GUNTIS BELAVSKIS, and VAS PRIVATIZATION AGENCY, at the behest of RIPPLEWOOD and TIMOTHY COLLINS their predecessor in interests, and their alter-egos, and with knowledge that VIKTORS GUSEVS was physically residing in the United States, caused Andrey Golubcovs and Uldis Glazers (corporate client manager) to send a series of email and telephone communications to VIKTORS GUSEVS in California.   In these communications, the RICO Defendants, through their officers and representatives, told VIKTOR GUSEVS that the Bank would be filing lawsuits against the Plaintiffs in arbitration court in Latvia upon expiration of the term of the lines of

credit for repayment of the lines of credit, but only so the Bank could write off the loans, thereby making the Bank more appealing to potential purchasers.

69.     At the behest of Defendants RIPPLEWOOD, TIMOTHY COLLINS, their predecessor in interests, and their alter-egos, the Bank, its officers, and representatives fraudulently promised VIKTORS GUSEVS in such communications that if he, as owner and chief executive officer of the Plaintiff entities, would cooperate with the process by causing the Plaintiffs not to oppose such lawsuits, subsequent to winning such lawsuits by default, the Bank would not enforce the judgments but rather would agree to payment "work-outs" with the Plaintiffs and that, again, that buyer of the Bank (which was already secretly predetermined to be COLLINS or one of his RIPPLEWOOD entity designees) would be required to renew the lines of credit once the Bank was sold.

70.     Such officers and representatives further fraudulently misrepresented to VIKTORS GUSEVS, all at the behest of COLLINS, RIPPLEWOOD, their predecessors in interest and alter egos, that there was an immediate need to initiate the proceedings in the arbitration court in order to facilitate the orderly sale of the Bank and that it would be in Plaintiffs' best interests not to appear in court and not to contest the Bank's claims asserted in the arbitration court.

71.     The RICO Defendants and their officers intentionally concealed and fraudulently failed to disclose to Plaintiff VIKTORS GUSEVS that the decision of the arbitration court in these matters would be final, not subject to appellate review and would be carried out immediately, contrary to the assurances provided to Plaintiff.

72.     In detrimental reliance upon these fraudulent misrepresentations, VIKTORS GUSEVS caused the Plaintiff entities and his son, Plaintiff JEVGENIJS (YEVGENIY) GUSEVS (a guarantor of the lines of credit), not to

contest any of the lawsuits brought in arbitration court against them by AS CITADELE BANKA.

73.   Judgments were rendered against all of the Plaintiffs by the arbitration court when Plaintiffs did not appear and did not oppose any of the legal actions (because of the fraudulent misrepresentations made through email and telephone communications into the United States all at the direction of Defendant TIMOTHY COLLINS and the RIPPLEWOOD predecessors in interest and alter egos).  Such judgments were final and non-appealable.

74.   Contrary to its officers' and representatives' fraudulent promises, Defendant AS CITADELE BANKA failed to enter into workout agreements with any of the Plaintiffs, except and only as to Plaintiff VG BEHEER LATVIA SIA.

75.   The work out agreement with Plaintiff VG BEHEER LATVIA SIA, dated June 18, 2012, required monthly interest payments of €30,000 and principal repayment every six months of €  500,000. Through email and telephone communications by Vija Meška (Meshka) (department head), Edvins Joksts (senior lawyer), and Andrey Golubcovs (head of legal department), Plaintiff VIKTORS GUSEVS was convinced to use Egils Radzins as the lawyer for Plaintiff VG BEHEER LATVIA SIA.  It was not until later that VIKTORS GUSEVS learned that Attorney Egils Radzins also represented a Supervisory Board Member of the Bank and was also a judge on the arbitration court and, as such, had an actual conflict of interest with the representation.

76.   Plaintiff VG BEHEER LATVIA SIA made the monthly payments of interest and semi-annual payments of principal called for by the workout agreement on time.

