1  **BUCKLEYSANDLER LLP**
   FREDRICK S. LEVIN (State Bar No. 187603)
2  flevin@buckleysandler.com
   ALI M. ABUGHEIDA (State Bar No. 285284)
3  aabugheida@buckleysandler.com
   100 Wilshire Boulevard, Suite 1000
4  Santa Monica, California 90401
   Telephone: (310) 424-3900
5  Facsimile: (310) 424-3960

6  *Attorneys for Defendants AS Citadele*
   *Banka and Guntis Beļavskis*

7

8              **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11  VIKTORS GUSEVS, an individual; VG        Case No. 2:16-cv-03793-SVW-AS
    BEHEER LATVIA, LLC, a foreign
12  limited liability company; VG             **DEFENDANTS AS CITADELE**
    BEHEER LATVIA SIA, a foreign              **BANKA'S AND GUNTIS**
13  corporation; VG BEHEER JURMALA,           **BELAVSKIS' NOTICE OF**
    LLC, a foreign limited liability          **MOTION AND MOTION TO**
14  company; VG BEHEER RIGA, LLC, a           **DISMISS THE FIRST AMENDED**
    foreign limited liability company;        **COMPLAINT FOR LACK OF**
15  BOTANIX, LLC, a foreign limited           **PERSONAL JURISDICTION, ON**
    liability company; DEMENKOVA UN           **FORUM NON CONVENIENS**
16  PARTNERI, a foreign partnership;          **GROUNDS; AND, IN THE**
    LEGO TRANS, LLC, a foreign limited        **ALTERNATIVE, MOTION TO**
17  liability company; ANDRENU PARKS,         **STAY PROCEEDINGS PENDING**
    LLC, a foreign limited liability          **ARBITRATION**
18  company; GREENFIELD ENGURES
    SIA, a foreign corporation; and           [Filed Concurrently with Declarations
19  JEVGENIJS GUSEVS, a foreign               of Fredrick S. Levin, Guntis Beļavskis,
    individual,                               Nadezda Smislajeva, Ivars Grunte,
20              Plaintiffs,                   Defendants' Request for Judicial
                                              Notice, and Defendants AS Citadele
21       v.                                   Banka's and Guntis Beļavskis' Motion
                                              to Dismiss under Fed. R. Civ. Pro.
22  AS CITADELE BANKA, a foreign              12(b)(6)]
    corporation; GUNTIS BELAVSKIS, a
23  foreign individual; VAS
    PRIVATIZATION AGENCY, a foreign           Date:        December 5, 2016
24  corporation; RIPPLEWOOD                    Time:        1:30 p.m.
    ADVISORS LLC, a Delaware limited          Courtroom: 6
25  liability company; RA CITADELE
    HOLDINGS LLC, a Delaware limited          The Hon. Judge Stephen V. Wilson
26  company; and TIMOTHY C.
    COLLINS, an individual,
27              Defendants.

28

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on December 5, 2016, at 1:30 p.m., in Courtroom 6 of the United States District Court, Central District of California, Western Division, 312 North Spring Street, Los Angeles, California, or as soon thereafter as the matter can be heard before the Honorable Stephen V. Wilson, the undersigned Defendants will move to dismiss the claims against them.

This motion is made under Rule 12(b)(2), on the grounds of *forum non conveniens*, and, in the alternative, pursuant to arbitration agreements between the parties.  It is based upon the Memorandum of Points and Authorities below, the declarations and request for judicial notice filed concurrently herewith, and on all records, documents, pleadings, and papers on file or to be filed in this action, arguments of counsel, and any other matters that may properly come before the Court for its consideration.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on October 6, 2016.

DATED:  October 20, 2016          Respectfully submitted,

BUCKLEYSANDLER LLP


By:  _____*/s/ Fredrick S. Levin*_____
    Fredrick S. Levin
    *Attorneys for Defendants AS Citadele*
    *Banka and Guntis Belavskis*

1

**TABLE OF CONTENTS**

2    INTRODUCTION……………………………………………….. 1

3    STATEMENT OF FACTS ……………………………………… 2

4       I.    Procedural History…………………………………….. 2

5       II.    The Latvian Dispute…………………………………….3

6       III.    The Alleged Link to California ……………………………….4

7       IV.    Citadele's and Mr. Beļavskis' Connections to California……………...5

8    ARGUMENT…………………………………………….. 6

9       I.    This Court Lacks General and Specific Personal Jurisdiction

10            Over the Latvian Defendants……………………………….6

11            A.    Legal Standard………………………………….6

12            B.    There Is No General Jurisdiction Over the Latvian

13               Defendants in California…………………………….. 7

14            C.    There Is No Specific Jurisdiction Over Citadele or

15               Mr. Beļavskis in California…………………………… 9

16               1.    The Latvian Defendants Have Not Purposefully

17                   Availed Themselves of California……………………..9

18               2.    Plaintiffs' Claims Arise Out of Conduct in Latvia……...17

19               3.    Exercising Jurisdiction Over the Latvian Defendants

20                   Would Not Be Reasonable……………………………...18

21       II.    The Court Should Dismiss Citadele and Mr. Beļavskis on Forum

22            Non Conveniens Grounds……………………………….20

23            A.    Latvia Is an Adequate Alternative Forum…………………...21

24            B.    Public Interest Favor Favor Dismissal………………….22

25            C.    Private Interest Factors Favor Dismissal………………….22

26       III.    Alternatively, the Court Should Stay Proceedings in Favor of a

27            Latvian Arbitration…………………………………… 23

28    CONCLUSION………………………………………….25

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

i

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
   551 F.2d 784 (9th Cir. 1977) ................................................................7

*American Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir.1988) .................................................................8

*Amoco Egypt Oil Co. v. Leonis Navigation Co. Inc.*,
   1 F.3d 848 (9th Cir. 1993) ...................................................................8

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) .............................................................7

*Bell v. Blizzard Entm't, Inc.*,
   2013 WL 12063912 (C.D. Cal. Apr. 3, 2013) ...................................25

*Cadman v. Bond*,
   603 F. Supp. 1335 (D. Mass. 1985) ..................................................12

*CAE Inc. v. Three Cities Research, Inc.*,
   2009 WL 3839423 (D. Or. Nov. 16, 2009) .......................................21

*Calder v. Jones*,
   465 U.S. 783 (1984)...........................................................................17

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) .............................................................8

*Core-Vent Corp. v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993). .................................................18, 19, 20

*Creative Tech., Ltd. v. Aztech Sys.. PTE Ltd.*,
   61 F.3d 696 (9th Cir. 1995) ...............................................................20

*Daimler AG v. Bauman*,
   134 S.Ct. 746 (2014)...........................................................................8

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1996) .............................................................7

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

*Davies v. Broadcom Corp.*,
　　130 F. Supp. 3d 1343 (C.D. Cal. 2015) ...............................................................24

*Doe v. Unocal Corp.*,
　　27 F. Supp. 2d 1174 (C.D. Cal. 1998), *aff'd and adopted*, 248 F.3d 915 (9th Cir. 2001) .....................................................................................................................7

*Dychiuchay v. Greishaber*,
　　2015 WL 3708249 (D. Nev. Jun. 15, 2015) ........................................................16

*Fadhliah v.Societe Air France*,
　　987 F. Supp. 2d 1057 (C.D. Cal. 2013) .................................................................5

*Fed. Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*,
　　828 F.2d 1439 (9th Cir. 1987) ...............................................................................7

