**BUCKLEYSANDLER LLP**
FREDRICK S. LEVIN (State Bar No. 187603)
flevin@buckleysandler.com
ALI M. ABUGHEIDA (State Bar No. 285284)
aabugheida@buckleysandler.com
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Telephone: (310) 424-3900
Facsimile: (310) 424-3960

*Attorneys for Defendants AS Citadele*
*Banka and Guntis Beļavskis*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIKTORS GUSEVS, an individual; VG BEHEER LATVIA, LLC, a foreign limited liability company; VG BEHEER LATVIA SIA, a foreign corporation; VG BEHEER JURMALA, LLC, a foreign limited liability company; VG BEHEER RIGA, LLC, a foreign limited liability company; BOTANIX, LLC, a foreign limited liability company; DEMENKOVA UN PARTNERI, a foreign partnership; LEGO TRANS, LLC, a foreign limited liability company; ANDRENU PARKS, LLC, a foreign limited liability company; GREENFIELD ENGURES SIA, a foreign corporation; and JEVGENIJS GUSEVS, a foreign individual, <br><br> Plaintiffs, <br><br> v. <br><br> AS CITADELE BANKA, a foreign corporation; GUNTIS BELAVSKIS, a foreign individual; VAS PRIVATIZATION AGENCY, a foreign corporation; RIPPLEWOOD ADVISORS LLC, a Delaware limited liability company; RA CITADELE HOLDINGS LLC, a Delaware limited liability company; and TIMOTHY C. COLLINS, an individual, <br><br> Defendants. | Case No. 2:16-cv-03793-SVW-AS <br><br> **DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BELAVSKIS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** <br><br> [Filed Concurrently with Declarations of Fredrick S. Levin, Guntis Beļavskis, Ivars Grunte, Nadezda Smislajeva, Defendants' Request for Judicial Notice, and Defendants AS Citadele Banka's and Guntis Beļavskis Motion to Dismiss under Fed. R. Civ. Pro. 12(b)(2)] <br><br> Date:   December 5, 2016 <br> Time:   1:30 p.m. <br> Crtrm.: 6 <br><br> The Hon. Stephen V. Wilson |

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on December 5, 2016, at 1:30 p.m., in Courtroom 6 of the United States District Court, Central District of California, Western Division, 312 North Spring Street, Los Angeles, California, or as soon thereafter as the matter can be heard before the Honorable Stephen V. Wilson, the undersigned Defendants will move to dismiss the claims against them.

This motion is made under Rule 12(b)(6).  It is based upon the Memorandum of Points and Authorities below, the declarations and request for judicial notice filed concurrently herewith, and on all records, documents, pleadings, and papers on file or to be filed in this action, arguments of counsel, and any other matters that may properly come before the Court for its consideration.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on October 6, 2016.


DATED:  October 20, 2016               Respectfully submitted,

                                       BUCKLEYSANDLER LLP



                                       By:    _/s/ Fredrick S. Levin_
                                              Fredrick S. Levin
                                              *Attorneys for Defendants AS Citadele*
                                              *Banka and Guntis Belavskis*

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BELAVSKIS' NOTICE OF MOTION AND MOTION TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 4

    I.     The Latvian Lines of Credit with Parex Bank ........................................ 4

    II.    Transfer of the Lines of Credit to Citadele ........................................... 4

    III.   Shortening the Term of the Lines of Credit ........................................... 4

    IV.   The Lines of Credit Mature – The "Work-Out" Agreements and
           Arbitration Proceedings ......................................................................... 5

    V.     The Latvian Foreclosures and Auctions ................................................ 5

    VI.   Gusevs' Malibu Homes ........................................................................... 6

    VII.  "The RICO Conspiracy" – Ripplewood's Acquisition of Citadele ........ 6

    VIII.  Allegations Regarding Mr. Beļavskis ..................................................... 6

ARGUMENT .............................................................................................................. 7

    I.     Plaintiffs' First and Second Causes of Action for Fraud Must Be
           Dismissed ................................................................................................ 7

        A.   Legal Standard ............................................................................... 7

           1.    General Standard Under 12(b)(6) ...................................... 7

           2.    Heightened Fraud Standard ................................................ 7

        B.   Plaintiffs' Fraud Claims Are Barred by the Statute of
              Limitations ..................................................................................... 8

        C.   Plaintiffs' Fraud Claims Are Barred by California's
              Economic Loss Rule ..................................................................... 10

        D.   Plaintiffs' Failed to Plead Their Fraud Claims With
              Sufficient Specificity ................................................................... 10

           1.    Plaintiffs' Intentional Misrepresentation Claim Is
                Not Pled With Sufficient Specificity ............................... 10

           2.    Plaintiffs' Fraud by False Promises Claim Is Not
                Pled With Sufficient Specificity ...................................... 14

ii

II.   Plaintiffs' Third Cause of Action Under RICO Must Be
      Dismissed. ........................................................................................15
      A.   Legal Standard ........................................................................15
      B.   Plaintiffs' RICO Claim Fails Because RICO Does Not
           Apply to Injuries Suffered in Latvia ...........................................15
      C.   Plaintiffs' RICO Claim Fails Because Plaintiffs Fail to
           Plead the Existence of a RICO Enterprise. ................................20
      D.   Plaintiffs' RICO Claim Fails Because Plaintiffs Fail to
           Plead a Pattern of Racketeering Activity ...................................22
      E.   Plaintiffs' RICO Claim Fails Because Plaintiffs Have Not
           Sufficiently Alleged Violations of Section 1962(a), (b),
           (c), or (d) ................................................................................23

III.  Any Claims By VG Beheer Latvia LLC Must Be Dismissed
      Because It Lacks Capacity to Sue Under California Law ...................25

CONCLUSION .........................................................................................25

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION
TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

## __TABLE OF AUTHORITIES__

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................7

*Baumer v. Pachl,*
  8 F.3d 1341 (9th Cir.1993) .....................................................................25

*Beckwith v. Dahl,*
  205 Cal. App. 4th 1039 (2012) ...............................................................14

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)..............................................................................7, 8

*Bodam v. GTE Corp.,*
  197 F. Supp. 2d 1225 (C.D. Cal. 2002). .................................................24

*Bourhis v. Lord,*
  56 Cal. 4th 320 (2013) ............................................................................25

*Bridge v. Phoenix Bond & Indem. Co.,*
  553 U.S. 639 (2008)................................................................................18

*Cameron v Cameron,*
  88 Cal. App. 2d 585 (1948) ....................................................................11

*Chaset v. Fleer/Skybox Int'l, LP,*
  300 F.3d 1083 (9th Cir. 2002) ................................................................18

*City & Cty. of San Francisco v. Spencer,*
  2003 WL 23119283 (N.D. Cal. Dec. 29, 2003).....................................21

*Desaigoudar v. Meyercord,*
  223 F.3d 1020 (9th Cir. 2000) ..................................................................8

*Destfino v. Reiswig,*
  630 F.3d 952 (9th Cir. 2011) ..................................................................21

*Eclectic Props. East, LLC v. Marcus & Millichap Co.,*
  751 F.3d 990 (9th Cir. 2014) ....................................................................8

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION
TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

*Emrich v. Touche Ross & Co.*,
   846 F.2d 1190 (9th Cir. 1988) ...................................................................8

*Federal Reserve Bank of San Francisco v. HK Systems*,
   1997 WL 227955 (N.D. Cal. Apr. 24, 1997).........................................23

