1   Uri Litvak, Esq. (State Bar No. 277966)
    Airene Williamson (State Bar No. 277101)
2   **Litvak Law Group, P.C.**
3   2424 S.E. Bristol St., Suite 300
    Newport Beach, CA  92660
4   T.   949-477-4900
5   F.   949-335-7113
6   *Attorneys for the Plaintiffs*

7           **UNITED STATES DISTRICT COURT**
8           **CENTRAL DISTRICT OF CALIFORNIA**

9

10  VIKTORS GUSEVS, an individual; VG )   Case No: 2:16-cv-03793-SVW-AS
11  BEHEER LATVIA, LLC, a foreign       )
    limited liability company; VG BEHEER )
12  LATVIA SIA, a foreign corporation;  )   **PLAINTIFFS' OPPOSITION TO**
13  VG BEHEER JURMALA LLC, a            )   **DEFENDANTS AS CITADELE**
    foreign limited liability company; VG )   **BANKA'S AND GUNTIS**
14  BEHEER RIGA, LLC, a foreign limited )   **BELAVSKIS' MOTION TO**
15  liability company; BOTANIX, LLC, a  )   **DISMISS THE FIRST**
    foreign limited liability company;  )   **AMENDED COMPLAINT FOR**
16  DEMENKOVA UN PARTNERI, a            )   **FAILURE TO STATE A**
17  foreign partnership; LEGO TRANS,    )   **CLAIM**
    LLC, a foreign limited liability    )   **(DKT. 69)**
18  company; ANDRENU PARKS, LLC, a      )
19  foreign limited liability company;  )
20  GREENFIELD ENGURES SIA, a           )
    foreign corporation; and JEVGENIJS  )   Judge: Hon. Stephen V. Wilson
21  GUSEVS, a foreign individual,       )   Hearing Date:  December 19, 2016
                                        )   Hearing Time: 1:30 p.m.
22          Plaintiffs,                 )   Courtroom:     6
23                                      )
24          vs.                         )
25                                      )
    AS CITADELE BANKA, a foreign        )
26  corporation; GUNTIS BELAVSKIS, a    )
27  foreign individual; VAS             )
    PRIVATIZATION AGENCY, a foreign)
28

corporation; RIPPLEWOOD          )
HOLDINGS L.L.C., a Delaware limited )
liability company; RIPPLEWOOD     )
ADVISORS LLC, a Delaware limited  )
liability company; RA CITADELE    )
HOLDINGS LLC, a Delaware limited  )
liability company; and TIMOTHY C. )
COLLINS, an individual,           )
                                  )
         Defendants.              )
                                  )
                                  )

# TABLE OF CONTENTS

I.    **INTRODUCTION**...................................................................8

II.   **STATEMENT OF FACTS** ...............................................9

III.  **LEGAL ARGUMENT** .....................................................13

    **A. LEGAL STANDARD OF REVIEW** ...............................13

        1.   **PLAINTIFFS' FRAUD CLAIMS ARE PROPER AND ARE SUFFICIENTLY PLEADED TO STATE A PRIMA FACIE FRAUD CLAIM** ....................................14

            a.   **The Statute Of Limitations Does Not Preclude The Claims Of Intentional Misrepresentation And Fraud** ...................................................14

            b.   **The Economic Loss Doctrine Does Not Preclude Plaintiffs' Fraud Claims Because Defendants Breached Duties Independently Arising In Tort Law** ....................................................17

            c.   **Plaintiffs' Fraud Claims Are Pled With Sufficient Factual Specificity** ...................................20
               *i.* **Plaintiffs' Intentional Misrepresentation Claim Is Pleaded With Sufficient Particularity** ....................20
                  **a.Plaintiffs had no duty to investigate** ..........20
                  **b. Plaintiffs have pleaded sufficient details regarding fraud in light of the complexity and length of the Defendants' fraudulent scheme** ...................................22

            d.   **Plaintiffs' Fraud By False Promises Claim Is Pleaded With Sufficient Specificity** ....................................... 24

///

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BELAVSKIS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (DKT 69)

- iii -

**B.  THE PLAINTIFFS' RICO ALLEGATIONS ARE SUFFICIENTLY PLEADED TO STATE A PRIMA FACIE CIVIL RICO CLAIM**.....................................................**26**

**1. Plaintiffs Have Pleaded A Sufficient Domestic Injury** ..........**26**

**2. Plaintiffs Sufficiently Allege A RICO Enterprise Under 18 U.S.C. § 1962 (c)** ........................................................**28**

**3. Plaintiffs Have Pleaded A Pattern of Racketeering Activity And The Predicate Acts with Particularity** ..................**31**

**4. Plaintiffs Have Sufficiently Pleaded A Prima Facie Case Against Defendants under 18 U.S.C. § 1962(a), (b), and (d)** ........................................................**32**

**C.  INTERESTS OF JUDICIAL ECONOMY FAVOR ALLOWING PLAINTIFFS TIME TO REVIVE VG BEHEER LATVIA LLC** ........................................**33**

**D.  PLAINTIFFS ALTERNATIVELY REQUEST LEAVE TO AMEND THE COMPLAINT** .......................................**34**

**V.  CONCLUSION**..........................................................**35**

# TABLE OF AUTHORITIES

## U.S. SUPREME COURT CASES

*Anza v. Ideal Steel Supple Corp.*, 547 U.S. 451. 461, 126 S. Ct. 1991,
1998 (2006) ...................................................................................32

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)...................................13, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)..................13,28

