Uri Litvak, Esq. (State Bar No. 277966)
Airene Williamson (State Bar No. 277101)
**Litvak Law Group, P.C.**
2424 S.E. Bristol St., Suite 300
Newport Beach, CA 92660
T.  949-477-4900
F.  949-335-7113

*Attorneys for the Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIKTORS GUSEVS, an individual; VG BEHEER LATVIA, LLC, a foreign limited liability company; VG BEHEER LATVIA SIA, a foreign corporation; VG BEHEER JURMALA LLC, a foreign limited liability company; VG BEHEER RIGA, LLC, a foreign limited liability company; BOTANIX, LLC, a foreign limited liability company; DEMENKOVA UN PARTNERI, a foreign partnership; LEGO TRANS, LLC, a foreign limited liability company; ANDRENU PARKS, LLC, a foreign limited liability company; GREENFIELD ENGURES SIA, a foreign corporation; and JEVGENIJS GUSEVS, a foreign individual, | Case No: 2:16-cv-03793-SVW-AS **PLAINTIFFS' OPPOSITION TO DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BELAVSKIS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, ON FORUM NON CONVENIENS GROUNDS AND, IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS PENDING ARBITRATION (DKT 68)** |
|        Plaintiffs, | |
|        vs. | Judge: Hon. Stephen V. Wilson Hearing Date:  December 5, 2016 Hearing Time: 1:30 p.m. Courtroom:    6 |
| AS CITADELE BANKA, a foreign corporation; GUNTIS BELAVSKIS, a foreign individual; VAS PRIVATIZATION AGENCY, a foreign | |

corporation; RIPPLEWOOD )
HOLDINGS L.L.C., a Delaware limited )
liability company; RIPPLEWOOD )
ADVISORS LLC, a Delaware limited )
liability company; RA CITADELE )
HOLDINGS LLC, a Delaware limited )
liability company; and TIMOTHY C. )
COLLINS, an individual, )
)
Defendants. )
)

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................6

II.  STATEMENT OF FACTS.......................................................7

III. LEGAL ARGUMENT ............................................................11

A.   THE COURT HAS PERSONAL JURISDICTION OVER THE
     DEFENDANTS ................................................................11
     1.   Legal Standard for Rule 12(b)(2) Motion to Dismiss ......11
     2.   Plaintiffs Can Establish Jurisdiction Over All Named
          Defendants Through The Nationwide Jurisdictional
          Provisions Found In 18 U.S.C. § 1965(b).........................12
     3.   Plaintiffs Have Establish A Basis For The Court's Exercise
          of Specific Personal Jurisdiction Over the Defendants ...15
          a.   The Defendants Purposefully Directed their
               Activities to the State of California........................16
          b.   Plaintiffs' Claims Arose Out Of The Defendants'
               Specific California-Related Activities....................19
          c.   Exercise Of The Court's Jurisdiction Over The
               Defendants In California Is Reasonable.................20

B.   THE DEFENDANTS' REQUEST FOR DISMISSAL ON
     FORUM NON CONVENIENS GROUNDS
     MUST BE DENIED .................................................... 23
     1.   Latvia Is Not A Competent Or Adequate Forum ............24
     2.   Neither The Public Nor The Private Interest Factors
          Favor Dismissal .................................................................26

C.   PLAINTIFFS CANNOT BE ORDERED INTO ARBITRATION
     UNDER THESE CIRCUMSTANCES .........................................28

IV.  PLAINTIFFS ALTERNATIVELY REQUEST LEAVE TO
     AMEND THE COMPLAINT ........................................................30

V.   CONCLUSION...........................................................................30

# TABLE OF AUTHORITIES

## U.S. Supreme Court Cases

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)..................................28

*Calder v. Jones*, 465 U.S. 783 (1984) ................................................................17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 66 U.S. 408 (1984)...........15

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .........................................12

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947)..............................26

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235(1981) .............................................26

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) ................................................28


## Federal Cases

*Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ....................................19

*Brayton Purcell LLP v. Recordon &* Recordon, 606 F.3d 1124 (9th Cir.) ....11,17

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986).13

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) .........17

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)...........................................12

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. Cal 2002).........................11,15

*Gutierrez v. Givens*, 989 F.Supp. 1033 (S.D. Cal., 1997) ................................13

*Leetsch v. Freedman*, 260 F.3d 1100 (9th Cir. 2001)....................................24,25

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) ................... 24,26-27

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998)....................12

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ..............................12

*Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990)...........................19

