Uri Litvak, Esq. (State Bar No. 277966)
Airene Williamson (State Bar No. 277101)
**Litvak Law Group, P.C.**
2424 S.E. Bristol St., Suite 300
Newport Beach, CA  92660
T.   949-477-4900
F.   949-335-7113
*Attorneys for the Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIKTORS GUSEVS, an individual; VG BEHEER LATVIA, LLC, a foreign limited liability company; VG BEHEER LATVIA SIA, a foreign corporation; VG BEHEER JURMALA LLC, a foreign limited liability company; VG BEHEER RIGA, LLC, a foreign limited liability company; BOTANIX, LLC, a foreign limited liability company; DEMENKOVA UN PARTNERI, a foreign partnership; LEGO TRANS, LLC, a foreign limited liability company; ANDRENU PARKS, LLC, a foreign limited liability company; GREENFIELD ENGURES SIA, a foreign corporation; and JEVGENIJS GUSEVS, a foreign individual, | Case No: 2:16-cv-03793-FFM **DECLARATION OF VIKTOR GUSEVS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ALL DEFENDANTS' MOTIONS TO DISMISS** Judge: Hon. Stephen V. Wilson Hearing Date:  December 19, 2016 Hearing Time: 1:30 p.m. Courtroom:      6 |
| Plaintiffs, vs. AS CITADELE BANKA, a foreign corporation; GUNTIS BELAVSKIS, a foreign individual; VAS PRIVATIZATION AGENCY, a foreign corporation; RIPPLEWOOD | |

1

DECLARATION OF VIKTOR GUSEVS
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ALL DEFENDANTS' MOTIONS TO DISMISS

ADVISORS LLC, a Delaware limited liability company; RA CITADELE HOLDINGS LLC, a Delaware limited liability company; and TIMOTHY C. COLLINS, an individual,

 Defendants.

_____

 I, VIKTOR GUSEVS, declare and state as follows:

 1. I am more than eighteen (18) years of age, and I am a Plaintiff in this action. I have personal knowledge of the facts set forth herein and, if called to testify, I could and would competently do so under oath.

 2. I make this Declaration in support of Plaintiffs' Opposition to all of the Defendants' Motion to Dismiss.

 3. I also make this Declaration in support of the court's exercise of personal jurisdiction over Defendants RIPPLEWOOD ADVISORS LLC and RA CITADELE HOLDINGS LLC (collectively referred herein as "Ripplewood") and TIMOTHY C. COLLINS ("Collins"), in partnership with their cohorts, Defendants AS CITADELE BANKA ("the Bank" or "AS CITADELE BANK"), GUNTIS BELAVSKIS ("BELAVSKIS"), and VAS PRIVATIZATION AGENCY ("VAS") (collectively referred to herein as the "CITADELE BANKA RICO Enterprise" or the "Enterprise") pursuant to the requirements of *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

 4. I currently reside in the State of California and have been a resident of

California since 2004, and I am engaged in real estate investment and development throughout the United States, as well as in Latvia and internationally.

5.     I am the chief executive officer and the member, shareholder or partner of each of the Plaintiff entities.

6.     In November 2003, Plaintiff VG BEHEER LATVIA SIA signed a line of credit agreement with Parex Bank, then a privately-owned bank headquartered in Latvia. The agreement committed Parex Bank (predecessor of Defendant AS CITADELE BANKA), through January 2018, to make a line of credit available to Plaintiff VG BEHEER LATVIA SIA for the purpose of acquiring and developing real estate projects in the United States, including acquiring and developing multiple properties in Malibu, CA located at (a) 3714 Carbon Canyon Rd, Malibu CA; 2860 Sweetwater Mesa Rd, Malibu, CA; 2930 Sweetwater Masa Rd, Malibu, CA, all of which I was forced to sell; and (b) those located at 3221 Colony View Circle, Malibu CA 90265 which I was forced to short sell at a loss of $2 Million and 21650 Pacific Coast Highway, Malibu, California 90265 which I still currently own ("Malibu Properties").

