1

**BUCKLEYSANDLER LLP**
FREDRICK S. LEVIN (State Bar No. 187603)

2   flevin@buckleysandler.com
ALI M. ABUGHEIDA (State Bar No. 285284)

3   aabugheida@buckleysandler.com
100 Wilshire Boulevard, Suite 1000

4   Santa Monica, California 90401
Telephone: (310) 424-3900

5   Facsimile: (310) 424-3960

6   *Attorneys for Defendants AS Citadele*
*Banka and Guntis Beļavskis*

7

8                    **UNITED STATES DISTRICT COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10   VIKTOR GUSEVS, an individual; VG        Case No. 2:16-cv-03793-SVW-AS
     BEHEER LATVIA, LLC, a foreign
11   limited liability company; VG           **NOTICE OF MOTION AND**
     BEHEER LATVIA SIA, a foreign            **MOTION TO DISMISS**
12   corporation; VG BEHEER JURMALA,
     LLC, a foreign limited liability        [Filed Concurrently with Declarations
13   company; VG BEHEER RIGA, LLC, a         of Fredrick S. Levin, Guntis Beļavskis,
     foreign limited liability company;      Nadezda Smislajeva, Ivars Grunte, and
14   BOTANIX, LLC, a foreign limited         Defendants' Request for Judicial
     liability company; DEMENKOVA UN         Notice]
15   PARTNERI, a foreign partnership;
     LEGO TRANS, LLC, a foreign limited      Judge:      Hon. Stephen V. Wilson
16   liability company; ANDRENU PARKS,       Date:       February 13, 2017
     LLC, a foreign limited liability        Time:       1:30 p.m.
17   company; GREENFIELD ENGURES             Courtroom: 10A
     SIA, a foreign corporation; and
18   JEVGENIJS GUSEVS, a foreign
     individual,
19
                     Plaintiffs,
20
           v.
21
     AS CITADELE BANKA, a foreign
22   corporation; GUNTIS BEĻAVSKIS, a
     foreign individual; VAS
23   PRIVATIZATION AGENCY, a foreign
     corporation; RIPPLEWOOD
24   HOLDINGS L.L.C., a Delaware limited
     liability company; RIPPLEWOOD
25   ADVISORS LLC, a Delaware limited
     liability company; RA CITADELE
26   HOLDINGS LLC, a Delaware limited
     liability company; and TIMOTHY C.
27   COLLINS, an individual,

28                   Defendants.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on February 13, 2017, at 1:30 p.m., in Courtroom 10A of the United States District Court, Central District of California, Western Division, 350 W. 1st Street, Los Angeles, California, 90012, or as soon thereafter as the matter can be heard before the Honorable Stephen V. Wilson, the undersigned Defendants will move to dismiss the claims against them.

This motion is made under Fed R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b), on the grounds of *forum non conveniens*, and pursuant to arbitration agreements between the parties.  It is based upon the Memorandum of Points and Authorities below, the declarations and request for judicial notice filed concurrently herewith, and on all records, documents, pleadings, and papers on file or to be filed in this action, arguments of counsel, and any other matters that may properly come before the Court for its consideration.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on October 6, 2016.

DATED:  January 9, 2017                 Respectfully submitted,

                                        BUCKLEYSANDLER LLP


                                        By:      */s/ Fredrick S. Levin*
                                             _____
                                             Fredrick S. Levin
                                             *Attorneys for Defendants AS Citadele*
                                             *Banka and Guntis Belavskis*

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BUCKLEYSANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................... 1

STATEMENT OF FACTS ............................................................................. 2

I.   The Loan Agreements, the Alleged Conspiracy, and Latvian
     Foreclosures ........................................................................................ 2

II.  The Malibu Residences. ..................................................................... 3

ARGUMENT ................................................................................................. 3

I.   This Court Lacks Personal Jurisdiction. ............................................ 3

     A.   Legal Standard. ......................................................................... 3

     B.   There Is No General Jurisdiction Over the Latvian Defendants. ........... 4

     C.   There Is No Specific Jurisdiction Over the Latvian Defendants. ........... 5

          1.   The Latvian Defendants Have Not Purposefully Availed
               Themselves of California. ................................................ 5

               (a)   All of the parties to the underlying agreements are
                     still Latvian. ......................................................... 6

               (b)   All of the foreclosures and auctions attributed to
                     Citadele still occurred in Latvia under Latvian law. ........... 7

               (c)   The FAC still recognizes that Gusevs became a
                     resident of California only after entering into the
                     initial line of credit. ............................................. 7

               (d)   The FAC still does not allege that Gusevs was a
                     full-time resident of California or that he was
                     physically present in California during any of the
                     alleged communications. ......................................... 7

               (e)   Finally, the FAC's "new" allegations are irrelevant. ......... 9

          2.   Plaintiffs' Claims Arise Out of Conduct in Latvia. .................... 11

          3.   Exercising Jurisdiction Over the Latvian Defendants
               Would Not Be Reasonable. ............................................. 11

II.  The Court Should Dismiss the Latvian Defendants on *Forum Non
     Conveniens* Grounds. ........................................................................ 13

III. Alternatively, the Court Should Stay This Action Pending Arbitration. ........ 15

IV.  Plaintiffs' Fraud and RICO Claims Should Be Dismissed. .................... 16

i

NOTICE OF MOTION AND MOTION TO DISMISS LATVIAN DEFENDANTS

A.      Legal Standard. ................................................................. 16

B.      Plaintiffs' Fraud Claims are Time Barred............................... 17

C.      Plaintiffs' Fraud Claims Are Barred by the Economic Loss Rule. ...... 18

D.      Plaintiffs' Fraud Claims Are Not Pled With Sufficient
        Specificity. ..................................................................... 18

E.      Plaintiffs' Plaintiffs Failed to State a Claim Under RICO. .................. 21

        1.      RICO Does Not Apply to Injuries Suffered in Latvia. ............... 21

        2.      Plaintiffs Fail to Plead the Existence of a RICO Enterprise. ....... 22

        3.      Plaintiffs Fail to Plead a Pattern of Racketeering Activity. ....... 24

        4.      Plaintiffs Have Not Sufficiently Alleged Violations of
                Section 1962(a), (b), (c), or (d). .................................... 24

CONCLUSION ........................................................................... 25

**BUCKLEYSANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
   551 F.2d 784 (9th Cir. 1977) ............................................................................ 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 17

*AT&T Corp. v. Vision One Sec. Sys.*,
   914 F. Supp. 392 (S.D. Cal.1995) ................................................................. 16

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ........................................................................ 4

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir.1993) ........................................................................... 25

*Beckwith v. Dahl*,
   205 Cal. App. 4th 1039 (2012) ......................................................... 18, 19, 20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 17

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) ...................................................................................... 22

*Cadman v. Bond*,
   603 F. Supp. 1335 (D. Mass. 1985).............................................................. 7

*CAE Inc. v. Three Cities Research, Inc.*,
   2009 WL 3839423 (D. Or. Nov. 16, 2009) ................................................. 14

*Calder v. Jones*,
   465 U.S. 783 (1984) ........................................................................................ 8

*Cameron v Cameron*,
   88 Cal. App. 2d 585 (1948) .......................................................................... 19

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ................................................................. 9, 10

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

iii

*Contreras v. JPMorgan Chase*,
   2014 WL 5786244 (C.D. Cal. Nov. 6, 2014) ...................................................... 21

*Core-Vent Corp. v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) ............................................................... 12, 13

*Creative Tech., Ltd. v. Aztech Sys. PTE, Ltd.*,
   61 F.3d 696 (9th Cir. 1995) ....................................................................... 13

*Daimler AG v. Bauman*,
   134 S.Ct. 746 (2014) .................................................................................... 4

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ...................................................................... 4

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) .................................................................... 17

*Doe v. Unocal Corp.*,
   27 F. Supp. 2d 1174 (C.D. Cal. 1998) .......................................................... 4

*Dychiuchay v. Greishaber*,
   2015 WL 3708249 (D. Nev. Jun. 15, 2015) ................................................ 11

*EFund Capital Partners v. Pless*,
   150 Cal. App. 4th 1311 (2007) ................................................................... 16

*Emrich v. Touche Ross & Co.*,
   846 F.2d 1190 (9th Cir. 1988) .................................................................... 17

