1  Uri Litvak, Esq. (State Bar No. 277966)
   ULitvak@LitvakLawGroup.com
2  Airene Williamson (State Bar No. 277101)
   AWilliamson@LitvakLawGroup.com
3  **Litvak Law Group, P.C.**
4  2424 S.E. Bristol St., Suite 300
   Newport Beach, CA  92660
5  T.   949-477-4900
   F.   949-335-7113
6
7
8  *Attorneys for the Plaintiffs*

9              **UNITED STATES DISTRICT COURT**
10            **CENTRAL DISTRICT OF CALIFORNIA**

11 | VIKTORS GUSEVS, an individual; VG) | Case No: 2:16-cv-03793-SVW-AS |
12 | BEHEER LATVIA, LLC, a foreign )      | Judge:  Hon. Stephen V. Wilson |
   | limited liability company; VG BEHEER) |
13 | LATVIA SIA, a foreign corporation; )  |
14 | VG BEHEER JURMALA LLC, a )           | **PLAINTIFFS' OPPOSITION TO** |
   | foreign limited liability company; VG ) | **DEFENDANTS AS CITADELE** |
15 | BEHEER RIGA, LLC, a foreign limited)  | **BANKA'S AND GUNTIS** |
16 | liability company; BOTANIX, LLC, a )  | **BELAVSKIS' MOTION TO** |
   | foreign limited liability company; )   | **DISMISS (DKT 119)** |
17 | DEMENKOVA UN PARTNERI, a )          |
18 | foreign partnership; LEGO TRANS, )    |
   | LLC, a foreign limited liability )     | Hearing Date:  February 13, 2017 |
19 | company; ANDRENU PARKS, LLC, a )     | Hearing Time: 1:30 p.m. |
20 | foreign limited liability company; )   | Courtroom:      10A |
   | GREENFIELD ENGURES SIA, a )         |
21 | foreign corporation; and JEVGENIJS )   |
22 | GUSEVS, a foreign individual, )       |
23 |                                       |
   |            Plaintiffs,              )  |
24 |                                    )  |
25 |        vs.                         )  |
26 |                                    )  |
27 | AS CITADELE BANKA, a foreign )        |
28 | corporation; GUNTIS BELAVSKIS, a )    |

1  foreign individual; VAS                      )
2  PRIVATIZATION AGENCY, a foreign )
   corporation; RIPPLEWOOD            )
3  HOLDINGS L.L.C., a Delaware limited )
   liability company; RIPPLEWOOD       )
4  ADVISORS LLC, a Delaware limited    )
5  liability company; RA CITADELE      )
   HOLDINGS LLC, a Delaware limited    )
6  liability company; and TIMOTHY C.   )
7  COLLINS, an individual,             )
                                        )
8                                       )
              Defendants.               )
9  _____    )

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................2

II.   STATEMENT OF FACTS .......................................................3

III.  LEGAL ARGUMENT ............................................................6

   A.   THIS COURT HAS PERSONAL JURISDICTION OVER THE
      DEFENDANTS...................................................................6
     1. Legal Standard for Rule 12(b)(2) Motion to Dismiss ....................6
     2. Plaintiffs Have Established Jurisdiction Over All Named
       Defendants Through The RICO Nationwide Jurisdictional
       Provisions .........................................................................7
     3. Plaintiffs Have Established A Basis For The Court's Exercise of
       Specific Personal Jurisdiction Over the Defendants......................9
       a. The Defendants Purposefully Directed Their Activities
         to the State of California ...................................................9
       b. Plaintiffs' Claims Arose Out Of The Defendants' Specific
         California-Related Activities ..............................................11
       c. Exercise Of The Court's Jurisdiction Over The Defendants In
         California Is Reasonable ...................................................11

   B.   THE DEFENDANTS' REQUEST FOR DISMISSAL ON FORUM
      NON CONVENIENS GROUNDS MUST BE DENIED .................14
     1. Latvia Is Not A Competent Or Adequate Forum .........................14
     2. Neither The Public Nor The Private Interest Factors
       Favor Dismissal .................................................................15

   C.   PLAINTIFFS CANNOT BE ORDERED INTO ARBITRATION
      UNDER THE CIRCUMSTANCES.................................16

   D.   PLAINTIFFS' FRAUD ALLEGATIONS ARE SUFFICIENT TO
      ESTABLISH A PRIMA FACIE FRAUD CLAIM ...........................18
     1. The Statute of Limitations Does Not Preclude The Plaintiffs'
       Intentional Misrepresentation and Fraud Claims..........................18
     2. Plaintiffs' Fraud Claims Are Pled With Sufficient Factual
       Specificity .........................................................................19

///

a. Plaintiffs Had No Duty to Investigate Under The Circumstances...............................................................19

b. Plaintiffs Have Pled Sufficient Detail In Light of the Complexity and Length of the Defendants' Fraudulent Scheme .................21

c. Plaintiffs' Fraud by False Promise Claim is Pled with Sufficient Specificity .................................................................22

E.   THE PLAINTIFFS' RICO ALLEGATIONS ARE SUFFICIENTLY PLEAD TO STATE A PRIMA FACIE CIVIL RICO CLAIM ........23

1. Plaintiffs Have Pled a Sufficient Domestic Injury .......................23

2. Plaintiffs Have Sufficiently Alleged a RICO Enterprise Under 18 USC § 1962 (c).........................................................................25

3. Plaintiffs Have Pled a Pattern of Racketeering Activity and the Predicate Acts with Particularity .................................................26

4. Plaintiffs Have Sufficiently Pled A Prima Facie Case Against Defendants Under 18 U.S.C. § 1962(a), (b), and (d)....................27

IV.    CONCLUSION ..............................................................................28

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)....................................17

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)..........................................................20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).......................................24

*Calder v. Jones*, 465 U.S. 783 (1984) ...................................................................10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 66 U.S. 408 (1984)............9

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235(1981) ................................................15

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ............................................26

*Schumack v. United States*, 489 U.S, 705, 714 (1989)......................................26

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) ..................................................17


**Federal Cases**

*Anza v. Ideal Steel Supple Corp.*, 547 U.S. 451. 461, 126 S. Ct. 1991,
1998 (2006) ...........................................................................................................27

*Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) .....................................11

*Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ..........................................27

