**BUCKLEYSANDLER LLP**
FREDRICK S. LEVIN (State Bar No. 187603)
flevin@buckleysandler.com
ALI M. ABUGHEIDA (State Bar No. 285284)
aabugheida@buckleysandler.com
DANIEL R. PALUCH (State Bar No. 287231)
dpaluch@buckleysandler.com
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Telephone: (310) 424-3900
Facsimile: (310) 424-3960

*Attorneys for Defendants AS Citadele Banka and Guntis Beļavskis*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIKTORS GUSEVS, an individual; VG BEHEER LATVIA, LLC, a foreign limited liability company; VG BEHEER LATVIA SIA, a foreign corporation; VG BEHEER JURMALA, LLC, a foreign limited liability company; VG BEHEER RIGA, LLC, a foreign limited liability company; BOTANIX, LLC, a foreign limited liability company; DEMENKOVA UN PARTNERI, a foreign partnership; LEGO TRANS, LLC, a foreign limited liability company; ANDRENU PARKS, LLC, a foreign limited liability company; GREENFIELD ENGURES SIA, a foreign corporation; and JEVGENIJS GUSEVS, a foreign individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>AS CITADELE BANKA, a foreign corporation; GUNTIS BELAVSKIS, a foreign individual; VAS PRIVATIZATION AGENCY, a foreign corporation; RIPPLEWOOD ADVISORS LLC, a Delaware limited liability company; RA CITADELE HOLDINGS LLC, a Delaware limited liability company; and TIMOTHY C. COLLINS, an individual,<br><br>        Defendants. | Case No. 2:16-cv-03793-SVW-AS<br><br>**AS CITADELE BANKA AND GUNTIS BELAVSKIS'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE FAC**<br><br>Date: February 13, 2017<br>Time: 1:30 p.m.<br>Crtrm.: 10A<br><br>The Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I.   There Is No Personal Jurisdiction Over the Latvian Defendants. ..................... 2

    A.   RICO's nationwide service provision is inapplicable to parties served in Latvia. ............................................................................. 2

    B.   There is no specific jurisdiction over the Latvian Defendants. .............. 2

        1.   Neither Citadele nor Mr. Belavsksis have directed their activities to California. .......................................................... 2

        2.   Plaintiffs' claims arise out of conduct in Latvia. ........................... 4

        3.   Exercising jurisdiction over the Latvian Defendants would be unreasonable. ............................................................ 5

II.  This Case Should be Dismissed on *Forum Non Conveniens* Grounds. ............. 5

III. Alternatively, the Court Should Order a Stay Pending Arbitration. ................. 6

IV.  Plaintiffs' Fraud and RICO Claims Must Be Dismissed. ................................. 7

    A.   Plaintiffs' fraud claims are barred by the statute of limitations. ............. 7

    B.   Plaintiffs have not pled their fraud claims with sufficient specificity. ......................................................................................... 8

    C.   Plaintiffs' RICO claim must be dismissed. ........................................... 10

BUCKLEYSANDLER LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel (310) 424-3900 • Fax (310) 424-3960

1. Plaintiffs have failed to allege a domestic injury. ...................... 10

2. Plaintiffs have failed to allege a plausible RICO enterprise. ..... 11

3. Plaintiffs have not identified any predicate act with sufficient particularity. .................................................................. 11

4. Plaintiffs' 18 U.S.C. § 1962(A), (B), and (D) claims also fail. ................................................................................................ 12

V. Leave to Amend Should be Denied. .............................................................. 12

CONCLUSION ............................................................................................................ 12

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amba Mktg. Sys., Inc., v. Jobar Int'l, Inc.*,
    551 F.2d 784 (9th Cir. 1977) ................................................................................ 3

*Aryeh v. Canon Bus. Sols., Inc.*,
    55 Cal. 4th 1185 (2013) ........................................................................................ 8

*Cadman v. Bond*,
    603 F. Supp. 1335 (D. Mass. 1985) ...................................................................... 4

*Ceramic Corp. of Am. v. Inka Maritime Corp. Inc.*,
    1 F.3d 947 (9th Cir. 1993) .................................................................................... 6

*Cirino v. Bank of America, N.A.*,
    2015 WL 3669078 (C.D. Cal. Feb. 10, 2015) .................................................... 11