77.   In the Fall of 2013, RIPPLEWOOD, TIMOTHY COLLINS, and their predecessors in interest and alter egos put their scheme to defraud Plaintiffs

FIRST AMENDED COMPLAINT

into full swing. At the behest of Defendants RIPPLEWOOD, TIMOTHY COLLINS, their predecessor in interests, and their alter-egos, Andrey Golubcovs, as agent and representative of Defendant AS CITADELE BANKA fraudulently represented to Plaintiff VIKTOR GUSEVS, through hundreds of emails and a series of telephone communications, that VG BEHEER LATVIA SIA was not required to make the principal payment otherwise due on September, 2013, but rather could use such funds for ongoing real estate projects in California including the two properties in Malibu.

78.     In detrimental reliance upon such fraudulent misrepresentations by the representative of AS CITADELE BANKA, Plaintiff VIKTORS GUSEVS caused VG BEHEER LATVIA SIA not to make the September, 2013 principal payment.

79.     After such funds had been deployed, commencing in October, 2013, the Bank, at the behest of the RIPPLEWOOD Defendants, TIMOTHY COLLINS, their predecessor in interests, and their alter-egos through hundreds of emails and telephone calls directed to Plaintiff VIKTORS GUSEVS in California, made demand for the September, 2013 principal payment and threatened to start enforcing the uncontested arbitration court judgments against Plaintiffs that the Bank, in collusion with the RIPPLEWOOD Defendants, COLLINS, their predecessors in interest and alter egos, had procured through fraud.

80.     In January 2014, the total amount owed by Plaintiffs under the lines of credit to the Bank was approximately € 13.4 Million.

81.     Commencing in January 2014, Plaintiffs (and the prospective buyers) six times requested permission from the Bank to allow the sale of two of Plaintiffs' properties for € 9 Million in order to pay back a large portion of the principal owed on the lines of credit (for which unopposed judgment had been

fraudulently obtained). Permission of the Bank was required because the properties served as partial security for the lines of credit. The Bank purposefully ignored, stonewalled or simply never responded to these requests because to have done so would have undermined the scheme to loot these assets through the sham auctions, discussed further herein.

82. In March 2014, the Bank, through an auctioneer (Ainars Shusts), began auctioning the real estate properties of the Plaintiffs in Latvia to repay the unopposed judgments obtained by the Bank through the wire and mail fraud perpetrated in the United States. This process has been ongoing. The auctioneer has personally profited in an amount greater than $2.5 Million Euro for conducting the illegal auctions of Plaintiffs' properties.

83. Starting in August 2014 and continuing through February 2015 Plaintiffs alerted RIPPLEWOOD and COLLINS of the malfeasance and fraud being perpetrated by the Bank but these pleas were ignored.  Specifically, Plaintiffs sent correspondence to RIPPLEWOOD's and COLLINS' attorneys who were located in Santa Monica, California that the Bank, its officers, and agents fraudulently induced the Plaintiffs' inaction with respect to the maturity date, arbitration proceedings, etc…. At the time, Plaintiffs were not aware of the fact that RIPPLEWOOD, COLLINS, and their predecessors in interest and alter egos had masterminded and orchestrated the entire scheme.

84. Approximately 80 of Plaintiffs' properties have been auctioned off. The majority of the properties have been purchased by affiliates of AS CITADELE BANKA, such as Hortus Residential and Hortus Land, for outrageously low sham prices, with the intention of reselling the properties at their fair market value and thereby reaping substantial windfall profits for the Bank's investors.

FIRST AMENDED COMPLAINT

85.    Defendants were successful in carrying out this fraudulent scheme because under Latvian law, the judicial executor handling a foreclosure sale makes an assessment of the value of the foreclosed property to be auctioned, which is approximately 50% of the fair market value and that assessment cannot be challenged or refuted. Therefore, sales at auction in Latvia are always disadvantageous to the debtor, yet favorable to the Bank and the buyer.