*Gator.com Corp. v. L.L. Bean, Inc.*,
　　341 F.3d 1072 (9th Cir. 2003) ...............................................................................8

*Getz v. Boeing Co.*,
　　654 F.3d 852 (9th Cir.2011) .................................................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　　564 U.S. 915 (2011) ................................................................................................8

*Hadlock v. Norwegian Cruise Line, Ltd.*,
　　2010 WL 1641275 (C.D. Cal. Apr. 19, 2010) .....................................................24

*Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*,
　　282 F. Supp. 2d 1131 (N.D. Cal. 2003) ...............................................................24

*International Shoe Co. v. Washington*,
　　326 U.S. 310, 316 (1945) .......................................................................................6

*Keeton v. Hustler Magazine, Inc.*,
　　465 U.S. 770 (1984) ..............................................................................................17

*Leetsch v. Freedman*,
　　260 F.3d 1100 (9th Cir. 2001) .............................................................................21

*Lisa McConnell, Inc. v. Idearc, Inc.*,

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

iii

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

2010 WL 364172 (S.D. Cal. Jan 22, 2010). ........................................................17

*Lueck v. Sundstrand Corp.,*

236 F.3d 1137 (9th Cir. 2001) ........................................................22

*Monex Deposit Co. v. Gilliam,*

616 F. Supp. 2d 1023 (C.D. Cal. 2009) ........................................................23

*Nicosia v. DeRooy,*

72 F. Supp. 2d 1093 (N.D. Cal. 1999) ........................................................7

*NxSystems, Inc. v. Monterey County Bank,*

2012 WL 4093932 (D. Or. Sept. 17, 2012) ........................................................11

*Panthera Railcar LLC v. Kasgro Rail Corp.,*

2013 WL 1996318 (N.D. Cal. May 13, 2013)........................................................11

*Peterson v. Kennedy,*

771 F.2d 1244 (9th Cir. 1985) ........................................................14

*Piper Aircraft Co. v. Reyno,*

454 U.S. 235 (1981)........................................................21

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*

388 U.S. 395 (1967)........................................................24

Rano v. Sipa Press, Inc.,

987 F.2d 580 (9th Cir. 1993) ........................................................12

*Rocke v. Canadian Automobile Sport Club,*

660 F.2d 395 (9th Cir.1981) ........................................................19

*Schwarzenegger v. Fred Martin Motor Co.,*

374 F.3d 797 (9th Cir. 2004) ........................................................9, 11, 17

*Simula, Inc. v. Autoliv, Inc.,*

175 F.3d 716 (9th Cir. 1999) ........................................................25

*Snowney v. Harrah's Entm't, Inc.,*

35 Cal.4th 1054 (2005) ........................................................9

*Swartz v. KPMG LLP,*

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

iv

476 F.3d 756 (9th Cir. 2007) ....................................................................8, 15

*Tkachyov v. Levin*,

1999 WL 782070 (N.D. Ill. Sept. 27, 1999) ..........................................21

*Walden v. Fiore*,

134 S. Ct. 1115 (2014).....................................................................passim

*Watson v. Merrell Dow Pharms., Inc.*,

769 F.2d 354 (6th Cir. 1985); ................................................................21

*Wellons, Inc. v. SIA Energoremonts Riga Ltd.*,

2013 WL 5314368 (W.D. Wash. Sept. 20, 2013) ..................................21

*World-Wide Volkswagen Corp. v. Woodson*,

444 US 286 (1980).....................................................................................9

**Statutes**

9 U.S.C. § 1...................................................................................................1

9 U.S.C. § 201...............................................................................................1

9 U.S.C. § 206.............................................................................................23

9 U.S.C. § 208.............................................................................................23

9 U.S.C. § 3.................................................................................................23

**Other Authorities**

U.S. Citizenship and Immigrations Services, About the EB-5 Visa,

https://www.uscis.gov/working-united-states/permanent-workers/employment-

based-immigration-fifth-preference-eb-5/about-eb-5-visa...................23

**Rules**

8 C.F.R. § 216.6..........................................................................................13

Fed. R. Civ. P. 12(b)(2) ...............................................................................7

Fed. R. Civ. P. 12(b)(3) .............................................................................23

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

**INTRODUCTION**

Defendants, AS Citadele Banka (the "Latvian Bank" or "Citadele") and Guntis Beļavskis move to dismiss the claims brought against them for lack of personal jurisdiction and on *forum non conveniens* grounds. Alternatively, Citadele and Mr. Beļavskis move to stay these proceedings in favor of arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. and 9 U.S.C. §§ 201 *et seq*. (enacting New York Convention for enforcement of international arbitral awards).

*First*, the Court should dismiss Citadele and Mr. Beļavskis because neither has sufficient minimum contacts with the State of California. Citadele is a Latvian bank, it has its principal place of business in Riga, Latvia, it has no offices, employees, or officers in California, and it is not qualified to do business in California. Mr. Beļavskis is a Latvian citizen and resident, he does not have a residence, mailing address, or property in California. The only allegation linking them to California in any way is Plaintiff Viktors Gusevs' ("Gusevs") alleged residence in California. However, as the Supreme Court recently explained, a Plaintiff's contacts with the forum, without more, are insufficient as a matter of law to subject a Defendant to suit in that forum. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Here, the Plaintiffs' FAC describes a controversy centered entirely in Latvia. The FAC alleges that a series of wrongful foreclosures were carried out on real property in Latvia, "under Latvian law," as a result of a series of agreements among Latvian entities. Even assuming the truth of these allegations – that foreclosures were brought about by fraud – Citadele and Mr. Beļavskis have done nothing to direct their conduct to California or otherwise avail themselves of this state. The only connection to this state, Gusevs' residence, is "random, fortuitous, [and] attenuated." *Id*. at 1123. Accordingly, on the facts in the FAC, this Court does not have personal jurisdiction over Citadele and Mr. Beļavskis and the claims against them must be dismissed.

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

*Second,* even if this Court has personal jurisdiction over Citadele and Mr. Beļavskis (which it does not), the claims against Citadele and Mr. Beļavskis should be dismissed on *forum non conveniens* grounds.  As set forth in the Declaration of Ivars Grunte ("Grunte Decl."), Latvia provides an adequate alternative forum for the resolution of this dispute.  Moreover, dismissal would benefit both the parties and the public.  Proceeding in Latvia would be more efficient for the parties because all of the relevant witnesses and evidence are likely to be in Latvia.  Moreover, dismissal would also benefit the California public, which has no interest in resolving Latvian lending and real property disputes.

*Third*, if the Court concludes it has jurisdiction and declines to dismiss this action on the grounds of *forum non conveniens*, the Court should stay this action pursuant to Section 3 of the FAA because all of the claims pled are "referable to arbitration" before the Riga International Arbitration Court.