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal.4th 797 (2005) ...............................................................................9

*Gammel v. Hewlett-Packard Co.*,
   2013 WL 1947525 (C.D. Cal. May 8, 2013).........................................17

*Gerritsen v. Warner Bros. Entm't Inc.*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) ..................................................22

*Giles v. Gen. Motors Acceptance Corp.*,
   494 F.3d 865 (9th Cir. 2007) ..................................................................10

*Graf v. Peoples*,
   2008 WL 4189657 (C.D. Cal. Sept. 4, 2008) ........................................22

*Guaranty Trust Co. of New York v. York*,
   326 U.S. 99 (1945)......................................................................................8

*Guerrero v. Gates*,
   110 F. Supp. 2d 1287 (C.D. Cal. 2000) ..................................................24

*Hoey v. Sony Elecs. Inc.*,
   515 F. Supp. 2d 1099 (N.D. Cal. 2007)..................................................17

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ..................................................................25

*In re GlenFed, Inc. Secur. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ....................................................................8

*Jolly v. Eli Lilly & Co.*,
   44 Cal.3d 1103 (1998) .........................................................................1, 9

*Keel v. Schwarzenegger*,
   2009 WL 1444644 (C.D. Cal. May 19, 2009)........................................19

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION
TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

*Kline v. Turner*,

    87 Cal. App. 4th 1369 (2001) ...................................................................9

*Lewis v. Sporck*,

    612 F. Supp. 1316 (N.D. Cal. 1985)......................................................23

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*,

    431 F.3d 353 (9th Cir. 2005) ................................................................15

*Mattel, Inc. v. MGA Entertainment, Inc.*,

    782 F. Supp. 2d 911 (C.D. Cal. 2011) ..................................................18

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,

    2007 WL 2206946 (S.D. Cal. July 27, 2007) .......................................15

*Moore v. Kayport Package Express, Inc.*,

    885 F.2d 531 (9th Cir. 1989) ................................................................15

*Mullen v. Sweetwater Dev. Corp.*,

    619 F. Supp. 809 (D. Colo. 1985).........................................................23

*Odom v. Microsoft Corp.*,

    486 F.3d 541 (9th Cir. 2007) ....................................................20, 21, 22

*Pac. Mar. Freight, Inc. v. Foster*,

    2010 WL 3339432 (S.D. Cal. Aug. 24, 2010).......................................21

*Palm Valley Homeowners Ass'n, Inc. v. Design MTC*,

    85 Cal. App. 4th 553 (2000) .................................................................25

*Powell v. Wells Fargo Home Mortg.*,

    2015 WL 4719660 (N.D. Cal. Aug. 7, 2015). ...................................3, 23

*RJR Nabisco, Inc. v. European Cmty.*,

    136 S. Ct. 2090 (2016).................................................................2, 16, 17

*Serv. by Medallion, Inc. v. Clorox Co.*,

    44 Cal. App. 4th 1807 (1996) ...............................................................11

*Swartz v. KPMG LLP*,

    476 F.3d 756 (9th Cir. 2007) ..........................................................13, 14

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION
TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

*Tate v. Bd. of Prison Terms*,
  2010 WL 1980141 (C.D. Cal. Apr. 9, 2010) ........................................................18

*Tenzer v. Superscope, Inc.*,
  39 Cal.3d 18 (1985) ........................................................................................14

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...............................1, 10, 12, 15

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
  245 F.3d 1048 (9th Cir. 2001) ............................................................12

*United States v. Robertson*,
  74 F.3d 1247 (9th Cir. 1996) ..............................................................24

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................8, 11

*Yourish v. California Amplifier*,
  191 F.3d 983 (9th Cir. 1999) .................................................................8

**Statutes**

18 U.S.C. § 1962(a) ................................................................................24

18 U.S.C. § 1962(b) ................................................................................24

Cal. Code Civ. P. § 338(d) ...................................................................1, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................1

Fed. R. Civ. P. 9(b) ..............................................................................7, 8

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

vii

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

## INTRODUCTION

Defendants AS Citadele Banka ("Citadele" or "Bank") and Guntis Beļavskis hereby move to dismiss Plaintiffs' causes of action for (1) intentional misrepresentation, (2) fraud by false promises, and (3) RICO violations. These claims should be dismissed for the reasons set forth below. Fed. R. Civ. P. 12(b)(6).

*First*, Plaintiffs' fraud claims (*i.e.* intentional misrepresentation and fraud by false promises) are barred by the statute of limitations. In California, the three-year limitations period for fraud claims begins to run once the Plaintiffs become aware of facts sufficient to make a reasonably prudent person suspicious of fraud. *See Jolly v. Eli Lilly & Co*., 44 Cal.3d 1103, 1111 (1998); Cal. Code Civ. P. § 338(d). Here, Plaintiffs were confronted with the alleged fraud in 2012, the time when, according to the First Amended Complaint ("FAC"), Citadele was required to, but did not, extend the maturity date on the Plaintiffs' lines of credit despite its alleged previous promise to do so. At this time, the Plaintiffs should have not only been suspicious of the alleged fraud, but actually aware of it. Accordingly, as pled in the FAC, the limitations period began to run in 2012. Because the FAC was filed in 2016 – more than three years later – Plaintiffs' purported fraud claims are time-barred.

*Second*, Plaintiffs' fraud claims are also barred by California's economic loss rule, which bars tort claims based on an alleged failure to perform an oral agreement. *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc*., 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015). Here, Plaintiffs have brought fraud claims for purely economic loss resulting from an alleged failure to perform an oral agreement. If anything, these claims sound in contract, not tort, and must be dismissed.

*Third*, even if Plaintiffs' fraud claims were timely and were not barred by the economic loss doctrine, the FAC does not plead sufficient facts to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. The FAC does not identify the "who, what, where, when, and how" that is required for fraud claims. Instead, Guesvs alleges that there were "over 100 emails" and "40 telephone calls" between

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

him and Citadele "representatives" that allegedly occurred while he was residing "in the United States." (*See e.g.* FAC ¶¶ 27, 64, 68, 77). He further claims that at some point during these hundreds of communications that Citadele representatives made a series of misrepresentations to him. *See id*. However, Plaintiffs' FAC never identifies who actually said what and when. Such allegations are insufficient under Rule 9(b).

*Fourth*, Plaintiffs' RICO claims must be dismissed under *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2111 (2016), which requires dismissal of all private plaintiff RICO claims in which no domestic injury is alleged. Here, the Latvian Plaintiffs' injury, if any, occurred in Latvia where the alleged wrongful foreclosures occurred and where the Latvian Plaintiffs are located. The Court recognized this deficiency and dismissed Plaintiffs' Original Complaint. Order Granting Ripplewood's Motion to Dismiss ("Order"), Dkt. No. 51., at 10 ("[N]one of the injuries in question to businesses or properties appear to have occurred within the United States, as all of the entities and properties in question are Latvian."). The FAC insinuates that Parex (or Citadele) secured the lines of credit extended by it with two parcels of California real estate located in Malibu, California and that this cures the defect identified by the Court. It does not. The FAC admits that it was Gusevs' Latvian entities that acquired the lines of credit from the Latvian banks (FAC, ¶¶ 43-44) at-issue, while he acquired the Malibu properties in his own name. (FAC, ¶ 19). Further, publically available land records and Gusevs' own verified complaint filed in the Los Angeles County Superior Court confirm that Gusevs acquired the Malibu properties in his own name with credit extended by Washington Mutual FA and by America's Wholesale Lender, not Parex or Citadele. Indeed, the lines of credits themselves, judicially noticeable land records relating to the Malibu homes, and the concurrently filed Declaration of Guntis Beļavskis[1] all confirm that

_____

[1] The Beļavskis Declaration is mentioned for illustrative purposes. The

2

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

Citadele does not (and never did) maintain a secured interest in the Malibu homes and that Citadele has not directed or otherwise been involved in any California foreclosure. The FAC's statements and insinuations to the contrary mislead the Court.