*Boyle v. United States*, 556 U.S. 938 (2009) .......................................28

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) .............................30

*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016).................26

*Schumack v. United States*, 489 U.S, 705, 714 (1989)........................31

## FEDERAL CIRCUIT COURT CASES

*Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ..........................33

*Giles v. General Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir.2007) ....18,19

*Howard v. America Online, Inc.*, 208 F. 3rd 741, 751 (9th Cir. 2000) ..............33

*Living Designs, Inc. v. E.I. DuPont De Nemours and Co.*, 431 F.3rd 353, 362
(9th Cir. 2005) ..............................................................................29

*Manzarel v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031
(9th Cir. 2008) ..............................................................................13

*Miller v. Yokohama Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) .........................31

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993)......................13

*Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co.,* 981 F.2d 429, 437
(9th Cir.1992).................................................................................13

*Odom v. Microsoft Corp.*, 486 F.3d 541, 550 (9th Cir. 2007)...........................29

*United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)................................34

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir., 2003)..............25

**FEDERAL DISTRICT COURT CASES**

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 U.S. Dist. LEXIS 279, *25
    (W.D. Wash. Jan 3, 2011) ...................................................................33

*In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333
    (D. Conn. 2004)...................................................................14, 22

*In re Wellpoint, Inc. Out–of–Network "UCR" Rates Litig.*, 865 F.Supp.2d 1002,
    1035 (C.D. Cal., 2011) ...................................................................31

*JMP Securities LLP v. Altair Nanotechnologies Inc.*, 880 F.Supp.2d 1029, 1042
    (N.D.Cal.2012)...................................................................18

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F.Supp.3d 1092, 1103
    (C.D. Cal. 2015) ...................................................................18

**STATE CASES**

*Bastian v. Cty. of San Luis Obispo*, 199 Cal.App.3d 520, 527,
    245 Cal.Rptr. 78 ...................................................................16

*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal. App. 4th 939,
    958-59 ...................................................................34

*Cameron v Cameron*, 88 Cal. App. 2d 585 (1948) ...................................................................21

*E-Fab, Inc. v. Accountants, Inc. Services*, (2007) 153 Cal.App.4th 1308, 64
    Cal.Rptr.3d 9, 17 ...................................................................16

*Fox v. Ethicon Endo-Surgery, Inc.* (2005), 35 Cal.4th 797, 803,
    27 Cal.Rptr.3d 661 ...................................................................15

*Kline v. Turner*, (2001) 87 Cal.App.4th 1369, 1374 ...................................................................14

*North American Chemical Co. v. Superior Court*, (1997) 59 Cal.App.4th 764, 774,
    69 Cal.Rptr.2d 466 ...................................................................18

*Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 297,
    146 Cal.Rptr. 271 ...................................................................15

*Snow v. A.H. Robins Co.* (1985) 165 Cal.App.3d 120, 128, 211 Cal.Rptr. 271..16

**STATE CASES (continued)**

*Sun'n Sand, Inc. v. United California Bank*, (1978) 21 Cal.3d 671, 701 ............14

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, (1970) 1 Cal.3d 586, 597,
      83 Cal.Rptr. 418, 463 P.2d 770 .................................................................15


**FEDERAL STATUTES**

18 U.S.C. § 1961(4)........................................................................28

18 U.S.C. § 1962(a)......................................................................32,33

18 U.S.C. § 1962(b)......................................................................32,33

18 U.S.C. § 1962(c)......................................................................28,33

18 U.S.C. § 1962(d)......................................................................32,33


**STATE STATUTES**

Code of Civ. P. 338(d)....................................................................14


**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ...............................................................13,20

Fed. R. Civ. P. 15(a) ......................................................................34

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action centers around a sophisticated, pervasive, and complex racketeering scheme orchestrated by Defendants RIPPLEWOOD ADVISORS LLC and RA CITADELE HOLDINGS LLC (collectively referred herein as "Ripplewood") and TIMOTHY C. COLLINS ("Collins"), in partnership with their cohorts, Defendants AS CITADELE BANKA ("AS Citadele Banka" or "the Bank"), GUNTIS BELAVSKIS ("Belavskis"), and VAS PRIVATIZATION AGENCY ("Vas") (collectively referred to herein as the "CITADELE BANKA RICO Enterprise" or the "Enterprise") through numerous acts of wire and mail fraud.

These Defendants conspired to perpetrate a fraudulent scheme which included coercing Plaintiffs into shortening the deadlines for repayment of lines of credit, eventually suffering defaults in arbitration proceedings, being deprived of continued funding, and being subjected to orchestrated foreclosures and sham auctions of multiple properties. This sophisticated scheme would ultimately result in the unlawful sale of 80 properties belonging to Plaintiffs for outrageously low sham prices, with the intention of reselling the properties at their fair market value. This resulted in substantial windfall profits for the Defendants and

investors, while at the same time allowing Collins and the Ripplewood Defendants to acquire the Bank for an artificially reduced fire-sale price, then began to execute their plan of pumping up the value of the Bank and then re-selling it for billions in profit.

Defendants' challenges are grounded in misapplication of legal standards and a disregard for the actual content of the Plaintiffs' First Amended Complaint ("FAC") (Dkt.62). However, the allegations of the FAC, when taken as true, reflect a coordinated racketeering scheme that was the direct and proximate cause of the Plaintiffs' staggering damages.