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ...12,15

*Walden v. Fiore*, 688 F.3d 558 (9th Cir. 2012) ................................................20

*Wordtech Sys., Inc. v. Programmer's Paradise, Inc.*, 1997 U.S. Dist. LEXIS
     15902 (N.D. Cal. Oct. 8, 1997) ...............................................................13


## Federal Statutes

18 U.S.C.S. § 1965(b) ...................................................................................12,15

///

**<u>Federal Rules</u>**

FED. R. CIV. P. 12(B)(2) ........................................................................11

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **INTRODUCTION**

This action centers around a sophisticated, pervasive, and complex racketeering scheme perpetrated against the Plaintiffs by Defendants AS CITADELE BANKA ("AS Citadele Banka") and GUNTIS BELAVSKIS ("Belavskis") (collectively referred herein as "Defendants"), and VAS PRIVATIZATION AGENCY ("Vas") in alliance with RIPPLEWOOD ADVISORS LLC and RA CITADELE HOLDINGS LLC ("the Ripplewood Defendants"), and TIMOTHY C. COLLINS ("Collins") through extensive wire and mail fraud.

These Defendants conspired to perpetrate a fraudulent scheme which included coercing Plaintiffs into shortening the deadlines for repayment of lines of credit, eventually suffering defaults in arbitration proceedings, being deprived of continued funding, and being subjected to orchestrated foreclosures and sham auctions of multiple properties.   This sophisticated financial scheme would ultimately result in the unlawful sale of 80 properties belonging to Plaintiffs for outrageously low sham prices, with the intention of reselling the properties at their fair market value.   This modus operandi resulted in substantial windfall profits for the RICO Defendants and investors, while at the same time allowing Collins and the Ripplewood Defendants to acquire the Bank for an artificially reduced fire-

sale price, then began to execute their plan of pumping up the value of the Bank and then re-selling it for billions in profit.

As set forth below, Plaintiffs' lawsuit belongs in California where Gusevs resides, where Plaintiffs were specifically solicited and targeted, and where Plaintiffs sustained substantial losses to their real property located at: 21650 Pacific Coast Highway, Malibu, California 90265 and 3221 Colony View Circle, Malibu CA 90265 (hereinafter referred to as "Malibu Properties").  Furthermore, the well-pled allegations in the FAC establish far more than the "minimum contacts" necessary for the Court to exercise jurisdiction over AS Citadele Banka and Guntis Belavskis.  Plaintiffs allege sufficient facts to meet the *Calder* test, as set forth below, in that AS Citadele Banka and Guntis Belavskis intentionally directed financial lending and loan servicing activity towards California.  Finally, Defendants request to stay the proceeding pending an arbitration should be denied because the Plaintiffs' claims arise out of the fraudulent conduct and scheme to defraud orchestrated by Defendants, not breach of contract.

## II.    STATEMENT OF FACTS

In November 2003, Plaintiff VG BEHEER LATVIA SIA signed a line of credit agreement in Los Angeles, CA with Parex Bank, which was then a privately owned bank headquartered in Latvia.  First Amended Complaint ("FAC") ¶ 43; *See also* Declaration of Viktors Gusevs (hereinafter "Gusevs Decl."), filed

concurrently herewith.  The lines of credit were secured by real estate and other property in California, including the Malibu properties, and in Latvia. FAC at ¶ 45.  In November, 2008, during the financial crisis, the government of Latvia purchased Parex Bank for token consideration.  *Id.* at ¶ 47 and ¶ 48. Subsequently, Defendant VAS Privatization Agency, aka the Latvian Privatization Agency ("Vas")[1] acquired a 75% ownership interest in Parex Bank from the government of Latvia. *Id.* at ¶ 50.  From 2008 to 2009, Parex Bank refused to honor Plaintiffs payment instructions, which caused significant damage to Plaintiffs. *Id.* at ¶ 52.  In 2010, Plaintiffs lines of credit were transferred to a newly formed entity, Defendant AS CITADELE BANKA, as successor of Parex Bank. *Id.* at ¶ 53.  Vas owned 75% of the shares of the newly formed bank. *Id.* at ¶ 55.  Defendant GUNTIS BELAVSKIS, from 2010 to 2014, was a Member of the Supervisory Board or Chairman of the Supervisory Board of Defendant AS CITADELE BANKA. *Id.* at ¶ 12.