7.     In 2006, at the request of Parex Bank, Plaintiff VG BEHEER LATVIA SIA and I, caused Plaintiffs VG BEHEER JURMALA LLC, VG BEHEER RIGA LLC, and BOTANIX LLC to be formed and the line of credit of Parex Bank to Plaintiff VG BEHEER LATVIA SIA was divided among those newly formed entities.

8.     From 2003 through 2008, the lines of credit were drawn upon and used to

fund our real estate investment and development projects in the United States and internationally. The highest outstanding aggregate balance of the lines of credit was €28 Million, and the average balance was €15 Million.

9.    In November 2008, following the collapse of Lehman Brothers and the ensuing global financial crisis, the government of Latvia seized Parex Bank by "purchasing" a majority 51% stake from the founders for token consideration of 2 Latvian Lats (approximately €5.00).

10.    The government of Latvia then purchased the remaining stake of Parex Bank from other shareholders for equally token consideration of €0.01/share.

11.    Approximately 25% of the ownership interests of the government of Latvia in Parex Bank were subsequently acquired by the European Bank for Reconstruction and Development.

12.    The remaining 75% ownership interests of the government of Latvia in Parex Bank was subsequently transferred to Defendant VAS.

13.    At the time of the government takeover of Parex Bank in November 2008, we kept surplus funds of approximately €3 Million on deposit at Parex Bank. At the time, our real estate projects in the United States were valued at approximately $45 million.

14.    From November 2008 through 2009, Parex Bank refused to honor our payment instructions to make payments our accounts at Parex to Washington Mutual

Bank and others in the United States on our obligations relating to the real estate projects in the United States. Parex Bank's refusal undermined our ability to service their debt and thereby caused damage to VG BEHEER LATVIA LLC and the other Plaintiffs in the United States.

15.    In early 2010, the "good" assets of Parex Bank, were transferred to a newly formed entity, Defendant AS CITADELE BANKA (then known as SC CITADELE BANKA). These new assets included our lines of credit and accounts. AS CITADELE BANKA became the successor in interest to Parex Bank and assumed all liabilities associated with the transferred assets.

16.    The "bad" assets remained with Parex Bank, which later became known as Reverta.

17.    Defendant VAS owned 75% of the shares of the newly formed AS CITADELE BANKA and the remaining 25% of the shares were owned by the European Bank for Reconstruction and Development.

### *The Role of Defendants in the Racketeering Scheme*

18.    At the time of the formation of Defendant AS CITADELE BANKA, then Latvian Finance Minister Einars Repse and then Latvian Economy Minister Artis Kampars signed a confidential agreement with the European Commission requiring that Defendant AS CITADELE BANKA be sold or liquidated by the end of 2014 or Latvia would face serious financial sanctions from the European Commission and its members.

DECLARATION OF VIKTOR GUSEVS
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ALL DEFENDANTS' MOTIONS TO DISMISS

19.    Shortly thereafter, the predecessors in interest and alter egos of the RIPPLEWOOD Defendants, TIMOTHY COLLINS, and the Bank's Chairman GUNTIS BELAVSKIS, who at the time was a Member of the Supervisory Board of the Bank, hatched a fraud and racketeering conspiracy to enable the Bank to reduce its apparent book value thereby increasing the likelihood that the Bank could be sold at a "fire-sale" price to TIMOTHY COLLINS or one of his Ripplewood entity designees, while at the same time generating profits for the Bank, its investors, and its principals. TIMOTHY COLLINS was apparently selected because of his similar experience a decade prior in Japan, where he led a consortium to acquire a failed bank "for pennies on the dollar" and then made billions when he sold it.

20.    Defendants RIPPLEWOOD, COLLINS, and together with BELAVSKIS, AS CITADELE BANKA, VAS, their predecessor in interest, and alter egos conspired and devised a plan to fraudulently manipulate the Bank's balance sheet and overall financial condition such that the severely discounted purchase price at which RIPPLEWOOD would ultimately purchase a majority interest in the Bank could be justified.