*Fed. Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*,
   828 F.2d 1439 (9th Cir. 1987) ...................................................................... 4

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal.4th 797 (2005) ................................................................................. 17

*Gammel v. Hewlett-Packard Co.*,
   2013 WL 1947525 (C.D. Cal. May 8, 2013) ............................................... 10

*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F. Supp. 3d 1011, 1022 (C.D. Cal. 2015) ............................................ 17

*Gerritsen v. Warner Bros. Entm't Inc.*,
   116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) ............................................ 23

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

iv

*Graf v. Peoples*,
 2008 WL 4189657 (C.D. Cal. Sept. 4, 2008)..................................................24

*Guaranty Trust Co. of New York v. York*,
 326 U.S. 99 (1945) ..........................................................................................17

*Guerrero v. Gates*,
 110 F. Supp. 2d 1287 (C.D. Cal. 2000).........................................................25

*Hadlock v. Norwegian Cruise Line, Ltd.*,
 2010 WL 1641275 (C.D. Cal. Apr. 19, 2010) ...............................................16

*Hall v. Prudential-Bache Secur., Inc.*,
 662 F. Supp. 468 (C.D. Cal. 1987) .................................................................16

*Holmes v. Securities Investor Protection Corp.*,
 503 U.S. 258 (1992) .........................................................................................22

*Howard v. Am. Online Inc.*,
 208 F.3d 741 (9th Cir. 2000) ..........................................................................25

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ...........................................................................................4

*Jolly v. Eli Lilly & Co.*,
 44 Cal.3d 1103 (1988) .....................................................................................17

*Keel v. Schwarzenegger*,
 2009 WL 1444644 (C.D. Cal. May 19, 2009)...............................................22

*Keeton v. Hustler Magazine, Inc.*,
 465 U.S. 770 (1984) ...........................................................................................8

*Kline v. Turner*,
 87 Cal. App. 4th 1369 (2001)....................................................................17, 18

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
 245 F.3d 1048 (9th Cir. 2001) ........................................................................20

*Leetsch v. Freedman*,
 260 F.3d 1100 (9th Cir. 2001) ........................................................................14

*Lisa McConnell, Inc. v. Idearc, Inc.*,
 2010 WL 364172 (S.D. Cal. Jan. 22, 2010) ..................................................11

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

v

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,*
 431 F.3d 353 (9th Cir. 2005) ................................................................ 22

*Lueck v. Sundstrand Corp.,*
 236 F.3d 1137 (9th Cir. 2001) ...................................................... 14, 15

*Monex Deposit Co. v. Gilliam,*
 616 F. Supp. 2d 1023 (C.D. Cal. 2009) ............................................. 15

*Moore v. Kayport Package Express, Inc.,*
 885 F.2d 531 (9th Cir. 1989) .............................................................. 17

*Nicosia v. DeRooy,*
 72 F. Supp. 2d 1093 (N.D. Cal. 1999) .................................................. 4

*NxSystems, Inc. v. Monterey County Bank,*
 2012 WL 4093932 (D. Or. Sept. 17, 2012) ......................................... 5

*Odom v. Microsoft Corp.,*
 486 F.3d 541 (9th Cir. 2007) .......................................................... 23, 24

*Palm Valley Homeowners Ass'n, Inc. v. Design MTC,*
 85 Cal. App. 4th 553 (2000) ................................................................. 2

*Panthera Railcar LLC v. Kasgro Rail Corp.,*
 2013 WL 1996318 (N.D. Cal. May 13, 2013) .................................... 5

*Peterson v. Kennedy,*
 771 F.2d 1244 (9th Cir. 1985), The FAC ........................................... 9

*Piper Aircraft Co. v. Reyno,*
 454 U.S. 235 (1981) ........................................................................... 14

*Powell v. Wells Fargo Home Mortg.,*
 2015 WL 4719660 (N.D. Cal. Aug. 7, 2015) ..................................... 24

*Rano v. Sipa Press, Inc.,*
 987 F.2d 580 (9th Cir. 1993) ................................................................ 7

*RJR Nabisco, Inc. v. European Community,*
 136 S. Ct. 2090 (2016) ....................................................................... 21

*Rocke v. Canadian Automobile Sport Club,*
 660 F.2d 395 (9th Cir.1981) ............................................................... 12

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

vi

*San Francisco v. Spencer*,
  2003 WL 23119283 (N.D. Cal. Dec. 29, 2003) .................................................23

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ........................................................................5, 11

*Serv. by Medallion, Inc. v. Clorox Co.*,
  44 Cal. App. 4th 1807 (1996) .............................................................................18

*Snowney v. Harrah's Entm't, Inc.*,
  35 Cal. 4th 1054 (2005).........................................................................................5

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ..............................................................................20

*Tenzer v. Superscope, Inc.*,
  39 Cal.3d 18 (1985) .............................................................................................20

*Tkachyov v. Levin*,
  1999 WL 782070 (N.D. Ill. Sept. 27, 1999) ......................................................14

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
  117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015)..............................................18, 19

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................18

*Walden v. Fiore*,
  134 S.Ct. 1115 (2014) ..............................................................................5, 6, 7, 9

*Watson v. Merrell Dow Pharms., Inc.*,
  769 F.2d 354 (6th Cir. 1985) ..............................................................................14

*Wellons, Inc. v. SIA Energoremonts Riga Ltd.*,
  2013 WL 5314368 (W.D. Wash. Sept. 20, 2013) ..............................................14

*World-Wide Volkswagen Corp. v. Woodson*,
  444 US 286 (1980) .................................................................................................5

**Statutes**

9 U.S.C. § 3 ...............................................................................................................15

9 U.S.C. § 206...........................................................................................................15

**BUCKLEYSANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9 U.S.C. § 208 .................................................................................................... 15

18 U.S.C. § 1962(a) ........................................................................................... 25

18 U.S.C. § 1962(b) ........................................................................................... 25

Cal. Code Civ. P. § 338(d) ................................................................................. 17

**Other Authorities**

8 C.F.R. § 216.6 .................................................................................................... 8

Fed. R. Civ. P. 9(b) ............................................................................................ 17

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 16

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

NOTICE OF MOTION AND MOTION TO DISMISS LATVIAN DEFENDANTS

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

## INTRODUCTION

The Court has already dismissed Plaintiffs' Complaint once before finding, among other deficiencies, that the Plaintiffs had not sufficiently alleged minimum contacts of any defendant and that the Plaintiffs failed to plead domestic injury. Dkt. 51, at 9-12 ("Order"). The Court warned that Plaintiffs continued failure would result in dismissal with prejudice. *Id*. at 12.

Despite this warning, the First Amended Complaint ("FAC") is still deficient. The FAC parrots the same claims in the Original Complaint (Dkt. 1) adding only irrelevant details about one Plaintiff's Malibu residences and conclusory "alter-ego" allegations regarding Ripplewood's control of the alleged RICO enterprise. These new allegations change nothing. The Latvian Plaintiffs still complain that their Latvian properties were improperly foreclosed on "under Latvian law," by a Latvian bank, which was owned by the Latvian government. The Court still does not have personal jurisdiction over any defendant and the Plaintiffs have still failed to plausibly plead a domestic RICO injury. Even if the Court has jurisdiction, the parties' dispute is covered by numerous arbitration agreements requiring the Court to refer all disputes "arising out" of and "relating to" the underlying agreements to arbitration in Latvia.

The FAC should be dismissed on other grounds as well. Plaintiffs' fraud causes of action are barred by California's three-year limitations period and by the economic loss doctrine. Even if they were not barred, Plaintiffs' fraud claims are not pled with the specificity required by Rule 12(b)(6) or Rule 9(b). The same is true of Plaintiffs' RICO claims. The Plaintiffs have failed to sufficiently plead the existence of a RICO "enterprise," have failed to plead a pattern of racketeering activity, and have failed to plead a violation of any particular RICO subsection. 18 U.S.C. § 1962.

While any one of these deficiencies is more than sufficient to justify dismissal, taken together, these shortcomings are overwhelming. As such, for these reasons, and for the reasons discussed below, the Court should dismiss the FAC with prejudice.

## STATEMENT OF FACTS

**I.     The Loan Agreements, the Alleged Conspiracy, and Latvian Foreclosures.**

As discussed at length in the Court's September 9, 2016 Order dismissing the Ripplewood parties, the nine Latvian Plaintiffs[1] allege that they are the victims of a worldwide RICO conspiracy that was carried out by way of Latvian foreclosures.