*Brayton Purcell LLP v. Recordon &* Recordon, 606 F.3d 1124 (9th Cir.) .......6, 9

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535
(9th Cir. 1986) .........................................................................................................7

*Cameron v Cameron*, 88 Cal. App. 2d 585 (1948) .............................................20

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 U.S. Dist. LEXIS 279, *25
(W.D. Wash. Jan 3, 2011) .....................................................................................27

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) .........10

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449
(9th Cir.1990) ........................................................................................................14

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. Cal 2002)............................6, 9

*Fox v. Ethicon Endo-Surgery, Inc.* (2005), 35 Cal.4th 797, 803 ......................18

*Gutierrez v. Givens*, 989 F.Supp. 1033 (S.D. Cal., 1997) ...................................7

*Howard v. America Online, Inc.*, 208 F. 3rd 741, 751 (9th Cir. 2000) ..............27

*In re Cardiac Devices Qui Tam Litigation*, 221 F.R.D. 318, 333
(D. Conn. 2004).....................................................................................................21

///

*In re Wellpoint, Inc. Out–of–Network "UCR" Rates Litig.*, 865 F.Supp.2d 1002, 1035 (C.D. Cal., 2011) ...............................................26

*Kline v. Turner*, (2001) 87 Cal.App.4th 1369, 1374 ...............................18

*Leetsch v. Freedman*, 260 F.3d 1100 (9th Cir. 2001)......................14, 15

*Living Designs, Inc. v. E.I. DuPont De Nemours and Co.*, 431 F.3rd 353, 362 (9th Cir. 2005) .......................................................................25

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) .............15, 16

*Miller v. Yokohama Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) ...............26

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ........................................................................................28

*Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co.*, 981 F.2d 429, 437 (9th Cir.1992) ..............................................................................27

*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016).........23

*Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 297, 146 Cal.Rptr. 271 ....................................................................................18

*Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990)..............11

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ..6,9,12

*United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)................28

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, (1970) 1 Cal.3d 586, 597 ......................................................................................19

*Vess v. Ciba-Geigy Corp. Usa*, 317 F.3d 1097, 1107 (9th Cir. 2003)........23

*Walden v. Fiore*, 688 F.3d 558 (9th Cir. 2012) ...................................12

*Wordtech Sys., Inc. v. Programmer's Paradise, Inc.*, 1997 U.S. Dist. LEXIS 15902 (N.D. Cal. Oct. 8, 1997) ......................................................7

## Federal Statutes

18 U.S.C. § 1961(4)...................................................................25

18 U.S.C. § 1962 (a),(b) and (d)...............................................27

18 U.S.C. § 1962(c)....................................................................27

18 U.S.C. § 1965(b).................................................................7, 9

## Federal Rules

FED. R. CIV. P. 9(B) ..................................................................25

FED. R. CIV. P. 12(B)(2) ..............................................................6

FED. R. CIV. P. 12(B)(6) ............................................................20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This action centers around a multi-billion dollar, sophisticated racketeering scheme orchestrated by Defendants RIPPLEWOOD ADVISORS LLC and RA CITADELE HOLDINGS LLC, their alter egos and predecessors in interest (collectively referred herein as "Ripplewood") and TIMOTHY COLLINS, as the beneficial owner and principal of Ripplewood ("Collins"), in partnership with their cohorts, Defendants AS CITADELE BANKA ("the Bank"), GUNTIS BELAVSKIS ("Belavskis"), and VAS PRIVATIZATION AGENCY ("Vas") (collectively referred to herein as the "CITADELE BANKA RICO Enterprise" or the "RICO Enterprise") through numerous acts of wire and mail fraud that caused devastating injury to Plaintiffs' business and property in the State of California.

Plaintiffs filed their First Amended Complaint ("FAC") (Dkt. 62), which describes in meticulous detail: (1) the formation and operation of the Citadele Banka RICO Enterprise, FAC ¶ 36-104; (2) significant contacts of the Ripplewood Defendants and Collins in California and the United States; (3) that Defendant Collins is the alter-ego of the Ripplewood Defendants, and ultimately, the ringleader of the entire RICO enterprise and scheme to defraud the Plaintiffs, FAC ¶ 23; (4) that Defendant Collins structured and built the RIPPLEWOOD entities, predecessors in interests, subsidiaries, and/or affiliates using layer upon layer of complex and sophisticated corporate covers and shell companies, FAC ¶ 29; (5) and, that Plaintiffs suffered significant and devastating domestic injuries in the State of California under *RJR Nabisco, Inc. v. European Cmty.,* 136 S. Ct. 2090, 2106 (2015), FAC ¶ 19-22.

As set forth below, Plaintiffs' lawsuit belongs in California, where Gusevs resides, where Plaintiffs were specifically solicited and targeted, and where Plaintiffs sustained substantial losses to their real property located at: 21650 Pacific Coast Highway, Malibu, California 90265 and 3211 Colony View Circle, Malibu, CA 90265 (hereinafter referred to as "Malibu Properties").

## II.    STATEMENT OF FACTS

In November 2003, Plaintiff VG BEHEER LATVIA SIA signed a line of credit agreement in Los Angeles, CA with Parex Bank, which was then a privately owned bank headquartered in Latvia.  First Amended Complaint ("FAC") ¶ 43; *See also* Declaration of Viktors Gusevs (hereinafter "Gusevs Decl."), filed concurrently herewith.  The lines of credit were secured by real estate and other property in California and Latvia owned by the Plaintiffs, including but not limited to, real estate investment properties in California located at 21650 Pacific Coast Highway, Malibu, CA 90265 and 3211 Colony View Circle, Malibu, CA 90265.  These California properties are now in foreclosure and short sale proceedings as a direct and proximate result of the RICO Defendants' fraudulent scheme.  FAC at ¶ 45.  In November, 2008, following the collapse of Lehman Brothers and the ensuing global financial crisis, the government of Latvia seized Parex Bank for token consideration.  *Id.* at ¶ 47 and ¶ 48.  Subsequently, Defendant VAS Privatization Agency, aka the Latvian Privatization Agency ("Vas")[1] acquired a 75% ownership interest in Parex Bank from the government of Latvia. *Id.* at ¶ 50.  From November 2008 through 2009, Parex Bank refused to honor payment instructions from Plaintiffs, which caused significant damage to Plaintiffs. *Id.* at ¶ 52.  In early 2010, the "good" assets of Parex Bank were

---

[1]    Throughout the numerous filed pleading, parties have interchangeably referred to Defendant VAS Privatization Agency, aka the Latvian Privatization Agency as "Vas" or "LPA."

transferred to a newly formed entity, Defendant AS CITADELE BANKA, as successor in interest to Parex Bank. *Id.* at ¶ 53. VAS owned 75% of the shares of the newly formed bank. *Id.* at ¶ 55. From 2010 to 2014, Defendant GUNTIS BELAVSKIS was a Member of the Supervisory Board or Chairman of the Supervisory Board of Defendant AS CITADELE BANKA. *Id.* at ¶ 12.