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
    61 F.3d 696 (9th Cir.1995) ................................................................................... 6

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) .............................................................................. 3

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998) .................................................................. 2

*Federal Reserve Bank of San Francisco v. HK Systems*,
    1997 WL 227955 (N.D. Cal. Apr. 24, 1997) ...................................................... 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) .......................................................................................... 8

*Graf v. Peoples*,
    2008 WL 4189657 (C.D. Cal. Sept. 4, 2008) ..................................................... 11

*Hall v. Prudential-Bache Secur., Inc.*,
    662 F. Supp. 468 (C.D. Cal. 1987) ....................................................................... 7

*Hebert v. Moreno*,
    2016 WL 1729185 (C.D. Cal. Mar. 29, 2016) ................................................... 12

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992). ........................................................................................... 10

*Keel v. Schwarzenegger*,
   2009 WL 1444644 (C.D. Cal. May 19, 2009) ...................................................... 10

*In re Miller*,
   310 B.R. 185 (C.D. Cal. 2004). ............................................................................. 9

*Monex Deposit Co. v. Gilliam*,
   616 F. Supp. 2d 1023 (C.D. Cal. 2009) ................................................................. 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................. 7

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ..................................................................................... 9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) .............................................................................................. 7

*Rano v. Sipa Press, Inc.*,
   987 F.2d 580 (9th Cir. 1993) ................................................................................. 3

*RJR Nabisco, Inc. v. European Cmty.*,
   136 S. Ct. 2090 (2016) ................................................................................... 10, 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) ................................................................. 2

*Tkachyov v. Levin*,
   1999 WL 782070 (N.D. Ill. Sept. 27, 1999) .......................................................... 6

*Vaca v. Wachovia Mortg. Corp.*,
   198 Cal. App. 4th 737 (2011) ................................................................................ 8

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ................................................................................... 2, 3, 4

**Other Authorities**

FRE 801(d)(2)(A) ......................................................................................................... 3

## INTRODUCTION

In their opening brief, AS Citadele Banka ("Citadele") and Guntis Beļavskis (collectively, the "Latvian Defendants") established that the court should dismiss or stay this action for a variety of reasons, including that Plaintiffs have failed to allege that the Latvian Defendants have the requisite minimum contacts with California and that dismissal is warranted under the doctrine of *forum non conveniens*. Plaintiffs' arguments to the contrary are meritless.

Plaintiffs continue to blindly rely on Gusevs' alleged residence in California as a basis to establish jurisdiction. In doing so, Plaintiffs ignore the fact that Guesvs' California properties have nothing to do with this litigation or the underlying loan agreements. Plaintiffs California properties are secured by mortgages made by U.S. based banks not at-issue in this litigation. Plaintiffs also ignore the Court's prior ruling providing that they had failed to establish any connection between this state and the alleged telephone calls to Guesvs. Dkt. No. 51 at 9 ("Order"). As before, all of the alleged wrongful conduct occurred in Latvia, not California. *Id*.

Even if the Court finds personal jurisdiction and does not dismiss on *forum non conveniens* grounds, the Court is required to stay this action pending arbitration in Latvia because, despite Plaintiffs' arguments, the dispute outlined in the FAC is covered by numerous arbitration provisions.

Finally, should the Court reach the sufficiency of Plaintiffs' causes of action, the Latvian Defendants have established numerous grounds for dismissal: (a) Plaintiffs' fraud claims are barred by the applicable statute of limitations and by the economic loss doctrine; (b) Plaintiffs' fraud cause of action is insufficiently pled because Plaintiffs failed to plead justifiable reliance and did not identify the "who, what, where, when, and how" of their alleged fraud; and (c) Plaintiffs have still failed to plead a domestic injury under RICO.

For these reasons, the reasons discussed in the opening brief, and the reasons discussed below, the Court should dismiss the FAC with prejudice.

# ARGUMENT

## I. There Is No Personal Jurisdiction Over the Latvian Defendants.

### A. RICO's nationwide service provision is inapplicable to parties served in Latvia.

Plaintiffs argue that jurisdiction over all of the Defendants, including the Latvian Defendants, is proper pursuant to RICO's nationwide service provision. Opp'n at 7, Dkt. 124. As this Court has previously recognized, it is not. The RICO nationwide service provision only applies where service is made in the United States. *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1183 (C.D. Cal. 1998). Here, Citadele and Mr. Beļavskis are foreign nationals who were served in Latvia; accordingly, the RICO nationwide service provision is inapplicable. Dkts. 45 and 46.