86.    In furtherance of the corrupt scheme, the Bank sold other properties for similar sham prices to "third parties" that, upon information and belief, are connected to AS CITADELE BANKA or the auctioneer.

87.    For example, real property known as "Engures 9B" in Jurmala, Latvia, which was purchased by Plaintiff Greenfield Engures SIA in December, 2014 for €600,000 and as to which an additional €200,000 was invested, was sold at auction for €43,500.

88.    By way of further example, a real property owned by Plaintiff JEVGENIJS GUSEVS as to which there was an agreement by such Plaintiff to sell the property to a third party buyer for € 4 Million, was sold at auction for €500,000. In addition, a real property known as Konsula/Jurmales Gatve, as to which Plaintiffs had an agreement to sell to a third party buyer for at least €2 Million, was sold at auction for €400,000.

89.    After fraudulently foreclosing upon Plaintiffs' properties, an affiliate of the Bank immediately listed the properties for sale at market prices.

90.    Defendant GUNTIS BELAVSKIS, then Chairman of the Supervisory Board of Defendant the Bank, admitted to VIKTORS GUSEVS that the Bank was intentionally causing the properties of Plaintiffs to be auctioned at sham prices and using bank affiliates to buy the properties so as to make huge windfall profits and that the Bank had purposefully used its attorney, Andrey Golubcovs, and others to

trick Plaintiff VIKTORS GUSEVS, in the United States, to enable the auctioning of the Plaintiffs' properties.

91. In September, 2014, in the midst of the sham property auctions, with Defendants VAS PRIVATIZATION AGENCY and GUNTIS BELAVSKIS facing the 2014 European Commission deadline for the Bank to be sold or liquidated, the 75% ownership interest of VAS PRIVATIZATION AGENCY in the Bank was finally sold to RIPPLEWOOD and TIMOTHY C. COLLINS as planned from the onset of the scheme.

92. Upon information and belief, a material reason for such purchase, was the knowledge by RIPPLEWOOD, TIMOTHY C. COLLINS, their predecessor in interests, and their alter-egos that the fraud being effectively perpetrated by the Bank upon Plaintiffs, resulting in sham auctions of properties, would result in outrageous profits for the Bank and its investors while at the same time allowing RIPPLEWOOD and COLLINS to acquire the Bank for an artificially reduced price without the need for a bidding process.

93. Defendants RIPPLEWOOD and TIMOTHY C. COLLINS conspired with the principals of Defendants VAS PRIVATIZATION AGENCY and the Bank at the very onset of the scheme to rig the bidding process for the 75% ownership interest such that at least 7 other prospective purchasers, including those affiliated with Rietumu Bank and Norvik Bank, were removed from contention, leaving RIPPLEWOOD as the exclusive and only "bidder." RIPPLEWOOD and TIMOTHY C. COLLINS celebrated the consummation of the deal with the principals of VAS PRIVATIZATION AGENCY and the Bank even before the transaction had officially closed.

94. Ultimately, the purchase transaction closed and a consortium of investors led by RIPPLEWOOD became the owner of 75% plus one share of the

- 30 –

Bank. The other shareholder of the Bank was the European Bank for Reconstruction and Development, which still owns 25 percent minus one share of the Bank.

95.     Almost immediately after the closing of the purchase by RIPPLEWOOD, and additional $300 Million Euro was "found" on the balance sheet of the Bank.

96.     Upon information and belief, information and discussion regarding the Bank and the sham auctions was communicated to RIPPLEWOOD and TIMOTHY C. COLLINS in the United States through hundreds of emails and series of telephone calls from the Bank and its officers, and responded to by Defendants RIPPLEWOOD and TIMOTHY C. COLLINS from the United States.