## STATEMENT OF FACTS

### I.   <u>Procedural History</u>

On May 31, 2016, the Plaintiffs, a group of nine Latvian entities and two Latvian individuals, brought this action seeking redress for a series of alleged wrongful foreclosures occurring in Latvia.  (First Amended Complaint ("FAC."), ¶¶ 43-84).  On September 8, Citadele and Mr. Beļavskis moved to dismiss the Original Complaint on several grounds, including personal jurisdiction.  Dkt. Nos. 48-50.  The hearing on Citadele's and Mr. Beļavskis' motions to dismiss the Original Complaint was set for October 17, 2016.  However, shortly after the filing of Citadele's and Mr. Beļavskis' motions to dismiss, also on September 8, the Court entered an order granting Ripplewood's then pending motion to dismiss, with leave to amend.  Dkt. No. 51 (the "Order").  Because Plaintiffs intended to amend their Original Complaint before Citadele and Mr. Beļavskis' motions to dismiss would be heard and because Plaintiffs represented that amendments would affect allegations directed to not only Ripplewood, but also Citadele and Mr. Beļavskis, the parties

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

2

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

1  agreed to vacate the October 17, 2016 hearing and, in the interest of efficiency, align

2  the response dates for all defendants to October 20.  The Court granted the parties'

3  stipulations.  (Dkt. Nos. 55, 58, 61).

4  **II.   <u>The Latvian Dispute</u>**

5      The Plaintiffs' wrongful foreclosure allegations stem from a November 2003

6  agreement between VG Beheer Latvia SIA and Parex Bank, a predecessor to

7  Citadele, for a line of credit.  (FAC, ¶ 43).  In 2006, the line of credit was allegedly

8  "divided among" three newly formed Latvian entities: VG Beheer Jurmala, VG

9  Beheer Riga, and Botanix LLC.  (FAC, ¶ 44).  The line of credit was secured by real

10  property and other property owned by the Plaintiffs in Latvia.  (FAC, ¶¶ 20, 45; *see*

11  *also infra* Argument Section I.C.1.g).  The FAC goes on to allege that the line of

12  credit was allegedly taken out for the purpose of developing real estate in the United

13  States and internationally.  (FAC, ¶ 43).  Plaintiffs claim that after the line of credit

14  was transferred to Citadele, a series of telephonic and email representations were

15  made by Citadele and, as a result, Plaintiffs agreed to advance the maturity date of

16  that loan from 2018 to 2012.  (FAC, ¶¶ 62-65).  Plaintiffs further allege that through

17  a series of additional telephonic and email representations, upon maturity of the line

18  of credit, Plaintiffs were convinced not to contest arbitration proceedings initiated

19  against them in Latvia and that the Plaintiffs thereby allowed Citadele to obtain

20  uncontested arbitration awards and Latvian judgments enforcing those awards.

21  (FAC, ¶¶ 67-72).  Plaintiffs allege that they did not contest the arbitration

22  proceedings in Latvia because Citadele represented that it would enter into "workout

23  agreements" with the Plaintiffs.  (FAC, ¶ 69).  Plaintiffs allege that VG Beheer

24  Latvia SIA did, in fact, enter into one such "workout agreement."  (FAC, ¶ 74).

25      Plaintiffs allege that in 2013 Citadele convinced them not to make principal

26  payments that were otherwise due and that, notwithstanding those representations

27  one month later, Citadele demanded payment.  (FAC, ¶¶ 77-79).  However,

28  Plaintiffs claim they were unable to make that payment because they had already

allocated the funds in reliance on Citadele's alleged representations that it would not collect. *Id.* Finally, Plaintiffs claim that in March 2014, "under Latvian law," Citadele began auctioning off the real estate projects in Latvia that served as collateral on the loans Plaintiffs had obtained. (FAC, ¶¶ 82, 85).[1] On the basis of these facts, Plaintiffs bring claims for fraud against Citadele, its Chief Executive Officer, Guntis Beļavskis, and a Latvian Governmental agency, VAS Privatization Agency ("VAS"). (FAC, ¶¶ 119, 129).

Plaintiffs layer on top of their wrongful foreclosure claims a supposed RICO conspiracy involving both VAS, and a U.S. based entity, Ripplewood (Ripplewood Advisors LLC and Timothy C. Collins (collectively, "Ripplewood")) who acquired an interest in Citadele after the events in question. (FAC, ¶¶ 12-15, 62, 72). Plaintiffs claim that the Latvian foreclosures were part of a scheme "masterminded" by Ripplewood to make the Latvian Bank a more attractive acquisition target. (FAC, ¶¶ 36, 37).

## III.   **The Alleged Link to California**

Construing the Original Complaint generously, Plaintiffs alleged the following connections between the Latvian foreclosures described above and California: (1) Viktors Gusevs ("Gusevs") alleges that he is a "resident of the State of California pursuant to an EB-5 visa," (2) Gusevs alleges that Citadele employees corresponded with him while he was in the United States, (3) Plaintiffs allege that

---

[1] Foreclosure in Latvia occurs through judicial process. Although the creditor initiates the foreclosure, the auction itself is conducted by a bailiff, a court officer, in compliance with the Latvian Code of Civil Procedure. The bailiff's action is then reviewed and approved by a Latvian court. Grunte Decl., ¶19. Under Latvian law, the mortgagor has a right to present to the court evidence of irregularity in the foreclosure process as a defense to foreclosure. *Id.* Accordingly, when the FAC pleads that the auctions were conducted "under Latvian law," the FAC tacitly admits that the properties were foreclosed in appropriate Latvian procedure. *See* FAC, ¶ 85.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

Citadele and its officers had "actual knowledge" that Gusevs was residing in the United States and in California, and (4) VG Beheer Latvia LLC, a Latvian entity, alleges that its principal place of business is in California.[2]  (Original Compl., ¶¶ 4, 33).

In connection with ruling on Ripplewood's motion to dismiss for lack of personal jurisdiction, the Court found these allegations insufficient to establish personal jurisdiction over Mr. Beļavskis and Citadele:

> The Plaintiffs have not sufficiently alleged minimum contacts of the defendants with California such that this Court might have personal jurisdiction over <u>any defendant</u>, as all of the actions in question took place in Latvia. While the Bank's representatives may have sent communications to Mr. Gusevs while he resided in California, the Plaintiffs have not sufficiently demonstrated how those communications give this Court personal jurisdiction, given that all of the entities, conduct, and events in question occurred in Latvia, not in California.

Order, at 9 (emphasis added).  In an attempt to correct this deficiency, in their FAC, the Plaintiffs remove some allegations, recast others, and add various allegations regarding Gusevs' ownership of two Malibu homes.  (*See e.g.* FAC, ¶¶ 4, 19, 20, 25, 45).  As set forth below, these revisions should not change the Court's conclusion.[3]

---

[2]    Plaintiffs' allegations regarding VG Beheer Latvia LLC's principal place of business are contradicted by multiple sources: (1) by its filings with the California Secretary of State, which provide that it is located in Riga, Latvia and (2) by the 2003 line of credit agreement, which also provides that VG Beheer Latvia's address is in Riga, Latvia.  Declaration of Fredrick S. Levin ("Levin Decl."), Ex. B; Request for Judicial Notice, at 2; Declaration of Nadezda Smislajeva, Ex. G.

[3] *See also* concurrently filed Motion to Dismiss FAC, at 15-17 (identifying inconsistencies in Plaintiffs' new factual allegations).  To the extent Plaintiffs' FAC is inconsistent with the Original Complaint, it should not be credited.  *See e.g. Fadhliah v.Societe Air France*, 987 F. Supp. 2d 1057, 1069 (C.D. Cal. 2013) (explaining that statements made in a complaint constitute judicial admissions that the court may not disregard); *Gradetech, Inc. v. Am. Employers Grp.*, 2006 WL

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

## IV.   Citadele's And Mr. Beļavskis' Connections to California

As set forth in the Beļavskis Declaration, neither Citadele nor Mr. Beļavskis have a connection to California.