*Finally*, even if Plaintiffs had alleged a domestic injury, Plaintiffs have failed to plead their RICO claims with sufficient specificity. To start, Plaintiffs' RICO count is deficient because it fails to identify which subsection of 18 U.S.C. § 1962 applies to any particular allegation of the Complaint. *See e.g. Powell v. Wells Fargo Home Mortg.*, 2015 WL 4719660, at *13 (N.D. Cal. Aug. 7, 2015). Moreover, even assuming that all allegations in the FAC applied to the RICO count, Plaintiffs do not sufficiently allege the existence of a RICO "enterprise" nor do they identify a pattern of "racketeering activity." Based on the allegations in the FAC, Plaintiffs have failed to identify a "common purpose," an "ongoing organization," or a "continuing unit," each of which is necessary to a RICO enterprise. Instead, the FAC complains of Latvian foreclosures carried out entirely by Citadele and attempts to tie those foreclosures to the sale of an interest in the Latvian Bank. However, other than unsupported conclusory allegations that other defendants are "alter-egos" of one another, the FAC fails to identify any actual participation in the alleged conspiracy by any defendant other than Citadele. Putting aside that the allegations against Citadele are wholly insufficient for other reasons, a conspiracy of one is an oxymoron.

---

Beļavskis Declaration is properly before the Court in connection with the concurrently filed motion to dismiss under Fed. R. Civ. Pro. 12(b)(2).

3

# STATEMENT OF FACTS[2]

## I.     The Latvian Lines of Credit with Parex Bank

Plaintiffs' allegations begin with VG Beheer Latvia SIA entering into an agreement for a line of credit with Parex Bank in November 2003.  (FAC, ¶ 43).  The Plaintiffs claim that three years later, in 2006, this line of credit was "divided among" three newly formed entities – VG Beheer Jurmala LLC, VG Beheer Riga LLC, and Botanix LLC – each of which is a Plaintiff in this case.  (FAC, ¶ 44).  The loan was allegedly taken out for the purpose of developing real estate "in the United States and internationally."  (FAC, ¶ 43).

## II.     Transfer of the Lines of Credit to Citadele

In November 2008, the Latvian government took over Parex Bank as a result of the financial crisis.  (FAC, ¶ 47).  In early 2010, an agency of the Latvian government, Defendant VAS Privatization Agency ("VAS Privatization"), transferred the "good assets" of Parex Bank to a newly formed entity, defendant Citadele.  (FAC, ¶¶ 53-54).  VAS Privatization owned approximately 75% of the new bank and approximately 25% was owned by the European Bank for Reconstruction and Development. (FAC, ¶ 55).

## III.     Shortening the Term of the Lines of Credit

Plaintiffs allege that in 2010, after the Latvian government seized control of Parex Bank, and the Plaintiffs' lines of credit were transferred to Citadele, that at the behest of Ripplewood, Citadele asked Gusevs to shorten the term of the credit lines from 2018 to 2012.  (FAC, ¶¶ 62, 63).  Plaintiffs allege that Citadele told Gusevs that (a) a subsequent buyer of Citadele would be required to extend the term of the lines of credit to Plaintiffs and (b) if Citadele was not sold, its existing officers

---

[2] Citadele and Mr. Beļavskis include a description of the relevant *allegations* for illustrative purposes only.  Citadele and Mr. Beļavskis reserve all rights to contest the truth and/or accuracy of any and all allegations in the Complaint and the FAC, if needed, when appropriate.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

4

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION
TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

1  would extend the term of the lines of credit.  (FAC, ¶¶ 63, 64) ("Extension
2  Allegation").  On this basis, Plaintiffs agreed to shorten the term of the line of credit.
3  (FAC, ¶ 65).

4  **IV.   The Lines of Credit Mature – The "Work-Out" Agreements and**
5  **Arbitration Proceedings**

6       In 2012, before the lines of credit came due, Plaintiffs allege that, at the
7  behest of Ripplewood, Citadele told them that it would be filing arbitration
8  proceedings against them "but only so the Bank could write off the loans, thereby
9  making the Bank more appealing to potential purchasers."  (FAC, ¶ 68).  Plaintiffs
10  further allege that Citadele told Gusevs that if he did not contest the arbitration
11  proceedings, Citadele would not enforce the judgments, but would agree to payment
12  "work-outs." (FAC, ¶¶ 69-71) ("Arbitration and Workout Allegation").
13  Presumably, Citadele brought the arbitrations because Plaintiffs were unable or
14  unwilling to pay the line of credit when it came due in 2012.  However, the FAC is
15  silent in this respect.

16       In June 2012, once arbitration judgments were rendered against all of the
17  Plaintiffs, Citadele entered into a workout agreement with VG Beheer Latvia SIA,
18  but not with the other Plaintiffs.  (FAC, ¶ 74).  The agreement required monthly
19  interest payments and biannual principal payments.  (FAC, ¶ 75).

20       In 2013, Plaintiffs allege that Citadele informed VG Beheer Latvia SIA that it
21  did not need to make its principal payment and that the funds could be used for other
22  projects.  (FAC, ¶ 77).  Plaintiffs claim that on the basis of Citadele's
23  representations they used the money they would have provided to Citadele for other
24  projects and that when Citadele demanded payment the money had already been
25  spent.  (FAC, ¶¶ 77-79) ("Principal Payment Allegation").

26  **V.   The Latvian Foreclosures and Auctions**

27       Plaintiffs claim that in March 2014, after the foregoing events, Citadele,
28  through an auctioneer, "began auctioning off the real properties in Latvia to repay

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

5

the unopposed judgments....”  (FAC, ¶ 82).  Plaintiffs claim that because “under Latvian law” a judicial executor handling the foreclosure sale appraises the value of the foreclosed property at “approximately 50%” of the fair market value of the property, foreclosures are “always disadvantageous to the debtor, yet favorable to the Bank and the buyer.”  (FAC, ¶ 85).  From the FAC, it is unclear how many properties have been auctioned.  Plaintiffs allege both (1) that 80 properties have been auctioned off and (2) that approximately 50 properties have been auctioned off with 30 more to be sold.  (Compare FAC ¶ 99 with FAC ¶ 84).

## VI.  Gusevs’ Malibu Homes

The FAC alleges that “Plaintiffs’ lines of credit with the Bank were secured by real estate in California, including…real estate investment properties located at 21650 Pacific Coast Highway, Malibu California and 3211 Colony View Circle, Malibu California 90265” and that these California properties are also facing foreclosure “due to the RICO Defendants’ fraudulent scheme.”  (FAC, ¶ 20).  The FAC also suggests that Gusevs acquired these properties in his name after he moved to California, supposedly in 2004.  (FAC, ¶ 19).