## II.    STATEMENT OF FACTS

In November 2003, Plaintiff VG BEHEER LATVIA SIA signed a line of credit agreement in Los Angeles, CA with Parex Bank, which was then a privately owned bank headquartered in Latvia. First Amended Complaint ("FAC") ¶ 43. The lines of credit were secured by real estate and other property in California and Latvia owned by Plaintiffs. *Id.* at ¶ 45. In November, 2008, the government of Latvia purchased Parex Bank during the global financial crisis for token consideration. *Id.* at ¶ 47 and ¶ 48. Subsequently, Defendant VAS Privatization Agency, aka the Latvian Privatization Agency ("LPA") acquired 75% ownership interest in Parex Bank from the government of Latvia. *Id.* at ¶ 50. From 2008 to 2009, Parex Bank refused to honor Plaintiffs payment instructions, which caused

significant damage to Plaintiffs. *Id.* at ¶ 52. In 2010, Plaintiffs lines of credit were transferred to a newly formed entity, Defendant AS CITADELE BANKA. *Id.* at ¶ 53. LPA owned 75% of the shares of the newly formed bank. *Id.* at ¶ 55. Defendant GUNTIS BELAVSKIS, from 2010 to 2014, was a Member of the Supervisory Board or Chairman of the Supervisory Board of Defendant AS CITADELE BANKA. *Id.* at ¶ 12.

After AS Citadele Banka was formed, then Latvian Finance Minister and then Latvian Economy Minister signed a confidential agreement with the European Commission requiring that AS Citadele Banka be sold or liquidated by the end of 2014. *Id.* at ¶ 57. The Defendants, LPA included, then hatched a fraudulent scheme whereby they would reduce AS Citadele Banka's apparent book value to increase the likelihood that AS Citadele Banka could be sold at an extremely low price to Defendant Timothy Collins. *Id.* The scheme involved defrauding Plaintiffs of their property. *Id.* at ¶ 59.

The first part of the scheme involved convincing Plaintiff Viktors Gusevs to shorten the term of the Plaintiffs' lines of credit from the then maturity date of 2018 to 2012. *Id.* at ¶ 62. Shortly before the expiration of the lines of credit, the defendants, LAP included, sent a series of email and telephone communications to Plaintiff Viktors Gusevs in California in which they informed him that AS Citadele Banka would be filing lawsuits against Plaintiffs in arbitration court in

Latvia upon expiration of the term of the lines of credit. *Id.* at ¶ 68. Defendants assured Plaintiff Viktors Gusevs that the reason for this lawsuit was simply so that the Bank could write off the loans and make AS Citadele Banka more appealing to potential purchasers. *Id.* Defendants fraudulently promised Plaintiff Viktors Gusevs that if he cooperated by not opposing the lawsuits, AS Citadele Banka would not enforce the judgments but rather would agree to payment "work-outs" with the Plaintiff and that the new buyer of the bank would renew the lines of credit. *Id.* at ¶ 69. Plaintiffs relied on Defendants promises and as a result arbitration judgments were entered against Plaintiffs. *Id.* at ¶ 73. Defendants failed to follow up on their promises and did not enter into a workout agreement with any of the Plaintiffs other than Plaintiff VG BEHEER LATVIA SIA. *Id.* at ¶ 74.

The workout agreement with Plaintiff VG BEHEER LATVIA SIA required regularly monthly interest payments and a payment on the principal every sixth months. *Id.* at ¶ 75. Plaintiff VG BEHEER LATVIA SIA made these payments from June 18, 2012 until the Fall of 2013. *Id.* at ¶ 76. At that time, AS Citadele Banka informed Plaintiff VG BEHEER LATVIA SIA through email and telephonic communications that Plaintiff VG BEHEER LATVIA was not required to make the principal payment due in September 2013. *Id.* at ¶ 77. One month later, after Plaintiff VG BEHEER LATVIA SIA had already used the funds,

Defendants demanded the September 2013 payment and threatened to enforce all of the uncontested arbitration court judgments against Plaintiffs. *Id.* at ¶ 79.

Plaintiffs requested AS Citadele Banka's permission to sell two properties to pay back a large portion of the loan, but AS Citadele Banka ignored these requests to further its fraudulent scheme. *Id.* at ¶ 81. In March 2014, AS Citadele Banka began auctioning Plaintiffs real estate property in Latvia to repay the unopposed judgments. *Id.* at ¶ 82. Approximately 80 of the Plaintiffs' properties have been auctioned off. *Id.* at ¶ 84. A majority of these auctioned properties have been purchased by affiliates of AS Citadele Banka at absurdly low prices. *Id.* Obviously, these affiliates of AS Citadele Banka intend to purchase these properties at extraordinarily low prices from their affiliated bank and then sell them at a later date at fair market value thus resulting in windfall profits for AS Citadele Banka's investors and affiliates including the Collins and Ripplewood Defendants. *Id.*

In September of 2014, Defendant VAS sold its 75% ownership interest to the Ripplewood Defendants and Timothy Collins for a ridiculously low price of 74 million Euros. This purchase price was widely questioned given that Collins was the only "bidder" and the Latvian government had spent 2 billion Euros to bail out the Bank in 2008. *Id.* at ¶ 98. Miraculously, an additional $300 million

euro was "found" on the balance sheet of the Bank immediately after the sale. *Id.* at ¶ 95.

## III.   LEGAL ARGUMENTS

### A.   LEGAL STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should only be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) On a Rule 12(b)(6) motion for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Twombly*, at 555. Material allegations are accepted as true and construed in light most favorable to plaintiff. *Manzarel v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949; *Twombly*, 550 U.S. at 554.