After AS Citadele Banka was formed, then Latvian Finance Minister and then Latvian Economy Minister signed a confidential agreement with the European Commission requiring that AS Citadele Banka be sold or liquidated by the end of 2014. *Id.* at ¶ 57.  Under the direction of Ripplewood and Collins, the RICO Defendants then hatched a fraudulent scheme whereby they would reduce

---

[1]     Throughout the numerous filed pleading, parties have interchangeably referred to Defendant VAS Privatization Agency, aka the Latvian Privatization Agency as "Vas" or "LPA."

AS Citadele Banka's apparent book value to increase the likelihood that AS Citadele Banka could be sold at an extremely low price to Defendant Timothy Collins and one of his Ripplewood entities. *Id.* The scheme involved defrauding Plaintiffs of their property. *Id.* at ¶ 59.

The first part of the scheme involved convincing Plaintiff Viktors Gusevs to shorten the term of the Plaintiffs' lines of credit from the then maturity date of 2018 to 2012. *Id.* at ¶ 62; Gusevs Decl. at ¶ 27. Shortly before the expiration of the lines of credit, the Defendants, including LAP informed Plaintiff Gusevs in California, through a series of email and telephone communications that AS Citadele Banka would be filing lawsuits against Plaintiffs in arbitration court in Latvia upon expiration of the term of the lines of credit. FAC at ¶ 68; Gusevs Decl. at ¶ 29. Defendants assured Plaintiff Gusevs that the reason for this lawsuit was simply so that the Bank could write off the loans and make AS Citadele Banka more appealing to potential purchasers. *Id.* Defendants fraudulently promised Plaintiff Gusevs that if he cooperated by not opposing the lawsuits, AS Citadele Banka would not enforce the judgments but rather would agree to payment "work-outs" with the Plaintiffs and that the new buyer of the bank would renew the lines of credit. FAC at ¶ 69; Gusevs Decl. at ¶30. Plaintiffs relied on Defendants promises and as a result allowed arbitration judgments to be entered against Plaintiffs. FAC at ¶ 73; Gusevs Decl. at ¶ 32. Defendants failed to honor

their promises and did not enter into a workout agreement with any of the Plaintiffs other than Plaintiff VG BEHEER LATVIA SIA. FAC at ¶ 74.

The workout agreement with Plaintiff VG BEHEER LATVIA SIA required regularly monthly interest payments and a payment on the principal every sixth months. *Id.* at ¶ 75. Plaintiff VG BEHEER LATVIA SIA made these payments from June 18, 2012 until the Fall of 2013. *Id.* at ¶ 76. At that time, AS Citadele Banka informed Plaintiff VG BEHEER LATVIA SIA through email and telephonic communications that it was not required to make the principal payment due in September 2013. *Id.* at ¶ 77. One month later, after Plaintiff VG BEHEER LATVIA SIA had already used the funds, Defendants demanded the September 2013 payment and threatened to enforce all of the uncontested arbitration court judgments against Plaintiffs. *Id.* at ¶ 79.

Plaintiffs requested AS Citadele Banka's permission to sell two properties to pay back a large portion of the loan, but AS Citadele Banka ignored these requests to further its fraudulent scheme. *Id.* at ¶ 81. In March 2014, AS Citadele Banka began auctioning Plaintiffs' properties in Latvia to repay the unopposed judgments. *Id.* at ¶ 82. Approximately 80 of the Plaintiffs' properties have been auctioned off. *Id.* at ¶ 84; Gusevs Decl. at ¶ 44. A majority of these auctioned properties have been purchased by affiliates of AS Citadele Banka at absurdly low

prices with the intent being to sell them at fair market value thus resulting in windfall profits for AS Citadele Banka's investors and affiliates. *Id.*

In September of 2014, Defendant VAS sold its 75% ownership interest to the Ripplewood Defendants and Timothy Collins for a ridiculously low price of 74 million Euros.  This purchase price was widely questioned given that Collins was the only "bidder" and the Latvian government had spent 2 billion Euros to bail out the Bank in 2008.  *Id.* at ¶ 98.  Miraculously, an additional $300 million euro was "found" on the balance sheet of the Bank immediately after the sale.  *Id.* at ¶ 95.