21.    This racketeering conspiracy would involve defrauding the Plaintiffs of their property, which fraud against Plaintiffs, as described in detail below, would be executed by a racketeering enterprise through wire and mail fraud in the United States and other unlawful acts.

22.     The RIPPLEWOOD Defendants, TIMOTHY C. COLLINS, Defendants AS CITADELE BANKA and its officers (including Chairman of the Board of the Bank, GUNTIS BELAVSKIS), their predecessors in interests, and alter egos had actual knowledge that I was residing in the United States and in the State of California.

23.     In fact, the RIPPLEWOOD Defendants, TIMOTHY C. COLLINS, Defendants AS CITADELE BANKA and its officers (including Chairman of the Board of the Bank GUNTIS BELAVSKIS) took advantage of the knowledge that I was physically residing in California to mastermind a financial scheme that would ultimately result in devastating loss to my businesses and properties in the United States and California.

24.     The first part of Defendants executing the racketeering scheme involved convincing me and the Plaintiff entities to agree to a shortening of the term of our lines of credit from the then maturity date of 2018 to 2012.

25.     When our lines of credit were transferred to AS CITADELE BANKA, at the behest of Defendant Irina Ponomarjova (manager), Zigurds Cirulis (department head), and Kristaps Putans (deputy chief corporate banking) sent me a barrage of emails and I also received 40 telephone calls at my California residence fraudulently telling me that a shortening of the term of the lines of credit from 2018 to 2012 was just a formality and that as soon as AS CITADELE BANKA was sold (which I was told, would happen before the end of the shortened term of the lines of credit) the new owners would be

7

required to extend the term of the lines of credit.

26.     I was further told by the representatives of the Bank, through such series of emails and phone calls, that if the Bank was not sold before the end of the shortened term, the term of the lines of credit would be extended by the existing officers.

27.     In reliance on these misrepresentations, I executed agreements on behalf of the Plaintiff entities, with AS CITADELE BANKA agreeing to a shortening of the term of the lines of credit from 2018 to 2012.

28.     In 2012, Defendant BELAVSKIS was promoted from Member to Chairman of the Board of Supervisors of AS CITADELE BANKA.  Also in 2012, as the shortened term of the lines of credit was coming to an end and Defendant AS CITADELE BANKA had not yet been sold, Defendants BELAVSKIS and VAS put in effect the second stage of their conspiracy to defraud me and Plaintiff entities of our property, which second stage had an urgency because of the 2014 European Commission deadline for AS CITADELE BANKA to be sold or liquidated.

29.     Shortly before expiration of the lines of credit and with knowledge that I was residing in the United States, Defendants AS CITADELE BANKA,  BELAVSKIS, and VAS – at the behest of RIPPLEWOOD and Defendant TIMOTHY COLLINS – caused Andrey Golubcovs and Uldis Glazers (corporate client manager) to send a series of email and telephone communications to me in the United States, in which communications such officers and representatives told me that AS CITADELE BANKA

would be filing lawsuits against the Plaintiffs in arbitration court in Latvia upon expiration of the term of the lines of credit for repayment of the lines of credit,  but only so the Bank could write off the loans, thereby making the Bank more appealing  to potential purchasers.

30.     Such officers and representatives fraudulently promised me in such communications that if I, as owner and chief executive officer of the Plaintiff entities, would cooperate with the process by causing the Plaintiffs not to oppose such lawsuits, subsequent to winning such lawsuits by default, AS CITADELE BANKA would not enforce the judgments but rather would agree to payment "work-outs" with me and that, again, any new buyer of the Bank, which we now realize was a RIPPLEWOOD entity controlled by COLLINS, would be required to renew the lines of credit once the Bank was sold.

31.     Later on I learned that, at the behest of Defendant RIPPLEWOOD and COLLINS (the designated buyer of the Bank), that such officers and representatives further fraudulently misrepresented to me that there was an immediate need to initiate the proceedings in the arbitration court in order to facilitate the orderly sale of the Bank and that it would be in my best interests not to appear in court and not to contest the Bank's claims asserted in the arbitration court.