The Plaintiffs allege that the conspiracy began in 2003 when VG Beheer Latvia SIA agreed to a line of credit with Parex Bank, Citadele's predecessor. FAC, ¶ 43. In 2006, the Plaintiffs allege that the line of credit was divided among three newly formed entities. FAC, ¶ 44. In 2010, Plaintiffs allege that these agreements were transferred from Parex Bank to Citadele. FAC, ¶¶ 53-54. At that time, Plaintiffs allege that, at the behest of Ripplewood, Citadele asked Gusevs to shorten the term of the credit lines from 2018 to 2012. FAC, ¶¶ 62, 63. Plaintiffs allege that Citadele told Gusevs that (a) a subsequent buyer of Citadele would be required to extend the term of the lines of credit to Plaintiffs and (b) if Citadele was not sold, its existing officers would extend the term of the lines of credit. FAC, ¶¶ 63, 64 ("Extension Allegation"). On this basis, Plaintiffs agreed to shorten the term of the line of credit. FAC, ¶ 65.

In 2012, before the lines of credit came due, at the behest of Ripplewood, Citadele allegedly told Plaintiffs that it would be filing arbitration proceedings against them "but only so the Bank could write off the loans, thereby making the Bank more appealing to potential purchasers." FAC, ¶ 68. Plaintiffs further allege that Citadele told Gusevs that if he did not contest the arbitration proceedings, Citadele would not enforce the judgments, but would agree to payment "work-outs" instead. FAC, ¶¶ 69-71 ("Arbitration and Workout Allegation").

---

[1] One Plaintiffs, VG Beheer Latvia LLC, is a Latvian entity purporting to do business in California; however, its status in California has been forfeited and it lacks the capacity to sue. *Palm Valley Homeowners Ass'n, Inc. v. Design MTC*, 85 Cal. App. 4th 553, 556 (2000); Levin Decl. Exs A and B (California Secretary of State filings confirming that VG Beheer Latvia LLC's status as a forfeited Latvian entity.).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

In June 2012, once arbitration judgments were rendered against all of the Plaintiffs, Citadele allegedly entered into a workout agreement with VG Beheer Latvia SIA, but not with the other Plaintiffs.  FAC, ¶ 74.  In 2013, Plaintiffs allege that Citadele informed VG Beheer Latvia SIA that it did not need to make its principal payment under the workout and that the funds could be used for other projects.  FAC, ¶ 77.  Plaintiffs claim that on the basis of these representations they used the money for other projects and that when Citadele demanded payment the money had already been spent.  FAC, ¶¶ 77-79 ("Principal Payment Allegation").

Plaintiffs claim that in March 2014, after the foregoing events, Citadele, through an auctioneer, "began auctioning off the real properties in Latvia to repay the unopposed judgments…."  FAC, ¶ 82.  Plaintiffs claim that because "under Latvian law" a judicial executor handling the foreclosure sale appraises the value of the foreclosed property at "approximately 50%" of the fair market value of the property, foreclosures are "always disadvantageous to the debtor, yet favorable to the Bank and the buyer."  FAC, ¶ 85.  Ultimately, Plaintiffs allege that the foregoing was all part of Ripplewood's scheme to purchase Citadele at a reduced price.  FAC, ¶ 93.

## II.    The Malibu Residences.

The FAC alleges that "Plaintiffs' lines of credit with the Bank were secured by real estate in California, including…real estate investment properties located at 21650 Pacific Coast Highway, Malibu California and 3211 Colony View Circle, Malibu California 90265" and that these California properties are also facing foreclosure "due to the RICO Defendants' fraudulent scheme."  FAC, ¶ 20.

## ARGUMENT

## I.    This Court Lacks Personal Jurisdiction.

### A.    Legal Standard.

Personal jurisdiction over a nonresident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or "minimum contacts" with the forum state such that the exercise of jurisdiction "does

3

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[2]  Plaintiffs bear the burden of proving that this Court has personal jurisdiction.  *Fed. Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1441 (9th Cir. 1987).  Plaintiffs cannot carry their burden by simply relying on allegations in their pleadings: where, as here, a plaintiff is confronted with a motion to dismiss for lack of personal jurisdiction, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (defendants cannot rely on allegations contradicted by affidavit); *Nicosia v. DeRooy*, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999) (same).

## B.    There Is No General Jurisdiction Over the Latvian Defendants.

There is no general jurisdiction over the Latvian Defendants in California.  General jurisdiction may only be established when a defendant's contacts with a state are so "substantial" and so "continuous and systematic" that the defendant "can be haled into court in that state in any action, even if the action is unrelated to those contacts."  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  In other words, general jurisdiction is only proper where the defendant's contacts render the defendant essentially "at home" in the forum.  *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014).

Here, Plaintiffs have failed to plead let alone establish that this exacting standard has been met.  Plaintiffs' Original Complaint conceded that the Latvian Defendants are not subject to general jurisdiction by alleging jurisdiction only on the basis of "specific" contacts.  Original Compl., ¶ 3.  The FAC is no better.  Other than a limited number of telephonic and email communications, the FAC does not identify any specific contacts

---

[2] RICO's national contacts test does not change the jurisdictional analysis here because it does not apply to defendants served abroad.  *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1183 (C.D. Cal. 1998).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

by the Latvian Defendants with California that are substantial or continuous. Accordingly, general jurisdiction does not exist.

### C.    There Is No Specific Jurisdiction Over the Latvian Defendants.

Specific jurisdiction is only proper where: (1) the nonresident defendant has purposefully directed its activities to the forum or otherwise availed itself of the privilege of conducting activities in the state, (2) the plaintiff's claim arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of proving the first two requirements. *Id.* If the plaintiff does so, the defendant may still defeat jurisdiction by showing that it is not reasonable. *Id.*

#### 1.    The Latvian Defendants Have Not Purposefully Availed Themselves of California.

The Latvian Defendants have not purposefully directed their activities or otherwise availed themselves of the privileges of California. The purposeful availment requirement protects a defendant from being haled into a jurisdiction as a result of "random, fortuitous, or attenuated contacts" with a person affiliated with the forum. *Walden v. Fiore*, 134 S.Ct. 1115, 1123 (2014). In other words, it assures that before jurisdiction is exercised the defendant is aware that it is subject to suit in the state. *World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 297 (1980); *Snowney v. Harrah's Entm't, Inc.*, 35 Cal. 4th 1054, 1063 (2005) (requiring that the defendant have "clear notice").[3]

In assessing purposeful availment and purposeful direction the focus is on the

---

[3] In the Ninth Circuit, the purposeful availment inquiry can differ depending on whether the action is based in tort or contract. *Schwarzenegger*, 374 F.3d at 802. Here, the purposeful availment test applies because Plaintiff's claims, although ostensibly for tort, arise out of contracts. *NxSystems, Inc. v. Monterey County Bank*, 2012 WL 4093932, at *6 (D. Or. Sept. 17, 2012); *accord*, *Panthera Railcar LLC v. Kasgro Rail Corp.*, 2013 WL 1996318, at *4 (N.D. Cal. May 13, 2013).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

defendant's contacts with the forum, not the defendant's contacts with the plaintiff or the plaintiff's contacts with the forum. As the Court stated, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S.Ct. at 1122. Accordingly, a proper jurisdictional "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. In *Walden*, the Court criticized the Ninth Circuit for allowing the focus of its analysis to shift from the defendant's contacts with the forum to the defendant's contacts with the plaintiff. The Court explained that "[s]uch reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections decisive in the jurisdictional analysis. It also obscures the reality that none of [defendant's] challenged conduct had anything to do with [the forum] itself." *Id*. at 1125.

Here, the sole claim connecting this dispute to California is Gusevs' allegation that *he* has been a resident of California since 2004. Without Gusevs' residency claims, there would be no factual allegation connecting this dispute to California in any way. As *Walden* explains, this is insufficient. To hold otherwise would incorrectly permit one Plaintiff's decision to establish a presence in California to substitute for the proper focus: whether or not Citadele and Mr. Beļavskis chose to avail themselves of California. As this Court previously stated:

> While the Bank's representatives may have sent communications to Mr. Gusevs while he resided in California, the Plaintiffs have not sufficiently demonstrated how those communications give this Court personal jurisdiction, given that all of the entities, conduct, and events in question occurred in Latvia, not in California.