After AS CITADELE BANKA was formed, then Latvian Finance Minister and then Latvian Economy Minister, Artis Kampars, signed a confidential agreement with the European Commission requiring the Bank to be sold or liquidated by the end of 2014. *Id.* at ¶ 57. Under the direction of RIPPLEWOOD and COLLINS, the Defendants then hatched a fraudulent scheme, whereby they would manipulate the Bank's balance sheet and overall financial condition such that the severely discounted purchase price at which RIPPLEWOOD would ultimately purchase a majority interest in the Bank could be justified. *Id.* at ¶ 58. The racketeering conspiracy would involve defrauding Plaintiffs of their property. *Id.* at ¶ 59.

The first part of executing the racketeering scheme involved convincing Plaintiff VIKTORS GUSEVS to agree to a shortening of the terms of Plaintiffs' lines of credit from the then maturity date of 2018 to 2012. *Id.* at ¶ 62; Gusevs Decl. at ¶ 27. Shortly before the expiration of the lines of credit, the Defendants informed GUSEVS in California, through a series of email and telephone communications, that the Bank would be filing lawsuits against Plaintiffs in arbitration court in Latvia upon expiration of the term of the lines of credit. FAC at ¶ 68; Gusevs Decl. at ¶ 29. Defendants assured Plaintiff that the reason for this lawsuit was so that the Bank could write off the loans, thereby making the Bank more appealing to potential purchasers. *Id.* Defendants fraudulently promised VIKTORS GUSEVS that if he cooperated by not opposing the lawsuits, the Bank

would not enforce the judgments, but rather would agree to payment "work-outs" with the Plaintiffs and that, again, the new buyer of the Bank would be required to renew the lines of credit.  FAC at ¶ 69; Gusevs Decl. at ¶30.  Plaintiffs relied on Defendants promises and, as a result, judgments were rendered against all of the Plaintiffs.  FAC at ¶ 73; Gusevs Decl. at ¶ 32.  Defendants failed to honor their promises and did not enter into a workout agreement with any of the Plaintiffs other than Plaintiff VG BEHEER LATVIA SIA. FAC at ¶ 74.

The workout agreement with Plaintiff VG BEHEER LATVIA SIA required regularly monthly interest payments of €30,000 and principal repayment every six months of €500,000. *Id.* at ¶ 75.  Plaintiff VG BEHEER LATVIA SIA made these monthly payments from June 18, 2012 until Fall of 2013.  *Id.* at ¶ 76.  In the Fall of 2013, Defendants put their scheme to defraud the Plaintiff into full swing. AS CITADELE BANKA fraudulently represented to Plaintiff VIKTORS GUSEVS, through hundreds of emails and telephone communications, that VG BEHEER LATVIA SIA was not required to make the principal payment due in September 2013.  *Id.* at ¶ 77.  One month later, in October 2013, after Plaintiff VG BEHEER LATVIA SIA had already used the funds, Defendants demanded the September 2013 payment and threatened to start enforcing all of the uncontested arbitration court judgments against Plaintiffs.  *Id.* at ¶ 79.

Plaintiffs requested the Bank's permission to allow the sale of two of the Plaintiffs' properties to pay back a large portion of the principal owed on the lines of credit.  The Bank ignored, stonewalled or simply never responded to these requests, because to have done so, would have undermined the scheme to loot these assets through the sham auctions, discussed intra. *Id.* at ¶ 81.  In March 2014, the Bank, through an auctioneer (Ainars Shusts) began auctioning the real

estate properties of the Plaintiff in Latvia to repay the unopposed judgments.  *Id.* at ¶ 82.  Approximately 80 of the Plaintiffs' properties have been auctioned off to date.  *Id.* at ¶ 84; Gusevs Decl. at ¶ 44.  A majority of the properties have been purchased by affiliates of AS CITADELE BANKA for  an outrageously low sham prices, with the intention of reselling the properties at their fair market value and thereby reaping substantial windfall profits for the Bank's  investors and affiliates including COLLINS and RIPPLEWOOD.  *Id.*

In September of 2014, Defendant VAS sold its 75% ownership interest to the RIPPLEWOOD Defendants and TIMOTHY COLLINS for a ridiculously low price of €74 million.  This price was widely questioned given that COLLINS was the only "bidder" and the Latvian government had spent €2 billion to bail out the Bank in 2008.  *Id.* at ¶ 98.  An additional $300 million euro was mysteriously "found" on the balance sheet of the Bank immediately after the sale.  *Id.* at ¶ 95.

## III.   LEGAL ARGUMENT

### A.   THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

### 1.   Legal Standard for Rule 12(b)(2) Motion to Dismiss

To defeat a motion to dismiss, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant."  *Dole Food Co. v. Watts,* 303 F.3d 1104, 1108 (9th Cir. Cal 2002).  Where, as here, the Defendant's motion is based on written materials and not an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdictional facts. *Brayton Purcell LLP v. Recordon &* Recordon, 606 F.3d 1124, 1127 (9th Cir.).  "Conflicts between [the] parties over statements contained in the affidavits must be resolved in the *plaintiff's favor.*"  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### 2.   Plaintiffs Have Established Jurisdiction Over All Named Defendants Through The RICO Nationwide Jurisdictional Provision

The RICO statute provides for nationwide service of process in federal district court over defendants outside of the district, if "the ends of justice require" it.  18 U.S.C. § 1965(b).  Such nationwide service of process allows a district court to obtain personal jurisdiction over the nonresident defendant who is served under the statute as long as that person has minimum contacts with the United States.  *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986).  "Congress intended the 'ends of justice' provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial.  *Gutierrez v. Givens*, 989 F.Supp. 1033, 1038 (S.D. Cal., 1997).