### B. There is no specific jurisdiction over the Latvian Defendants.[1]

#### 1. Neither Citadele nor Mr. Belavsksis have directed their activities to California.

Rather than respond to the arguments raised in Latvian Defendants' opening brief demonstrating that the Latvian Defendants did not direct their activities to the State of California, Opening Br. at 5–11, Plaintiffs argue that under the *Calder* effects test jurisdiction is nonetheless proper. There are several fatal flaws in Plaintiffs' argument.

*First*, Plaintiffs improperly apply the *Calder* effects test. *Calder* does not hold that purposeful direction is found where a plaintiff claims to have been harmed by the defendant's tortious conduct while the plaintiff was residing in the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1124–25 (2014). Rather, it is only found if the "defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125. Here, the Latvian Defendants are not connected to California in a meaningful way. Even if Gusevs was a California resident at all relevant times, and even if Citadele

---

[1] In their opening brief, Citadele and Mr. Beļavskis established that general jurisdiction does not exist. Opening Br. at 4. Because Plaintiffs did not respond to these arguments, they have waived this issue. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

**BUCKLEYSANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

contacted him in California, none of that conduct was directed to the State of California—it was directed to Gusevs and Latvia. As this Court put it, "While the Bank's representatives may have sent communications to Mr. Gusevs while he resided in California, the Plaintiffs have not sufficiently demonstrated how these communications give this Court personal jurisdiction," given that "all of the actions in questions took place in Latvia." Order at 9.

*Second*, Plaintiffs do not support their arguments with competent evidence. On the one hand, the Gusevs Declaration is rife with inconsistencies, hearsay, legal conclusions, and unsupported statements. At the same time, it fails to attest to many of the statements labeled as facts in Plaintiffs' briefs. For example, Gusevs does not actually attest to "negotiating" with Citadele "in California" (Opp'n at 10), does not attest to the alleged purpose of the loan agreements (*id*.), does not attest to entering into any loan agreement "in California" (*id*.), and does not attest to actually using any funds from the lines of credit to develop California property. *Compare* Opp'n at 10 *with* Gusevs Decl., Dkt. 130.[2] Plaintiffs' unsupported statements are insufficient to carry their "obligat[ion] to come forward with facts, by affidavit" establishing jurisdiction. *Amba Mktg. Sys., Inc., v. Jobar Int'l, Inc*., 551 F.2d 784, 787 (9th Cir. 1977).

*Finally*, Plaintiffs do not explain how a plaintiff's unilateral move to a new forum post-contract formation is sufficient to establish a defendant's purposeful availment. *See Walden*; *Rano v. Sipa Press, Inc*., 987 F.2d 580, 588 (9th Cir. 1993);

---

[2] Similarly, Plaintiffs do not address Gusevs's numerous inconsistent statements regarding his alleged California residence. Gusevs claims to be a California resident since 2004. FAC ¶5; Gusevs Decl. ¶4. However, in a statement filed with the Latvian Office of Citizenship and Migration Affairs in October 2006, Gusevs attested to his status as a Latvian resident. *See* Smislajeva Decl., Exhibit M. This statement remained on file with the Latvian government until at least August 2013. *Id*. It is not hearsay, and the Court may consider it and use it to weigh the credibility of Gusevs's residency claims. FRE 801(d)(2)(A); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc*., 557 F.2d 1280, 1284 (9th Cir. 1977) (on a 12(b)(2) motion, court may weigh "inherently incredible" statements in an affidavit).