97.     Defendants RIPPLEWOOD, COLLINS, their predecessor in interests, and their alter-egos committed systematic and intentional acts in furtherance of defrauding the Plaintiffs; and that their intentional acts have now caused harm to Plaintiffs' businesses and properties in California and *continue* to cause substantial damage to Plaintiffs in California. Finally, the RIPPLEWOOD Defendants and the consortium they control, as the new majority owner of the Bank, are *still* actively engaging in the sham foreclosure sales of Plaintiffs' remaining properties which continue to cause harm to Plaintiffs' business and California properties. Plaintiffs' two multi-million dollar investment properties in Malibu are now on the verge of foreclosure and short sale proceedings, causing Plaintiffs millions of dollars in losses of equity and mortgage payments that Plaintiffs paid since 2006.

98.     Upon further information and belief, RIPPLEWOOD and TIMOTHY C. COLLINS, now a Chairman of the Supervisory Board of the Bank, are

continuing with such fraudulent property auctions by the Bank in order to generate fraudulent and outrageous profits for themselves and their investors.

99.   Defendant AS CITADELE BANKA intends on selling approximately 30 additional properties of Plaintiffs in the same manner (approximately 50 have been sold to date).

100.   The fraudulent scheme of the Defendants, their predecessors in interests, and their alter-egos herein have damaged Plaintiffs in an amount in excess of $200 Million and, as a result of Defendants' actions, all of the Plaintiff entities are on the verge of bankruptcy and their real properties located in California are now in foreclosure proceedings.

101.   The RICO Defendants, their predecessor in interests, and their alter-egos engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. Section 1964(c) by committing wire fraud in violation of 18 U.S.C. Section 1343, requiring (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) the specific intent to defraud, in connection with Defendants' dealings with plaintiffs.   The RICO Defendants demonstrated a pattern of unlawfully foreclosing and liquidating multiple properties that were owned by Plaintiffs and then selling them to affiliates of Defendants in sham auctions, and unlawfully rigging the purchase of the Bank and manipulating its balance sheet to facilitate a sale at an artificially deflated price to the rigged buyer.

## VII.   CLAIMS FOR RELIEF

### A.   COUNT I - FEDERAL RICO VIOLATIONS OF 18 U.S.C. SECTIONS 1962(a),  1962(b), 1962(c), and 1962(d)

102.   Plaintiffs incorporate the averments of all previous paragraphs as if fully set forth herein.

103.    This count is filed against Defendants AS CITADELE BANKA, GUNTIS BELAVSKIS, VAS PRIVATIZATION AGENCY, RIPPLEWOOD HOLDINGS LLC, RIPPLEWOOD ADVISORS LLC, RA CITADELE HOLDINGS LLC and TIMOTHY COLLINS (who may be referred to herein as the "Count I Defendants").

**1.    The Federal RICO Statute**

104.    18 U.S.C. Section 1961(1)  states in pertinent part:

"(1) "racketeering activity" means  . . .  (B) any act which is indictable under any of the following provisions of title 18, United States Code: section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud)."

18 U.S.C. Section 1962 provides,

"(a)  It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b)  It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain,

- 33 –

directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

105.   The Count I defendants violated these sections of RICO, and are therefore liable to Plaintiffs as set forth herein.

## 2.     Plaintiffs Have Standing to Sue Count I Defendants    under RICO

106.    At all relevant times, Plaintiffs are and were "persons" within the meaning of 18 U.S.C. Sections 1961(3) and 1962(c).

107.    At all relevant times, each RICO Count I Defendant is and was a "person" within the meaning of 18 U.S.C. Sections 1961(3) and 1962©.

## 3.     Count I Defendants' Conspired To Form And Conduct An Unlawful Enterprise That Targeted Plaintiffs

108.    The Count I Defendants and their co-conspirators, predecessors in interest and alter egos, are a group of persons associated together in fact for the common purpose of carrying out an illegal enterprise, as described herein.  The Count I Defendants used the umbrella organization known as "AS CITADELE BANKA" as the enterprise to carry out their scheme in the arena of foreign and interstate commerce.    Namely, through a multifaceted scheme of false promises, lies, fraud, and manipulation, the Count I Defendants, their predecessors in

interest and alter egos, coerced Plaintiffs into shortening the deadlines for repayment of lines of credit, suffering defaults in arbitration proceedings, being deprived of continued funding, being subjected to orchestrated foreclosures of multiple properties, and losing multiple properties sold at sham auction at sham prices to affiliates of the Bank.