Citadele is a Latvian bank, it has its principal place of business in Riga, Latvia, it is not qualified to do business in California, it does not offer any services in California, it has no employees or officers in California, and it does not have company files in California.  Beļavskis Decl., ¶¶ 3-5.  Citadele does not own any real property in California and never has.  *Id*. at ¶ 6.  Citadele maintains no telephone listing or mailing address in California and had no such listing or mailing address at any time material to the events described in the FAC.  *Id*. at ¶ 7. Mr. Beļavskis is a Latvian citizen and resident.  *Id*. at ¶ 8.  He has no residence, property, bank account, telephone listing, or mailing address in California.  *Id*.

## ARGUMENT

## I.   This Court Lacks General And Specific Personal Jurisdiction Over the Latvian Defendants

### A.   Legal Standard

Personal jurisdiction over a nonresident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction).  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); Fed. R. Civ.

─────────────

1806156, at *3 (N.D. Cal. Jun. 29, 2006) ("Factual assertions in pleadings…are considered judicial admissions conclusively binding on the party who made them."); *Gammel v. Hewlett-Packard Co*., 2013 WL 1947525, at *5 (C.D. Cal. May 8, 2013) ("Courts may consider allegations in previous complaints in determining the plausibility of the current pleadings….").

1    P. 12(b)(2).[4]

2        Plaintiffs bear the burden of proving that this Court has personal jurisdiction

3    over Citadele and Mr. Beļavskis.  *Fed. Deposit Ins. Corp. v. British-American Ins.*

4    *Co., Ltd.*, 828 F.2d 1439, 1441 (9th Cir. 1987).  A Plaintiff cannot carry its burden

5    by simply relying on allegations in its pleadings where, as here, the plaintiff is

6    confronted with a motion to dismiss for lack of personal jurisdiction, supported by

7    declarations, the plaintiff is "obligated to come forward with facts, by affidavit or

8    otherwise, supporting personal jurisdiction."  *Amba Mktg. Sys., Inc. v. Jobar Int'l,*

9    *Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,

10   557 F.2d 1280, 1284 (9th Cir. 1996) (defendants cannot rely on allegations

11   contradicted by affidavit); *Nicosia v. DeRooy*, 72 F. Supp. 2d 1093, 1097 (N.D. Cal.

12   1999) (same).

13       **B.    There Is No General Jurisdiction Over the Latvian Defendants in**

14           **California.**

15       General jurisdiction may only be established when a defendant's contacts

16   with a state are so "substantial" or so "continuous and systematic" that the defendant

17   "can be haled into court in that state in any action, even if the action is unrelated to

18   those contacts."  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082,

19   1086 (9th Cir. 2000).  In other words, general jurisdiction is only proper where the

20   defendant's contacts with the state approximate physical presence, rendering the

21   defendant essentially "at home" in the forum.  *Gator.com Corp. v. L.L. Bean, Inc.*,

22   _____

23       [4]     RICO's national contacts test does not change the jurisdictional

24   analysis here because it does not apply to foreign defendants.  *Doe v. Unocal Corp.*,
     27 F. Supp. 2d 1174, 1183 (C.D. Cal. 1998) ("because RICO contains no provision

25   for worldwide service…a plaintiff who attempts to obtain personal jurisdiction over

26   a foreign national served outside the United States must [still] rely on the long-arm

27   statute of the state in which he files his suit"), *aff'd and adopted*, 248 F.3d 915 (9th
     Cir. 2001).

28

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

7

341 F.3d 1072, 1076 (9th Cir. 2003); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  To wit, the general jurisdiction analysis is an "exacting standard."  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011); *see also Amoco Egypt Oil Co. v. Leonis Navigation Co. Inc.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) (noting that "[t]he Supreme Court has upheld general jurisdiction only once").  Here, Plaintiffs have failed to establish that this exacting standard has been met.

   *First*, Plaintiffs' Original Complaint effectively conceded that the Latvian Defendants are not subject to general jurisdiction in California by alleging jurisdiction as to the Latvian Defendants solely on the basis of "specific" contacts. (Original Compl., ¶ 3); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988) ("[A]dmissions in the pleadings are generally binding on the parties....").  *Second*, other than a conclusory statement that defendants have "continuous" contact with California, Plaintiffs' FAC does not identify any specific contacts with California that are substantial or continuous.  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("legal conclusions unsupported by specific factual allegations" are insufficient to establish jurisdiction).  At most, the Plaintiffs allege that employees of the Latvian Bank corresponded with Gusevs a limited number of times while he was a resident of California.  These limited communications with *Gusevs* do not amount to "substantial" or "continuous" contact with *California*.  *Third*, as set forth in the Beļavskis Declaration, Citadele and Mr. Belavskis have not had any contact with California, much less the type of "continuous and systematic" contacts that would render the Latvian Defendants at home.  *Gator.com Corp.*, 341 F.3d at 1076; *see also Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014).  Accordingly, there is no general jurisdiction over Citadele or Mr. Beļavskis in California.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

### C.    There Is No Specific Jurisdiction Over Citadele or Mr. Beļavskis in California.

Specific jurisdiction is only proper where the following conditions are satisfied: (1) the nonresident defendant has purposefully directed its activities to the forum or otherwise availed itself of the privilege of conducting activities in the state, (2) the plaintiff's claim arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of proving the first two requirements. *Id*. If the plaintiff does so, the burden shifts to the defendant to show the exercise of jurisdiction is not reasonable. *Id*. Here, as set forth below, the Plaintiffs have not carried the burden to establish that the first two prongs are satisfied and, even if they had, Citadele and Mr. Belavskis establish that exercising jurisdiction would not be reasonable.

### 1.    The Latvian Defendants Have Not Purposefully Availed Themselves of California.

The Latvian Defendants have not purposefully directed their activities or otherwise availed themselves of the privileges of California. The purposeful availment requirement protects a defendant from being haled into a jurisdiction as a result of "random, fortuitous, or attenuated contacts" with a person affiliated with the forum. *Walden*, 134 S.Ct. at 1123. In other words, it assures that before jurisdiction is exercised the defendant is aware that it is subject to suit in the state. *World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 297 (1980); *see also Snowney v. Harrah's Entm't, Inc*., 35 Cal. 4th 1054, 1063 (2005) (requiring that the defendant have "clear notice" that it is subject to suit in the forum).

In assessing purposeful availment and purposeful direction the focus is on the defendant's contacts with the forum, not the defendant's contacts with the plaintiff or the plaintiff's contacts with the forum. As the Supreme Court has recently stated,

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

9

1  "the plaintiff cannot be the only link between the defendant and the forum."

2  *Walden*, 134 S.Ct. at 1122.  Accordingly, a proper jurisdictional "analysis looks to

3  the defendant's contacts with the forum State itself, not the defendant's contacts with

4  persons who reside there." *Id*.

5  In *Walden*, the Court criticized the Ninth Circuit for allowing the analytical

6  focus of its analysis to shift from the defendant's contacts with the forum to the

7  defendant's contacts with the plaintiff.  As the Court explained, "[s]uch reasoning

8  improperly attributes a plaintiff's forum connections to the defendant and makes

9  those connections 'decisive' in the jurisdictional analysis.  It also obscures the

10  reality that none of [defendant's] challenged conduct had anything to do with [the

11  forum] itself." *Id*. at 1125.