## VII.  “The RICO Conspiracy” – Ripplewood’s Acquisition of Citadele

Finally, Plaintiffs allege that in September 2014, as the Latvian auctions were occurring, VAS Privatization sold its 75% interest in Citadele to a consortium of investors led by Ripplewood Advisors, LLC, RA Citadele Holdings LLC”) and Timothy C. Collins, CEO of the Ripplewood entities (collectively, “Ripplewood).  (FAC, ¶ 91).  Plaintiffs claim that Ripplewood acquired its interest in Citadele via a “rigged” bidding process and that Ripplewood had knowledge of the foregoing Latvian foreclosures, which were part of a scheme to reduce the book value of Citadele while also generating profits.  (FAC, ¶¶ 93).

## VIII.  Allegations Regarding Mr. Beļavskis

Plaintiffs allege that Mr. Beļavskis is a “citizen of Latvia” and that from 2010 to 2014 he was a Member of the Supervisory Board *or* Chairman of the Supervisory

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

6

Board for AS Citadele Banka.  (FAC, ¶ 12.)[3]  In addition, Plaintiffs' FAC includes several conclusory statements regarding Mr. Beļavskis' involvement in the alleged scheme, including that he "hatched" the fraud (FAC, ¶ 30), that he had "actual knowledge" that Gusevs' was a California resident (FAC, ¶ 60), that he "caused" others to communicate with Gusevs (FAC, ¶ 68), and that he was involved in causing the Latvian properties to be auctioned (FAC, ¶ 90).  However, other than these conclusory recitations of legal elements, Plaintiffs' FAC contains no factual statements regarding Mr. Beļavskis.

## ARGUMENT

### I.  Plaintiffs' First and Second Causes of Action for Fraud Must Be Dismissed

#### A.   Legal Standard

##### 1.   General Standard Under 12(b)(6)

A complaint should be dismissed pursuant to Rule 12(b)(6) unless it contains sufficient facts, which if accepted as true, "'state a claim to relief that is plausible on its face.' . . . [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*

##### 2.   Heightened Fraud Standard

In addition to the "plausibility" pleading standard, the Federal Rules of Civil Procedure impose a supplemental, heightened pleading standard on all averments of fraud.  Fed. R. Civ. P. 9(b); *Twombly*, 550 U.S. at 569, fn. 14.  Under this

---

[3] *Compare with* Beļavskis Decl. at ¶ 1 n. 1 (explaining Mr. Beļavskis' actual position at Citadele).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

heightened pleading standard, the circumstances constituting fraud must be stated "with particularity" and "with a high degree of meticulousness." Fed. R. Civ. P. 9(b); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022–23 (9th Cir. 2000). Thus, a plaintiff's complaint does not state a fraud claim unless it contains sufficiently particularized allegations that state a plausible claim for relief. *Twombly*, 550 US at 569, fn. 14; *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995, fn. 5 (9th Cir. 2014) (plausibility analysis "applies equally to Rule 9 as it does to Rule 8").

Courts in the Ninth Circuit interpret Rule 9(b) to require that the complaint: (1) specify the alleged fraudulent representations (or omissions); (2) allege the representations were false when made; (3) identify the speaker of the alleged fraudulent representations; (4) state when and where the statements were made; and (5) state the manner in which the representations (or omissions) were false and misleading. *See e.g. In re GlenFed, Inc. Secur. Litig.*, 42 F.3d 1541, 1547, fn. 7 (9th Cir. 1994); *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must include 'the who, what, when, where, and how' of the misconduct charged).

**B.    Plaintiffs' Fraud Claims Are Barred by the Statute of Limitations**

Plaintiffs' fraud claims are barred by California's three year statute[4] of limitations for fraud because, assuming the truth of the allegations in the FAC, Plaintiffs should have been aware of their claims more than three years before they filed their FAC.

---

[4] *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945) ("As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law."); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) (in diversity cases, federal courts apply whatever tolling provisions are recognized under state law).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1       Under California law, a 3-year statute of limitations applies to an "action for

2  relief on the ground of fraud or mistake." Cal. Code Civ. P. § 338(d).  The cause of

3  action accrues, and the 3-year limitations period begins to run, when the plaintiff

4  obtains knowledge of facts sufficient to make a reasonably prudent person

5  suspicious of fraud. *See Jolly*, 44 Cal.3d at 1111.  In other words, a fraud claim

6  accrues when a plaintiff has notice or information of circumstances sufficient to put

7  a reasonable person on inquiry, i.e., when "the plaintiff suspects or should suspect

8  that her injury was caused by wrongdoing."  *Id*. at 1110; *see also Fox v. Ethicon*

9  *Endo-Surgery, Inc*., 35 Cal.4th 797, 807 (2005) ("we look to whether the plaintiffs

10  have reason to at least suspect that a type of wrongdoing has injured them").

11       This occurs, for example, when the plaintiff "should reasonably have

12  suspected a possible explanation for [defendant's] action was something other than

13  negligence." *Kline v. Turner*, 87 Cal. App. 4th 1369, 1375 (2001).  In *Kline*, the

14  court held that plaintiff's fraud claim accrued when he discovered that, contrary to a

15  prior agreement, a recording company had made out a check to his agent rather than

16  to him. *Id*., at 1375.  When confronted with such an "inexplicable act," the plaintiff

17  should have investigated further and would have discovered the fraud; accordingly,

18  the statute of limitations on plaintiff's fraud claim began to run on the date the

19  "inexplicable act" occurred. *Id*.

20       Here, according to the FAC, Plaintiffs were presented with just such an

21  "inexplicable act" in 2012 when Citadele did not extend the lines of credit despite

22  Citadele's alleged prior assurances that it would do so. (*See* FAC, ¶ 63 (alleging

23  that Citadele promised to extend the lines of credit), ¶¶ 64, 68-70 (alleging that

24  Citadele did not extend the lines of credit but instead sought arbitration)).  Citadele's

25  purported failure to lengthen the lines of credit despite its previous promises to do

26  just that, is the sort of "inexplicable act" that California courts have held to begin the

27  running of the statute of limitations on a fraud claim. *See Kline*, 87 Cal. App. 4th at

28  1375.  Because this "inexplicable act" occurred at some point in 2012—well over

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION
TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

three years before Plaintiffs filed suit—the fraud claims in the FAC are untimely and must be dismissed.

### C.   Plaintiffs' Fraud Claims Are Barred by California's Economic Loss Rule

Plaintiffs' fraud claims, which are based on Citadele's failure to perform in connection with alleged oral agreements, are barred by California's economic loss rule.  In short, the economic loss doctrine can be described as follows:

> Broadly speaking, the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort.  The term 'economic loss' refers to damages that are solely monetary, as opposed to damages involving physical harm to person or property.  The economic loss doctrine provides that certain economic losses are properly remediable only in contract.  [It] has roots in common law limitations on recovery of damages in negligence actions in the absence of physical harm to person or property.

*Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007).  Here, Plaintiffs complain of purely economic loss arising out of alleged written and oral agreements, namely losses resulting from alleged wrongful foreclosures in Latvia. If anything, these claims sound in contract, not tort, and all of Plaintiffs' fraud claims must be dismissed.  *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1103 (dismissing fraud claims pursuant to the economic loss doctrine because the fraud claims arose out of an alleged failure to perform an oral agreement).