Fraud claims are subject to Rule 9(b), but "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Ibid.* See also *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993) (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate

PLAINTIFF'S OPPOSITION TO DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BELAVSKIS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (DKT 69)

- 13 -

to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge). Courts have also recognized that requiring specific citation to each instance of fraudulent conduct is impractical where the violative conduct is repeated frequently over a lengthy period of time. *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004).

## 1. PLAINTIFFS' FRAUD ALLEGATIONS ARE SUFFICIENT TO ESTABLISH A PRIMA FACIE FRAUD CLAIM

### a. The Statute Of Limitations Does Not Preclude The Plaintiffs' Claims Of Intentional Misrepresentation And Fraud

Defendants first argue that the Plaintiffs' fraud claims should be dismissed because the applicable statute of limitations period has expired on these claims. However, the fraud is on-going in that the damage and harm are continuing to occur. Also, Plaintiffs did not have sufficient notice of the Defendants' scheme to defraud in 2012 to constitute discovery of the fraud. As a result, the Defendants' request to dismiss the Plaintiffs' fraud claims on this basis are without merit and must fail.

In actions for fraud or mistake, California Code of Civil Procedure section 338(d) provides that a fraud (deceit, intentional misrepresentation) lawsuit is required to be filed within three years before plaintiff either discovered facts constituting the fraud or with reasonable diligence could have discovered those

facts. See *Sun'n Sand, Inc. v. United California Bank*, (1978) 21 Cal.3d 671, 701; *Kline v. Turner*, (2001) 87 Cal.App.4th 1369, 1374. The discovery rule "is based on the notion that statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights; therefore, those statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence." *Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 297, 146 Cal.Rptr. 271.

California Courts have defined standards for establishing when discovery of the fraud occurs as a matter of law. The California Supreme Court stated in *Fox v. Ethicon Endo-Surgery, Inc.* (2005), 35 Cal.4th 797, 803, 27 Cal.Rptr.3d 661, 110 P.3d 914, that "under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."

California Courts are generally reluctant to dismiss actions where the issues concern whether the plaintiff had sufficient notice of fraud to constitute discovery. As the Supreme Court of California has observed: "There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the

injured party and render him chargeable with knowledge. It is a question for the trier of fact." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, (1970) 1 Cal.3d 586, 597, 83 Cal.Rptr. 418, 463 P.2d 770. [reversing judgment after demurrer]. It is only when "reasonable minds can draw only one conclusion from the evidence, [that] the question becomes one of law." *Snow v. A.H. Robins Co.* (1985) 165 Cal.App.3d 120, 128, 211 Cal.Rptr. 271 [reversing summary judgment]. "Thus, when an appeal is taken from a judgment of dismissal following the sustention of a demurrer, 'the issue is whether the trial court could determine as a matter of law that failure to discover was due to failure to investigate or to act without diligence.'" *E-Fab, Inc. v. Accountants, Inc. Services*, (2007) 153 Cal.App.4th 1308, 64 Cal.Rptr.3d 9, 17 (quoting *Bastian v. Cty. of San Luis Obispo*, 199 Cal.App.3d 520, 527, 245 Cal.Rptr. 78).

In the present case, the facts and circumstances demonstrate that Plaintiffs filed this action in a timely manner. Defendants argue that Plaintiffs discovered the Defendants' scheme to defraud when Citadele did not extend the Plaintiffs' lines of credit despite Citadele's prior assurances that it would do so. However, this argument fails for a number of reasons. First, the Plaintiffs continue to suffer new harms and injuries as a result of the Defendants' ongoing fraudulent scheme. (FAC ¶¶ 97-99).

Second, although Defendants did not extend the Plaintiffs' lines of credit despite prior assurances that it would do so, this was not an 'inexplicable act' as the Defendants claim. Rather, Defendants represented to Plaintiffs that the decision not to extend the lines of credit, and to instead proceed with arbitration, was a part of the Defendants' complex plan to make the bank appear more attractive to buyers. (FAC ¶¶ 68-70). The Defendants further communicated to Plaintiffs that Plaintiffs could not be harmed by this course of action because: 1) Defendants would agree to work-outs with Plaintiffs rather than enforce the arbitration judgments, and 2) that, once the bank was sold, the new buyer would be required to reinstate the original lines of credit. (FAC ¶ 69)

The above circumstances could not have placed Plaintiffs on notice of a potential scheme to defraud. Pursuant to the standard set forth in *Fox, supra,* the Plaintiffs must have had reason to suspect both a wrongful cause and that they would suffer injury. The above communications from Defendants effectively mitigated both the wrongful cause and the injury aspects of the Defendants' conduct. As such, the Defendants' conduct in 2012 simply could not have put Plaintiffs on notice of the fraud. As a result, the Defendants' statute of limitations arguments fail and their motion to dismiss on this basis must be denied.

///

///

### b. The Economic Loss Doctrine Does Not Preclude Plaintiffs' Fraud claims Because Defendants Breached Duties Independently Arising In Tort Law

Defendants next argue that the Plaintiffs' fraud claims are barred by the economic loss doctrine. However, despite the existence of contractual agreements between the parties, the duties breached by Defendants that constitute fraud are not merely limited to the Defendants' failure to perform those agreements. As a result, the economic loss doctrine does not apply in this case.