### III.   <u>LEGAL ARGUMENT</u>

### A.   THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS.

### 1.   Legal Standard for Rule 12(b)(2) Motion to Dismiss.

To defeat a motion to dismiss, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant."  *Dole Food Co. v. Watts,* 303 F.3d 1104, 1108 (9th Cir. Cal 2002).  Where, as here, the Defendant's motion is based on written materials and not an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdictional facts. *Brayton Purcell LLP v. Recordon &* Recordon, 606 F.3d 1124, 1127 (9th Cir.).  To make this prima facie showing, a plaintiff can rely on the allegations in its complaint to the

extent that the moving party does not controvert those allegations.   See *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "Conflicts between [the] parties over statements contained in the affidavits must be resolved in the *plaintiff's favor*." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006).   California's long-arm statute authorizes personal jurisdiction to the extent permitted by the Due Process Clause of the Constitution.   Cal. Code Civ. Proc. § 410.10;  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Due process requires that a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

## 2.    Plaintiffs Have Established Jurisdiction Over All Named Defendants Through The Nationwide Jurisdictional Provisions Found In 18 U.S.C. § 1965(b)

The RICO statute provides for nationwide service of process in federal district court over defendants outside of the district, if "the ends of justice require" it.  18 U.S.C.S. § 1965(b).  Such nationwide service of process allows a district

court to obtain personal jurisdiction over the nonresident defendant who is served under the statute as long as that person has minimum contacts with the United States. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). "Congress intended the 'ends of justice' provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial. *Gutierrez v. Givens*, 989 F.Supp. 1033, 1038 (S.D. Cal., 1997).

Courts test these contacts under the "ends of justice" test set forth in *Butcher's Union*, 788 F.2d at 539. The test requires that two specific conditions be met: that (1) "the court have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy"; and (2) that no other district would be able to exercise personal jurisdiction over all of the conspirators. Once the "ends of justice" test has been satisfied, sufficiency of minimum contacts is determined by contacts with the United States as a whole and not contacts with the forum state. *Wordtech Sys., Inc. v. Programmer's Paradise, Inc.*, 1997 U.S. Dist. LEXIS 15902, at *5 (N.D. Cal. Oct. 8, 1997).

Here, the "ends of justice" test is satisfied and the Court may exercise personal jurisdiction over all the named Defendants. First, as set forth in detail below, AS Citadele Banka and Guntis Belavskis' conducted loan origination and servicing activities with respect to a California resident, and they further purposefully directed hundreds of phone calls and e-mails to California, at the

behest of Ripplewood and Collins, to carry out their scheme to defraud, causing significant injury to Plaintiffs' property interests in California.   Second, AS Citadele Banka and Guntis Belavskis have sufficient minimum contacts with the United States and California, in particular given that four named officers of AS Citadele Banka, including Belavskis, sent hundreds of e-mails and made approximately forty phone calls from Latvia to Plaintiff in California with the intention of fraudulently inducing Plaintiffs to agree to reduce the length of their term of credit. (FAC ¶¶ 5-9, 62-64).  Thereafter, in 2012, just before the lines of credit were about to explode, Vija Meška (Meshka) (department head), Edvins Joksts (senior lawyer), and Andrey Golubcovs of AS Citadele Banka, at the direction of Ripplewood and Collins, directed a series of phone calls and e-mails from Latvia to Plaintiffs in California, this time asking that Plaintiffs not to oppose arbitration actions in Latvian court in exchange for fraudulent promises of work-out agreements and renewed lines of credit. (FAC ¶¶ 5-9, 67-71).

Further, no other district can exercise personal jurisdiction over all of the named Defendants to this action.  Certain Defendants, such as the Ripplewood Defendants, are transacting business in California, New York, Delaware and in Latvia, while the remaining Defendants appear to be entities formed or persons residing in Latvia, and Defendants Timothy Collin's residence is currently unknown, but he appears to own a property in San Francisco, California.

Accordingly, there is no clear forum other than California in light of the activities directed primarily to California and the damage caused to a citizen of California.

This case falls squarely within the purpose of the RICO nationwide service of process provision, which is to enable Plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial. Here, the court is faced with a scheme that spanned throughout the United States and internationally, but that was specifically directed towards a California resident. Nationwide service and personal jurisdiction are necessary to bring all of the claims and defendants together in a single trial. For all of these reasons, the court should exercise jurisdiction over these Defendants under the RICO nationwide service provision.

### 3.      Plaintiffs Have Established A Basis For The Court's Exercise of Specific Personal Jurisdiction Over the Defendants

Should this Court determine that the nationwide jurisdictional provisions found in 18 U.S.C. § 1965(b) are inapplicable, this Court may exercise personal jurisdiction over the Defendants under traditional jurisdictional grounds. Specific personal jurisdiction arises when, as in the present case, a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 66 U.S. 408, 414–16 (1984).