32.     Such officers intentionally concealed and fraudulently failed to disclose to me that the decision of the arbitration court in these matters would be final, not subject

9

to appellate review and would be carried out immediately, contrary to the assurances Defendants provided to me.

33.    In detrimental reliance upon these fraudulent misrepresentations, I caused the Plaintiff entities, and my son, Plaintiff JEVGENIJS (YEVGENIY) GUSEVS (a guarantor of the lines of credit), not to contest any of the lawsuits brought in arbitration court against them by AS CITADELE BANKA.

34.    Judgments were rendered against me and Plaintiff entities by the arbitration court when we did not appear and did not oppose any of the legal actions, based upon fraudulent misrepresentations made by employees of the Bank in collusion with Defendants TIMOTHY COLLINS, RIPPLEWOOD, their predecessor in interests, and their alter-egos, through email and telephone communications into the United States.  I had no idea that such judgments were to be final and non-appealable.

35.    Contrary to its officers' and representatives' fraudulent promises, Defendant AS CITADELE BANKA failed to enter into workout agreements with me and the Plaintiff entities, except and only as to Plaintiff VG BEHEER LATVIA SIA.

36.    The work out agreement with Plaintiff VG BEHEER LATVIA SIA, dated June 18, 2012, required monthly interest payments of €30,000 and principal repayment every six months of € 500,000. Through email and telephone communications by Vija Meška (Meshka) (department head), Edvins Joksts (senior lawyer), and Andrey Golubcovs (head of legal department), I was convinced to use Egils Radzins as the

DECLARATION OF VIKTOR GUSEVS
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ALL DEFENDANTS' MOTIONS TO DISMISS

lawyer for Plaintiff VG BEHEER LATVIA SIA.  It was not until later that I learned that Attorney Egils Radzins also represented a Supervisory Board Member of Defendant AS CITADELE BANKA and was also a judge on the arbitration court and, as such, had an actual conflict of interest with regard to his supposed representation of my interests.

37.   Plaintiff VG BEHEER LATVIA SIA made the monthly payments of interest and semi-annual payments of principal called for by the workout agreement on time.

38.   In the Fall of 2013, the Defendants put their conspiracy to defraud me and Plaintiffs out of their money and property into full swing. Through email and telephone communications to me in the United States, Andrey Golubcovs, as agent and representative of Defendant AS CITADELE BANKA, fraudulently told me that VG BEHEER LATVIA SIA was not required to make the principal payment otherwise due in September 2013, but rather that I could use such funds for ongoing real estate projects in California and elsewhere.

39.   In detrimental reliance upon such fraudulent misrepresentations by the representative of AS CITADELE BANKA, I caused VG BEHEER LATVIA SIA not to make the September 2013 principal payment and instead, the funds were used for ongoing real estate projects.

40.   Commencing in October, 2013, after such funds had been deployed, AS CITADELE BANKA through emails and telephone calls directed to me in the United

States, made demand for the September 2013 principal payment and threatened to start enforcing the uncontested arbitration court judgments against me and the Plaintiff entities that AS CITADELE BANKA had procured through fraud.

41.    In January 2014, the total amount we owed under the lines of credit to AS CITADELE BANKA was approximately € 13.4 Million.

42.    Commencing in January, 2014, I and the Plaintiffs entities (and the prospective buyers) requested permission at least six times from AS CITADELE BANKA to allow the sale of two of our properties for € 9 Million in order to pay back a large portion of the principal owed on the lines of credit (for which unopposed judgment had been fraudulently obtained). Permission of AS CITADELE BANKA was required because the properties served as partial security for the lines of credit. AS CITADELE BANKA purposefully ignored, stonewalled or simply never responded to our requests, because we now understand this was all part of the Bank's scheme with COLLINS and RIPPLEWOOD, its predecessors in interest and their alter egos.