Order, at 9. As discussed below, Plaintiffs' FAC still does not demonstrate how this Court has personal jurisdiction.

### (a)  *All of the parties to the underlying agreements are still Latvian.*

According to the FAC, all of the parties to the underlying agreements are *still* Latvian. The parties to the 2003 initial line of credit were VG Beheer Latvia SIA (a Latvian limited liability company) and Parex Bank (a Latvian bank). FAC, ¶¶ 43. In 2006, the line of credit was "divided among" three more Latvian entities. FAC, ¶¶ 6, 7,

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

NOTICE OF MOTION AND MOTION TO DISMISS LATVIAN DEFENDANTS

44.  The entities agreeing to shorten the term of the line of credit in 2010 were Latvian as were the parties agreeing to the 2012 workout agreement.  FAC, ¶¶ 65, 74.

### (b)   *All of the foreclosures and auctions attributed to Citadele still occurred in Latvia under Latvian law.*

According to the FAC, in March 2014, the Latvian Bank "began auctioning the real estate properties of the Plaintiffs in Latvia."  FAC, ¶ 82.  The FAC goes on to allege that these auctions were successfully carried out "under Latvian law."  FAC, ¶ 85.  While the FAC claims that "real property and domestic investments in California….are currently in foreclosure and short sale proceedings" the FAC does not (and cannot) allege that Citadele or Mr. Beļavskis carried out or directed any California based foreclosure or short sale.  FAC, ¶ 20.

### (c)   *The FAC still recognizes that Gusevs became a resident of California only after entering into the initial line of credit.*

According to the FAC the initial line of credit was agreed to in November 2003 (FAC, ¶ 43), while Gusevs became a resident of California in 2004 (FAC, ¶ 5).  Courts routinely hold that a contracting party's unilateral move to a new forum after entering into a contract does not confer jurisdiction in the new forum, even if the contracting parties continue to do business after the move.  *See e.g. Walden*, 134 S.Ct. at 1123 ("unilateral activity of a plaintiff" is insufficient to establish jurisdiction); *Cadman v. Bond*, 603 F. Supp. 1335, 1337 (D. Mass. 1985) (no purposeful availment where the defendant entered into a contract with a Florida resident for the purchase of a Florida sailboat and the seller-plaintiff later moved to Massachusetts); *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) (no purposeful availment where the plaintiff moved from Europe to California after entering into a license agreement with the defendant).

### (d)   *The FAC still does not allege that Gusevs was a full-time resident of California or that he was physically present in California during any of the alleged communications.*

While the FAC alleges that Gusevs has been a California resident since 2004, it does not allege that Gusevs was a full-time resident nor does it allege that Gusevs was actually present in California when any of the alleged communications occurred.

BUCKLEYSANDLER LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

7

1    Plaintiffs were also careful in their *amended* complaint to avoid re-pleading certain

2    allegations set forth in their Original Complaint regarding Gusevs' residency status:

3    that "Viktors Gusevs is . . . a resident of the State of California pursuant to an EB-5

4    visa…." Original Compl., ¶ 4.  Presumably, Plaintiffs omitted this allegation from their

5    amended complaint because an EB-5 visa is intended to be temporary and, unless

6    converted to a green card, only entitles the holder to residence for a two-year period.

7    *See* 8 C.F.R. § 216.6 (describing two year conditional residence and green card

8    application process).  This is not the first time Gusevs has offered contradictory

9    statements regarding his supposed California residence.

10        As recently as August 2014, Gusevs claimed an entirely different E-2 residency

11    status and explicitly stated through counsel that this status conferred only "part-time"

12    residency in California.  Beļavskis Decl., Ex.A (attaching a letter from Gusevs' U.S.

13    counsel stating the Gusevs' is only a part-time resident of California).  Further, on

14    October 16, 2006, Gusevs declared his residence with the Latvian government to be in

15    Latvia.  Smislajeva Decl., Ex. M (Certification from Latvian Office of Citizenship

16    verifying that Gusevs' claimed to be a resident of Latvia in 2006.  This statement

17    remained on file until at least August 19, 2013.).

18        Given Gusevs' prior pleadings and official statements, it is hardly clear that

19    Gusevs was full-time resident at any relevant point, *i.e.*, in 2010, when Citadele

20    employees allegedly made the allegedly false statements to Gusevs, or in 2012 and

21    2013, when Citadele supposedly made other false statements.[4]  *See also* Appendix A

22

23        [4] While the FAC, generously read, claims that certain Latvian Bank employees
24    emailed and telephoned Gusevs while he was a resident of the United States, none of
      the allegations relate to Mr. Beļavskis personally and cannot be attributed to him.
25    *Calder v. Jones*, 465 U.S. 783, 790 (1984) (each defendant's contacts must be assessed
26    separately); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)
      ("[J]urisdiction over an employee does not automatically follow from jurisdiction over
27    the corporation which employs him.").  In that the allegations of the FAC fail to
28    establish jurisdiction over Citadele, it follows even more strongly that these same

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

8

1    (listing Gusevs' various residency claims).

2        Even if the FAC is read to allege that the offending communications occurred

3    while Gusevs was a full-time resident of California, being a resident of California and

4    being physically present in California are two different things.  One can reside in

5    California while also being physically present in Latvia.  As a self-proclaimed

6    international investor controlling at least seven Latvian entities and owning more than

7    80 properties in Latvia (FAC, ¶ 55), it is likely that much of Gusevs' time was spent in

8    Latvia.  In any event, it should not matter: "[b]oth [the Ninth Circuit] and the courts of

9    California have concluded that ordinarily use of the mails, telephone, or other

10   international communications simply do not qualify as purposeful activity invoking the

11   benefits and protection of the [forum] state."  *Peterson v. Kennedy*, 771 F.2d 1244,

12   1262 (9th Cir. 1985).[5]

13       Given all of Gusevs' contradictory statements, his California residency claims is

14   not credible and the Court may not assume the truth of these allegations.

15   *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011).

16              **(e)    *Finally, the FAC's "new" allegations are irrelevant.***

17       The FAC implies that Gusevs' alleged ownership of two Malibu homes somehow

18   cures defects in the Original Complaint's jurisdictional allegations.  They do not.  The

19   FAC's allegations regarding the Malibu homes are irrelevant.

20       *First*, allegations regarding any property owned by Gusevs personally, including

21   the Malibu properties, are irrelevant because Gusevs is not a party to any of the loan

22   agreements at-issue.  FAC, ¶¶ 19, 5, 43, 44.  Because the FAC correctly acknowledges

23   that Gusevs, not his Latvian entities, acquired the Malibu homes these properties are

24   _____

allegations fail to establish that this Court has jurisdiction over Mr. Beļavskis.

25       [5] The FAC also fails to explain how any of the defendants would have acquired

26   knowledge of Gusevs whereabouts at any given time and, as such, Plaintiffs'

27   conclusory claims regarding the Defendants' knowledge should not be credited.  In any

     event, mere knowledge of plaintiff's contacts with the forum is insufficient to establish

28   purposeful availment.  *Walden*, 134 S.Ct. at 1124.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

9

1   irrelevant to the dispute outlined in the FAC.  *Id*.

2   *Second*, the Malibu properties are irrelevant to this dispute because they were

3   acquired with funds from U.S. based banks not at-issue here and because Citadele does

4   not maintain a security interest in them (and never has).  Plaintiffs' Original Complaint

5   correctly acknowledged that the only relevant properties were in Latvia (*see* Original

6   Compl., ¶ 18), but the Amended Complaint alleges, without explanation, that the

7   Malibu properties "secured" the Latvian lines of credit and implies that defendants in

8   this case were somehow directly involved in California foreclosures.  FAC, ¶ 20.[6]  This

9   is not true.  The Latvian lines of credit are secured by property in Latvia, not California,

10  and the funds used to acquire Gusevs' Malibu homes were from U.S. based banks not

11  at-issue in this litigation.  These facts are confirmed by numerous sources:

- In a verified complaint, Gusevs himself confirms that he acquired the 21650 Pacific Coast home in 2004 and that he refinanced it in 2007 with a $6.5 million loan from Washington Mutual to serve as his "personal residence." Levin Decl., ¶ 4, Ex. F (verified complaint) and E (2004 deed of trust).