Courts test these contacts under the "ends of justice" test set forth in *Butcher's Union*, 788 F.2d at 539.  The test requires that two specific conditions be met: that (1) the court have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy; and (2) that no other district would be able to exercise personal jurisdiction over all of the conspirators.  Once the "ends of justice" test has been satisfied, sufficiency of minimum contacts is determined by contacts with the United States as a whole and not contacts with the forum state.  *Wordtech Sys., Inc. v. Programmer's Paradise, Inc.*, 1997 U.S. Dist. LEXIS 15902, at *5 (N.D. Cal. Oct. 8, 1997).

Here, the "ends of justice" test is satisfied and the Court may exercise personal jurisdiction over all the named Defendants.  First, AS Citadele Banka and Guntis Belavskis' conducted loan origination and servicing activities with respect to a California resident, and they purposefully directed hundreds of phone calls and e-mails to California, at the behest of Ripplewood and Collins.  Second, AS Citadele Banka and Guntis Belavskis have sufficient minimum contacts with the

United States and California, in particular given that four named officers of AS Citadele Banka, including Belavskis, sent hundreds of e-mails and made approximately forty phone calls from Latvia to Plaintiff in California with the intention of fraudulently inducing Plaintiffs to agree to shorten the terms of their lines of credit. (FAC ¶¶ 5-9, 62-64). Thereafter, in 2012, just before the lines of credit were about to expire, Vija Meška (Meshka) (department head), Edvins Joksts (senior lawyer), and Andrey Golubcovs of AS Citadele Banka, at the direction of Ripplewood, Collins, their predecessors-in-interest and alter egos, directed a series of phone calls and e-mails from Latvia to Plaintiffs in California, this time asking Plaintiffs not to oppose arbitration proceedings in Latvia in exchange for fraudulent promises of work-out agreements and renewed lines of credit. (FAC ¶¶ 5-9, 67-71).

Further, no other district can exercise personal jurisdiction over all of the named Defendants in this action. Certain Defendants, such as the Ripplewood Defendants, are transacting business in California, New York, Delaware and in Latvia, while the remaining Defendants appear to be entities formed or persons residing in Latvia, and Defendant Timothy Collin's residence address is currently unknown, but he appears to own a property in San Francisco, California. Accordingly, there is no clear forum other than California in light of the activities directed to California and the damage caused to a citizen of California.

Here, the court is faced with a scheme that spanned throughout the United States and internationally, but that was specifically directed to a California resident. Nationwide service and personal jurisdiction are necessary to bring all of the claims and defendants together in a single trial.

### 3. Plaintiffs Have Established a Basis For The Court's Exercise of Specific Personal Jurisdiction Over the Defendants

Should this Court determine that the nationwide jurisdictional provisions found in 18 U.S.C. § 1965(b) are inapplicable, this Court may exercise personal jurisdiction over the Defendants under traditional jurisdictional grounds. Specific personal jurisdiction arises where, as in the present case, a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 66 U.S. 408, 414–16 (1984).

Personal jurisdiction requires certain minimum contacts and must not offend traditional notions of fair play and substantial justice. *Schwarzenegger*, 374 F.3d at 801. This "minimum contacts" test requires three things: (1) the defendant must have purposefully directed specific activities toward the state forum, (2) the plaintiff's claim must arise out of or relate to those specific forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. be reasonable. *Id.* at 802. If the plaintiff makes the first two showings, then the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Dole Food Co.* at 1114.

### a. The Defendants Purposefully Directed their Activities to the State of California

First, Defendants purposefully directed their activities toward Plaintiff Gusevs who they knew was residing in the State of California. To satisfy the purposeful direction requirement, the defendant "must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP*, at 1128. This is sometimes referred to as the "effects test" or "Calder test." See *Calder v. Jones*, 465 U.S. 783 (1984). The express aiming requirement is satisfied

when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff who defendant knows to be a resident of the forum state. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011).

AS Citadele Banka and Belavskis purposefully directed their financing activities towards the State of California. Parex Bank, the predecessor in interest of Defendant AS Citadele Banka, purposefully negotiated with Plaintiff Gusevs in California and entered into loan agreements with Plaintiff VG Beheer Latvia LLC in California. (FAC ¶ 6). The lines of credit opened by Parex Bank were opened for the known and agreed upon for the purpose of allowing Plaintiffs to engage in real estate development activities in California. Plaintiffs then utilized such loans for the development of their five (5) properties in California, including the two Malibu Properties. (FAC ¶¶ 19-20). Plaintiff VG Beheer Latvia LLC subsequently relocated its corporate office to California, a fact of which Defendants were well aware. When Defendant AS Citadele Banka acquired the loans from Parex Bank, it continued to service them, accept payments, and it entered into at least one new loan workout agreement with respect to the loans, again intentionally directing its loan servicing activities towards California. (FAC ¶¶6, 19-20).

Finally, AS Citadele Banka and Belavskis, at the direction of Ripplewood and Collins, their predecessors-in-interest and alter egos, intentionally targeted Plaintiffs in California and directed hundreds of phone calls and e-mails to Plaintiffs in California designed to perpetrate fraud in California under the guise of legitimate loan servicing activity. Additionally, Defendants knew that Plaintiffs conducted real estate development activities in California, that Plaintiffs relied on the lines of credit to conduct that business, and that their scheme to

defraud would cause severe injury to the Plaintiffs' business interests in California.  (FAC ¶¶6, 19-20). Therefore, Plaintiffs have satisfied the *Calder* test.

> **b.     Plaintiffs' Claims Arose Out Of The Defendants' Specific California-Related Activities**

Plaintiffs have also demonstrated that their claims arose out of, or were related to, the Defendants' California-related activities.   The Ninth Circuit employs a "but for" test to determine whether claims arise out of the defendant's contacts in the forum.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The question is ***not*** whether all of the claims arise out of Defendants' California-related activities; rather, the question is: "but for Defendants' contacts with the United States and California, would Plaintiffs' claims against the Defendants have arisen?"  *Id.*  In adopting the "but for" test, the Ninth Circuit also noted that "[a] restrictive reading of the 'arising out of' requirement is not necessary in order to protect potential defendants from unreasonable assertions of jurisdiction."  *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990).