*Cadman v. Bond*, 603 F. Supp. 1335, 1337 (D. Mass. 1985). In *Cadman*, plaintiffs bought a boat in Florida from Florida residents, moved to Massachusetts, and continued to communicate with the sellers after the move. 603 F. Supp. at 1336. Subsequently, plaintiffs filed a fraud action in Massachusetts relating to the sale. *Id*. The Court dismissed the action for lack of personal jurisdiction, holding that it would be "manifestly unfair to hale the [defendants] into Court in Massachusetts" because "the [defendants] were forced to correspond with the [plaintiffs] in Massachusetts regarding pre-existing contractual obligations." *Id*. at 1337. Here, as in *Cadman*, Gusevs alleges that he moved to California in 2004, after he took out the initial line of credit in 2003. FAC, ¶¶ 5, 43. Like the defendants in *Cadman*, it would be unfair to hale the Latvian Defendants into California because they happened to communicate with Gusevs in California about pre-existing contractual obligations.

Accordingly, Plaintiffs have failed to establish that the Latvian Defendants purposefully availed themselves of California.

### 2. Plaintiffs' claims arise out of conduct in Latvia.

This case's only connection to California, Gusevs's residence, is incidental. The FAC does not allege that Citadele representatives contacted Gusevs because he was a California resident. Rather, it alleges that they did so because Gusevs took out loans in Latvia which were secured by Latvian real property. This distinction is lost on Plaintiffs, who state without support that their claims arise from activities specifically directed at California. Opp'n at 11. As *Walden* explained, this reasoning is improper because it "attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. It also obscures the reality that none of [defendant's] challenged conduct had anything to do with [the forum] itself." *Walden*, 134 S.Ct. at 1125. As in *Walden*, the reality here is that none of the Latvian Defendants' conduct had anything to do with California. Citadele and its predecessor Parex carried out business in Latvia, with Latvian entities, regarding Latvian real property. Even if Citadele representatives called or emailed Gusevs while he was a

4

California resident, those contacts *with Gusevs* do not amount to contacts *with California*. It is only by improperly attributing Gusevs's contacts with California to Citadele that this Latvian controversy can be converted into a California dispute.

### 3. Exercising jurisdiction over the Latvian Defendants would be unreasonable.

On the basis of Gusevs's California residence, Plaintiffs argue that the Latvian Defendants "have purposefully serviced loans in California," that Gusevs would face unspecified obstacles litigating in Latvia, that it would be more efficient to litigate in the United States, and that the exercise of jurisdiction in this case is therefore reasonable. Opp'n at 11–14. These arguments are unavailing.

*First*, Plaintiffs have not identified any allegation or declaration indicating that Citadele or Mr. Beļavskis serviced any loans secured by California property. As Plaintiffs admit, the at-issue Latvian loans were not secured by any California property. Opp'n at 23. Thus, the Court should disregard this argument entirely.

*Second*, Plaintiffs' claims of burden are incredible. Plaintiffs admit in the Original Complaint and the FAC that they voluntarily entered into contracts with Latvian entities concerning Latvian real property. Moreover, Gusevs has repeatedly challenged the alleged wrongful foreclosures in Latvia. Plaintiffs obviously feel at home in Latvia and appear to spend considerable time there. Indeed, all but the most recent of Gusevs's declarations in this matter note that they were signed in Riga, Latvia.

*Finally*, California is not the most efficient venue in which to resolve this dispute. There are nine Latvian plaintiffs, three Latvian defendants, and three New York-based defendants. It stands to reason that few, if any, witnesses will be located in California. Similarly, relevant evidence will also likely be in Latvia.

For all of the above reasons, the exercise of jurisdiction here would be unreasonable, and the Court should dismiss Citadele and Mr. Beļavskis.

**II. This Case Should Be Dismissed on *Forum Non Conveniens* Grounds.**

In their opening brief, Citadele and Mr. Beļavskis established that the Court may

dismiss them on *forum non conveniens* grounds. Opening Br., at 13–15. Plaintiffs argue that Latvia is not an adequate forum because Latvian law does not provide for a RICO cause of action. Plaintiffs also argue that even if Latvia is an adequate forum, the Court should defer to their forum choice as California residents. The Court should reject both arguments:

*First*, Latvia is not an inadequate forum simply because it does not provide for a RICO cause of action. "A court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum." *Ceramic Corp. of Am. v. Inka Maritime Corp. Inc.,* 1 F.3d 947, 949 (9th Cir. 1993). All that is required is that the alternative forum "provide some potential avenue for redress." *Id*.; *see also Tkachyov v. Levin*, 1999 WL 782070, at *9 (N.D. Ill. Sept. 27, 1999) (dismissing RICO action in favor of Latvia).