109.   The Count I Defendants and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c), referred to hereinafter as the "RICO Enterprise."   Each of the Count I defendants participated in the operation and management of the RICO enterprise.

110.   The RICO Enterprise and their co-conspirators have organized their operation into a cohesive group with specific and assigned responsibilities.  While the organization of the criminal enterprise has changed over time, and its members may have held different roles at different times, the criminal enterprise has generally been structured to operate as a unit in order to accomplish the goals of their criminal scheme.

### 4.   Count I Defendants' Enterprise Conducted Unlawful Activities  Which Affected Interstate And Foreign Commerce

111.   At all relevant times, the RICO Enterprise, its predecessors in interest and alter egos, were engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. Section 1962(c).    The Count I Defendants affected interstate and foreign commerce because they engaged in real estate finance transactions involving  properties located in California, Latvia, and internationally.

### 5.   Count I Defendants' Pattern of Racketeering Activity

112.   Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. Section 1964(c) by committing wire fraud in violation of 18

- 35 –

U.S.C. Section 1343, requiring (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) the specific intent to defraud, in connection with Defendants' dealings with Plaintiffs. Defendants demonstrated a pattern of unlawfully foreclosing and liquidating multiple properties that were owned by Plaintiffs and then selling them to affiliates of Defendants in sham auctions and also unlawfully rigged the purchase of the Bank and manipulated its balance sheet to facilitate a sale at an artificially deflated price to the rigged buyer, i.e. a RIPPLEWOD entity designated by TIMOTHY COLLINS.

**6. Count I Defendants' Use Of The Wires To Perpetrate A Scheme To Defraud With An Intent To Defraud**

113. Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple predicate acts of wire fraud and mail fraud within the United States and internationally from 2010 to the present. Specifically, Defendants RIPPLEWOOD and TIMOTHY COLLINS through their predecessors in interest and alter egos executed the fraudulent scheme by masterminding and directing the Bank and the Count I Defendants in their fraudulent communications, through numerous emails and telephone calls, all for the purpose of defrauding the Plaintiffs, and all to achieve the goal of stripping out the good assets of the bank and artificially deflating the purchase price of the Bank to 74 Million Euro.

114. The Count I Defendants utilized the wires in perpetrating their fraudulent scheme against Plaintiffs in violation of 18 U.S.C. Section 1343.

115. Count I Defendant's conduct of the RICO Enterprise was continuous and pursuant to an intentional scheme to defraud Plaintiffs and loot their assets.

**7. Domestic Injury to Plaintiffs' Business and Property**

116. As a direct and proximate result of the Count I Defendants' racketeering activities, multiple predicate acts and violations of 18 U.S.C.

§1962(a),(b), (c), and (d),   Plaintiffs have been injured in their business and property in that: (a) their properties have been foreclosed, unlawfully auctioned off and liquidated at sham prices representing a tiny fraction of the properties' fair market value; (b) the opportunity to profit from such properties has been unlawfully diverted to Count I Defendants in that a majority of the auctioned properties have been "purchased" by affiliates of AS CITADELE BANKA at sham prices and then re sold at market prices; and (c) Plaintiffs have been substantially hindered in their ability to conduct their business of investing in and developing real property in the United States because of the lack of funding promised, and because they have been fraudulently deprived of their properties that would have served as security for financing such California development projects from alternative sources.

117.   Pursuant to 18 U.S.C. Section 1964(c), Plaintiffs are entitled to recover threefold their actual damages, the costs of the action, and reasonable attorney's fees.

## B.   COUNT II - INTENTIONAL MISREPRESENTATION

118.   Plaintiffs incorporate the averments of all previous paragraphs as if fully set forth herein.

119.   This Count is against Defendants AS CITADELE BANKA, GUNTIS BELAVSKIS, and VAS PRIVATIZATION AGENCY (the "Count II Defendants").