12  Here, the sole allegation connecting Citadele and Mr. Beļavskis to California

13  is Gusevs' allegation that he has been a resident of California since 2004.  Without

14  Gusevs' residency status, there would be no credible factual allegation connecting

15  this dispute to California in any way.  As *Walden* explains, this is insufficient.  In

16  other words, Gusevs' supposed status as a California resident is insufficient to prove

17  the Defendants' contacts with California.  To hold otherwise would incorrectly

18  permit Plaintiff's decision to establish a presence in California to substitute for the

19  proper focus: whether or not Citadele and Mr. Beļavskis chose to avail themselves

20  of California.  Only by focusing on Plaintiffs' alleged contacts with California can

21  Plaintiffs convert, improperly, an otherwise ordinary Latvian lending and real

22  property dispute into a purported California-based controversy.

23  Indeed, even accepting the allegations in the Complaint as true, it cannot be

24  said that Citadele and Mr. Beļavskis directed their conduct to California or availed

25  themselves of the privilege of conducting activities in this state.[5]  As the FAC

26  _____

27  [5] In the Ninth Circuit, the purposeful availment inquiry can differ depending

28

10

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1   establishes, Citadele and Mr. Beļavskis directed their conduct to Latvia.

2            **a)**    ***All of the parties to the underlying agreements are***

3                ***Latvian.***

4            According to the FAC, the parties to the 2003 initial line of credit were VG

5   Beheer Latvia SIA (a Latvian limited liability company) and Parex Bank (a Latvian

6   bank).  (FAC, ¶¶ 43).  In 2006, the line of credit was "divided among" three more

7   Latvian entities.  (FAC, ¶¶ 6, 7, 44).  In 2010, the entities agreeing to shorten the

8   term of the line of credit were again Latvian.  (FAC, ¶¶ 65).  The 2012 "workout

9   agreement" was also between VG Beheer Latvia SIA and AS Citadele Banka,

10  Latvian entities.  (FAC, ¶¶ 74).

11           **b)**    ***All of the foreclosures and auctions attributed to Citadele***

12               ***occurred in Latvia under Latvian law.***

13           According to the FAC, in March 2014, the Latvian Bank "began auctioning

14  the real estate properties of the Plaintiffs in Latvia."  (FAC, ¶ 82).  The FAC goes on

15  to allege that these auctions were successfully carried out "under Latvian law."

16  (FAC, ¶ 85).  While the FAC claims that "real property and domestic investments in

17  California….are currently in foreclosure and short sale proceedings" the FAC does

18  not (and cannot) allege that Citadele or Mr. Beļavskis carried out or directed any

19  California based foreclosure or short sale.  (FAC, ¶ 20).  In other words, the FAC

20  describes a dispute centered entirely in Latvia.[6]

_____

22  on whether the action is based in tort or contract.  *Schwarzenegger*, 374 F.3d at 802.

23  *Id.*  Here, the purposeful availment test applies because Plaintiff's claims, although ostensibly for tort, arise out of contracts.  *NxSystems, Inc. v. Monterey County Bank*,

24  2012 WL 4093932, at *6 (D. Or. Sept. 17, 2012); *accord Panthera Railcar LLC v. Kasgro Rail Corp.*, 2013 WL 1996318, at *4 (N.D. Cal. May 13, 2013).  In any

25  event, the result is the same under either test.

26       [6] Because the Plaintiffs fail to sufficiently plead facts that would plausibly

27  give rise to personal jurisdiction over the Latvian Defendants any request for jurisdictional discovery should be denied.  *See Getz v. Boeing Co.*, 654 F.3d 852,

**BUCKLEYSANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

c)    ***The FAC recognizes that Gusevs became a resident of California only after entering into the initial line of credit.***

According to the FAC the initial line of credit was agreed to in November 2003 (FAC, ¶ 43), while Gusevs became a resident of California in 2004 (FAC, ¶5). Courts routinely hold that a contracting party's unilateral move to a new forum after entering into a contract does not confer jurisdiction in the new forum, even if the contracting parties continue to do business after the move.  *See e.g. Walden*, 134 S.Ct. at 1123 ("unilateral activity of a plaintiff" is "insufficient" to establish jurisdiction; *Cadman v. Bond*, 603 F. Supp. 1335, 1337 (D. Mass. 1985) (holding that the defendant did not purposefully avail himself of Massachusetts where the defendant entered into a contract with a Florida resident for the purchase of a Florida sailboat and the seller-plaintiff later moved to Massachusetts, despite the fact that there were several relevant telephone conversations between the plaintiff and defendant while the plaintiff was in Massachusetts); *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) (no purposeful availment where the plaintiff moved from Europe to California after entering into a copyright license agreement with the defendant).  Moreover, the FAC's recognition that Gusevs became a resident of California in 2004 and that the initial loan agreement was entered into in 2003 effectively discredits Plaintiffs' claims that the "initial loan agreement [was] entered into in California" – *i.e.* Plaintiffs could not have entered into the initial line of Credit "in California," before Gusevs even moved to California.

860 (9th Cir. 2011) (affirming the denial of jurisdictional discovery where plaintiffs' allegations of jurisdictional contacts were attenuated, and plaintiffs failed to identify any "specific facts, transactions, or conduct" that might support the exercise of personal jurisdiction).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

### d)   *The FAC does not allege plausibly that Gusevs was a full-time resident of California.*

Plaintiffs were careful in their *amended* complaint to avoid re-pleading certain allegations set forth in their original complaint regarding Guesvs' residency status: that "Viktors Gusevs is . . . a resident of the State of California pursuant to an EB-5 visa…." (Original Compl., ¶ 4).  Presumably, Plaintiffs omitted this allegation from their amended complaint because an EB-5 visa is intended to be temporary and, unless converted to a green card, only entitles the holder to residence for a two-year period.  *See* 8 C.F.R. § 216.6 (describing two year conditional residence and green card application process).  Moreover, as recently as August 2014, Gusevs claimed an entirely different E-2 residency status and explicitly stated through counsel that this status conferred only "part-time" residency in California.  Beḷavskis Decl., Ex.A (attaching a letter from Gusevs' U.S. counsel stating the Gusevs' is only a part-time resident of California).  Further, as of **October 16, 2006**, Gusevs had officially declared his residence with the Latvian government to be in Latvia.  Smislajeva Decl., Ex. M (certification from Latvian Office of Citizenship as of August 2013 verifying Gusevs' residence to be in Latvia as of August 19, 2006).  Given Gusevs' prior pleadings and official statements, it is hardly clear that Gusevs was full-time resident of California at any relevant point, i.e., in 2003, when the initial credit line agreement was made, in 2010, when Citadele employees allegedly made the allegedly false statements to Gusevs, or in 2012 and 2013, when Citadele supposedly made other allegedly false statements.  Indeed, given all of the inconsistent positions taken by Gusevs on his residency status,[7] the allegations of the FAC regarding his supposed full-time California residency are implausible and thus are not entitled to a presumption of truth.

---

[7] For reference, a list of Gusevs' claims about his residency status are include in Appendix A.

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL: (310) 424-3900 • FAX (310) 424-3960

### e) The FAC does not allege that Gusevs was physically present in California when any of the alleged communications occurred.