### D.   Plaintiffs' Failed to Plead Their Fraud Claims With Sufficient Specificity

#### 1.   Plaintiffs' Intentional Misrepresentation Claim Is Not Pled With Sufficient Specificity

Plaintiffs' cause of action for intentional misrepresentation must be dismissed because it was not pled with sufficient specificity.  Under California law, a complaint for intentional misrepresentation must allege sufficient facts to plausibly

10

establish the following elements: "(1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." *Serv. by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996) (combining misrepresentation and scienter as a single element). With the exception of the second element—the intent to deceive or induce reliance—each of these elements must be pled with particularity, i.e., the complaint must allege the "the who, what, when, where, and how." *Vess*, 317 F.3d at 1106. Here, Plaintiffs' allegations fail to meet this standard for several reasons:

*First*, assuming the truth of allegations pled, Plaintiffs' reliance on Citadele's misrepresentations was not justifiable. A plaintiff has a duty to investigate the truth of the facts represented if he or she is aware of circumstances indicating that a defendant's representations may be false. *Cameron v Cameron*, 88 Cal. App. 2d 585, 593-94 (1948) ("If [a plaintiff] becomes aware of facts that tend to arouse his suspicion, or if he has reason to believe that any representations made to him are false or only half true, it is his legal duty to complete his investigation and he has no right to rely on statements of the other contracting party."). Here, Plaintiffs were aware of circumstances indicating that Defendant's representations were false when, according to the FAC, Citadele did not extend the maturity date on the lines of credit despite its previous promise to do so. At this point, Plaintiffs' were aware of the alleged fraud. Instead of investigating, according to the FAC, Plaintiffs continued to rely on Defendant's alleged misrepresentations without conducting any further investigation. Plaintiffs' apparent blind reliance on assurances (1) that the lines of credit would be unconditionally extended, (2) that arbitration proceedings did not need to be contested, and (3) that payments did not need to be made, are illogical on their face and are especially implausible here where the Plaintiffs admit that they are sophisticated parties engaged in multi-million dollar real estate investment throughout the world.

*Second*, Plaintiffs have failed to identify the requisite "who, what, when, where, and how" for each misrepresentation that they allege.  As set forth above, Plaintiffs allege three misrepresentations: (1) the Extension Allegation, (2) the Work-Out Arbitration Allegation, and (3) the Principal Payment Allegation.   None of these allegations identify who actually made what representation and when.  *UMG Recordings, Inc*, 117 F. Supp. 3d at 1108 (the complaint generally "must allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities").

With respect to the Extension Allegation, Plaintiffs do not specifically identify who made the alleged misrepresentation or when.  Instead, Plaintiffs identify a group of individuals – Irina Ponomarjova, Zigurds Cirulis, Krisaps Putans – who allegedly sent an undisclosed number of emails and made a series of 40 telephone calls "in 2010" to Gusevs.  (FAC, ¶ 63).  However, it is entirely unclear (1) whether the alleged misrepresentation were made by all of the individuals identified or only by some of them, (2) whether every communication or some subset thereof contained the alleged misrepresentation, and (3) when any of the numerous communications actually occurred.

Moreover, Plaintiffs allege that "Bank representatives" told Gusevs in an undisclosed number of emails and phone calls that if Citadele was not sold, the term of the lines of credit would be extended.  (FAC, ¶ 64).  Again, it is entirely unclear (1) who the "Bank representatives" are, (2) whether every communication contained the alleged misrepresentation or some subset, and (3) exactly when the alleged communications occurred.  *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (dismissing fraud allegations because the plaintiff failed to identify "employees who [committed the alleged acts] or provide any dates, times, or places the [wrongful conduct occurred]").

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1    With respect to the Work-Out Arbitration Allegation, Plaintiffs allege that at
2    some point in time "before expiration of the lines of credit" Andreis Golubcovs and
3    Uldis Glazers sent a series of emails and telephone communications to Gusevs
4    representing that Citadele would enter into "work-out" agreements if Gusevs did not
5    oppose Citadele's legal actions against him and his related entities.  (FAC, ¶¶ 69-
6    71.)  Again, it is unclear (1) who made the misrepresentations – Mr. Golubcovs, Mr.
7    Glazers, or both, (2) whether every communication contained the alleged
8    misrepresentations or some subset, and (3) when these alleged communications
9    actually occurred.

10    With respect to the Principal Payment Allegation, Plaintiffs' description of
11    the alleged misrepresentation also lacks sufficient particularity.  Plaintiffs allege that
12    through email and telephone communications at some point in the Fall of 2013
13    Mr. Golubcovs represented to Gusevs that VG Beheer Latvia SIA was not required
14    to make principal payments.  (FAC, ¶ 77).  While this allegation contains some
15    detail the other allegations do not have, it still does not contain the requisite detail
16    on when the misrepresentation occurred.

17    In other words, based on the allegations in the FAC, Citadele and Mr.
18    Belavskis do not know who actually made the alleged misrepresentations or when.
19    As such, Plaintiffs have failed to plead their claim for intentional misrepresentation
20    with sufficient detail.

21    *Third*, with respect to Mr. Beļavskis, Plaintiffs have not pled facts sufficient
22    to make a plausible claim for intentional misrepresentation.  *Swartz v. KPMG LLP*,
23    476 F.3d 756, 764–65 (9th Cir. 2007) (Plaintiff's complaint must "inform each
24    defendant separately of the allegations surrounding his alleged participation in the
25    fraud.")  To wit, none of the alleged misrepresentations were made by Mr. Beļavskis
26    and the only allegations directed at Mr. Beļavskis' conduct are conclusory
27    recitations of legal elements.  As such, any claim for intentional misrepresentations
28

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

13

against Mr. Beḷavskis must be dismissed.   *Swartz,* 476 F.3d at 764-65 (explaining that conclusory allegations are insufficient as a matter of law).

### 2. Plaintiffs' Fraud by False Promises Claim Is Not Pled With Sufficient Specificity

Plaintiffs have also failed to plead their fraud by false promises claim with sufficient particularity for the same reasons discussed above in connection with Plaintiffs' claim for intentional misrepresentation.  *See Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1059–1060 (2012) (explaining that fraud by false promises requires the same basic elements as intentional misrepresentation, i.e. (1) a knowingly false representation by the defendant, (2) an intent to deceive or induce reliance, (3) justifiable reliance by the plaintiff, and (4) resulting damages).

Moreover, a fraud by false promises cause of action imposes additional requirements on the misrepresentation element.  In particular, the Plaintiff must allege that "(1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have the intent [to perform] at the time that the promise was made, i.e., the promise was false." *Id*. at 1060.  Intent not to perform cannot be proven simply by showing a subsequent failure to perform, and pleading nonperformance alone is not sufficient to support a claim for promissory fraud. *Tenzer v. Superscope, Inc*., 39 Cal.3d 18, 30 (1985) ("something more than nonperformance is required to prove the defendant's intent not to perform his promise").  Rather, the plaintiff must plead sufficient facts to give rise to a plausible inference that the defendant did not intend to perform as promised at the time the promise was made. *See id*.

Here, Plaintiffs' FAC does not identify any facts from which a plausible inference could be made regarding Citadele's intent to perform at the time any of the promises were made.  Instead, the FAC relies on the conclusory allegation that Defendants "did not intend to perform the promises when they made the promises." (FAC, ¶ 132).  This conclusory allegation is insufficient to meet the requisite

14

1    pleading standard.  *See UMG Recordings, Inc*., 117 F. Supp. 3d at 1109–10

2    (promissory fraud claim not sufficiently pled where complaint alleged that

3    plaintiffs' "representations and promises were false when they were made" without

4    additional supporting factual allegations); *see also Mat-Van, Inc. v. Sheldon Good &*

5    *Co. Auctions, LLC*, 2007 WL 2206946, at *6 (S.D. Cal. July 27, 2007) ("For

6    promissory fraud claims, plaintiffs cannot rest on allegations that defendants

7    breached the contract but must plead the existence of other facts that create a

8    reasonable inference of deceptive intent at the time the statements were originally

9    made.").