In California, "[t]he economic loss rule [states] that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement" *JMP Securities LLP v. Altair Nanotechnologies Inc.*, 880 F.Supp.2d 1029, 1042 (N.D.Cal.2012); see also *North American Chemical Co. v. Superior Court*, (1997) 59 Cal.App.4th 764, 774, 69 Cal.Rptr.2d 466 ("the general rule [is] that where the 'negligent' performance of a contract amounts to nothing more than a failure to perform the express terms of the contract, the claim is one for contract breach, not negligence"). However, "[a] breach of contract is tortious [ ] when some independent duty arising from tort law is violated." *Umg Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F.Supp.3d 1092, 1103 (C.D. Cal. 2015).

In *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir.2007), the Ninth Circuit held that the economic loss doctrine did not apply despite the

PLAINTIFF'S OPPOSITION TO DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BELAVSKIS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (DKT 69)

- 18 -

existence of contracts between the parties. The Court first explained that the economic loss doctrine "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff." *Id.* at 879. It then explained that "though the events giving rise to [plaintiff's] fraud claim did occur in the context of a contractual relationship . . . the claim is not a mere contract claim cloaked in the language of tort. [Plaintiff] claim[s] fraud in the inducement rather than fraud in the execution or promissory fraud." *Id.* at 880. The Court continued on to state: "[Defendant's] conduct did not represent a mere failure to perform its contractual obligations to [plaintiff] . . . . We therefore hold that the economic loss doctrine does not bar [plaintiff's] fraud claim."

The present case is factually similar to *Giles*. In this case, although this litigation arises in part out of contractual agreements, the Plaintiffs' fraud claims are based on fraudulent misrepresentations made to Plaintiffs by Defendants with the intent that Plaintiffs be induced to enter into new agreements that either waived existing contractual or legal rights, or otherwise harmed Plaintiffs. (FAC ¶¶ 120, 130) The fraudulent misconduct committed by these Defendants constitutes fraud in the inducement, and exceeds a mere failure by Defendants to perform existing contractual obligations. As such, following the rationale set forth in *Giles, supra,* the economic loss doctrine should not apply in this case.

### c.   Plaintiffs' Fraud Claims Are Pled With Sufficient Factual Specificity

### a.   Plaintiffs' Intentional Misrepresentation Claim Is Plead With Sufficient Particularity

Defendants raise a number of arguments concerning the insufficiency of the Plaintiffs' claim for intentional misrepresentation. For the reasons that follow, each of these arguments must fail.

### i.   Plaintiffs had no duty to investigate.

First, Defendants argue that the Plaintiffs' reliance on Defendant Citadele's intentional misrepresentations was not justifiable.  They argue that Plaintiffs were aware of circumstances indicating that Defendant Citadele's fraudulent misrepresentations were false when made, and that this should have prompted Plaintiffs to investigate matters. This argument fails for several reasons. First, the Defendants' incredulity concerning how Plaintiffs could have fallen for their scheme to defraud has no bearing on whether the Plaintiffs have presented proper and sufficient pleadings. If anything, the Defendants raise an affirmative defense, which cannot be considered here. Second, on a 12(b)(6) motion to dismiss, the Plaintiffs must merely demonstrate that they have set forth sufficient facts to state a claim, and they are further entitled to all reasonable inferences drawn in their favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Plaintiffs are entitled to an inference that the misrepresentations made were not so facially deficient that they

could not have been relied upon. Such issues are properly left for the jury to determine.

Furthermore, the Defendants' reliance on *Cameron v Cameron*, 88 Cal. App. 2d 585 (1948) is misplaced. First, *Cameron* is a domestic relations case, and Defendants have provided no authority that would apply its ruling to a civil fraud claim. Second, *Cameron* does not address the sufficiency of pleadings, and it is at best unclear what, if any, relevance this state court case could have to federal pleading requirements. Third, *Cameron* dealt with an appeal from an order of judgment in trial court, not a motion to dismiss. As discussed above, Plaintiffs are entitled to inferences here that would not have been made for the petitioner in *Cameron*. Fourth, the statements at issue in *Cameron* that petitioner should have investigated further were made by counsel and their agents in the context of litigation and settlement negotiations. This clearly impacted the court's decision, as the court stated that "[d]efendant was entitled to and did take a position favorable to his own interest in claiming [the business] as his separate property" *Id.* at 598. [internal quotations omitted.] Finally, unlike the petitioner in *Cameron*, the Plaintiffs at bar were not represented by counsel at the times Defendants made fraudulent misrepresentations to them, nor had they already begun an investigation into the Defendants' claims such that they could have a duty to

"complete [the] investigation." *Id.* at 593-94. For these reasons, and many others, *Cameron* has no force or bearing on this action.

> ### ii.     Plaintiffs have pleaded sufficient details regarding fraud in light of the complexity and length of the defendants' fraudulent scheme.

The remainder of the Defendants' arguments concerning the Plaintiffs' claim for intentional misrepresentation allege that Plaintiffs have not provided sufficient detail concerning the fraud to satisfy the heightened fraud pleading requirements. In *In re Cardiac Devices Qui Tam Litigation*, 221 F.R.D. 318, 333 (D. Conn. 2004), the District of Connecticut explained why the heightened pleading requirements for fraud should be relaxed in complex and difficult cases. The Court stated:

> It is only common sense that the sufficiency of pleadings under Rule 9(b) may depend upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading. (internal quotations and citations omitted) To approach the issue otherwise would allow the more sophisticated to escape liability . . . due to the complexity of their scheme and their deviousness in escaping detection."

*Id.* at 333.