The Court may exercise specific personal jurisdiction over the Defendants based on their contacts with the State of California.  Specific jurisdiction requires certain minimum contacts and must not offend traditional notions of fair play and substantial justice.  *Schwarzenegger*, 374 F.3d at 801.  This "minimum contacts" test requires three things: (1) the defendant must have purposefully directed specific activities toward the state forum, (2) the plaintiff's claim must arise out of or relate to those specific forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. be reasonable.  *Id.* at 802. If the plaintiff makes the first two showings, then the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction."  *Dole Food Co.* at 1114.

### a.   The Defendants Purposefully Directed their Activities to the State of California

First, Plaintiffs can show that Defendants purposefully directed their activities toward Plaintiff Gusevs who was known to be residing in the State of California.  The purposeful direction requirement has three necessary elements.  To satisfy the purposeful direction requirement the defendant "must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

*Brayton Purcell LLP,* at 1128. This is sometimes referred to as the "effects test" or "Calder test." See *Calder v. Jones*, 465 U.S. 783 (1984).  The express aiming requirement is satisfied when defendant is alleged to have engaged in wrongful conduct targeted at plaintiff whom defendant knows to be a resident of the forum state.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011).

AS Citadele Banka and Belavskis have purposefully directed their lending activities towards the State of California.  Parex Bank, the predecessor in interest of Defendant AS Citadele Banka, purposefully negotiated with Plaintiff Gusevs in California and entered into loan agreements with Plaintiff VG Beheer Latvia LLC in California.  (FAC ¶ 6).  The lines of credit opened by Parex Bank were opened for the known and agreed upon purpose of allowing Plaintiffs to engage in real estate development in California.   Plaintiffs then utilized such loans for the development of their five (5) properties in California, including the two Malibu Properties.   (FAC ¶¶ 19-20).   Plaintiff VG Beheer Latvia LLC subsequently relocated its corporate office to California, a fact of which Defendants were aware.  When Defendant AS Citadele Banka acquired the loans from Parex Bank, it continued to service them, accept payments, and it entered into at least one new loan workout agreement regarding the loans, again intentionally directing its loan servicing activities towards California.  (FAC ¶¶6, 19-20).

Finally, and perhaps most importantly, AS Citadele Banka and Belavskis, at the direction of Ripplewood and Collins,  also intentionally targeted Plaintiffs in California in furtherance of their scheme to defraud and directed hundreds of phone calls and e-mails to Plaintiffs in California designed to perpetrate fraud in California under the guise of legitimate loan servicing activity.   Additionally, Defendants knew that Plaintiffs conducted real estate development activities in California, and that Plaintiffs relied on the lines of credit to conduct that business, and that their scheme to defraud would cause severe injuries to the Plaintiffs' business interests in California.   Such severe injuries have in fact resulted, as Plaintiffs' California properties have all been sold or forced into foreclosure or short sale due to Defendants' fraudulent activity. (FAC ¶¶6, 19-20).

Plaintiffs allege sufficient facts to meet the *Calder* test in that: (1) Defendants intentionally directed financial lending and loan servicing activity towards California and further intentionally defrauded the Plaintiffs in the course of such activities; (2) that their intentional acts were directed toward known residents of California who were known to be engaging in significant commercial activities in California; and 3) that it was foreseeable that Plaintiffs would suffer severe harm if deprived of their source of funding, which has in fact occurred. Thus, Plaintiffs satisfy prong one of the *Schwarzenegger* test above.

### b.   Plaintiffs' Claims Arose Out Of The Defendants' Specific California-Related Activities

Plaintiffs have also demonstrated that their claims arose out of, or were related to, the Defendants' California-related activities.   The Ninth Circuit employs a "but for" test to determine whether claims arise out of the defendant's contacts in the forum.   *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The question is ***not*** whether all of the claims arise out of Defendants' California-related activities; rather, the question is: "but for Defendants' contacts with the United States and California, would Plaintiffs' claims against the Defendants have arisen?"   *Id.*   In adopting the "but for" test, the Ninth Circuit also noted that "[a] restrictive reading of the 'arising out of' requirement is not necessary in order to protect potential defendants from unreasonable assertions of jurisdiction."   *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990).

In this case, taking the Plaintiffs' allegations as true, there is no question that the Plaintiffs' claims would not have arisen ***but for*** the Defendants' lending and loan servicing activities, and the Defendants' fraudulent conduct occurring under the guise of such lending and loan servicing activities, discussed above, that was directed towards the Plaintiffs, who were known to be California residents engaging in significant business ventures in California.   Thus, Plaintiffs satisfy the

"but for" test, thereby also satisfying prong two of the *Schwarzenegger* test as well.