43.    In March 2014, AS CITADELE BANKA, through an auctioneer (Ainars Shusts), began auctioning the real estate our properties in Latvia to repay the unopposed judgments obtained by AS CITADELE BANKA through the wire and mail fraud perpetrated in the United States. This process has been ongoing to this day.

44.    Approximately 80 of our properties have been auctioned off. The majority of the properties have been purchased by affiliates of AS CITADELE BANKA, such as

Hortus Residential and Hortus Land, for outrageously low sham prices, with the intention of reselling the properties at their fair market value and thereby reaping substantial windfall profits.

45.     Starting in August 2014 and continuing through February 2015, Plaintiffs alerted RIPPLEWOOD and COLLINS of the malfeasance and fraud being perpetrated by the Bank, but these pleas were ignored. Specifically, Plaintiffs sent correspondence to RIPPLEWOOD's and COLLIN's attorney, who was located in Santa Monica, California, that AS Citadele Banka, its officers, and agents fraudulently induced my inaction with respects to the maturity date and arbitration proceeding. At the time, I was not aware of the fact that COLLINS through his use of his web of RIPPLEWOOD entities had masterminded and orchestrated the entire racketeering scheme.

46.     Defendants were successful in carrying out this fraudulent scheme because, under Latvian law, the judicial executor handling a foreclosure sale makes an assessment of the value of the foreclosed property to be auctioned, which is approximately 50% of the fair market value and that assessment cannot be challenged or refuted. Therefore, sales at auction in Latvia are always disadvantageous to the debtor, yet favorable to the Bank and the buyer.

47.     In furtherance of the corrupt scheme, the Bank sold other properties for similar sham prices to "third parties" that, upon information and belief, are connected to AS CITADELE BANKA or the auctioneer.

48.    For example, a real property known as "Engures 9B" in Jurmala, Latvia, which was purchased by Plaintiff Greenfield Engures SIA in December, 2014 for €600,000 and as to which an additional €200,000 was invested, was sold at auction for €43,500.

49.    By way of further example, real property owned by Plaintiff JEVGENIJS GUSEVS as to which there was an agreement by such Plaintiff to sell the property to a third party buyer for € 4 Million, was sold at auction for €500,000 and real property known as Konsula/Jurmales Gatve, as to which Plaintiff had an agreement to sell to a third party buyer for at least €2 Million was sold at auction for €400,000.

50.    After fraudulently foreclosing on our properties, an affiliate of the Bank immediately listed the properties for sale at market prices.

51.    Defendant BELAVSKIS, then Chairman of the Supervisory Board of Defendant AS CITADELE BANKA, admitted to me that Defendant AS CITADELE BANKA, at the behest of COLLINS and RIPPLEWOOD, was intentionally causing the properties of Plaintiffs to be auctioned at sham prices and using bank affiliates to buy the properties so as to make huge windfall profits and that Defendant AS CITADELE BANKA had purposefully used its attorney, Andrey Golubcovs, and others to trick me, in the United States, to enable the auctioning of our properties.

52.    In September 2014, in the midst of the sham property auctions, with Defendants VAS and BELAVSKIS facing the 2014 European Commission deadline for

DECLARATION OF VIKTOR GUSEVS
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ALL DEFENDANTS' MOTIONS TO DISMISS

AS CITADELE BANKA to be sold or liquidated, the 75% ownership interest of VAS in AS CITADELE BANKA was finally purchased by a group of investors led by RIPPLEWOOD Defendants and TIMOTHY C. COLLINS.

53.    I found out later on that the material reason for such purchase, was the knowledge by RIPPLEWOOD and its chief executive officer, TIMOTHY C. COLLINS, of the fraud being perpetrated by AS CITADELE BANK upon Plaintiffs that would result in outrageous profits for the Bank and its investors while at the same time allowing COLLINS to acquire the Bank for an artificially reduced price without the need for a bidding process.