- Publically filed land records show that Gusevs acquired the 3211 Colony View property in 2006 with two loans (totaling $3.82 million) from America's Wholesale Lender.  Levin Decl., ¶ 3, Exs. C and D.

- The initial lines-of-credit (Smislajeva Decl. Ex. G and H) and the 2006 agreements (Smislajeva Decl. Exs. J, K, L) both confirm that the all collateralized properties are in Latvia.

- For avoidance of doubt, Citadele affirmed that it does not (and never did) maintain a security interest in any of Gusevs' California properties. Beļavskis Decl., ¶ 12.

25  Accordingly, Plaintiffs' claims regarding Guesvs' Malibu homes are not credible

---

[6] *See Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *5 (C.D. Cal. May 8, 2013) ("Courts may consider allegations in previous complaints in determining the *plausibility* of the current pleadings….").

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

10

and do not change the jurisdictional analysis.  *See Dychiuchay v. Greishaber*, 2015 WL 3708249, at *4 (D. Nev. Jun. 15, 2015) (sanctioning the plaintiff and explaining that the court cannot ignore allegations in an initial pleading simply because the allegations were omitted in an amended filing).[7]

### 2.  Plaintiffs' Claims Arise Out of Conduct in Latvia.

Plaintiffs have not and cannot establish that the conduct complained of arises out of any conduct *directed* to this state.  Under the second prong of the jurisdictional analysis, a plaintiff must establish that its claim arises out of or results from the defendant's forum-related activities.  *Schwarzenegger*, 374 F.3d at 802.  In the Ninth Circuit, courts use a "but for" standard to analyze the connection between the defendant's alleged conduct and the plaintiff's cause of action, *i.e.*, but for Defendant's contacts with California, would plaintiff's claims have arisen?  *Lisa McConnell, Inc. v. Idearc, Inc.*, 2010 WL 364172, at *6 (S.D. Cal. Jan. 22, 2010).

Here, the conduct complained of was all directed to Latvia, not California.  All of the parties to the underlying agreements are Latvian and all of the properties used to secure the line of credit are in Latvia.  FAC, ¶¶ 6, 7, 44, 65, 74.  The alleged improper conduct – the wrongful foreclosures – also occurred in Latvia.  *Id*.  Even assuming the truth of the allegations in the FAC, the conduct complained of would have occurred regardless of any California connection.

### 3.  Exercising Jurisdiction Over the Latvian Defendants Would Not Be Reasonable.

Assuming *arguendo* that the Plaintiffs are able to carry the burden on prongs one

---

[7] The FAC also adds an allegation that jurisdiction is proper because the "initial loan agreement [was] entered into in California."  FAC, ¶ 25.  Again, this claim cannot be credited.  The FAC contains no allegations supporting this claim and, in fact, this allegation is contradicted by other claims in the FAC.  According to the FAC, Gusevs became a resident of California in 2004 (FAC, ¶ 19) while the initial loan agreement was entered into in 2003 (FAC, ¶ 43).  Plaintiffs cannot plausibly claim to have entered into the initial line of credit "in California," before Gusevs even claims to have moved to California.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

11

1    and two (which they have not), the Court should still dismiss Citadele and Mr.

2    Beļavskis because exercising jurisdiction over them would not be reasonable.[8]

3         *First*, as described above, Citadele's and Mr. Beļavskis' contacts with California

4    are entirely based on Gusevs' alleged residence.  Apart from Gusevs' alleged residence

5    in California, Citadele and Mr. Beļavskis have no connection to this state.

6         *Second*, the burden on the Latvian Defendants to defend themselves in this

7    foreign forum would be substantial.  The Latvian Defendants have no employees,

8    officers, or offices in the United States.  Beļavskis Decl., ¶¶ 3-4.  As such, all of the

9    Latvian Bank's records and witnesses are thousands of miles away in Latvia.  *See id.*;

10   *Rocke v. Canadian Automobile Sport Club*, 660 F.2d 395, 399 (9th Cir.1981) (burden

11   on Quebec company to defend in California weighs against jurisdiction).

12        *Third*, based on the facts alleged in the FAC, this action presents a substantial

13   conflict of law problem: the Plaintiffs seek redress for alleged auctions carried out

14   "under Latvian law."  FAC, ¶ 85.  Through this action Plaintiffs challenge not only

15   Latvian judicial decisions, foreclosures, and authorized auctions, but also rulings issued

16   by Latvian arbitration courts.  FAC, ¶¶ 69-73.  Accordingly, based on the allegations of

17   the FAC, a conflict between Latvian law and U.S. law is not only likely, but is exactly

18   what the Plaintiffs seek.[9]

19        *Fourth*, California's interest, if any, in adjudicating a dispute between Latvian

20

21        [8] The seven reasonableness factors are:  (1) the extent to which the defendant
     purposefully interjected itself into the affairs of the forum state; (2) the burden on the
22   defendant; (3) conflicts of law between the forum and the defendant's home
     jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient
23   judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's
     interest in convenient and effective relief; and (7) the existence of an alternative forum.
24   *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).
25

26        [9] *See* Smislajeva Decl. at ¶¶ 2-7, Exs. A-F.; Request for Judicial Notice, at 1-2.
     Plaintiffs have brought (and lost) several cases in Latvia arising out of the same
27   operative facts.  *Id.*  Citadele and Mr. Beļavskis reserve all aspects of their *res judicata*
28   defenses, which they will present on the merits, if necessary, at the appropriate time.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1    entities concerning Latvian real property is minimal.

2           *Fifth*, because witnesses and relevant evidence would likely be located in Latvia,

3    efficiency concerns favor dismissal. *Core-Vent Corp.*, 11 F.3d at 1489 (in evaluating

4    this factor courts look to where the evidence and witnesses are located).

5           *Sixth*, the Plaintiffs would not be inconvenienced by having this dispute heard in

6    Latvia. The Plaintiffs are all Latvian, the underlying contracts are in Latvian, the

7    underlying contracts provide that Latvian law governs, the properties are in Latvia, and

8    the evidence and witnesses are in Latvia. In any event, "neither the Supreme Court nor

9    [the Ninth Circuit] has given much weight to inconvenience to the plaintiff . . . A mere

10   preference on the part of the plaintiff for its home forum does not affect the balancing."

11   *Core-Vent Corp.*, 11 F.3d at 1490. This is especially true when this dispute arises out

12   of business that the Latvian Plaintiffs chose to conduct in Latvia and over which

13   Plaintiffs have repeatedly filed suits in the Latvian courts. *See* Smislajeva Decl. ¶¶ 2-7,

14   Exs. A-F.

15          *Seventh*, because the "plaintiff bears the burden of proving the unavailability of

16   an alternative forum" and because the Plaintiffs have not alleged (nor proven) that an

17   alternative forum does not exist, the seventh factor also favors dismissal. *Id*.

18   **II.    The Court Should Dismiss the Latvian Defendants on *Forum Non
             Conveniens* Grounds.**

19

20          In the event that the Court finds personal jurisdiction, it should still dismiss them

21   on *forum non conveniens* grounds. Under the doctrine of *forum non conveniens*, courts

22   have broad discretion to decline jurisdiction in favor of a more convenient forum

23   outside the United States if the following is established: (1) the existence of an

24   adequate alternative forum, and (2) that the balance of private and public interest

25   factors favors dismissal. *Creative Tech., Ltd. v. Aztech Sys. PTE, Ltd.*, 61 F.3d 696,

     703 (9th Cir. 1995). Here, each of these requirements is satisfied.

26

27          As several courts have already held, Latvia provides an adequate forum to

28   adjudicate civil disputes. *Tkachyov v. Levin*, 1999 WL 782070, at *7 (N.D. Ill. Sept.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

13

27, 1999) (Latvia is an adequate alternative forum); *Wellons, Inc. v. SIA Energoremonts Riga Ltd.*, 2013 WL 5314368, at *11 (W.D. Wash. Sept. 20, 2013) (same). This case is no different. *First*, both Citadele and Mr. Beļavskis are amenable to service in Latvia, which presumptively satisfies this requirement.[10] Beļavskis Decl., ¶ 7; Grunte Decl., ¶ 10; *Leetsch v. Freedman,* 260 F.3d 1100, 1103 (9th Cir. 2001). *Second*, as explained in the Declaration of Ivars Grunte, Latvian law provides a cause of action for fraud and for the recovery of money damages, which is what Plaintiffs primarily seek here. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (The fact that substantive law in the foreign country may be different or less favorable is irrelevant unless the remedy provided is "so clearly inadequate or unsatisfactory that it is no remedy at all."). Accordingly, Latvia is an adequate alternative forum.