In this case, there is no question that the Plaintiffs' claims would not have arisen ***but for*** the Defendants' fraudulent activities directed in California. Thus, Plaintiffs have satisfied the "but for" test, thereby also satisfying prong two of the *Schwarzenegger* test.

> **c.     Exercise of the Court's Jurisdiction Over The Defendants in California Is Reasonable**

Finally, this Court's exercise of specific personal jurisdiction over the Defendants comports with the notions of fair play and substantial justice. In evaluating whether the assertion of personal jurisdiction would comport with fair play and substantial justice, courts may consider: (a) the extent of the defendants' purposeful interjection into the forum state's affairs; (b) the burden on the

defendant of defending in the forum; (c) the extent of conflict with the sovereignty of the defendant's state; (d) the forum state's interest in adjudicating the dispute; (e) the most efficient judicial resolution of the controversy; (f) the importance of the forum to plaintiff's interest in convenient and effective relief; and, (g) the existence of an alternative forum. *Walden v. Fiore*, 688 F.3d 558, 582–83 (9th Cir. 2012). The burden is on defendant to make a compelling case as to why jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802.

Regarding the first factor above, AS Citadele and Belavskis have purposefully serviced loans in California, and have specifically targeted the Plaintiffs in the forum state. Such deliberate interjection by Defendants into California alone merits an exercise of jurisdiction by this Court.

As to the second factor, the Defendants are large institutional parties with virtually limitless resources. On the other hand, Plaintiffs would face much greater, if not insurmountable, obstacles litigating in Latvia, given that Plaintiff Gusevs, who is the principal and owner of the Plaintiff entities, resides in California. Plaintiffs' burden would be even more acute as a result of the financial difficulties caused by the Defendants' fraudulent activities. Furthermore, the remaining RICO Defendants are American-based enterprises or residents.

Regarding the third factor, Defendants misstate the Plaintiffs' request for relief in this action. Plaintiffs seek compensatory, statutory and exemplary damages tied to injuries caused by the Defendants. The Court need not consider the legitimacy of Latvian foreclosure or arbitration proceedings or any other aspect of Latvian law – and such are in fact, irrelevant to Plaintiffs' claims. In addition, the Defendants' assertions (which cannot properly be considered on this motion), that court actions in Latvia have been filed which arise out of the same

operative facts are insufficient to demonstrate the existence of a true *res judicata* defense.

Regarding the fourth factor, the United States and the State of California have significant interests in protecting the rights and interests of their residents. They also have significant interests in preventing fraud and in punishing those who specifically target California residents and commit fraud on their soil.

Regarding the fifth factor, the Defendants' argument that every relevant witness and piece of evidence is located in Latvia is absurd given their knowledge that Plaintiff Gusevs presently resides in California, Plaintiffs were damaged in California, and that Collins and the Ripplewood Defendants are all located in New York, and not in Latvia. In actuality, it would be far more efficient to resolve this matter in the United States and in this District where the Plaintiffs', the Plaintiffs' witnesses, and the Plaintiffs' evidence are all found.

Regarding the sixth factor, the Defendants' argument that Plaintiffs would not be inconvenienced by litigating in Latvia is also meritless. Plaintiff Gusevs now resides in California, not in Latvia. Further, even if the underlying contracts are governed by Latvian law, this is not a breach of contract action. The tortious conduct which is truly at issue here *occurred* in California and is governed by California substantive law and civil RICO jurisprudence, in particular. Also, the majority of the parties and their witnesses and evidence are in the United States and Plaintiffs are suffering financially as a result of the Defendants' fraudulent conduct, and not having to litigate in a distant forum has become important for Plaintiff to obtain effective relief.

Finally, regarding the seventh factor, Latvia is not an effective alternative forum in that Plaintiff could not acquire jurisdiction over all the Defendants in Latvia or pursue a claim under the civil RICO statute which does not exist under

Latvian law. For the foregoing reasons, the Court should find it reasonable to exercise personal jurisdiction over these Defendants and the case should properly proceed in this court.

## B.   THE DEFENDANTS' REQUEST FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS MUST BE DENIED

To prevail on a forum non conveniens motion, the movant must show: (1) the existence of an adequate alternative forum; and (2) that the balance of relevant private and public interest factors favor dismissal. *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir.1990).

Defendants suggest that some unspecified courts in Latvia would be an adequate alternative forum. However, Defendants do not (because they cannot) offer any argument that a civil RICO claim could be brought in a Latvian court. Consequently, the Defendants' motion to dismiss on forum non conveniens grounds must also be denied.

### 1.   Latvia Is Not A Competent Or Adequate Forum

Defendants argue that the courts of Latvia are an adequate alternative forum yet fail to specify which courts in Latvia provide an adequate forum. More importantly, nowhere in the mass of exhibits and declarations filed by Defendants is there any statement that civil RICO claims arising under U.S. law could be brought in Latvia.

Defendants cite some unpublished cases in which Latvian courts were found to be adequate forums.  However, not only are these cases factually inapposite, but they are of little value as persuasive authority. Courts must "make the determination of adequacy on a case by case basis" *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001).  Further, "the burden of showing the existence

of an adequate alternative forum is the defendant's." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001).

Defendants next argue that they are amenable to service in Latvia, and that this fact alone makes Latvia an adequate alternative forum. However, amenability to service of process is not the only determinant of a forum's adequacy. *Leetsch,* 260 F.3d at 1103.

Finally, in an attempt to establish the competency of Latvian courts, the Defendants offer two facts: 1) that Latvian courts recognize basic fraud claims, and 2) that Latvian courts award money damages. In reality, Plaintiffs would be left without an adequate remedy if they were forced to reduce their extensive and complex RICO fraud claims to a basic fraud action under Latvian law in a hostile forum subject to corrupt influence exerted by the Defendants herein. As a result, a Latvian court is not competent or adequate alternative forum.

**2.    Neither The Public Nor The Private Interest Factors Favor Dismissal**

Defendants continue to argue that the public and private factors referenced in *Contact Lumber Co.* favor dismissal on forum nonconveniens grounds. In applying these factors, the Supreme Court has stated that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 102 S.Ct. 252, 265-66 (1981). First, the private interest factors are:

(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck*, 236 F.3d at 1145.  Applying these factors which were discussed above in relation to the personal jurisdiction analysis, Defendants have failed to overcome the Plaintiffs' choice of their home forum.