*Second*, while courts ordinarily give deference to a plaintiff's choice of forum, "where the plaintiff is not a citizen of its chosen forum, the district court is entitled to be far less deferential toward his choice." *Id*. at *6; *see also Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd*., 61 F.3d 696, 703 (9th Cir.1995). Here, only two of seven plaintiffs allege any connection to California. Those connections are dubious at best: VG Beheer Latvia is a Latvian entity that is no longer registered to do business in California, and Gusevs claims to be a California resident for purposes of this litigation, but has also claimed to be a resident of Latvia since 2006. Given these facts, Plaintiffs' forum choice is entitled to less deference.

**III.   Alternatively, the Court Should Order a Stay Pending Arbitration.**

As discussed in the Latvian Defendants' opening brief, the Court is required to stay this case in favor of a Latvian arbitration because the loan agreements at issue contain arbitration provisions covering all disputes "arising" and "relating to" the loan agreements.[3] Opening Br. at 15–16. Plaintiffs argue in opposition that this case should

---

[3] Entry of a stay pending arbitration is mandatory, not discretionary, for issues

6

not be stayed because the arbitration provisions (1) have no bearing here and (2) no longer have a remedial effect. Opp'n at 16–17. Both arguments are unavailing:

*First*, the arbitration provisions cover allegations—including those sounding in tort and those alleging fraud in the inducement—that "arise from" or "relat[e] to" the contract. *See, e.g., Hall v. Prudential-Bache Secur., Inc.*, 662 F. Supp. 468 (C.D. Cal. 1987) (arbitration agreement covering all disputes "arising" from and "related to" the contract encompassed RICO claim); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (claim of fraud in the inducement of entire contract arbitrable under arbitration clause).

*Second*, there is no reason to believe that the arbitration agreements were exhausted when Citadele brought arbitration proceedings against the Plaintiffs. Indeed, according to the FAC, the dispute that Plaintiffs seek to resolve through this litigation is different than the previous arbitrations. Regardless, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Accordingly, should the Court determine that it has jurisdiction and that *forum non conveniens* is inapplicable, the Court is required to enter a stay pending arbitration before the Riga International Arbitration Court.

## IV. Plaintiffs' Fraud and RICO Claims Must Be Dismissed.

### A. Plaintiffs' fraud claims are barred by the statute of limitations.

Plaintiffs' opposition brief argues that their cause of action for fraud is not time-barred because (1) they suffered new harms and injuries less than three years before this action was filed and (2) they could not have discovered their fraud causes of action until after the three year limitations period lapsed. Opp'n at 17–19. These arguments

---

"referable to arbitration" within the meaning of Section 3 of the Federal Arbitration Act. 9 U.S.C. § 3; *Monex Deposit Co. v. Gilliam*, 616 F. Supp. 2d 1023, 1024 (C.D. Cal. 2009) ("The FAA eliminates [] discretion and requires the court to compel arbitration of issues covered by the arbitration agreement.").

should be rejected for at least two reasons:

*First*, neither the continuing violation nor the continuous accrual doctrine applies here. The continuing violation doctrine applies only if a series of small harms cumulatively cause significant actionable harm. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197 (2013). The continuous accrual theory only applies where the defendant violated a particular "continuing or recurring obligation" to plaintiffs by committing a series of wrongs each of which is independently actionable. *Id*., at 1199. Here, Plaintiffs claim to have suffered from a single large harm resulting from Citadele's alleged promise to extend their lines of credit upon maturity and Citadele's subsequent failure to do so, and they do not allege that they were owed any recurring obligation or that any such obligation was repeatedly breached. That Plaintiffs allege they suffered new harms and injuries after the alleged breaches does not render their claims timely. *See Vaca v. Wachovia Mortg. Corp.*, 198 Cal. App. 4th 737, 745 (2011) (rejecting attempt to invoke the continuing accrual theory because "the time bar starts running when the plaintiff first learns of actionable injury…, even if the injury will linger or compound").