120.   As described in Paragraphs 62, 63, 64, 68, 69, 70, 71, 75, and 77 above, the Count II Defendants represented directly to, or caused the officers and representatives of AS CITADELE BANKA named in such Paragraphs to represent directly to, Plaintiff VIKTORS GUSEVS as follows: (a) that the

- 37 –

subsequent buyer of  AS CITADELE BANKA (which was already secretly predetermined to be COLLINS or one of his RIPPLEWOOD entity designees) would be required to extend the term of the lines of credit to Plaintiffs; (b) that if the Bank were not sold, the existing officers of AS CITADELE BANKA would extend the term of the lines of credit; (c) that work-out agreements would be entered into with all Plaintiffs if they did not oppose legal actions against them; and (d) that a September, 2013 principal payment on the one workout agreement that was entered into with VG BEHEER LATVIA SIA did not have to be made.

121.   These representations were all false.

122.   The Count II Defendants knew that the representations were false when made, or that the representations were being made recklessly and without regard for their truth.

123.   The Count II Defendants intended that Plaintiffs rely on the misrepresentations.

124. The Plaintiffs reasonably and justifiably relied on the misrepresentations by taking the actions set forth in paragraphs 65, 72, and 78 above.

125.   The Plaintiffs were directly and proximately harmed by their reliance on such misrepresentations in that: (a) they agreed to a shortening of the term of their lines of credit from 2018 to 2012; (b) they failed to oppose legal actions brought against them, resulting in final, non-appealable judgments being entered against them; and (c) failed to make a principal payment, resulting in enforcement of the judgments and ultimate sale of their properties serving as collateral for the lines of credit.

126.   Plaintiffs' reliance on the misrepresentations was a substantial factor in causing their harm.

127. WHEREFORE, Plaintiffs request that this Court enter judgment against Count II Defendants as follows: (1) actual damages; (2) punitive damages to be determined; and (c) costs of this action.

## C.   COUNT III - FRAUD BY FALSE PROMISES

128. Plaintiffs incorporate the averments of all previous paragraphs as if fully set forth herein.

129. This Count is against Defendants AS CITADELE BANKA, GUNTIS BELAVSKIS, and VAS PRIVATIZATION AGENCY (the "Count III Defendants").

130. At the behest of the predecessors in interest and alter egos of Defendants RIPPLEWOOD and TIMOTHY COLLINS, Count III Defendants made material promises to Plaintiffs, and represented directly to, or caused the officers and representatives of AS CITADELE BANKA to promise and represent directly to, Plaintiff VIKTORS GUSEVS, who at all relevant times was residing in California, as follows: (a) that the RIPPLEWOOD Defendants, the subsequent buyer of AS CITADELE BANKA would be required to extend the term of the lines of credit to Plaintiffs; (b) that if the Bank were not sold, the existing officers of AS CITADELE BANKA would extend the term of the lines of credit; (c) that work-out agreements would be entered into with all Plaintiffs if they did not oppose legal actions against them; and (d) that a September, 2013 principal payment on the one workout agreement that was entered into with VG BEHEER LATVIA SIA did not have to be made.

131. These promises were important to the transactions and dealings between plaintiff and Count III Defendants.

FIRST AMENDED COMPLAINT

132.   Count III Defendants did not intend to perform the promises when they made the promises.

133.   Count III Defendants intended that Plaintiff would rely on this promises, and would be misled to not oppose the arbitrations.

134.   Plaintiffs reasonably relied on Count III Defendants' promise by taking the actions set forth in paragraphs 65, 72, 78 above.

135.   Rather than performing the promised actions in good faith, the Count III Defendants acted in bad faith as part of a conspiracy to loot and strip Plaintiffs of their extensive real estate portfolio.