Even if the FAC is read to generally allege that the offending communications occurred while Gusevs was a full-time resident of California, being a resident of California and being physically present in California are two different things. For example, one can reside in California while also being physically present in Latvia. Given that Gusevs alleges that he controls nine Latvian entities that own more than 80 properties in Latvia (FAC, ¶ 55), it is likely that much of his time was spent in Latvia, even if he was a resident of California. For example, despite Gusevs' alleged status as a California resident, Gusevs supported his opposition to Ripplewood's motion to dismiss with a declaration (Dkt. 36) signed by him in Riga, Latvia. Moreover, Gusevs' entities were allegedly involved in real estate investment and development internationally. If so, many of the alleged communications may have taken place while Gusevs was abroad. Nevertheless, even if Gusevs had alleged that he was in California when each alleged communications occurred, it should not matter: "[b]oth [the Ninth Circuit] and the courts of California have concluded that ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985).

### f) The FAC does not allege how the Latvian Bank purportedly acquired "knowledge" that Gusevs was "in the United States."

In conclusory fashion the FAC claims that the Latvian Bank and its officers had knowledge that Gusevs was residing in the United States. (FAC, ¶ 60). However, the FAC does not say when or how the Latvian Bank or its employees would have acquired such knowledge. *See id.* Without even a modicum of factual support, Plaintiffs' conclusions regarding Defendants' knowledge cannot be

credited. *Swartz*, 476 F.3d at 766.   And, in any event, as *Walden* explains, mere "knowledge" of plaintiff's contacts with the forum is insufficient to establish purposeful availment. *Walden*, 134 S.Ct. at 1124.

### g)   *The FAC's allegations regarding Gusevs' Malibu homes are irrelevant and are lacking in candor.*

The FAC implies that Guesvs' alleged ownership of two Malibu homes somehow cures defects in the Original Complaint's jurisdictional allegations.  As set forth below, the allegations regarding the Malibu homes are insufficient to cure the defect and, indeed, appear to be an effort to mislead the Court.

*First*, allegations regarding any property owned by Gusevs personally, including the Malibu properties, are irrelevant because Gusevs is not a party to any of the loan agreements at-issue.  (FAC, ¶¶ 19, 5, 43, 44).  Because the FAC correctly acknowledges that Gusevs, not his Latvian entities, acquired the Malibu homes these properties are irrelevant to the dispute outlined in the FAC. *Id.*

*Second*, the Malibu properties were acquired with funds from U.S. based banks and Citadele does not maintain a security interest in the Malibu homes (and never has).  Plaintiffs' Original Complaint correctly acknowledged these facts (*see* Original Compl., ¶ 18), but the Amended Complaint alleges, without explanation, that the Malibu properties "secured" the Latvian lines of credit and implies that defendants in this case were somehow directly involved in California foreclosures. (FAC, ¶ 20).[8]  This is not true.  The Latvian lines of credit are secured by property in Latvia, not California, and the funds used to acquire Gusevs' Malibu homes were from U.S. based banks not at-issue in this litigation.  The facts are confirmed by numerous sources:

_____

[8] Courts may consider allegations in previous complaints in determining the plausibility of the current pleadings. *See e.g. Gammel,* 2013 WL 1947525, at *5.

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

(1) In a verified complaint filed in Los Angeles Superior Court on May 31, 2016, Gusevs confirms that he acquired the 21650 Pacific Coast home in 2004 and that he refinanced it in 2007 with a $6.5 million loan from Washington Mutual to serve as his "personal residence." (Levin Decl., ¶ 4, Ex. F, at 5) (the "Verified State Complaint"); *see also* Levin Decl., ¶ 3, Ex. E (2004 deed of trust from Washington Mutual).

(2) Publically filed land records show that Gusevs' acquired the 3211 Colony View property in 2006 with two loans (totaling $3.82 million) from America's Wholesale Lender. (Levin Decl., ¶ 3, Exs. C and D).

(3) The initial lines-of-credit (Exhibits G and H to Smislajeva Decl.) themselves confirm that all of the properties that serve as collateral on those loans are located in Latvia;

(4) The 2006 agreements (Exhibits J, K, L to Smislajeva Decl.) also confirm that all of the properties that serve as collateral on those loans are located in Latvia;

(5) For avoidance of doubt, Citadele has affirmed that it does not (and never did) maintain a security interest in any of Gusevs' California properties. Beļavskis Decl., ¶ 12.

Accordingly, Plaintiffs' claims regarding Guesvs' Malibu homes are irrelevant, and even if relevant, should not be credited because they are not only inconsistent with the Original Complaint but also inconsistent with judicially noticeable documents of indisputable authority. *See Dychiuchay v. Greishaber*, 2015 WL 3708249, at *4 (D. Nev. Jun. 15, 2015) (sanctioning the plaintiff and explaining that the court cannot ignore allegations in an initial pleading simply because the allegations were omitted in an amended filing).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

h)  ***The FAC does not identify even a single communication between Mr. Beļavskis and Gusevs while Gusevs was a resident of the United States.***

While the FAC, generously read, claims that certain Latvian Bank employees emailed and telephoned Gusevs while he was a resident of the United States, none of the allegations relate to Mr. Beļavskis personally and cannot be attributed to him.[9]  *Calder v. Jones*, 465 U.S. 783, 790 (1984) (each defendant's contacts must be assessed separately); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.").  In that the allegations of the FAC fail to establish jurisdiction over Citadele, it follows even more strongly that these same allegations fail to establish that this Court has jurisdiction over Mr. Beļavskis.

## 2.  Plaintiffs' Claims Arise Out of Conduct in Latvia.

Plaintiffs have not and cannot establish that the conduct complained of arises out of any conduct *directed* to this state.  Under the second prong of the jurisdictional analysis, a plaintiff must establish that its claim arises out of or results from the defendant's forum-related activities.  *Schwarzenegger*, 374 F.3d at 802.  In the Ninth Circuit, courts use a "but for" standard to analyze the connection between the defendant's alleged conduct and the plaintiff's cause of action, i.e. but for Defendant's contacts with California, would plaintiff's claims have arisen?  *Lisa McConnell, Inc. v. Idearc, Inc.*, 2010 WL 364172, at *6 (S.D. Cal. Jan 22, 2010).  This standard requires that there be a "nexus" between the cause of action and the defendant's activities in the forum.  *Id.*

---

[9] As set forth in the Beļavskis Declaration filed concurrently herewith, Mr. Beļavskis has only spoken with Gusevs once, in-person, in Riga, Latvia.  Beļavskis Decl. at ¶ 8.

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

Here, as discussed above, the conduct complained of was all directed to Latvia, not California.  All of the parties to the underlying agreements were Latvian and, as explained above, all of the properties used to secure the line of credit are all in Latvia.  (FAC, ¶¶ 6, 7, 44, 65, 74).  The alleged improper conduct – the wrongful foreclosures – also occurred in Latvia.  *Id*.  The alleged connection to California – Gusevs' residence – is wholly incidental to the allegations in the FAC.  Thus, even assuming the truth of the allegations pled, the conduct described in the Complaint would have occurred regardless of Gusevs' residence in California.

### 3.    Exercising Jurisdiction Over the Latvian Defendants Would Not Be Reasonable.

Assuming *arguendo* that the Plaintiffs are able to carry the burden on prongs one and two of the specific jurisdiction test (which they have not), the Court should still dismiss Citadele and Mr. Beļavskis because exercising jurisdiction over them would not be reasonable.  In the Ninth Circuit, courts consider the following seven factors in assessing reasonableness:  (1) the extent to which the defendant purposefully interjected itself into the affairs of the forum state; (2) the burden on the defendant; (3) conflicts of law between the forum and the defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).  Here, as discussed below, each of these factors favors dismissal:

*First*, as described above, Citadele's and Mr. Beļavskis' contacts with California are entirely based on one Plaintiff's alleged California residence.  Apart from Gusevs' alleged residence in California, Citadele and Mr. Beļavskis have no connection to this state.  Rather, they have carried out business in Latvia, with Latvian entities, regarding Latvian real property.