10   **II.    Plaintiffs' Third Cause of Action Under RICO Must Be Dismissed.**

11        **A.    Legal Standard**

12        While the precise requirements for establishing a RICO cause of action

13   depends on the subsection – 1962(a), (b), (c), or (d) – the plaintiff invokes, the

14   following are essential elements of any civil RICO complaint: "(1) the existence of a

15   RICO 'enterprise'; (2) the existence of a 'pattern of racketeering activity'; (3) a

16   nexus between the defendant and either the pattern of racketeering activity or the

17   RICO 'enterprise'; and (4) resulting injury to plaintiff, in his 'business or property.'"

18   *See Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th

19   Cir. 2005).  In pleading these elements a plaintiff must meet Fed. R. Civ. P. 9(b)'s

20   heightened pleading standard.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d

21   531, 541 (9th Cir. 1989); *see* Order, at 8 (RICO violations based on acts of fraud

22   must satisfy Rule 9(b)).

23        **B.    Plaintiffs' RICO Claim Fails Because RICO Does Not Apply to**
            **Injuries Suffered in Latvia**

24

25        As the Court has already recognized, Plaintiffs' RICO claims must be

26   dismissed unless they can plausibly allege a domestic injury.  *See* Order, at 10-12

27   (Dismissing the Original Complaint because, among other reasons, "[t]he Plaintiffs

28   in this case do not allege any domestic injury to its business or property.  The

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

15

alleged injuries include losses on the lines of credit they obtained from Parex Bank, a Latvian company, secured by property in Latvia and guaranteed by a resident of Latvia."). *RJR Nabisco, Inc.*, 136 S. Ct. at 2106, 2111.

The FAC attempts to cure this defect by alleging that Gusevs purchased properties in California, by alleging that the lines of credit at-issue were "secured" by these California properties, and by alleging that these California properties have either been "decimated" or are facing foreclosure.  (FAC, ¶ 20).  While the FAC is more than a bit opaque, presumably, from these facts the FAC intends to imply (1) that funds from the lines of credit at-issue in this case were used to acquire the Malibu properties and that, as such, Citadele maintains a secured interest in these properties, (2) that it was Citadele who foreclosed on Gusevs' California homes, and (3) that acquisition of these properties constituted a commercial "business" investment.

To the contrary, the FAC's implication is belied by its more specific allegations, allegations in the Original Complaint, and by facts that are subject to judicial notice.  Accordingly, Plaintiffs' efforts to mislead the Court into believing that Citadele secured with the Malibu properties the line of credit extended to the Latvian corporate plaintiffs is entitled to no weight or presumption of truth.

*First*, the Malibu properties were acquired with funds from U.S. based banks not at-issue in this ligation.  The FAC carefully avoids acknowledging this fact for good reason:  publically filed land records confirm that Gusevs' acquired the 3211 Colony View property in 2006 with two loans (totaling $3.82 million) from America's Wholesale Lender and that Gusevs acquired the 21650 Pacific Coast home in 2004 with a $4.1 million loan from Washington Mutual.  (Levin Decl., ¶ 3, Exs. C-E).  Moreover, in a verified complaint filed in Los Angeles Superior Court on May 31, 2016, Gusevs confirms that he acquired the 21650 Pacific Coast home in his own name, that he refinanced the property in 2007 with a $6.5 million loan from Washington Mutual, and that he uses the home as his "personal residence."

16

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

1  (Levin Decl., ¶ 4, Ex. F, at 5) (the "Verified State Complaint").

2  *Second*, Citadele does not now have a security interest in any of Gusevs'

3  California properties (and never did) and has not directed or otherwise been

4  involved in any California foreclosure.  The FAC's statements and insinuations to

5  the contrary are false.  As an initial matter, the loan agreements themselves

6  explicitly identify the properties which serve as collateral on the loans – all of the

7  properties listed in the loans are in Latvia.  Smislajeva Decl., Exs. G-L.[5]  The

8  Original Complaint similarly confirms that the "[t]he lines of credit were secured by

9  real estate and other property *in Latvia* owned by the Plaintiffs."  (Original Compl.,

10  ¶ 18) (emphasis added).[6]  Indeed, even the FAC appears to concede these facts as it

11  directly attributes to Citadele foreclosures only in Latvia:  the "[Latvian] Bank

12  began auctioning [] real estate…*in Latvia*…."  (FAC, ¶ 83).

13  *Third*, Gusevs' acquisition of homes in Malibu was not a commercial

14  investment.  The FAC confirms that Gusevs acquired the Malibu homes in his name,

15  not in the name of his Latvian entities.  (FAC, ¶ 19 (stating that "Gusevs' has been a

16  resident of [] California since 2004 and has engaged in significant real estate

17  development, including [acquiring the Malibu homes]")).  As stated above, this fact

18  is confirmed by publically available land records and the Verified State Complaint.

19  In other words, Guesvs' Malibu homes have no connection to this litigation.

20  Nonetheless, the FAC purports to describe three "domestic" injuries to Plaintiffs'

21  business and property.  (FAC, ¶ 116).  As set forth below, none of the alleged

22  injuries are sufficient to meet the standard articulated in *RJR Nabisco*.

23  _____

24  [5] The Court may consider documents referenced in the Complaint on a

25  12(b)(6) motion to dismiss.  *See e.g. Hoey v. Sony Elecs. Inc*., 515 F. Supp. 2d 1099,
1103 (N.D. Cal. 2007).

26  [6] *See Gammel v. Hewlett-Packard Co*., 2013 WL 1947525, at *5 (C.D. Cal.

27  May 8, 2013) ("Courts may consider allegations in previous complaints in

28  determining the *plausibility* of the current pleadings….").

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

17

1    *First*, Plaintiffs' claim that they have been injured in that "their properties
2    have been foreclosed…" is insufficient to constitute domestic injury.  (FAC, ¶ 116).
3    As set forth directly above, Citadele was not involved in any California foreclosure
4    and it does not maintain a secured interest in Guesvs' California homes.  As the
5    Court previously stated, foreclosures in Latvia do not constitute domestic injury.
6    Order, at 10-12.

7    *Second*, Plaintiffs' claim that they have been injured in that "the opportunity
8    to profit from such properties had been unlawfully diverted to [] Defendants…" is
9    similarly insufficient to be a domestic injury.  (FAC, ¶ 116).  As a threshold matter,
10   the mere opportunity to profit, without supporting factual allegations, is too
11   speculative to constitute a cognizable RICO injury.  *See Mattel, Inc. v. MGA*
12   *Entertainment, Inc*., 782 F. Supp. 2d 911, 1020 (C.D. Cal. 2011) (holding that
13   plaintiff's claim to lost profits was too speculative to support a civil RICO claim);
14   *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) ("plaintiffs
15   must show proof of concrete financial loss, and not mere injury to [an] intangible
16   property interest"); *Tate v. Bd. of Prison Terms*, 2010 WL 1980141, at *13 (C.D.
17   Cal. Apr. 9, 2010) ("A plaintiff cannot maintain a RICO claim where the loss he has
18   suffered is 'purely speculative.'"); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S.
19   639, 654 (2008) (For the Plaintiff to have standing, the alleged RICO violation must
20   have "led directly to the plaintiff's injuries.").  Moreover, "such [foreclosed]
21   properties" were located in Latvia and all of the parties to the relevant agreements
22   were Latvian entities.  Thus, even assuming that the mere "opportunity to profit" is
23   not too remote or speculative (which it is), this injury would have been suffered by
24   Latvian entities in Latvia.