In light of the complexities and length of time of the Defendants' fraudulent schemes, the allegations in the First Amended Complaint are more than sufficient.. Plaintiffs have identified who, what, where, and when to a sufficient

degree of specificity. Regarding what Defendants identify as the 'Extension Allegation,' Plaintiffs have pleaded that, in 2010, four named employees and officers of Defendants sent hundreds of e-mails and made approximately forty phone calls from Latvia to Plaintiff in California with the intention of fraudulently inducing Plaintiffs to agree to reduce the length of their term of credit. (FAC ¶¶ 5-9, 62-64). Asking Plaintiffs to explain each and every individual communication in their complaint is unreasonable given the number and complexity of the communications, and furthermore such extreme lengths are not necessary to allow Defendants to prepare a responsive pleading.

Next, regarding what Defendants identify as the 'Work-Out Arbitration Allegation,' again Plaintiffs have identified sufficient information to allow Defendants to prepare a responsive pleading. Plaintiffs have pleaded that in 2012, just before the lines of credit were about to end, Vija Meška (Meshka) (department head), Edvins Joksts (senior lawyer), and Andrey Golubcovs from AS Citadele Banka, directed a series of phone calls and e-mails from Latvia to Plaintiffs in California, this time asking that Plaintiffs not oppose arbitration actions in Latvian court in exchange for fraudulent promises of work-out agreements and renewed lines of credit. (FAC ¶¶ 5-9, 67-71). Asking Plaintiffs to explain each and every individual communication in the complaint is unreasonable given the number and complexity of the communications, and is

simply not necessary to allow Defendants to prepare a responsive pleading to the complaint.

Finally, regarding what Defendants identify as the 'Principal Payment Allegation,' again Plaintiffs have identified sufficient information to allow Defendants to prepare a responsive pleading. Plaintiffs have pleaded that, in Fall 2013, Andrey Golubcovs, as agent and representative of Defendant AS CITADELE BANKA directed a series of phone calls and e-mails from Latvia to Plaintiffs in California, this time fraudulently inducing Plaintiffs to miss their payment due on September, 2013. (FAC ¶¶ 77-78).

Plaintiffs have set forth sufficient allegations in the First Amended Complaint to allow Defendants to respond. Thus, Defendants' motion to dismiss claim should be denied.

### d.    Plaintiffs' Fraud By False Promises Claim Is Plead With Sufficient Specificity

Defendants also raise arguments concerning the insufficiency of the Plaintiffs' claim for fraud by false promises. For the reasons that follow, the Defendants' arguments regarding this claim fail as well.

Defendants open by repeating their arguments concerning the sufficiency of Plaintiffs' claim for intentional misrepresentation and by asking the Court to dismiss the Plaintiffs' claim for fraud by false promises on the same grounds.

Plaintiffs have adequately refuted the Defendants' prior arguments in the preceding section of this memorandum, and as such, Defendants' arguments with respect to the fraud by false promises claim should likewise be rejected.

Defendants further argue that the Plaintiffs' fraud by false promises claim should be dismissed because it does not plead sufficient facts to give rise to a plausible inference that the defendant did not intend to perform as promised at the time the promise was made. In support of this assertion, Defendants refer to FAC ¶ 132, which sets forth that particular element of the offense in the complaint. However, the Defendants have ignored the other *136 paragraphs* of the Complaint, in which Plaintiffs set forth a complex and intentional scheme by Defendants to defraud the Plaintiffs. The Complaint must be considered in its entirety when its sufficiency is assessed. See *Vess v. Ciba-Geigy Corp. Usa*, 317 F.3d 1097, 1107 (9th Cir., 2003). Reviewing the complaint in its entirety, the factual allegations are sufficient to create an inference that Defendants did not intend to perform as promised when the promises were made since looting Plaintiffs' assets was central to the racketeering scheme designed by Collins and Ripplewood. Therefore, these arguments also fail, and the Defendants' motion to dismiss the Plaintiffs' fraud claims must be denied.

///

///

**B.    THE PLAINTIFFS' RICO ALLEGATIONS ARE SUFFICIENTLY PLEAD TO STATE A PRIMA FACIE CIVIL RICO CLAIM**

**1.    Plaintiffs Have Pleaded A Sufficient Domestic Injury**

A civil RICO plaintiff "must allege and prove a domestic injury to its business or property." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016). This requirement serves to prevent the potential for international friction that could arise from providing a private civil remedy for foreign conduct. *Id.*

Plaintiffs have indeed stated a domestic injury under *RJR*. In paragraph 20 of the FAC, Plaintiffs plead domestic injuries as follows:

> Plaintiffs have suffered significant and devastating domestic injuries to their business and properties in California under *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106  . . . including but not limited to, real estate investment properties located at 21650 Pacific Coast Highway, Malibu, California and 3211 Colony View Circle, Malibu California 90265. Plaintiffs' remaining real properties and domestic investments in California have since been decimated and the only real properties left are currently in foreclosure and short sale proceedings due to the RICO Defendants' fraudulent scheme. Specifically, the 3211 Colony View Circle, Malibu California is being forced to undergo a short sale this month which will result in millions of dollars associated with a loss of equity and millions in mortgage payments made by Plaintiffs since 2006 when they bought the property.

The Defendants' actions have clearly caused colossal devastation to the Plaintiffs' many real estate investments in California.