### c.   Exercise Of The Court's Jurisdiction Over The Defendants In California Is Reasonable

Finally, this Court's exercise of specific personal jurisdiction over the Defendants comports with the notions of fair play and substantial justice. In evaluating whether the assertion of personal jurisdiction would comport with fair play and substantial justice, courts may consider: (a) the extent of the defendants' purposeful interjection into the forum state's affairs; (b) the burden on the defendant of defending in the forum; (c) the extent of conflict with the sovereignty of the defendant's state; (d) the forum state's interest in adjudicating the dispute; (e) the most efficient judicial resolution of the controversy; (f) the importance of the forum to plaintiff's interest in convenient and effective relief; and, (g) the existence of an alternative forum. *Walden v. Fiore*, 688 F.3d 558, 582–83 (9th Cir. 2012). The burden is on defendant to make a compelling case as to why jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802.

Defendants have argued that the above factors favor a finding that jurisdiction would be unreasonable. However, the Defendants' position is based on improper argument and conjecture that should not be considered with respect to this motion, as well as arguments that ignore the Plaintiffs' more compelling

opposing interests.  As such, the Court should find that it would be reasonable to exercise personal jurisdiction over the Defendants.

Regarding the first factor above, AS Citadele and Belavskis have purposefully serviced loans in California, and have further specifically targeted Plaintiffs in the forum state. Such deliberate interjection by Defendants into California merits an exercise of jurisdiction by this Court.

On the second factor, although AS Citadele and Belavskis claim they may face some obstacles litigating in California, Plaintiffs would face much greater obstacles litigating in Latvia, as Plaintiff Gusevs, who is the principal and owner of the Plaintiff entities, resides in California.  Plaintiffs' burden would be even more acute as a result of its financial difficulties caused by the Defendants' fraudulent activities. Furthermore, the remaining RICO Defendants are American-based enterprises or residents.

Regarding the third factor, Defendants misstate the Plaintiffs' request for relief in this action.  Plaintiffs seek compensatory, statutory and exemplary damages tied to injuries caused by the Defendants.  The Court need not consider the legitimacy of Latvian foreclosure or arbitration proceedings or any other aspect of Latvian law – and such are in fact, irrelevant to Plaintiffs' claims. Furthermore, the Defendants' assertions (which cannot properly be considered on this motion), that court actions in Latvia have been filed which arise out of the

same operative facts are insufficient to demonstrate the existence of a true *res judicata* defense.  Even these Defendants cannot argue with a straight fact that civil RICO remedies exist under Latvian law.

Regarding the fourth factor, the United States and the State of California have significant interests in protecting the rights and interests of their residents and corporate domiciliaries.  They also have significant interests in preventing fraud and in punishing those who specifically target California residents and commit fraud on their soil.

Regarding the fifth factor, the Defendants' argument that every relevant witness and piece of evidence is located in Latvia is absurd given their knowledge that Plaintiff Gusevs presently resides in California, Plaintiffs were damaged in California, and that Collins and the Ripplewood Defendants are all located in New York, and not Latvia.  In actuality, it would be far more efficient to resolve this matter in the United States, where all parties to the action save these Defendants reside, and in this District where the Plaintiffs', the Plaintiffs' witnesses, and the Plaintiffs' evidence are all found.

Regarding the sixth factor, the Defendants' argument that Plaintiffs would not be inconvenienced by litigating in Latvia is also meritless.  Regardless of their origins, Plaintiff Gusevs now resides in California, not in Latvia.  Further, even if the underlying contracts are governed by Latvian law, this is not a breach of

contract action.  The tortious conduct which is truly at issue *occurred* in California and would be governed by California law and civil RICO jurisprudence, in particular. Also, the majority of the parties and their witnesses and evidence are in the United States and Plaintiffs are suffering financially as a result of the Defendants' fraudulent conduct, and not having to litigate in a distant forum has become important for Plaintiff to obtain an effective relief.

Finally, regarding the seventh factor, Latvia is not an effective alternative forum in that Plaintiff could not acquire jurisdiction over all the Defendants in Latvia or pursue a claim under the civil RICO statute which does not exist in Latvia.

For the foregoing reasons, the Court should find that it would be reasonable to exercise personal jurisdiction over these Defendants such that the case should properly proceed in this court.