54.    RIPPLEWOOD and TIMOTHY C. COLLINS conspired with BELAVSKIS, the principals of VAS, and AS CITADELE BANKA to rig the bidding process for the 75% ownership interest such that at least 7 other prospective purchasers, including those affiliated with Rietumu Bank and Norvik Bank, were removed from contention, leaving RIPPLEWOOD as the only bidder.

55.    Ultimately, the purchase transaction closed and a consortium of investors led by RIPPLEWOOD Defendants became the owner of 75% plus one share of the Bank. The other shareholder of the Bank was the European Bank for Reconstruction and Development, which still owns 25 percent minus one share of the Bank.

56.    Information and discussion regarding AS CITADELE BANKA and the sham auctions were communicated to RIPPLEWOOD Defendants and TIMOTHY C.

COLLINS in the United States by emails and telephone calls from AS CITADELE BANKA, BELAVSKIS, VAS, and its officers, which were responded to by Defendants RIPPLEWOOD and TIMOTHY C. COLLINS from the United States.

57.    RIPPLEWOOD and TIMOTHY C. COLLINS, now a Chairman of the Supervisory Board of AS CITADELE BANKA, are continuing with the sham property auctions to generate outrageous profits for themselves and their investors.

58.    AS CITADELE BANKA, through RIPPLEWOOD and TIMOTHY C. COLLINS, intends on selling approximately 30 of our additional properties in the same manner (approximately 80 have been sold to date).

59.    Defendants have damaged me and the Plaintiff entities in an amount in excess of $200 Million, and as a result, we are now on the verge of bankruptcy.

60.    Also, because of Defendants' racketeering scheme which was masterminded by Defendant TIMOTHY COLLINS and his RIPPLEWOOD entities, I was force to sell my properties located at 3714 Carbon Canyon Rd, Malibu; 2860 Sweetwater Mesa Rd, Malibu; and 2930 Sweetwater Masa Rd, Malibu.

61.    I was also forced to short sell 3221 Colony View Circle, Malibu CA 90265 at a loss of $2 Million and 21650 Pacific Coast Highway, Malibu, California 90265 which I still currently own is now on the verge of foreclosure which has caused

1  millions of dollars of loss of equity and mortgage payments that I have paid since 2006.

2      Executed on this ___ day of November in _RIGH, LATVIA._

3      I declare under penalty of perjury under the laws of the State of California that the

4  preceding is true and correct.

5

6                                                    VIKTORS GUSEVS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF VIKTOR GUSEVS
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ALL DEFENDANTS' MOTIONS TO DISMISS

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk for the United States District Court for the Central District of California by using the CM/ECF system on November 21, 2016.

**DECLARATION OF VIKTORS GUSEVS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ALL DEFENDANTS' MOTION TO DISMISS**

| | |
|---|---|
| **MUNGER, TOLLES & OLSON LLP**<br>Michael R. Doyen, Esq.<br>Jeffrey Y. Wu, Esq.<br>Matthew K. Donohue, Esq.<br>355 South Grand Avenue, 35th floor<br>Los Angeles, CA  90071 | *Attorneys for Defendants*<br>Ripplewood Advisors LLC,<br>RA Citadele Holdings, LLC, and<br>Timothy C. Collins |
| **BUCKLEY SANDLER LLP**<br>Fredrick S. Levin, Esq.<br>Ali M. Abugheida, Esq.<br>100 Wilshire Blvd., Suite 1000<br>Santa Monica, CA  90401 | *Attorneys for Defendants*<br>AS Citadele Banka and<br>Guntis Belavskis |
| **SAFARIAN CHOI & BOLSTAD, LLP**<br>David C. Bolstad, Esq.<br>Scott J. Street, Esq.<br>555 S. Flower Street, Suite 650<br>Los Angeles, CA  90071 | *Attorneys for Defendant*<br>Vas Privatization Agency |

I certify that all participants in the case are registered CM/ECF users and the service will be accomplished by the CM/ECF system.

Dated:  November 21, 2016

_/s/  Sylvia B. Iwai_
Sylvia B. Iwai