The private and public interest factors also support dismissal of this dispute.[11] *First*, the private interest factors favor dismissal. All of the parties to the underlying agreements are Latvian. The vast majority of evidence and witnesses would likely be in Latvia. It would undoubtedly be inconvenient and unnecessarily costly for the Latvian defendants, who have no connections to this state, to litigate in California. In contrast, the Plaintiffs, Latvian entities and Latvian citizens, would not be unduly

---

[10] Citadele and Mr. Beļavskis (and the declarants on their behalf) express no opinion regarding the applicability of *forum non conveniens* to any other defendant. In any event, the Court may still dismiss Citadele and Mr. Beļavskis on *forum non conveniens* grounds. *See e.g., Watson v. Merrell Dow Pharms., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985); *CAE Inc. v. Three Cities Research, Inc.*, 2009 WL 3839423, at *3, *5-*6 (D. Or. Nov. 16, 2009). The Latvian Defendants hereby incorporate arguments made by other defendants in their respective motions to dismiss the FAC.

[11] The seven private interest factors are (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). Courts can look to any or all of these factors, but should arrive at a balanced conclusion. *Id.*

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL: (310) 424-3900 • FAX (310) 424-3960

14

1  inconvenienced by proceeding in Latvia.

2      *Second*, for similar reasons, the public interest factors also support dismissal.[12]

3  California is likely to have little or no interest in this action as it is between Latvians

4  and because it concerns Latvian real property.  The fact that this dispute is governed by

5  Latvian law also tends to support dismissal.  *See* Smislajeva Decl. at ¶¶ 9-13, Exs. H-L

6  (underlying loan agreements providing for arbitration of disputes under Latvian law).

7  Finally, litigating this eleven-plaintiff and six-defendant action will be unnecessarily

8  burdensome and costly to this Court, local juries, and California taxpayers as it will add

9  to what is already a congested docket.  Accordingly, the Court should dismiss this

10  action on *forum non conveniens* grounds.

11  **III.  Alternatively, the Court Should Stay This Action Pending Arbitration.**

12      Even if the Court has jurisdiction and does not dismiss on *forum non conveniens*

13  grounds, it is nevertheless still required to stay this action in favor arbitration in Latvia.

14  9 U.S.C. § 3 (Where an issue is referable to arbitration, the court "shall" stay the

15  proceedings pending resolution of the arbitration); *Monex Deposit Co. v. Gilliam*, 616

16  F. Supp. 2d 1023, 1024 (C.D. Cal. 2009) ("The FAA eliminates district court discretion

17  and requires the court to compel arbitration of issues covered by the arbitration

18  agreement."); 9 U.S.C. § 206 (A court "may direct that arbitration be held in

19  accordance with the agreement at any place therein provided for, whether that place is

20  within or without the United States."); 9 U.S.C. § 208.

21      Here, the dispute outlined in the FAC is covered by numerous arbitration

22  provisions.  For example, the initial line of credit provides the following:

23      The Parties agree that any dispute, difference or claim, which arises from this

24      Agreement, which relates to it or violation, termination or invalidity thereof

25      shall be finally resolved by the Riga International Arbitration Court, in Riga, in

    accordance with the applicable legislation of the Republic of Latvia and the

26

27      [12] The five public interest factors are (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in

28  the court; and (5) the costs of resolving a dispute unrelated to this forum.  *Id.* at 1147.

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

Rules of the Arbitration Court by a panel of a single arbiter in the Latvian language on the basis of documents submitted, or, at discretion of the Lender, in another court of the Republic of Latvia of the relevant jurisdiction.

Smislajeva Decl. at ¶8, Ex. G, at 18; Beļavskis Decl. ¶ 9-10.  The other loan agreements between Plaintiffs and Citadele (or Parex Bank) also contain similar arbitration provisions covering all disputes "arising" and "relating to" the loan agreements. Smislajeva Decl. at ¶¶ 9-13, Exs. H-L; Beļavskis Decl. at ¶ 9-10.[13] The allegations and claims in the FAC are encompassed by these arbitration provisions.  *See e.g. AT&T Corp. v. Vision One Sec. Sys.,* 914 F. Supp. 392, 398 (S.D. Cal.1995) (arbitration clause covering disputes "arising out of" and "relating to" the agreement is a "broad" arbitration clause); *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1317 (2007) (agreement to arbitrate any dispute arising from or out of a contract encompasses tort claims, including fraud); *Hall v. Prudential-Bache Secur., Inc*., 662 F. Supp. 468 (C.D. Cal. 1987) (arbitration agreement covering disputes "arising" from and "related to" the contract encompassed RICO claim).

Accordingly, if the Court finds jurisdiction and declines to dismiss on *forum non conveniens* grounds, the Court must stay this action pending arbitration in Latvia.

## IV.    Plaintiffs' Fraud and RICO Claims Should Be Dismissed.

Should the Court not dismiss or stay this action on the grounds discussed above, the Court should still dismiss all of Plaintiffs' claims.

### A.    Legal Standard.

A complaint should be dismissed pursuant to Rule 12(b)(6) unless it contains sufficient facts, which if accepted as true, "'state a claim to relief that is plausible on its face.' . . . [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the

---

[13] The Court may properly consider the loan agreements to decide an arbitration motion. *Hadlock v. Norwegian Cruise Line, Ltd*., 2010 WL 1641275, at *1 (C.D. Cal. Apr. 19, 2010).

NOTICE OF MOTION AND MOTION TO DISMISS LATVIAN DEFENDANTS

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted). In addition to the "plausibility" pleading standard, all averments of fraud must be stated "with particularity" and "with a high degree of meticulousness." Fed. R. Civ. P. 9(b); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, fn. 14 (2007); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022–23 (9th Cir. 2000). This heightened pleading standard also applies to RICO claims, like those at-issue here, that rely on claims of fraud. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); Order, at 8.[14]

### B.   Plaintiffs' Fraud Claims are Time Barred.

Plaintiffs' fraud claims are barred by California's three year statute of limitations for fraud because, according to the FAC, Plaintiffs should have been aware of their claim in 2012 – more than three years before they filed their Complaint. Cal. Code Civ. P. § 338(d).[15] A plaintiff's cause of action for fraud accrues, and the 3-year limitations period begins to run, when the plaintiff obtains knowledge of facts sufficient to make a reasonably prudent person *suspicious* of fraud. *See Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1111 (1988); *see also Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005) ("we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them"); *Kline v. Turner*, 87 Cal. App. 4th 1369, 1375 (2001).

Here, according to the FAC, Plaintiffs were directly confronted with the alleged

---

[14] The court may consider extrinsic evidence on a 12(b)(6) motion if it is either (a) alleged in the complaint and essential to plaintiffs' claims or (b) subject to judicial notice. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1022 (C.D. Cal. 2015).

[15] *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945) ("As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law."); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) (in diversity cases, federal courts apply whatever tolling provisions are recognized under state law).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1   fraud in 2012 when Citadele did not extend the lines of credit despite Citadele's alleged

2   prior assurances that it would do so.  *See* FAC, ¶¶ 63-64, 68-70.  Citadele's purported

3   failure to lengthen the lines of credit despite its previous promises would have made a

4   reasonably prudent person suspicious of fraud.  *See Kline*, 87 Cal. App. 4th at 1375.

5   Accordingly, Plaintiffs' fraud cause of action began to accrue in 2012—well over three

6   years before Plaintiffs filed suit.

### C.   Plaintiffs' Fraud Claims Are Barred by the Economic Loss Rule.

7

8        Plaintiffs' fraud claims, which are based on Citadele's alleged failure to enter

9   into various agreements despite its previous promise to do so, are barred by California's

10  economic loss rule.  Among other claims, the economic loss doctrine bars tort claims

11  for money (i.e. economic losses) that are based on the defendants' failure to enter into a

12  contract despite a pervious promise to do so.  *UMG Recordings, Inc. v. Glob. Eagle*

13  *Entm't, Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015).