Next, the public factors to be considered are as follows:

(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum.

*Lueck*, 236 F.3d at 1147.  Here, these factors favor the California forum. First, the United States and the State of California have a significant interest in protecting the rights of their residents and corporate domiciliaries from fraudulent enterprises. They also have a significant interest in preventing fraud and in punishing those who commit fraud against their residents.  This is not a dispute unrelated to the forum.

Second, as discussed in subsection 1 above, there has been no showing that a civil RICO claim could be brought in a Latvian court.  Finally, this matter is no more burdensome than any other civil case before the Court, and the Defendants have not offered any evidence that would suggest that this case would be any less burdensome or would face less docket congestion in Latvia.  As such, again, the Defendants have failed to overcome the Plaintiffs' choice of their home forum.

## C.   PLAINTIFFS CANNOT BE ORDERED INTO ARBITRATION UNDER THE CIRCUMSTANCES

Finally, Defendants identify a number of contracts that were not attached to the FAC, and argue that they contain binding arbitration clauses that must be enforced though a judicial stay of proceedings.  While courts have made clear that the Federal Arbitration Act (FAA) has a "national policy favoring arbitration" *see,*

*e.g.*, *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984), the savings clause in § 2 provides that a court may strike or limit an arbitration provision on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The savings clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

First, the arbitration provisions referenced by Defendants do not have bearings here since this is not a breach of contract action. Second, the arbitration clause referenced by Defendant no longer has any remedial effect for Plaintiffs because the Bank directed a series of phone calls and e-mails from Latvia to Plaintiffs in California, asking that Plaintiffs ***not oppose*** the arbitration actions in the Latvian court in exchange for fraudulent promises of work-out agreements and renewed lines of credit. (FAC ¶¶ 5-9, 67-71). Defendants actions are in direct contravention of the policy of a fair and equitable arbitration proceeding and are precisely why the savings clause in § 2 was created. In effect, Defendants instructed the Plaintiffs ***to ignore*** the very arbitration remedies the Defendants now conveniently seek to trigger. As such, the Defendants should not be allowed to escape the consequences of their fraud through an overly broad reading of forum selection and arbitration clauses.

### D.   PLAINTIFFS' FRAUD ALLEGATIONS ARE SUFFICIENT TO ESTABLISH A PRIMA FACIE FRAUD CLAIM

#### 1.   The Statute Of Limitations Does Not Preclude The Plaintiffs' Claims Of Intentional Misrepresentation And Fraud

In actions for fraud or mistake, California Code of Civil Procedure section

338(d) provides that a fraud action is required to be filed within three years of the date that plaintiff either discovers facts constituting the fraud or with reasonable diligence could have discovered those facts. *Kline v. Turner*, (2001) 87 Cal.App.4th 1369, 1374. The discovery rule "is based on the notion that statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights; therefore, those statutes should not be interpreted to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence." *Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 297, 146 Cal.Rptr. 271.

California Courts have defined standards for establishing when discovery of the fraud occurs as a matter of law. As the California Supreme Court explained in *Fox v. Ethicon Endo-Surgery, Inc.* (2005), 35 Cal.4th 797, 803, "under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." California Courts are generally reluctant to dismiss actions where the issues concern whether the plaintiff had sufficient notice of fraud to constitute discovery. As the Supreme Court of California further observed: "There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. It is a question for the trier of fact." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, (1970) 1 Cal.3d 586, 597.

In the present case, the facts and circumstances demonstrate that Plaintiffs filed this action in a timely manner. First, the Plaintiffs continue to suffer new

harm and injury as a result of the Defendants' ongoing fraudulent scheme. (FAC ¶¶ 97-99).   Second, although Defendants did not extend the Plaintiffs' lines of credit despite prior assurances that they would do so, this was not an 'inexplicable act' as the Defendants claim. Rather, Defendants represented to Plaintiffs that the decision not to extend the lines of credit, and to instead proceed with arbitration, was part of the Defendants' benign plan to make the bank appear more attractive to buyers. (FAC ¶¶ 68-70). The Defendants further communicated to Plaintiffs they would not be harmed by this course of action because: 1) Defendants would agree to work-outs with Plaintiffs rather than enforce the arbitration judgments, and 2) that once the bank was sold the new buyer would be required to reinstate the original lines of credit. (FAC ¶ 69). The Defendants' conduct in 2012 simply could not have put Plaintiffs on notice of the fraud. As a result, the Defendants' statute of limitations arguments must fail and their motion to dismiss on this basis must be denied.

### 2. Plaintiffs' Fraud Claims Are Pled With Sufficient Factual Specificity

#### a. Plaintiffs had no duty to investigate.

First, Defendants argue that the Plaintiffs' reliance on Defendant Citadele's intentional misrepresentations was not justifiable.  They argue that Plaintiffs were aware of circumstances indicating that Defendant Citadele's fraudulent misrepresentations were false when made, and that this should have prompted Plaintiffs to investigate. This argument fails for several reasons. First, the Defendants' incredulity concerning how Plaintiffs could have fallen for their scheme to defraud has no bearing on whether the Plaintiffs have sufficiently pled fraud. If anything, the Defendants raise an affirmative defense, which cannot be considered here. Second, on a 12(b)(6) motion to dismiss, the Plaintiffs must

merely demonstrate that they have set forth sufficient facts to state a claim, and they are further entitled to all reasonable inferences drawn in their favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiffs are entitled to an inference that the misrepresentations made were not so facially deficient that they could not have been relied upon. Such issues are properly left for the jury.

Furthermore, the Defendants' reliance on *Cameron v Cameron*, 88 Cal. App. 2d 585 (1948) is totally misplaced. First, *Cameron* is a domestic relations case. Second, *Cameron* does not address the sufficiency of pleadings, and it is at best unclear what, if any, relevance this state court case could have to federal pleading requirements. Third, *Cameron* dealt with an appeal from an order of judgment in trial court, not a motion to dismiss. Finally, unlike the petitioner in *Cameron*, the Plaintiffs at bar were not represented by counsel at the times Defendants made fraudulent misrepresentations to them, nor had they already begun an investigation into the Defendants' claims such that they could have a duty to "complete [the] investigation." *Id.* at 593-94. For these reasons, *Cameron* is totally inopposite.