*Second*, Plaintiffs misapply *Fox*. In *Fox*, the court explained that "in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused *must conduct a reasonable investigation of all potential causes of that injury*." 35 Cal. 4th at 809 (emphasis added). Here, according to the FAC, the Plaintiffs were aware that they were injured when Citadele did not extend the lines of credit in 2012, but they did nothing to investigate the cause of that harm. *See* FAC ¶¶ 73–74. Thus, Plaintiffs have not carried their burden to show diligence and they cannot avail themselves of the delayed discovery rule. *Fox*, 35 Cal. 4th at 808.

### B. Plaintiffs have not pled their fraud claims with sufficient specificity.

In their opening brief, the Latvian Defendants established that Plaintiffs have not pled their fraud claims with sufficient specificity. Opening Br., at 18–21. Plaintiffs'

only response to the Latvian Defendants' arguments is that they had no duty to investigate the truth of any of Citadele's representations and that they have sufficiently alleged the fraud. Both of these arguments should be rejected for at least two reasons:

*First*, Plaintiffs had a duty to investigate because, as alleged in the FAC, they were confronted with the falsity of the bank's statements in 2012 when Citadele did not extend the lines of credit despite its previous promise to do so. At that point, the Plaintiffs were not entitled to close their eyes and continue to rely on Citadele's representations. Although "a person may justifiably rely on a representation even if the falsity of the representation could have been ascertained[,]… a person cannot rely on a representation if he knows that it is false or its falsity is obvious to him." *In re Miller*, 310 B.R. at 198. In other words, "a person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth." *Id*. In *In re Miller*, the court held that a Las Vegas casino was not justified in relying on the statements of a debtor in extending credit because the casino had performed a credit check that raised red flags. *Id*. at 198–99. Here, like the creditor in *Miller*, Plaintiffs were confronted with red flags when Citadele allegedly did not extend the lines of credit and refused to enter into work-out agreements. Plaintiffs ignored the red flags; as a result, they cannot claim that their continued reliance was justifiable. *Id*.

*Second*, Plaintiffs rely on a 2004 District of Connecticut case in support of their argument that the fraud pleading standard should be relaxed in this case because of the complexity of the fraud alleged. Opp'n at 20–21. This argument is patently ridiculous. The only reason the FAC appears at all to tell a complex story is due to Plaintiffs' attempts at turning a Latvian foreclosure case into a worldwide RICO conspiracy; Plaintiffs should not be allowed to hide behind self-fabricated complexity to survive dismissal. Even if the Court were to relax the fraud pleading standard, as some courts have, Plaintiffs have not made the requisite showing that the evidence needed to allege the requisite specificity is within the defendant's exclusive possession. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Plaintiffs should know who they spoke with at

Citadele, who emailed them, what was said, and when, because, as pled, Plaintiffs themselves participated in each of these communications. Plaintiffs' failure to plead this information despite knowing it is fatal to their fraud cause of action.

### C. Plaintiffs' RICO claim must be dismissed.

#### 1. Plaintiffs have failed to allege a domestic injury.

As established in the Latvian Defendants' opening brief, the FAC shares the original complaint's primary weakness: it does not plead a domestic injury as required by *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2111 (2016). Plaintiffs' arguments to the contrary—based entirely on Gusevs's ownership of homes in Malibu that were undisputedly purchased with funds from U.S. based banks—are unavailing.

*First*, except for Gusevs, none of the Plaintiffs attempt to allege a domestic injury. *See* FAC ¶ 19 (Gusevs acquired the Malibu properties); *see also* Levin Decl. ¶¶ 3–4, Exs. C–F, Dkt. 119-3 (evidencing Gusevs's personal ownership of the Malibu homes). Accordingly, all their RICO claims must be dismissed.

*Second*, Gusevs's attempt to allege domestic injury is woefully deficient. All of the allegedly foreclosed properties are in Latvia, not California. While Plaintiffs' briefing and the FAC are a bit opaque, presumably Gusevs intends to argue that the foreclosures *in Latvia* have left him with less money in the United States and that as a result of having less money his properties in California have been affected. FAC ¶ 20. This is not a cognizable RICO domestic injury. A RICO loss requires a "direct relation between the injury asserted and the injurious conduct alleged." *Keel v. Schwarzenegger*, 2009 WL 1444644, at *5 (C.D. Cal. May 19, 2009); *Holmes*, 503 U.S. at 268.