136.   Plaintiffs were directly and proximately harmed by their reliance on such misrepresentations in that: (a) they agreed to a shortening of the term of their lines of credit from 2018 to 2012; (b) they failed to oppose legal actions brought against them, resulting in final, non-appealable judgments being entered against them; and (c) failed to make a principal payment, resulting in enforcement of the judgments and ultimate sale of their properties serving as collateral for the lines of credit and suffered substantial financial damages.

137.   Plaintiffs' reliance on the Count III Defendants' false promises was a substantial factor in causing their harm.

**D.       PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief against Defendants as follows:

**On All Claims for Relief**

1.     For general and special damages according to proof at trial, trebled according to 18 U.S.C. § 1964(c);
2.     For pre-judgment interest according to statute; and
3.     For reasonable attorneys' fees and costs according to 18 U.S.C. § 1964(c) and as allowed by law;

- 40 –

FIRST AMENDED COMPLAINT

4.    For general and special damages according to proof at trial against Defendants jointly and severally;

5.    For punitive and exemplary damages, as allowed by law;

6.    For costs of this action and reasonable attorneys' fees; and

7.    For such other and further relief as this Court deems just and proper.


## VIII. JURY TRIAL DEMAND


Plaintiffs demand a trial by jury on all triable issues of fact.

Dated: September 29, 2016                    Litvak Law Group, P.C.


By:   */s/ Uri Litvak*_____
      Uri Litvak, Esq.
      Airene Williamson, Esq.
      *Attorneys for Plaintiffs*

1

## PROOF OF SERVICE

2

3   I am a resident of the State of California, over the age of eighteen years, and
not a party to the within action.  My business address is 2424 S.E. Bristol St.
4   Suite 300, Newport Beach, CA  92660-0764. On September 29, 2016, I served
the within document(s):

5

6       **FIRST AMENDED COMPLAINT FOR:**

7       **(a) VIOLATIONS OF 18 U.S.C. §1962 (a), (b) (c), (d) UNDER**
8       **RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS**
        **PROVISIONS OF THE ORGANIZED CRIME CONTROL ACT OF**
9       **1970 ("RICO");**
        **(b) INTENTIONAL MISREPRESENTATION; and**
10      **(c) FRAUD BY FALSE PROMISES**
        **JURY TRIAL DEMANDED**
11

12

13      ☒      BY ELECTRONIC SERVICE – Based on a court order, I caused the above
referenced document(s) to be served to the person(s) listed below via the CM/ECF
14  website.

15

| | |
|---|---|
| MUNGER, TOLLES & OLSON LLP<br>Michael R. Doyen, Esq.<br>(Michael.doyen@mto.com)<br>Jeffrey Y. Wu, Esq.<br>(Jeffrey.wu@mto.com)<br>Matthew K. Donohue, Esq.<br>(matthew.donohue@mto.com)<br>355 South Grand Avenue, 35th floor<br>Los Angeles, CA  90071 | ***Attorneys for Defendants***<br>Ripplewood Advisors LLC and<br>RA Citadele Holdings, LLC |
| BUCKLEY SANDLER LLP<br>Frederick S. Levin, Esq.<br>(flevin@buckleysandler.com)<br>Ali M. Abugheida, Esq.<br>(aabugheida@buckleysandler.com)<br>100 Wilshire Blvd., Suite 1000<br>Santa Monica, CA  90401 | ***Attorneys for Defendants***<br>AS Citadele Banka and<br>Guntis Belavskis |

- 1 -

| SAFARIAN CHOI & BOLSTAD, LLP<br>David C. Bolstad, Esq,<br>(dbolstad@safarianchoi.com)<br>Scott J. Street, Esq.<br>(street@safarianchoi.com)<br>555 S. Flower Street, Suite 650<br>Los Angeles,  CA  90071 | *Attorneys for Defendant*<br>**Vas Privatization Agency** |
|---|---|

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on September 29, 2016, at Newport Beach, California.

_Sylvia B. Iwai_
Sylvia B. Iwai