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

*Second*, the burden on the Latvian Defendants to defend themselves in this foreign forum would be substantial.  The Latvian Defendants have no employees, officers, or offices in the United States.  Beļavskis Decl., ¶¶ 3-4.  As such, all of the Latvian Bank's records and witnesses are thousands of miles away in Latvia.   *See id*.  Accordingly, the second factor favors dismissal.  *Rocke v. Canadian Automobile Sport Club*, 660 F.2d 395, 399 (9th Cir.1981) (burden on Quebec company to defend suit in California weighs against jurisdiction in California).

*Third*, based on the facts alleged in the FAC, this action presents a substantial conflict of law problem: the Plaintiffs seek redress for alleged auctions carried out "under Latvian law."  (FAC, ¶ 85).  Through this action Plaintiffs challenge not only Latvian judicial decisions, foreclosures, and authorized auctions, but also rulings issued by Latvian arbitration courts.  (FAC, ¶¶ 69-73).  Accordingly, based on the allegations of the FAC, a conflict between Latvian law and U.S. law is not only likely, but is exactly what the Plaintiffs seek.  Indeed, Plaintiffs have brought (and lost) several actions against Citadele in Latvia arising out of the same operative facts.[10]  In other words, it appears that Plaintiffs seek to circumvent *res judicata* in Latvia by filing this action in the United States.

*Fourth*, California's interest, if any, in adjudicating a dispute between Latvian entities concerning Latvian real property is minimal.

*Fifth*, because any witnesses and relevant evidence would be located in Latvia and would likely be in Latvian, efficiency concerns favor dismissal.  *Core-Vent Corp.*, 11 F.3d at 1489 (in evaluating this factor courts look to where the evidence and witnesses are located).

---

[10] *See* Smislajeva Decl. at ¶¶ 2-7, Exs. A-F.; Request for Judicial Notice, at 1-2. Citadele and Mr. Beļavskis reserve all aspects of their *res judicata* defenses, which they will present to the Court on the merits, if necessary, at the appropriate time.

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

*Sixth*, the Plaintiff would not be inconvenienced by having this dispute heard in Latvia.  The Plaintiffs are all Latvian, the underlying contracts are in Latvian, the underlying contracts provide that Latvian law governs, the properties are in Latvia, and the evidence and witnesses are in Latvia.  In any event, "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff . . . A mere preference on the part of the plaintiff for its home forum does not affect the balancing."  *Core-Vent*, 11 F.3d at 1490.  Accordingly, the sixth factor favors dismissal.  This is especially true when this dispute arises out of business that Plaintiffs, Latvian citizens, chose to conduct in Latvia and over which Plaintiffs have repeatedly filed suits in the Latvian courts.  *See* Request for Judicial Notice and Smislajeva Decl. ¶¶ 2-7, Exs. A-F.  Plaintiffs' preference for a California forum arises because they have lost repeatedly as *Plaintiffs* in the Latvian courts.  *Id*.

*Seventh*, because the "plaintiff bears the burden of proving the unavailability of an alternative forum" and because the Plaintiffs have not alleged (nor proven) that an alternative forum does not exist, the seventh factor also favors.  *Id*.

Accordingly, exercising jurisdiction over Citadele or Mr. Beļavskis would not be reasonable and they should be dismissed.

## II.   The Court Should Dismiss Citadele and Mr. Beļavskis on Forum Non Conveniens Grounds

In the event that the Court finds personal jurisdiction over Citadele or Mr. Belavskis, it should still dismiss Citadele and Mr. Beļavskis on *forum non conveniens* grounds.  Under the doctrine of *forum non conveniens*, courts have broad discretion to decline jurisdiction in favor of a more convenient forum outside the United States if the moving party shows: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal.  *Creative Tech., Ltd. v. Aztech Sys. PTE Ltd*., 61 F.3d 696, 703 (9th Cir. 1995).  Here, each of these requirements is satisfied.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

### A.    Latvia Is an Adequate Alternative Forum.

As several courts have already held, Latvia provides an adequate forum to adjudicate civil disputes. *Tkachyov v. Levin*, 1999 WL 782070, at *7 (N.D. Ill. Sept. 27, 1999) (Latvia is an adequate alternative forum); *Wellons, Inc. v. SIA Energoremonts Riga Ltd*., 2013 WL 5314368, at *11 (W.D. Wash. Sept. 20, 2013) (same).  This case is no different.

*First*, both Citadele and Mr. Beļavskis are amenable to service in Latvia, which presumptively satisfies this requirement.[11]  *See* Beļavskis Decl., ¶ 7; Grunte Decl., ¶ 10; *Leetsch v. Freedman,* 260 F.3d 1100, 1103 (9th Cir. 2001).

*Second*, in any event, Latvian law does provide an adequate alternative forum for the redress of Plaintiffs' grievances.  For example, Latvian Civil Law § 1459, provides a cause of action for fraud, which is what Plaintiffs principally complain of here.  Grunte Decl., ¶ 17.  Moreover, as explained in the Grunte Decl., Latvia's judicial system would provide a forum to adjudicate the issues raised in this action. Plaintiffs have provided no evidence that Latvian substantive law is any different or less favorable to them than California law.  *Id*. at ¶¶ 8-18.  Even then, the fact that substantive law in Latvia may be different or less favorable is irrelevant unless the remedy provided is "so clearly inadequate or unsatisfactory that it is no remedy at all."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).  Here, the Declaration of Ivars Grunte also demonstrates that the principal remedy available here, namely

---

[11] Citadele and Mr. Beļavskis (and the declarants on their behalf) express no opinion regarding the applicability of *forum non conveniens* to any other defendant or their amenability to service in Latvia.  Even if other defendants are not amendable to service in Latvia, the Court may still dismiss Citadele and Mr. Beļavskis on *forum non conveniens* grounds.  *See e.g. Watson v. Merrell Dow Pharms., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985); *CAE Inc. v. Three Cities Research, Inc*., 2009 WL 3839423, at *3, *5-*6 (D. Or. Nov. 16, 2009); *see also* Ripplewood's Motion to Dismiss, Dkt. No. 31, 15-24 (Aug. 5, 2016) (arguing that the RICO claim against Ripplewood should be dismissed).

MOTION TO DISMISS CITADELE AND MR.BELAVSKIS FOR LACK OF PERSONAL JURISDICTION

money damages, would likewise be available in Latvia, if Plaintiffs are ultimately successful.  Accordingly, Latvia is an adequate alternative forum.

### B.    Private Interest Factors Support Dismissal.

The private interest factors support declining jurisdiction in favor of Latvia. In the Ninth Circuit, courts consider the following seven private interest factors:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck v. Sundstrand Corp*., 236 F.3d 1137, 1145 (9th Cir. 2001) (internal quotations omitted).  Courts can look to any or all of these factors, but should arrive at a balanced conclusion, giving appropriate weight to each factor.  *Id.*

As discussed above in connection with the reasonableness of jurisdiction, the private interest factors favor Latvia: all of the witnesses would likely be in Latvia, any physical evidence would be in Latvia, it would be inconvenient for the Latvian defendants to litigate in California, and the cost of bringing witnesses from Latvia would likely be high.  In contrast, the Plaintiffs, Latvian entities and Latvian citizens, would not be unduly inconvenienced by proceeding in Latvia.