25   *Third*, Plaintiffs' claim that they have been injured in that they have been
26   "substantially hindered in their ability to conduct their business of investing in and
27   developing real property in the United States because of a lack of funding promised,
28   and because they have been [] deprived of their properties that would have served as

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

18

security for financing [] California development…" is also insufficient to constitute domestic injury.  (FAC, ¶ 116).  To start, this allegation does not describe a concrete financial injury or loss.  In fact, it does not describe a financial loss at all.  Rather, Plaintiffs complain about an abstract injury to their ability to conduct their business. *Keel v. Schwarzenegger*, 2009 WL 1444644, at *5 (C.D. Cal. May 19, 2009) ("[I]n the Ninth Circuit, injuries to property are not actionable under RICO unless they result in tangible financial loss to the plaintiff.") (citations and quotations omitted).

Presumably, the Plaintiffs intend to imply that if they had not been "hindered in their ability" to conduct their business, they would have obtained and invested funds and that those investments would have resulted in profits that they currently do not have.  Even assuming that the Plaintiffs made that allegation explicitly, such remote, speculative damages would be insufficient to state a RICO claim.  In other words, the profit that *may have* resulted *if* the Plaintiffs had access to their foreclosed Latvian properties, and *if* the Plaintiffs used those Latvian properties as security to obtain funds for additional projects, and *if* those additional projects were profitable, is a theoretical injury that cannot be said to be a direct result of any RICO violation.  *Id.*  ("[I]in order to seek a civil remedy for a RICO violation, a plaintiff must show that the RICO violation proximately caused an injury to his business or property…Proximate causation requires [a] direct relation between the injury asserted and the injurious conduct alleged.").  Finally, Plaintiffs' claim – that if they had funds they could have invested those funds in California – is an insufficient and superficial attempt to allege domestic injury.  If such an allegation was sufficient, any financial loss in the world could be converted into domestic injury on the basis that the lost funds could have been invested in the United States.  Accordingly, Plaintiffs' RICO claims fail as a matter of law and should be dismissed with prejudice.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

### C.   Plaintiffs' RICO Claim Fails Because Plaintiffs Fail to Plead the Existence of a RICO Enterprise.

To plead the existence of a RICO enterprise, plaintiff must allege facts demonstrating the following: (1) a common purpose, (2) an ongoing organization, and (3) "evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552–53 (9th Cir. 2007).  Here, the Plaintiffs have failed to plead the existence of a RICO enterprise.

*First*, other than a conclusory allegation that the Defendants were associated for a "common purpose," Plaintiffs have failed to plead facts sufficient to identify any plausible common purpose among the RICO defendants.  (FAC, ¶ 108)  Indeed, assuming the truth of the allegations pled, many of the RICO Defendants had divergent interests.  On the one hand, Plaintiffs allege that Citadele wrongfully foreclosed properties in order to generate "huge windfall profits."  (FAC, ¶ 90).  These foreclosures, which began in March 2014—well before Ripplewood acquired its interest in Citadele—would have driven the value of Citadele up.  On the other hand, Ripplewood, as a prospective purchaser of Citadele, had an interest in purchasing Citadele for a "reduced price."  (FAC, ¶ 92).  If Citadele was generating windfall profits, as alleged, Ripplewood would not be in a position to purchase Citadele at a reduced price.

Moreover, Plaintiffs do not plead facts from which any common purpose can be determined among VAS Privatization, as sellers of a 75% interest in Citadele, and Ripplewood as a prospective (and ultimate) buyer of that interest.  Again, on the facts pled, as buyer and seller, respectively, these parties would have divergent interests.  Indeed, the FAC recognizes that there were at least seven other entities interested in purchasing Citadele.  (FAC, ¶ 93).  Plaintiffs do not explain why VAS Privatization would prefer to sell to Ripplewood at a "reduced price" through a rigged bidding process, than sell to one of the other seven prospective purchasers. *Id*.  In addition, Plaintiffs do not identify any common purpose among the

20

individual defendants, Timothy C. Collins and Guntis Beļavskis, and the rest of the RICO defendants.

Instead, the FAC attempts to substitute its failure to identify a common purpose with the conclusory allegation that all of the defendants are alter-egos of one another.  (FAC, ¶ 17 (alleging that all defendants are alter-egos of one another "on information and belief")).  *This allegation is actually fatal to the RICO claim*.  If all of the defendants are alter-egos of one another, the Complaint does not distinguish between the RICO defendants and the RICO enterprise, which is a fatal defect.  *City & Cty. of San Francisco v. Spencer*, 2003 WL 23119283, at *3 (N.D. Cal. Dec. 29, 2003) ("RICO enterprises must be distinguished from RICO defendants in pleading in order to state a RICO claim."); *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (Allegations that "everyone did everything" justify dismissal of the complaint.).  Even if an alter-ego allegation did not destroy Plaintiffs' RICO enterprise claim, Plaintiffs have failed to plead facts that give rise to plausible inference of a unity of interests between those alleged to be the alter-ego of one another.  *See Pac. Mar. Freight, Inc. v. Foster*, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010) (To survive dismissal, among other things, an alter-ego theory of liability must plead facts that support a plausible claim that there is a unity of interest and ownership among defendants.).

*Second*, Plaintiffs have failed to actually identify any "ongoing organization" among the RICO defendants.  An ongoing organization is "a vehicle for the commission of two or more predicate crimes."  *Odom*, 486 F.3d at 552.  Here, Plaintiffs do not allege facts from which a plausible inference could be drawn that the RICO defendants formed such a vehicle.  Here, the alleged predicate acts – presumably mail fraud and wire fraud – were, according to the FAC, carried out entirely by Citadele.  Indeed, Plaintiffs allege that the foreclosures continue to this day despite the fact that VAS Privatization sold its interest in Citadele in September 2014.  (FAC, ¶ 91).  Again, Plaintiffs' attempt to cure this defect by alleging, on

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

21

1   information and belief, that all of the defendants are alter-egos of one another is

2   woefully insufficient.  *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104,

3   1136 (C.D. Cal. 2015) ("Conclusory allegations of 'alter ego' status are insufficient

4   to state a claim…a plaintiff must allege specific facts supporting [their claims].").

5       *Third*, the facts alleged, even if proven true, would not establish that the

6   various defendants functioned as a "continuing unit."  While the "continuity

7   requirement does not, in itself, require that every member be involved in each of the

8   underlying acts of racketeering, or that the predicate acts be interrelated in any

9   way," it does require that each defendant's "behavior was[an] 'ongoing' rather than

10  isolated activity."  *Odom*, 486 F.3d at 553.  Here, Plaintiffs have not identified any

11  ongoing activity by any of the Defendants, except for Citadele auctioning Plaintiffs'

12  Latvian properties "under Latvian law."  (FAC, ¶ 85).  However, auctioning

13  properties in Latvia, "under Latvian law" is not a RICO enterprise.