Similar to the arguments raised by the other RICO Defendants, AS Citadele Banka and Belavskis spent an inordinate amount of effort to demonstrate that none of the RICO Defendants have securitized any of the Malibu properties. AS Citadele Banka and Belavskis joined the other RICO Defendants in their request for judicial notice of a Complaint that Plaintiff Viktor Gusevs filed in an unrelated case, involving distinct issues that have yet to be decided. *See* Defendants' Request for Judicial Notice, Dkt. 70. Defendants additionally referenced numerous documents – which are not referenced *anywhere in* Plaintiffs' FAC – related to the purchase, deed of trust, and Trustee Sale of Plaintiffs' Malibu Properties. *Id.*

However, Plaintiffs are not asserting that the named Defendants recorded a first deed of trust on the Malibu properties. Plaintiffs are asserting that these California properties are in foreclosure proceedings as a direct and proximate result of the RICO Defendants' fraudulent scheme. FAC ¶ 20, 45. In fact, there are several ways the RICO defendants could have securitized their loans on the Malibu properties other than an outright filing of a first deed of trust in California. For example, Defendants could have cross-collateralized the loans using Plaintiffs' other properties in Latvia.  Essentially, the RICO Defendants could have made the decision not to file any first deeds of trust in California to stay out

of the purview of the California Bureau of Real Estate for unlicensed banking activities.

Regardless, whether another financial institution is a lender of the referenced Malibu properties is irrelevant. This fact does not change the fact that these Defendants engaged in targeted transactions with Plaintiffs in California, and provided the capital which facilitated the purchase and development of the Malibu properties. Moreover, at this stage, the Court is simply evaluating whether Plaintiffs' FAC pleads "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The ultimate resolution of the referenced separate lawsuit at a future date is clearly irrelevant to this Court's determination of the Defendants' motion to dismiss.  Accepted as true, the allegations contained in Plaintiffs' First Amended Complaint are sufficient to demonstrate that Plaintiffs suffered a domestic injury. It would therefore be improper to dismiss Plaintiffs' RICO claim.

### 2. Plaintiffs Sufficiently Allege A RICO Enterprise Under 18 U.S.C. § 1962 (c)

A RICO claim also requires a plaintiff to plead the existence of an "enterprise" within the meaning of 18 U.S.C. § 1961(4). An enterprise may be a legal entity, or it may be an association-in-fact. 18 U.S.C. § 1961(4). Prior to the Supreme Court's decision in *Boyle v. United States*, 556 U.S. 938 (2009), many

PLAINTIFF'S OPPOSITION TO DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BELAVSKIS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (DKT 69)

- 28 -

circuits held that a RICO plaintiff who relied on an association-in-fact enterprise was required to plead an enterprise that had an "separate" or "ascertainable" structure distinct from the pattern of racketeering activity. See *Odom v. Microsoft Corp.*, 486 F.3d 541, 550 (9th Cir. 2007). In *Boyle*, the Supreme Court resolved the split and clarified that an association-in-fact enterprise possesses three characteristics: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The Supreme Court further explained:

> Such a group need not have a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods-by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times . . .

The Boyle Court eventually held that no more is required than a common purpose, relationships between the members, and sufficient longevity to carry out the purpose of the enterprise. *Id.* at 939. See also *Living Designs, Inc. v. E.I. DuPont De Nemours and Co.*, 431 F.3rd 353, 362 (9th Cir. 2005) ("if a complaint alleges that a corporation engages in a pattern of racketeering activity through legal entities beyond its control, such as independent banks, accounting firms, public relation firms, the person/ enterprise distinction will more than likely be satisfied.").

Here, Plaintiffs have sufficiently pled facts that, taken as true, support the existence of a RICO enterprise, as defined in *Boyle*. For example, the Complaint alleges that the RICO Enterprise was supported by the Ripplewood Defendants for the common purpose of coercing Plaintiffs into shortening the maturity deadlines on the lines of credit, suffering defaults in the arbitration proceedings, being deprived of continued funding, being subjected to orchestrated foreclosures of multiple properties, and losing multiple properties sold at sham auction prices to affiliates of the Bank. (FAC ¶¶ 62-64, 67-71, 77-78). All of these activities were perpetrated for the express purpose of stripping the good assets off the Defendant AS Citadele Banka's balance sheet and otherwise manipulating its financials so that Collins and the Ripplewood Defendants could swoop in and buy the Bank at a cheap, fire-sale price, pump up its value and then later sell for a huge profit.

Plaintiffs have sufficiently alleged that the Defendants conducted the affairs of the enterprise, as "opposed to their own affairs." Further, when an enterprise enables a defendant to engage in conduct "in a way that would be [otherwise] impossible" if the defendant were acting alone, a plaintiff has adequately alleged facts that an enterprise's affairs are distinct from that of a defendant. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). Plaintiffs have clearly alleged the plan would not have worked without the Defendants' indispensable participation.

### 3.    Plaintiffs Have Pleaded A Pattern of Racketeering Activity And The Predicate Acts with Particularity

"Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant." *In re Wellpoint, Inc. Out–of–Network "UCR" Rates Litig.*, 865 F.Supp.2d 1002, 1035 (C.D. Cal., 2011). A RICO plaintiff is not required to allege "every act of mail or wire fraud . . . with the 'particularity' required by Fed. R. Civ.P. 9(b). *Schumack v. United States*, 489 U.S, 705, 714 (1989)). "This is because the scheme, not the communications in furtherance of the scheme, must be fraudulent." *Id.* A plaintiff adequately alleges the predicate acts of wire and mail fraud by alleging" "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails [or wires] or caused a use of the United States mails [or wires] in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Miller v. Yokohama Corp.*, 358 F.3d 616, 620 (9th Cir. 2004). In this instance, Plaintiffs clearly alleged that Defendants engaged in multiple predicate acts of wire fraud and mail fraud within the United States from 2010 to present.