**B.    THE DEFENDANTS' REQUEST FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS MUST BE DENIED**

Defendants next argue that even if the Court finds that it has personal jurisdiction over the parties, that the case should nevertheless be dismissed on forum non conveniens grounds. To prevail on a forum non conveniens motion, the movant must show: (1) the existence of an adequate alternative forum; and (2) that

the balance of relevant private and public interest factors favor dismissal. *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir.1990).

Defendants suggest that some unspecified courts in Latvia would be an adequate alternative forum. However, Defendants do not offer any arguments that a civil RICO claim could be brought in the Latvian courts. Consequently, the Defendants' motion to dismiss on forum non conveniens grounds must also be denied.

### 1.    Latvia Is Not A Competent Or Adequate Forum

Defendants first argue that the courts of Latvia are an adequate alternative forum.  Defendants fail to specify which courts in Latvia provide an adequate forum. More importantly, nowhere in the mass of exhibits and declarations filed by Defendants is there any statement that civil RICO claims arising under U.S. law could be brought in Latvia.

Defendants first cite unpublished cases in which Latvian courts were found to be adequate forums.  However, not only are these cases factually inapposite, but they are of little value as persuasive authority.   Courts must "make the determination of adequacy on a case by case basis . . . ." *Leetsch v. Freedman*, 260 F.3d 1100, 1103  (9th Cir. 2001).  Further, "the burden of showing the existence of an adequate alternative forum is the defendant's." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001).

Defendants next argue that they are amenable to service in Latvia, and that this fact alone makes Latvia an adequate alternative forum.  "Amenability to service of process, however, is not the only determinant of a forum's adequacy." *Leetsch,* 260 F.3d at 1103. "The foreign court's jurisdiction over the case and competency to decide the legal questions involved will also be considered." *Id.* (citing *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)).

In an attempt to establish the competency of Latvian courts, the Defendants offer two facts: 1) that Latvian courts recognize basic fraud claims, and 2) that Latvian courts award money damages.[2]  By these standards, almost any court on earth would be competent to hear this case. In reality, Plaintiffs would be left without an adequate remedy if they were forced to reduce their extensive and complex RICO fraud claims to a basic fraud action under Latvian law.  As a result, Latvian courts are not competent or adequate alternative forums here.  A request to move this case to Latvia should therefore be denied.

Defendants also ignore the fact that (a) the Latvian legal system is the very institution that enabled the RICO Enterprise to achieve the purpose of the scheme; and (b) that Defendant VAS is a commercial instrumentality of the Latvian government, which would foreclose legal action against that Defendant in Latvia.

---

[2]  Defendants also offer the Grunte Declaration, which seeks to offer expert testimony concerning the Latvian legal system. Such a declaration is clearly improper and cannot be considered on this motion. *See* Plaintiffs' Objection to Grunte Declaration.

## 2.   Neither The Public Nor The Private Interest Factors Favor Dismissal

Defendants continue to argue that the public and private factors referenced in *Contact Lumber Co.* above favor dismissal on forum non conveniens grounds. In applying these factors, the Supreme Court has stated that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 102 S.Ct. 252, 265-66 (1981).  Likewise, "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 67 S.Ct. 828 (1947).

First, the private interest factors are stated as follows:

(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck*, 236 F.3d at 1145.  Applying these factors which were discussed above in relation to the personal jurisdiction analysis, Defendants have failed to overcome the Plaintiffs' choice of their home forum.

///

///

- 26 -

Next, the public factors are as follows:

(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum.

*Lueck*, 236 F.3d at 1147.  Here again, these factors favor this California forum. First, the United States and the State of California have significant interests in protecting the rights of their residents and corporate domiciliaries from fraudulent enterprises.   They also have significant interests in preventing fraud and in punishing those who commit fraud against their residents.  This is not a dispute unrelated to the forum.

Second, as discussed in subsection 1 above, there has been no showing that a civil RICO claim could be brought in a Latvian court.

Finally, this matter is no more burdensome than any other civil case before the Court, and the Defendants have not offered any evidence that would suggest that this case would be any less burdensome or would face less docket congestion in Latvia.  As such, again, the Defendants have failed to overcome the Plaintiffs' choice of their home forum.

As explained above, Latvia civil RICO claim could not be brought in a Latvian court and even if this were not the case, the public and private interest factors do not outweigh Plaintiffs' choice of this home forum.  As a result, the

Defendants' motion to dismiss on forum non conveniens grounds should be denied.