### D.   Plaintiffs' Fraud Claims Are Not Pled With Sufficient Specificity.

14

15       Plaintiffs' fraud causes of action (intentional misrepresentation and fraud by false

16  promises) must be dismissed because neither is pled with sufficient specificity.  To

17  satisfy Rule 9(b), "[a]verments of fraud must be accompanied by the who, what, when,

18  where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

19  1097, 1106 (9th Cir. 2003) (internal citations and quotations omitted).  These

20  allegations must be "specific enough to give defendants notice of the particular

21  misconduct so that they can defend against the charge and not just deny that they have

22  done anything wrong."  *Id*.

23       A complaint for intentional misrepresentation or fraud by false promises must

24  allege sufficient facts to plausibly establish the following elements: "(1) a knowingly

25  false representation by the defendant; (2) an intent to deceive or induce reliance; (3)

26  justifiable reliance by the plaintiff; and (4) resulting damages."  *Serv. by Medallion,*

27  *Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996); *Beckwith v. Dahl*, 205 Cal.

28  App. 4th 1039, 1059–1060 (2012) (explaining that fraud by false promises requires the

**BUCKLEYSANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

18

same basic elements as intentional misrepresentation).  With the exception of the second element, each of these elements must be pled with particularity.  *Id*.  Here, Plaintiffs' allegations fail to meet this standard for several reasons:

*First*, even assuming the truth of allegations pled, Plaintiffs' reliance on Citadele's misrepresentations was not justifiable.  A plaintiff has a duty to investigate the truth of the facts represented if he or she is aware of circumstances indicating that a defendant's representations may be false.  *Cameron v Cameron*, 88 Cal. App. 2d 585, 593-94 (1948) ("If [a plaintiff] becomes aware of facts that tend to arouse his suspicion, or if he has reason to believe that any representations made to him are false or only half true, it is his legal duty to complete his investigation and he has no right to rely on statements of the other contracting party.").  Here, Plaintiffs were aware of circumstances indicating that Defendant's representations were false when, according to the FAC, Citadele did not extend the maturity date on the lines of credit despite its previous promise to do so.  At this point, Plaintiffs' were aware of the alleged fraud.  Instead of investigating, according to the FAC, Plaintiffs continued to rely on Defendant's alleged misrepresentations without conducting any further investigation. Plaintiffs' apparent blind reliance on assurances (1) that the lines of credit would be unconditionally extended, (2) that arbitration proceedings did not need to be contested, and (3) that payments did not need to be made, are illogical on their face and are especially implausible here where the Plaintiffs admit that they are sophisticated parties engaged in multi-million dollar real estate investment throughout the world.

*Second*, Plaintiffs have failed to identify the requisite "who, what, when, where, and how" for each misrepresentation that they allege.  As set forth above, Plaintiffs allege three misrepresentations: (1) the Extension Allegation, (2) the Work-Out Arbitration Allegation, and (3) the Principal Payment Allegation.  However, none of these allegations actually identify who actually made what representation and when. *UMG Recordings, Inc*, 117 F. Supp. 3d at 1108 (the complaint generally "must allege the names of the employees or agents who purportedly made the fraudulent

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

representations or omissions, or at a minimum identify them by their titles and/or job responsibilities"). Instead, the FAC claims that various "Bank representatives" made allegedly false statements. In each instance it is entirely unclear (1) whether the alleged misrepresentations were made by all of the individuals identified or only by some of them, (2) whether every communication or some subset thereof contained the alleged misrepresentation, and (3) exactly when any of the numerous communications actually occurred. FAC, ¶¶ 64, 69-71, 77; *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (dismissing fraud allegations because the plaintiff failed to identify "employees who [committed the alleged acts] or provide any dates, times, or places the [wrongful conduct occurred]").[16]

*Third*, in addition to the reasons discussed above, Plaintiffs' fraud by false promises claim, in particular, is deficient because the FAC does not plausibly allege that Citadele did not intend to perform the alleged promises when made. For a fraud by false promises claim the plaintiff must allege that "(1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have the intent [to perform] at the time that the promise was made, i.e., the promise was false." *See Beckwith*, 205 Cal. App. 4th at 1060. Intent not to perform cannot be proven simply by showing a subsequent failure to perform, and pleading nonperformance alone is insufficient. *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985) ("something more than nonperformance is required to prove the defendant's intent not to perform his promise"). Rather, the plaintiff must plead sufficient facts to give rise to a plausible inference that the defendant did not intend to perform as promised at the time the promise was made. *Id.*

---

[16] The FAC's fraud claims against Mr. Beļavskis are even thinner – none of the alleged misrepresentations were made by Mr. Beļavskis and the only allegations directed at Mr. Beļavskis' conduct are conclusory recitations of legal elements. The conclusory claims are insufficient. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (Plaintiff's complaint must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

NOTICE OF MOTION AND MOTION TO DISMISS LATVIAN DEFENDANTS

1  Here, other than the FAC's conclusory allegation that Defendants "did not intend to

2  perform the promises when they made the promises" (FAC, ¶ 132), there is no fact

3  from which the Court can plausibly infer that Citadele did not intend to perform as

4  promised.

5        **E.**     **Plaintiffs' Plaintiffs Failed to State a Claim Under RICO.**

6            **1.**     **RICO Does Not Apply to Injuries Suffered in Latvia.**

7        As the Court has already recognized, Plaintiffs' RICO claims must be dismissed

8  unless they can plausibly allege a domestic injury. *See* Order, at 10-12 (Dismissing the

9  Original Complaint because, among other reasons, "[t]he Plaintiffs in this case do not

10  allege any domestic injury to its business or property.  The alleged injuries include

11  losses on the lines of credit they obtained from Parex Bank, a Latvian company,

12  secured by property in Latvia and guaranteed by a resident of Latvia."). *RJR Nabisco,*

13  *Inc. v. European Community*, 136 S. Ct. 2090, 2106, 2111 (2016).

14        The FAC attempts to allege domestic injury by claiming that Gusevs purchased

15  homes in Malibu, by alleging that the lines of credit at-issue were "secured" by these

16  Malibu homes, and by alleging that these Malibu properties have either been

17  "decimated" or are facing foreclosure.  FAC, ¶ 20.  However, as discussed above,

18  Gusevs' Malibu homes are irrelevant to this action.

19        *First*, the Malibu properties were acquired with funds from U.S. based banks not

20  at-issue here.  Levin Decl., ¶¶ 3-4, Exs. C-F; *supra* Argument I.C.1.e.[17]

21        *Second*, Citadele does not have a security interest in any of Gusevs' California

22  properties (and never did) and has not directed or otherwise been involved in any

23  California foreclosure.  *Id.;* Smislajeva Decl., Exs. G-L; Beļavskis Decl. ¶ 12.[18]

24

25        [17] The court may consider the deeds of trusts and the verified complaint on a

26  12(b)(6) motion.  *See supra* n. 14 and *Contreras v. JPMorgan Chase*, 2014 WL

27  5786244, at *2 (C.D. Cal. Nov. 6, 2014) (taking judicial notice of publically recorded land records, including deeds of trusts).

28        [18] The court may consider the loan agreements in ruling on the Latvian

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

21

Indeed, the Original Complaint confirms that the "[t]he lines of credit were secured by real estate and other property *in Latvia* owned by the Plaintiffs." Original Compl., ¶ 18.[19]  Even the FAC concedes these facts as it attributes to Citadele foreclosures only in Latvia:  the "Bank began auctioning [] real estate…*in Latvia*…." FAC, ¶ 83.

*Third*, Gusevs' acquisition of homes in Malibu was not a commercial investment. Judicially noticeable documents and the FAC both confirm that Gusevs acquired the Malibu homes in his name, not in the name of his Latvian entities.  FAC, ¶ 19 (stating that "Gusevs' has been a resident of [] California since 2004 and has engaged in significant real estate development, including [acquiring the Malibu homes]"); Levin Decl., ¶¶ 3-4, Exs. C-F.

*Fourth*, even assuming that Gusevs' Malibu homes are relevant (which they are not), any harm to them would be too remote for purposes of RICO. A RICO loss requires a "direct relation between the injury asserted and the injurious conduct alleged." *Keel v. Schwarzenegger*, 2009 WL 1444644, at *5 (C.D. Cal. May 19, 2009); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). (A RICO loss requires "some direct relation between the injury asserted and the injurious conduct alleged."); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (For the Plaintiff to have standing, the alleged RICO violation must have "led directly to the plaintiff's injuries.").  Here, any harm to Gusevs' homes from the RICO claim alleged would be purely speculative.