### b. Plaintiffs Have Plead Sufficient Detail In Light of the Complexity and Length of the Defendants' Fraudulent Scheme.

The remainder of the Defendants' arguments concerning the Plaintiffs' intentional misrepresentation claim assert that Plaintiffs have not provided sufficient detail concerning the fraud to satisfy the heightened fraud pleading requirements.

In light of the complexities and duration of the Defendants' fraudulent scheme, the allegations in the FAC are more than sufficient. In *In re Cardiac Devices Qui Tam Litigation*, 221 F.R.D. 318, 333 (D. Conn. 2004), (heightened

pleading requirements for fraud should be relaxed in complex and difficult cases). Plaintiffs have identified who, what, where, and when to a sufficient degree of specificity. Regarding what Defendants identify as the 'Extension Allegation,' Plaintiffs have adequately plead that, in 2010, four named employees and officers of Defendants sent hundreds of e-mails and made approximately forty phone calls from Latvia to Plaintiff in California with the intention of fraudulently inducing Plaintiffs to agree to reduce the length of their term of credit. (FAC ¶¶ 5-9, 62-64).

Next, regarding what Defendants identify as the 'Work-Out Arbitration Allegation,' Plaintiffs have identified sufficient information to allow Defendants to prepare a responsive pleading. Plaintiffs have plead that in 2012, just before the lines of credit were about to end, Vija Meška (Meshka) (department head), Edvins Joksts (senior lawyer), and Andrey Golubcovs from AS Citadele Banka, directed a series of phone calls and e-mails from Latvia to Plaintiffs in California, this time asking that Plaintiffs not oppose arbitration actions in Latvian court in exchange for fraudulent promises of work-out agreements and renewed lines of credit. (FAC ¶¶ 5-9, 67-71).

Finally, regarding what Defendants identify as the 'Principal Payment Allegation,' again Plaintiffs have identified sufficient information to allow Defendants to prepare a responsive pleading. Plaintiffs have plead that, in the Fall of 2013, Andrey Golubcovs, as agent and representative of Defendant AS CITADELE BANKA, directed a series of phone calls and e-mails from Latvia to Plaintiffs in California, this time fraudulently inducing Plaintiffs to miss their payment due on September, 2013. (FAC ¶¶ 77-78). Thus, Plaintiffs have set forth sufficient allegations in the First Amended Complaint to allow Defendants to respond.

### c. Plaintiffs' Fraud By False Promises Claim Is Pled With Sufficient Specificity

Defendants further argue that the Plaintiffs' fraud by false promises claim should be dismissed because it does not plead sufficient facts to give rise to a plausible inference that the defendant did not intend to perform as promised at the time the promise was made. In support of this assertion, Defendants refer to FAC ¶ 132, which sets forth that particular element of the offense in the complaint. However, the Defendants have ignored the other *136 paragraphs* of the Complaint, in which Plaintiffs set forth a complex and intentional scheme by Defendants to defraud the Plaintiffs. The Complaint must be considered in its entirety when its sufficiency is assessed. See *Vess v. Ciba-Geigy Corp. Usa*, 317 F.3d 1097, 1107 (9th Cir. 2003). Reviewing the complaint in its entirety, the factual allegations are sufficient to create an inference that Defendants did not intend to perform as promised when the promises were made given that looting Plaintiffs' assets was central to the racketeering scheme designed by Collins and Ripplewood's predecessors-in-interest and alter egos. Therefore, these arguments also fail, and the Defendants' motion to dismiss the Plaintiffs' fraud claims must likewise be denied.

### E. THE PLAINTIFFS' RICO ALLEGATIONS ARE SUFFICIENTLY PLED TO STATE A PRIMA FACIE CIVIL RICO CLAIM

#### 1. Plaintiffs Have Pled A Sufficient Domestic Injury

A civil RICO plaintiff "must allege and prove a domestic injury to its business or property." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016). This requirement serves to prevent the potential for international friction that could arise from providing a private civil remedy for foreign conduct. *Id.*

Plaintiffs have indeed stated a domestic injury under *RJR*. The Defendants'
actions have clearly caused colossal devastation to the Plaintiffs' many real estate
investments in California.

Like the other RICO Defendants, AS Citadele Banka and Belavskis spent
an inordinate amount of effort to demonstrate that none of the RICO Defendants
have securitized any of the Malibu properties with first trust deeds. AS Citadele
Banka and Belavskis join the other RICO Defendants in their request for judicial
notice of a Complaint that Plaintiff Viktor Gusevs filed in an unrelated case,
involving distinct issues that have yet to be decided. *See* Defendants' Request for
Judicial Notice, Dkt. 120. Defendants additionally referenced numerous
documents – which are not referenced *anywhere in* Plaintiffs' FAC –related to the
purchase, deed of trust, and Trustee Sale of Plaintiffs' Malibu Properties. *Id.*

However, Plaintiffs are not asserting that the named Defendants recorded a
first deed of trust on the Malibu properties, but are asserting that these California
properties are in foreclosure proceedings as a direct and proximate result of the
RICO Defendants' fraudulent scheme. FAC ¶ 20, 45. In fact, there are several
ways the RICO defendants could have securitized their loans on the Malibu
properties other than an outright filing of a first deed of trust in California. For
example, Defendants could have cross-collateralized the loans using Plaintiffs'
other properties in Latvia.  Essentially, the RICO Defendants could have made the
decision not to file any first deeds of trust in California to stay out of the purview
of the California Bureau of Real Estate for unlicensed banking activities.

Regardless, whether another financial institution is a lender on the
referenced Malibu properties is irrelevant. This does not change the fact that these
Defendants engaged in targeted transactions with Plaintiffs in California, and

provided the capital which facilitated the purchase and development of the Malibu properties. Moreover, at this stage, the Court is simply evaluating whether Plaintiffs' FAC pleads "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The ultimate resolution of the referenced separate lawsuit at a future date is clearly irrelevant to this Court's determination of the Defendants' motion to dismiss.