As the Supreme Court explained in *Holmes*, an alleged RICO injury is insufficient if it "go[es] beyond the first step" in the causation chain. 503 U.S. at 271. Here, Plaintiffs' theory goes beyond that. The claimed harm to Gusevs in California is, at best, many steps removed from the Latvian Plaintiffs' losses in Latvia. Moreover, there are numerous potential intervening sources for Gusevs's inability to make

10

payments on the Malibu properties, such as the same market forces that caused millions of others to suffer financial losses in the wake of the 2008 financial crisis. Thus, Plaintiffs' claimed injury is disconnected from the RICO scheme alleged.

Regardless, the Latvian foreclosures were not the proximate cause of any harm to Gusevs's California properties. If such an allegation were sufficient, any injury in the world could substitute for domestic injury if the Plaintiff happened to own something in the United States. As *Holmes* and *RJR Nabisco* make clear, this is not the law.

### 2. Plaintiffs have failed to allege a plausible RICO enterprise.

Plaintiffs' opposition brief acknowledges that they must allege a "common purpose" to the alleged RICO conspiracy. *See* Opp'n at 24–25. However, that "common purpose" must also be plausible. *Cirino v. Bank of America, N.A.*, 2015 WL 3669078, at *5 (C.D. Cal. Feb. 10, 2015). Despite having multiple opportunities to present any plausible common purpose shared by all Defendants, Plaintiffs have failed to do so. The fact remains that Defendants' many divergent interests undermine any common purpose they could have shared. *See* Opening Br. at 23. Plaintiffs make no attempt to reconcile these competing interests. As such, Plaintiffs have not alleged the existence of a plausible RICO enterprise.

### 3. Plaintiffs have not identified any predicate act with sufficient particularity.

A viable RICO claim must clearly identify the predicate acts alleged to constitute racketeering activity. *See Graf v. Peoples*, 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008) ("'shotgun' pleading" insufficient to plead a RICO claim). Although Plaintiffs are ostensibly in possession of the "numerous emails" allegedly sent by one or more of Defendants' employees, Plaintiffs have not identified any such email in the FAC. FAC at ¶ 113. Indeed, despite the alleged mountain of evidence Plaintiffs have supporting their claim, they have been unable, in two complaints and two rounds of briefing, to describe any specific writing or communication that details the who, what, where, and how of any predicate act of fraud allegedly perpetrated against them. Because they

11

have not, their RICO claim should be dismissed. *Federal Reserve Bank of San Francisco v. HK Systems*, 1997 WL 227955, at *3 (N.D. Cal. Apr. 24, 1997).

### 4. Plaintiffs' 18 U.S.C. § 1962(A), (B), and (D) claims also fail.

Plaintiffs' argument in favor of their 18 U.S.C. § 1962(a), (b), and (d) claim does not address any of the arguments raised in the Latvian Defendants' opening brief. Like their initial complaint, the FAC does not make clear under which subsection of the RICO statute Plaintiffs are bringing their RICO claim. On this basis alone, Plaintiffs' § 1962 claim should be dismissed. Rather than focus on the fatal pleading issues identified in Defendants' opening brief, Plaintiffs' opposition recapitulates arguments made in support of their § 1962(c) claim, which, as argued above, should be dismissed. For the reasons discussed herein and in the Latvian Defendants' opening brief, Plaintiffs' purported claims under § 1962(a), (b), and (d) should be dismissed.

## V. Leave to Amend Should be Denied.

Despite the Court's warning that their continued failure to state a claim could result in dismissal with prejudice, Plaintiffs' amendments were woefully insufficient. Their opposing papers have also failed to identify any plausible amendments that could be made to cure the numerous fatal defects discussed herein. Accordingly, the Court should dismiss all claims with prejudice. *See Hebert v. Moreno*, 2016 WL 1729185, at *5 (C.D. Cal. Mar. 29, 2016) (amendment futile where new allegations added in response to prior order of dismissal "do not cure the defect identified by the Court").

## CONCLUSION

For the reasons discussed above and in the Latvian Defendants' opening brief, the Court should dismiss Plaintiffs' FAC.

DATED: January 30, 2017           BUCKLEYSANDLER LLP

By: */s/ Fredrick S. Levin*
Fredrick S. Levin
*Attorneys for Defendants AS Citadele Banka and Guntis Beļavskis*