### C.    Public Interest Factors Support Dismissal.

The public interest factors also support declining jurisdiction in favor of Latvia.  In the Ninth Circuit, courts consider the following five public interest factors: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum.  *Id*. at 1147.

Here, each of these factors favor dismissal.  *First*, as discussed above, this dispute is between Latvian entities, Latvian individuals, and concerns Latvian real property.  The local interest of California is therefore either minimal or nonexistent.

*Second*, as noted below, this dispute is, in fact, governed by Latvian law, which U.S. courts will likely be less familiar with.  *Third*, litigating this eleven-plaintiff and six-defendant action will be unnecessarily burdensome on this Court and local juries, especially given the tenuous connection this case has to California.  *Fourth*, this case will add to what is an undoubtedly already congested docket.  *Fifth*, California taxpayers should not bear the significant costs of resolving a dispute centering around Latvian real property, especially where the only connection to this state is Gusevs' EB-5 visa, which Congress authorized to stimulate the U.S. economy, not burden it with foreign disputes.[12]

## III.   Alternatively, the Court Should Stay Proceedings in Favor of a Latvian Arbitration

Should the Court find that personal jurisdiction over the Latvian Defendants exists and should the Court decline to exercise its authority and dismiss the action on *forum non conveniens* grounds, the Court should stay this proceeding pursuant to 9 U.S.C. § 3, which provides that where an issue is referable to arbitration under a written agreement, the court "shall" stay the proceedings pending resolution of the arbitration.  *Monex Deposit Co. v. Gilliam*, 616 F. Supp. 2d 1023, 1024 (C.D. Cal. 2009) ("The FAA eliminates district court discretion and requires the court to compel arbitration of issues covered by the arbitration agreement."); 9 U.S.C. § 206 (A court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."); 9 U.S.C. § 208 (incorporating 9 U.S.C. § 1 *et seq.*); Fed. R. Civ. P. 12(b)(3).  Here, the dispute outlined in the FAC is covered by numerous arbitration

---

[12] *See* U.S. Citizenship and Immigrations Services, About the EB-5 Visa, available at: https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/about-eb-5-visa (Congress created the EB-5 program "to stimulate the U.S. economy.").

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

provisions.  For example, the initial line of credit provides the following:

> The Parties agree that any dispute, difference or claim, which arises from this Agreement, which relates to it or violation, termination or invalidity thereof shall be finally resolved by the Riga International Arbitration Court, in Riga, in accordance with the applicable legislation of the Republic of Latvia and the Rules of the Arbitration Court by a panel of a single arbiter in the Latvian language on the basis of documents submitted, or, at discretion of the Lender, in another court of the Republic of Latvia of the relevant jurisdiction.

Smislajeva Decl. at ¶8, Ex. G, at 18; Beļavskis Decl. ¶ 9-10.  Other loan agreements between Plaintiffs and Citadele (or Parex Bank) also contain similar arbitration provisions.  Smislajeva Decl. at ¶¶ 9-13, Exs. H-L; Beļavskis' Decl. at ¶ 9-10.[13]  In short, these arbitration provisions cover "any dispute, disagreement, controversy or claim" arising from or relating to the agreements.   The allegations and claims in the FAC are encompassed by these arbitration provisions.  *Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003) ("The preference for arbitration is particularly strong when the arbitration clause is broad. Clauses requiring arbitration of claims 'arising out of or relating to' a contract are considered broad."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (arbitration clauses covering claims "arising out" of the agreement are given the broadest possible construction); *Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343, 1352 (C.D. Cal. 2015) ("Where, as here, the arbitration provision applies to any disputes in connection with the contract, the provision reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.") (citations and quotations omitted); *Bell v. Blizzard Entm't, Inc.*, 2013 WL 12063912, at *3

---

[13] The Court may properly consider the loan agreements to decide an arbitration motion.  *Hadlock v. Norwegian Cruise Line, Ltd.*, 2010 WL 1641275, at *1 (C.D. Cal. Apr. 19, 2010).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1  (C.D. Cal. Apr. 3, 2013) (holding that arbitration provision covering "any dispute"

2  "arising" from the agreement covered tort and statute based claims); *Simula, Inc. v.*

3  *Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("To require arbitration, [plaintiff's]

4  factual allegations need only touch matters covered by the contract containing the

5  arbitration clause and all doubts are to be resolved in favor of arbitrability.").

6  Here, the FAC does not challenge, and, indeed, is premised on, valid

7  formation of the loan agreements containing these arbitration agreements.  (FAC, ¶¶

8  43-46).  The dispute outlined in the FAC falls squarely within these provisions:  the

9  essence of Plaintiffs' claims arises from these agreements.  As such, the dispute

10  outlined in the FAC is subject to arbitration and, at a minimum, the Court should

11  grant the Latvian Defendants' request for a stay.[14]

## CONCLUSION

13  For these reasons, the Court should grant the Latvian Defendants motion to

14  dismiss for lack of personal jurisdiction or on *forum non conveniens* grounds.

15  Alternatively, the Court should stay these proceedings pending arbitration in Latvia.

16  DATED:  October 20, 2016             Respectfully submitted,

17                                      BUCKLEYSANDLER LLP

19                                      By:  ___*/s/ Fredrick S. Levin*___

20                                           Fredrick S. Levin
21                                           *Attorneys for Defendants AS Citadele*
                                             *Banka and Guntis Belavskis*

_____

24  [14] As noted above, among other things, Plaintiffs challenged the validity of

25  the arbitration agreements in Latvia and their claims were rejected.  The Latvian
    Courts have upheld the validity of the arbitration provisions.  *See* Smislajeva Decl.

26  at ¶¶ 2-7, Exs. A-E (originals and translations of Latvian judicial decisions rejecting,

27  among other things, several attempts by Plaintiffs to invalidate the relevant
    arbitration provisions); *see also* Request for Judicial Notice, at 1-2.

**Appendix A**

| Date | Residency Claim | Source |
|---|---|---|
| Oct. 10, 2006 | Gusevs declares to the Latvian Office of Citizenship and Migration Affairs that his place of residence is as follows: Juras Iela 47, Jurmala, LV-2015 | Exhibit M to Smislajeva Declaration, at 3. |
| Aug. 19, 2013 | Gusevs' declaration with the Latvian Office of Citizenship and Migration Affairs is still on file and remains unchanged. | *Id.* |
| Aug. 22, 2014 | Gusevs claims to be a "part-time" resident of California pursuant to an "E-2 Visa." | Exhibit A to Beļavskis Declaration, at 1. |
| May 31, 2016 | Gusevs claims to be a "resident of the State of California pursuant to an EB-5 visa." | Original Complaint, ¶ 4. |
| Aug. 22, 2016 | Gusevs signs his declaration in support of Plaintiffs' Opposition to Ripplewood's Motion to Dismiss from Riga, Latvia. | *Gusevs et al. v. AS Citadele Banka et al.*, Case No. 16-3793, Dkt. No. 37 (Aug. 22, 2016 C.D. Cal.). |
| Sept. 29, 2016 | Gusevs claims to be "a resident of the State of California …since 2004." | First Amended Complaint, ¶ 5. |

**BUCKLEYSANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960