14      **D.    Plaintiffs' RICO Claim Fails Because Plaintiffs Fail to Plead a**

15          **Pattern of Racketeering Activity**

16      A viable RICO claim must clearly identify the predicate acts alleged to

17  constitute racketeering activity.  *See Graf v. Peoples*, 2008 WL 4189657, at *6

18  (C.D. Cal. Sept. 4, 2008) ("Plaintiff's RICO claims incorporate the Complaint's

19  initial lengthy description of many different asserted acts of wrongdoing by various

20  Defendants.  Plaintiff does not expressly identify any RICO predicate acts, but

21  simply incorporates his previous allegations.  Such 'shotgun' pleading is insufficient

22  to plead a RICO claim.").  Here, as in *Graf*, Plaintiffs do not identify any predicate

23  acts, but instead incorporate their previous allegations by reference. (FAC, ¶¶ 102,

24  112, 113).  This is insufficient.  First, as explained above, Plaintiffs have failed to

25  plead the alleged fraud – which presumably constitutes the predicate acts – with

26  sufficient specificity.  *See supra* Argument Section I.  Second, the failure to

27  specifically identify predicate acts is fatal to a RICO complaint.  *Federal Reserve*

28  *Bank of San Francisco v. HK Systems*, 1997 WL 227955, at *3 (N.D. Cal. Apr. 24,

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

22

1  1997) (complaint was insufficient because it failed to "identify exactly which acts

2  are 'predicate acts' for RICO liability").  Accordingly, Plaintiffs' RICO allegations

3  are insufficient and must be dismissed.

4      **E.**    **Plaintiffs' RICO Claim Fails Because Plaintiffs Have Not**

5          **Sufficiently Alleged Violations of Section 1962(a), (b), (c), or (d)**

6        As a threshold matter, Plaintiffs' RICO count is deficient because it does not

7  identify which subsection is implicated by any given allegation.  *Powell*, 2015 WL

8  4719660, at *13 ("Ultimately, without showing which facts support the elements of

9  his claim, or which RICO section Plaintiff even wishes to assert, Plaintiff fails to

10  state a claim on which relief can be granted.");  *Lewis v. Sporck*, 612 F. Supp. 1316,

11  1325 (N.D. Cal. 1985) (noting that, "[a]s a preliminary matter, the complaint must

12  identify under which subsections of 18 U.S.C. § 1962 [plaintiff] is proceeding," and

13  dismissing RICO complaint which fails to do so);  *Mullen v. Sweetwater Dev. Corp.*,

14  619 F. Supp. 809, 819 (D. Colo. 1985) (dismissing RICO claim where plaintiffs did

15  not state which section they were relying upon).  Indeed, Plaintiffs purport to bring a

16  *single* count for violations of *all* subsections – 1962(a), (b), (c), and (d) – but then

17  ignore subsections (a), (b), and (d) while only briefly mentioning Section 1962(c).

18  (FAC, ¶¶ 102-117).  Based on these allegations it is entirely unclear whether

19  Plaintiffs are bringing a cause of action under each subsection, all of the

20  subsections, or some subset and it is further unclear what allegations would apply to

21  any particular subsection claim.  Accordingly, Plaintiffs have failed to plead any

22  violation of any subsection of 1962.

23        Assuming *arguendo*, that the Plaintiffs have brought a cause of action under

24  each subsection and assuming that all of Plaintiffs' factual allegations are applicable

25  to each subsection, Plaintiffs have still failed to plead a RICO cause of action.[7]

26  _____

27        [7] *See also* concurrently filed motions to dismiss by the Ripplewood parties

28  and VAS Privatization Agency.  To avoid unnecessary duplication, Citadele and Mr.

**BUCKLEYSANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

1    *First*, any alleged violation of Section 1962(a) – RICO's anti-money

2    laundering provision – is deficient because Plaintiffs fail to allege any facts

3    indicating that income derived from predicate acts was used to operate the alleged

4    enterprise.  18 U.S.C. § 1962(a) ("It shall be unlawful for any person who has

5    received any income derived…from a pattern of racketeering activity . . . *to use or*

6    *invest…any part of such income…in acquisition of any interest in*, or the

7    establishment or operation of, any enterprise…"); *see also United States v.*

8    *Robertson*, 74 F.3d 1247, at *1 (9th Cir. 1996) (Section 1962(a) requires that

9    income derived from the racketeering activities be used to operate the enterprise.).

10   Here, Plaintiffs do not allege who did what with any income from the alleged RICO

11   enterprise, let alone that Citadele or Mr. Beļavskis used the income in the

12   enterprise's operation.  As such, Plaintiffs have failed to plead a cause of action

13   under Section 1962(a).

14       *Second*, any alleged violation of Section 1962(b) is deficient because

15   Plaintiffs have not alleged that Citadele or Mr. Beļavskis acquired an interest in any

16   enterprise through a pattern of racketeering activity.  18 U.S.C. § 1962(b); *Guerrero*

17   *v. Gates*, 110 F. Supp. 2d 1287, 1292 (C.D. Cal. 2000) ("A violation of § 1962(b)

18   requires: (1) acquisition or maintenance of (2) an interest in or control of (3) any

19   enterprise (3) through a pattern (4) of racketeering activity.").  At most, Plaintiffs

20   allege that, on information and belief, Ripplewood acquired an interest in Citadele

21   through a "rigged" bidding process.  (FAC, ¶ 64).

22       *Third*, any alleged violation of Section 1962(c) is deficient for the same

23   reasons identified in Argument Sections II.C and II.D – i.e. the failure to sufficiently

24   allege the existence of a RICO enterprise and the failure to sufficiently allege a

25   pattern of racketeering activity.  *Bodam v. GTE Corp.*, 197 F. Supp. 2d 1225, 1227

26   (C.D. Cal. 2002).

27   _____

28   Belavskis incorporate these arguments herein by reference.

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION
TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

*Fourth*, any alleged violation of Section 1962(d) – RICO's anti-conspiracy provision – is deficient because (1) Plaintiffs have not sufficiently pled the existence of a RICO enterprise and (2) Plaintiffs have not and cannot plead that all defendants were aware of the essential nature and scope of the enterprise and agreed to participate in it. *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("In particular, the district court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy. We agree."); *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir.1993) (A defendant must also have been "aware of the essential nature and scope of the enterprise and intended to participate in it.").

## III.   Any Claims By VG Beheer Latvia LLC Must Be Dismissed Because It Lacks Capacity to Sue Under California Law

VG Beheer Latvia LLC is a forfeited California entity and, accordingly, does not have the capacity to sue. *See Palm Valley Homeowners Ass'n, Inc. v. Design MTC*, 85 Cal. App. 4th 553, 556 (2000); *Bourhis v. Lord*, 56 Cal. 4th 320, 324 (2013) ("In general, a corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes."); Declaration of Fredrick S. Levin, Exs. A and B (California Secretary of State listing VG Beheer Latvia LLC as a forfeited entity located in Riga, Latvia); Request for Judicial Notice, at 2.

### CONCLUSION

For the foregoing reasons, the Court should grant Citadele's and Mr. Beļavskis' motion to dismiss.

DATED:  October 20, 2016                    BUCKLEYSANDLER LLP


By:    */s/ Fredrick S. Levin*
       Fredrick S. Levin
       *Attorneys for Defendants AS Citadele
       Banka and Guntis Beļavskis*

BUCKLEYSANDLER LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

25

DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BEĻAVSKIS' NOTICE OF MOTION AND MOTION TO DISMISS FAC FOR FAILURE TO STATE A CLAIM