Plaintiffs thoroughly allege the identity of those responsible for each predicate act, and that these acts, and the underlying fraudulent scheme, were perpetrated with Defendants' consent, involvement, and agreement. Thus at this

early stage, and with no discovery, the Complaint clearly satisfies the applicable pleading standard.

### 4. Plaintiffs Have Sufficiently Pleaded A Prima Facie Case Against Defendants under 18 U.S.C. § 1962(a), (b), And (d)

A "plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co.*, 981 F.2d 429, 437 (9th Cir.1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supple Corp.*, 547 U.S. 451. 461, 126 S. Ct. 1991, 1998 (2006).

Here, Plaintiffs' allege that Defendants conspired with the Ripplewood Defendants to receive income from racketeering activities by engineering an ingenious plan to manipulate Defendant As Citadele Banka's balance sheet and overall financial condition such that the Ripplewood Defendants could purchase As Citadele Banka at an outrageously discounted purchase price. (FAC ¶ 62-79). This scheme resulted in massive fraudulent auction of Plaintiffs' properties and a substantial windfall profits for the Defendants and its investors while, at the same time allowed the Ripplewood Defendants to acquire As Citadele Banka at an artificially reduced price without the need for a legitimate bidding process..

Plaintiffs also allege that they sustained injuries to business or property by reason of defendants' violation of the RICO statute, 18 U.S.C. § 1962 (a)-(d). Plaintiffs have already lost 80 properties, with the sale of 30 additional properties pending at the hands of the AS CITADEL BANKA Enterprise. Plaintiffs have lost a staggering $200 million in properties and are now on the verge of bankruptcy.

Finally, RICO *conspiracy* claims are analyzed under the more liberal Rule 8(a) standard. *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 U.S. Dist. LEXIS 279, *25 (W.D. Wash. Jan 3, 2011). A defendant need not personally commit a RICO violation to be liable for the conspiracy.  *Howard v. America Online, Inc.*, 208 F. 3rd 741, 751 (9th Cir. 2000). Instead, the defendant need only be "aware of the nature and scope of the enterprise and intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). Defendants' violations of Sections 1962(a) and (c) and their agreement with the co-conspirators to perpetrate sham auctions of properties resulting in outrageous profits for the Defendants and the Ripplewood Defendants constitute a RICO conspiracy, violating section 1962(d).

## C.   INTERESTS OF JUDICIAL ECONOMY FAVOR ALLOWING PLAINTIFFS TIME TO REVIVE VG BEHEER LATVIA LLC

As a final matter, Defendants point out that Plaintiff VG Beheer Latvia, LLC, is presently listed as a forfeited California entity. However, VG Beheer Latvia LLC was incorporated in Latvia, not California. (FAC ¶ 6). Defendants

have not provided authority stating that VG Beheer Latvia LLC is barred from federal court as well as California Courts.

Under California law, Plaintiffs can obtain a Certificate of Revivor which would retroactively restore all of its rights. See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal. App. 4th 939, 958-59. Were VG Beheer Latvia LLC dismissed on this basis, Plaintiffs would be forced to file an amended complaint, inviting another round of motions and requests for judicial notice. This would waste the court's time and resources. Thus, if necessary, the Court should grant VG Beheer Latvia LLC time to be revived.

### D.    PLAINTIFFS ALTERNATIVELY REQUEST LEAVE TO AMEND THE COMPLAINT

Should the court grant Defendants' motion, it should further allow Plaintiffs to amend its complaint. Generally, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Leave to amend lies within the sound discretion of the trial court. *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

///

///

## IV.    <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that this Honorable Court deny AS Citadele Banka's and Guntis Belavskis' Motion to Dismiss. Alternatively, Plaintiffs respectfully request leave to amend their complaint.

Dated: November  21, 2016                    LITVAK LAW GROUP, P.C.

                                             By:    */s/ Uri Litvak*_____
                                                    Uri Litvak, Esq.
                                                    Airene Williamson, Esq.
                                                    Plaintiff Viktors Gusevs, *et. al*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk for the United States District Court for the Central District of California by using the CM/ECF system on November 21, 2016.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS AS CITADELE BANKA AND GUNTIS BELAVSKIS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM (Dkt 69)**

| | |
|---|---|
| **MUNGER, TOLLES & OLSON LLP**<br>Michael R. Doyen, Esq.<br>Jeffrey Y. Wu, Esq.<br>Matthew K. Donohue, Esq.<br>355 South Grand Avenue, 35th floor<br>Los Angeles, CA  90071 | *Attorneys for Defendants*<br>Ripplewood Advisors LLC,<br>RA Citadel Holdings, LLC, and<br>Timothy C. Collins |
| **BUCKLEY SANDLER LLP**<br>Fredrick S. Levin, Esq.<br>Ali M. Abugheida, Esq.<br>100 Wilshire Blvd., Suite 1000<br>Santa Monica, CA  90401 | *Attorneys for Defendants*<br>AS Citadele Banka and<br>Guntis Belavskis |
| **SAFARIAN CHOI & BOLSTAD, LLP**<br>David C. Bolstad, Esq.<br>Scott J. Street, Esq.<br>555 S. Flower Street, Suite 650<br>Los Angeles, CA  90071 | *Attorneys for Defendant*<br>Vas Privatization Agency |

I certify that all participants in the case are registered CM/ECF users and the service will be accomplished by the CM/ECF system.

Dated:  November 21, 2016

 /s/  *Sylvia B. Iwai*
Sylvia B. Iwai