### C.    PLAINTIFFS CANNOT BE ORDERED INTO ARBITRATION UNDER THESE CIRCUMSTANCES.

Finally, Defendants bring forth a number of contracts, that were not attached to the FAC, and argue that they contain binding arbitration clauses that must be enforced though a judicial stay of proceedings.  While courts have made clear that the Federal Arbitration Act (FAA) has a "national policy favoring arbitration", *see, e.g.*, *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984), the savings clause in § 2 provides that a court may strike or limit an arbitration provision on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The savings clause "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Defendants' request to stay the proceeding pending arbitration is disingenuous and borderline frivolous.  The arbitration clause referenced by Defendant no longer has any remedial effect for Plaintiffs because as discussed in Plaintiffs opposition papers, AS Citadele Banka, directed a series of phone calls and e-mails from Latvia to Plaintiffs in California, asking that Plaintiffs ***not to***

***oppose*** the arbitration actions in Latvian court in exchange for fraudulent promises of work-out agreements and renewed lines of credit. (FAC ¶¶ 5-9, 67-71). AS Citadele Banka and Belavskis represented to the Plaintiffs that the Bank would be filing lawsuits against the Plaintiffs in arbitration court in Latvia upon expiration of the term of the lines of credit for repayment of the lines of credit, but only so the Bank could write off the loans, thereby making the Bank more appealing to potential purchasers. *Id.* ¶ 67-71. Defendants actions are in direct contravention of the policy of a fair and equitable arbitration proceeding and are precisely why the savings clause in § 2 was created. In effect, Defendants instructed the Plaintiffs ***to ignore*** the very arbitration remedies the Defendants not conveniently impose.

Finally, Plaintiffs' claims arise out of the fraudulent conduct and scheme to defraud orchestrated by Defendants, not the contracts referenced by the Defendants. Thus, in this case, although this litigation arises in part out of contractual agreements, the Plaintiffs' fraud claims are based on fraudulent misrepresentations made to Plaintiffs by Defendants with the intent to induce Plaintiff into entering into new agreements that either waived existing contractual or legal rights, or otherwise harmed Plaintiffs. The fraudulent misconduct committed by these Defendants constitutes fraud in the inducement, and exceeds mere failures by Defendants arising out of existing contractual obligations. As

such, the Defendants should not be allowed to escape the consequences of their fraud through an overly broad reading of forum selection and arbitration clauses. As such. the Motion to Stay should be denied.

## IV.    PLAINTIFFS ALTERNATIVELY REQUEST LEAVE TO AMEND THE COMPLAINT

Should the court grant Defendants' motion, it should further allow Plaintiffs to amend its complaint. Generally, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Leave to amend lies within the sound discretion of the trial court. *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

## V.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Honorable Court deny the Defendants' Motion to Dismiss. Alternatively, Plaintiffs respectfully request leave to amend their complaint.

Dated: November  21, 2016                LITVAK LAW GROUP, P.C.

By:    */s/ Uri Litvak_____*
        Uri Litvak, Esq.
        Airene Williamson, Esq.
        Plaintiff Viktors Gusevs, *et. al*

- 30 -

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk for the United States District Court for the Central District of California by using the CM/ECF system on November 21, 2016.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BELAVSKIS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION ON FORUM NON CONVENIENS GROUNDS; AND IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS PENDING ARBITRATION(DKT. 68)**

| | |
|---|---|
| **MUNGER, TOLLES & OLSON LLP**<br>Michael R. Doyen, Esq.<br>Jeffrey Y. Wu, Esq.<br>Matthew K. Donohue, Esq.<br>355 South Grand Avenue, 35th floor<br>Los Angeles, CA  90071 | **Attorneys for Defendants**<br>Ripplewood Advisors LLC,<br>RA Citadele Holdings, LLC, and<br>Timothy C. Collins |
| **BUCKLEY SANDLER LLP**<br>Fredrick S. Levin, Esq.<br>Ali M. Abugheida, Esq.<br>100 Wilshire Blvd., Suite 1000<br>Santa Monica, CA  90401 | **Attorneys for Defendants**<br>AS Citadele Banka and<br>Guntis Belavskis |
| **SAFARIAN CHOI & BOLSTAD, LLP**<br>David C. Bolstad, Esq.<br>Scott J. Street, Esq.<br>555 S. Flower Street, Suite 650<br>Los Angeles, CA  90071 | **Attorneys for Defendant**<br>Vas Privatization Agency |

I certify that all participants in the case are registered CM/ECF users and the service will be accomplished by the CM/ECF system.

Dated:  November 21, 2016


                                    /s/  Sylvia B. Iwai
                                    Sylvia B. Iwai