##          2.          Plaintiffs Fail to Plead the Existence of a RICO Enterprise.

To state a claim for relief based on RICO, the Plaintiff must sufficiently allege the existence of a RICO enterprise.  *See Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005).  To plead the existence of a RICO enterprise, plaintiff must allege facts demonstrating the following: (1) a common

Defendants' 12(b)(6) motion as the loan agreements are referenced in the FAC.  *See supra* n. 14.

[19] *See supra* n. 6 (court may consider the initial complaint in assessing the FAC).

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

NOTICE OF MOTION AND MOTION TO DISMISS LATVIAN DEFENDANTS

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

purpose, (2) an ongoing organization, and (3) "evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552–53 (9th Cir. 2007). Here, the Plaintiffs have failed to plead the existence of a RICO enterprise.

*First*, other than a conclusory allegation that the Defendants were associated for a "common purpose," Plaintiffs have failed to plead facts sufficient to identify any plausible "common purpose" among the RICO defendants. FAC, ¶ 78. Indeed, assuming the truth of the allegations pled, many of the RICO Defendants had divergent interests. For example, on the one hand, Plaintiffs allege that Citadele wrongfully foreclosed properties in order to generate "huge windfall profits." FAC, ¶ 61. These foreclosures, which began in March 2014—well before Ripplewood acquired its interest in Citadele—would have driven the value of Citadele up. On the other hand, Ripplewood, as a prospective purchaser of Citadele, had an interest in purchasing Citadele for a "reduced price." FAC, ¶ 63. If Citadele was generating windfall profits, it would cost more, not less. Recognizing these divergent interests, Plaintiffs attempt to cure this defect by alleging that the Defendants' are all "alter-egos" of one another. Such an allegation, however, actually defeats a RICO claim. *San Francisco v. Spencer*, 2003 WL 23119283, at *3 (N.D. Cal. Dec. 29, 2003) ("RICO enterprises must be distinguished from RICO defendants in pleading in order to state a RICO claim.").

*Second*, Plaintiffs have failed to actually identify any "ongoing organization" among the RICO defendants. An ongoing organization is "a vehicle for the commission of two or more predicate crimes." *Odom*, 486 F.3d at 552. Here, Plaintiffs do not allege facts from which a plausible inference could be drawn that the RICO defendants formed such a vehicle. The alleged predicate acts – presumably mail fraud and wire fraud – were, according to the FAC, carried out entirely by Citadele. Indeed, Plaintiffs allege that the foreclosures continue to this day despite the fact that VAS Privatization sold its interest in Citadele in September 2014. FAC, ¶91. Plaintiffs' attempt to cure this defect by alleging, on information and belief, that all of the Defendants are alter-egos of one another is woefully insufficient. *Gerritsen v. Warner*

23

*Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim….").

*Third*, the facts alleged, even if proven true, would not establish that the various Defendants functioned as a "continuing unit." While the "continuity requirement does not, in itself, require that every member be involved in each of the underlying acts of racketeering, or that the predicate acts be interrelated in any way," it does require that each defendant's "behavior was[an] 'ongoing' rather than isolated activity." *Odom*, 486 F.3d at 553. Here, Plaintiffs have not identified any ongoing activity by any of the Defendants, except for Citadele auctioning Plaintiffs' Latvian properties "under Latvian law." FAC, ¶ 85. However, auctioning properties in Latvia is not a RICO enterprise.

### 3. Plaintiffs Fail to Plead a Pattern of Racketeering Activity.

A viable RICO claim must clearly identify the predicate acts alleged to constitute racketeering activity. *See Graf v. Peoples*, 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008) ("Plaintiff's RICO claims incorporate the Complaint's initial lengthy description of many different asserted acts of wrongdoing by various Defendants. Plaintiff does not expressly identify any RICO predicate acts, but simply incorporates his previous allegations. Such 'shotgun' pleading is insufficient to plead a RICO claim."). Here, as in *Graf*, Plaintiffs do not identify any predicate acts, but instead incorporate their previous allegations by reference. FAC, ¶¶ 102, 112, 113. This is insufficient.

### 4. Plaintiffs Have Not Sufficiently Alleged Violations of Section 1962(a), (b), (c), or (d).

As a threshold matter, Plaintiffs' RICO count is deficient because it does not identify which subsection is implicated by any given allegation. *Powell v. Wells Fargo Home Mortg.*, 2015 WL 4719660, at *13 (N.D. Cal. Aug. 7, 2015) ("Ultimately, without showing which facts support the elements of his claim, or which RICO section Plaintiff even wishes to assert, Plaintiff fails to state a claim on which relief can be granted.").

Assuming *arguendo*, that the Plaintiffs have brought a cause of action under each subsection and assuming that all of Plaintiffs' factual allegations are applicable to each

BUCKLEYSANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

24

1    subsection, Plaintiffs have still failed to plead a RICO cause of action.

2        *First*, any alleged violation of Section 1962(a) – RICO's anti-money laundering

3    provision – is deficient because Plaintiffs fail to allege any facts indicating that income

4    derived from predicate acts was used to operate the alleged enterprise.  18 U.S.C. §

5    1962(a) ("It shall be unlawful for any person who has received any income

6    derived…from a pattern of racketeering activity . . . to use or invest…any part of such

7    income…in acquisition of any interest in…any enterprise…").

8        *Second*, any alleged violation of Section 1962(b) is deficient because Plaintiffs

9    have not alleged that Citadele or Mr. Beļavskis acquired an interest in any enterprise

10   through a pattern of racketeering activity.  18 U.S.C. § 1962(b); *Guerrero v. Gates*, 110

11   F. Supp. 2d 1287, 1292 (C.D. Cal. 2000) ("A violation of § 1962(b) requires: (1)

12   acquisition or maintenance of (2) an interest in or control of (3) any enterprise (3)

13   through a pattern (4) of racketeering activity.").  At most, Plaintiffs allege that, on

14   information and belief, *Ripplewood* acquired an interest in Citadele through a "rigged"

15   bidding process.  FAC, ¶ 64.

16       *Third*, any alleged violation of Section 1962(d) – RICO's anti-conspiracy

17   provision – is deficient because Plaintiffs have not and cannot plead that all defendants

18   were aware of the essential nature and scope of the enterprise and agreed to participate

19   in it.  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Baumer v. Pachl*,

20   8 F.3d 1341, 1346 (9th Cir.1993) (A defendant must also have been "aware of the

21   essential nature and scope of the enterprise and intended to participate in it.").

## CONCLUSION

23       For the foregoing reasons, the Court should grant this motion.

24   DATED:  January 9, 2017                    BUCKLEYSANDLER LLP

26                                   By:      */s/ Fredrick S. Levin*
                                             Fredrick S. Levin
27                                           *Attorneys for Defendants AS Citadele*
                                             *Banka and Guntis Beļavskis*

**BUCKLEYSANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

25

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

## Appendix A

| Date | Residency Claim | Source |
|---|---|---|
| Oct. 10, 2006 | Gusevs declares to the Latvian Office of Citizenship and Migration Affairs that his place of residence is as follows: Juras Iela 47, Jurmala, LV-2015 | Exhibit M to Smislajeva Declaration, at 3. |
| Aug. 19, 2013 | Gusevs' declaration with the Latvian Office of Citizenship and Migration Affairs is still on file and remains unchanged. | *Id.* |
| Aug. 22, 2014 | Gusevs claims to be a "part-time" resident of California pursuant to an "E-2 Visa." | Exhibit A to Beļavskis Declaration, at 1. |
| May 31, 2016 | Gusevs claims to be a "resident of the State of California pursuant to an EB-5 visa." | Original Complaint, ¶ 4. |
| Aug. 22, 2016 | Gusevs signs his declaration in support of Plaintiffs' Opposition to Ripplewood's Motion to Dismiss from Riga, Latvia. | *Gusevs et al. v. AS Citadele Banka et al.*, Case No. 16-3793, Dkt. No. 37 (Aug. 22, 2016 C.D. Cal.). |
| Sept. 29, 2016 | Gusevs claims to be "a resident of the State of California …since 2004." | First Amended Complaint, ¶ 5. |