### 2.    Plaintiffs Sufficiently Allege A RICO Enterprise Under 18 U.S.C. § 1962 (c)

A RICO claim also requires a plaintiff to plead the existence of an "enterprise" within the meaning of 18 U.S.C. § 1961(4). An enterprise may be a legal entity, or it may be an association-in-fact. 18 U.S.C. § 1961(4). In *Boyle*, the Supreme Court clarified that an association-in-fact enterprise possesses three characteristics: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *See also Living Designs, Inc. v. E.I. DuPont De Nemours and Co.*, 431 F.3rd 353, 362 (9th Cir. 2005) ("if a complaint alleges that a corporation engages in a pattern of racketeering activity through legal entities beyond its control, such as independent banks, accounting firms, public relation firms, the person/ enterprise distinction will more than likely be satisfied.").

Here, the Complaint alleges that the RICO Enterprise was supported by Collins, the Ripplewood Defendants and their predecessor-in-interest and alter egos for the common purpose of coercing Plaintiffs into shortening the maturity deadlines on the lines of credit, suffering defaults in the arbitration proceedings, being deprived of continued funding, being subjected to orchestrated foreclosures of multiple properties, and losing multiple properties sold at sham auction prices

to affiliates of the Bank. (FAC ¶¶ 62-64, 67-71, 77-78). All of these activities were perpetrated for the express purpose of stripping the good assets off the Defendant AS Citadele Banka's balance sheet and otherwise manipulating its financials so that Collins and the Ripplewood Defendants could swoop in and buy the Bank at a cheap, fire-sale price, pump up its value and then later sell for a huge profit.

Plaintiffs have sufficiently alleged that the Defendants conducted the affairs of the enterprise, as "opposed to their own affairs." Further, when an enterprise enables a defendant to engage in conduct "in a way that would be [otherwise] impossible" if the defendant were acting alone, a plaintiff has adequately alleged facts that an enterprise's affairs are distinct from that of a defendant. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). Plaintiffs have clearly alleged that the plan would not have worked without these Defendants' indispensable participation.

### 3. Plaintiffs Have Pled a Pattern of Racketeering Activity and The Predicate Acts with Sufficient Particularity

"Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant." *In re Wellpoint, Inc. Out–of–Network "UCR" Rates Litig.*, 865 F.Supp.2d 1002, 1035 (C.D. Cal., 2011). A RICO plaintiff is not required to allege "every act of mail or wire fraud . . . with the 'particularity' required by Fed. R. Civ.P. 9(b). *Schumack v. United States*, 489 U.S, 705, 714 (1989). "This is because the scheme, not the communications in furtherance of the scheme, must be fraudulent." *Id.* A plaintiff adequately alleges the predicate acts of wire and mail fraud by alleging that: "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails [or wires] or caused a use of the United States mails [or wires] in

furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. *Miller v. Yokohama Corp.*, 358 F.3d 616, 620 (9th Cir. 2004).

In this instance, Plaintiffs thoroughly allege the identity of those responsible for each predicate act, and that these acts, and the underlying fraudulent scheme, were perpetrated with Defendants' consent, involvement, and agreement. Thus at this early stage, and with no discovery, the Complaint clearly satisfies the applicable pleading standard.

> **4.      Plaintiffs Have Sufficiently Pled A Prima Facie Case Against Defendants under 18 U.S.C. § 1962(a), (b), and (d)**

A "plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co.*, 981 F.2d 429, 437 (9th Cir.1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supple Corp.*, 547 U.S. 451. 461, 126 S. Ct. 1991, 1998 (2006).

Here, Plaintiffs allege that they sustained injuries to business or property by reason of defendants' violation of the RICO statute, 18 U.S.C. § 1962 (a)-(d). Plaintiffs have already lost 80 properties, with the sale of 30 additional properties pending at the hands of the AS CITADEL BANKA Enterprise. Plaintiffs have lost a staggering $200 million in properties and are now on the verge of bankruptcy. (FAC ¶ 62-79).

Finally, RICO *conspiracy* claims are analyzed under the more liberal Rule 8(a) standard. *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 U.S. Dist. LEXIS 279, *25 (W.D. Wash. Jan 3, 2011). A defendant need not personally commit a

RICO violation to be liable for the conspiracy. *Howard v. America Online, Inc.*, 208 F. 3rd 741, 751 (9th Cir. 2000). Instead, the defendant need only be "aware of the nature and scope of the enterprise and intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). Defendants' violations of Sections 1962(a) and (c) and their agreement with the co-conspirators to perpetrate sham auctions of properties resulting in outrageous profits for the Defendants and the Ripplewood Defendants constitute a RICO conspiracy in violation of section 1962(d).

## IV.   CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Honorable Court deny the Defendants' Motion to Dismiss. Alternatively, Plaintiffs respectfully request leave to amend their complaint.

Dated: January 23, 2017                    LITVAK LAW GROUP, P.C.

                                           By:    */s/ Uri Litvak_____*
                                                  Uri Litvak, Esq.
                                                  Airene Williamson, Esq.
                                                  Plaintiff Viktors Gusevs, *et. al*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk for the United States District Court for the Central District of California by using the CM/ECF system on January 23, 2017.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS AS CITADELE BANKA'S AND GUNTIS BELAVSKIS' MOTION TO DISMISS (DKT. 119)**

| | |
|---|---|
| **MUNGER, TOLLES & OLSON LLP**<br>Michael R. Doyen, Esq.<br>Jeffrey Y. Wu, Esq.<br>Matthew K. Donohue, Esq.<br>355 South Grand Avenue, 35th floor<br>Los Angeles, CA 90071 | *Attorneys for Defendants*<br>Ripplewood Advisors LLC,<br>RA Citadele Holdings, LLC, and<br>Timothy C. Collins |
| **BUCKLEY SANDLER LLP**<br>Fredrick S. Levin, Esq.<br>Ali M. Abugheida, Esq.<br>100 Wilshire Blvd., Suite 1000<br>Santa Monica, CA 90401 | *Attorneys for Defendants*<br>AS Citadele Banka and<br>Guntis Belavskis |
| **SAFARIAN CHOI & BOLSTAD, LLP**<br>David C. Bolstad, Esq.<br>Scott J. Street, Esq.<br>555 S. Flower Street, Suite 650<br>Los Angeles, CA 90071 | *Attorneys for Defendant*<br>Vas Privatization Agency |

I certify that all participants in the case are registered CM/ECF users and the service will be accomplished by the CM/ECF system.

Dated: January 23, 2017


/s/  *Sylvia B. Iwai*

Sylvia B. Iwai